**No. 26-6906**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**STANFORD PUBLISHING CORPORATION, *et al.*,**

*Plaintiffs-Appellees,*

**v.**

**MARCO RUBIO, *et al.*,**

*Defendants-Appellants.*

**Appeal from a Judgment Issued by the U.S. District Court for the Northern District of California (Civil Action No. 5:25-cv-06618-NW)**

# DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD VOLUME 2 of 15

**JONATHAN D. GUYNN**
**Acting Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**

**AUGUST E. FLENTJE**
**Special Counsel for Immigration Litigation**

**SAMUEL P. GO**
**Assistant Director**

**JAMES A. HURLEY**
**Trial Attorney**
**Office of Immigration Litigation**
**U.S. Department of Justice Civil Division**
**P.O. Box 878, Ben Franklin Station**
**Washington, D.C. 20044**
**T: (202) 305-1889**
**F: (202) 305-2509**
**james.hurley@usdoj.gov**

**JAIME DURR**
**DOMINIC WEISS**
**Trial Attorneys**

**Date: November 20, 2026**

**Attorneys for Respondent**

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| STANFORD DAILY PUBLISHING CORPORATION, ET AL. | ) | 5:25-CV-06618 NW |
| PLAINTIFFS, | ) | SAN JOSE, CALIFORNIA |
| VS. | ) | MAY 27, 2026 |
| RUBIO, ET AL. | ) | PAGES 1 - 164 |
| DEFENDANTS. | ) | |

TRANSCRIPT OF CIVIL BENCH TRIAL PROCEEDINGS
BEFORE THE HONORABLE NOEL WISE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFFS: FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 PENNSYLVANIA AVENUE SE
WASHINGTON, DC 20003
**BY: CONOR T. FITZPATRICK**

FOR THE PLAINTIFFS: FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 WALNUT STREET SUITE 900
PHILADELPHIA, PA 19106
**BY: COLIN PATRICK MCDONELL**

OFFICIAL COURT REPORTER: TIFFANY SALINAS-HARWELL, RPR
CERTIFICATE NUMBER 971863

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

UNITED STATES COURT REPORTERS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


A P P E A R A N C E S: (CONTINUED.)

FOR THE PLAINTIFFS: VAN DER HOUT LLP
360 POST ST., SUITE 800
SAN FRANCISCO, CA 94108
**BY: JOHN SINODIS**
**BY: OONA CAHILL**
**BY: MARC VAN DER HOUT**

FOR THE DEFENDANTS: UNITED STATES ATTORNEY'S OFFICE
450 GOLDEN GATE AVENUE, BOX 36055
SAN FRANCISCO, CA 94102
**BY: KELSEY JOHN HELLAND**

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

SAN JOSE, CALIFORNIA MAY 27, 2026

P R O C E E D I N G S

(COURT CONVENED AT 9:22 A.M.)

**THE CLERK:** NOW CALLING 25-CV-06618, STANFORD DAILY PUBLISHING CORPORATION, ET AL., VERSUS RUBIO, ET AL.

MAY I PLEASE HAVE APPEARANCES, BEGINNING WITH THE PLAINTIFF.

**MR. FITZPATRICK:** GOOD MORNING, YOUR HONOR.

CONOR FITZPATRICK, ON BEHALF OF THE PLAINTIFFS, STANFORD DAILY, JANE DOE, AND JOHN DOE.

I'M JOINED BY MY COLLEAGUES COLIN MCDONELL, MARC VAN DER HOUT, JOHNNY SINODIS, AND OONA CAHILL.

AND, WITH THE COURT'S PERMISSION, OUR LITIGATION ASSISTANT, BARRETT FIFE, WILL HANDLE SOME OF OUR DEMONSTRATIVE EXHIBITS.

**THE COURT:** THANK YOU.

**MR. HELLAND:** GOOD MORNING, YOUR HONOR.

ASSISTANT U.S. ATTORNEY KELSEY HELLAND FOR THE GOVERNMENT.

**THE COURT:** THANK YOU.

MR. HELLAND, DO YOU HAVE APPEARANCES BY ANYONE ELSE?

**MR. HELLAND:** NO, YOUR HONOR.

**THE COURT:** GOOD MORNING AGAIN TO EVERYONE.

WE ARE HERE FOR, AT LEAST PURPORTEDLY, TODAY IS A BENCH TRIAL ON THE ISSUES THAT WERE RAISED IN THE OPERATIVE COMPLAINT BY THE PLAINTIFFS THAT ARE HERE.

AND BEFORE WE GET INTO WHAT A TRADITIONAL TRIAL WOULD LOOK LIKE, WHETHER IT'S BEFORE A JURY OR BEFORE THE COURT, MEANING BEFORE THERE'S SOME SORT OF OPENING STATEMENT, I HAVE SOME QUESTIONS ABOUT THE APPROACH THAT COUNSEL SEEMINGLY HAVE AGREED UPON IN TERMS OF THE FACTUAL RECORD, AND SO, I'D LIKE TO TAKE THOSE ISSUES UP FIRST.

SO I'D ASK COUNSEL TO COME TO THE FRONT, PLEASE, AND WHEN YOU'RE READY, WE CAN CONTINUE.

ALL RIGHT, THE ISSUE I'D LIKE TO EXPLORE WITH BOTH OF YOU FIRST IS CORE TO ANY KIND OF A TRIAL, WHICH IS, WHAT'S THE FACTUAL RECORD THAT THE COURT IS GOING TO USE?

NORMALLY, AND CERTAINLY IN WHAT HAPPENED IN THE AAUP MATTER, FROM WHICH BOTH SIDES ARE CAPTURING UNDERLYING TESTIMONY TRANSCRIPTS THAT ARE HERE, WHAT NORMALLY HAPPENS IS THAT WITNESSES COME BEFORE THE COURT OR THE TRIER OF FACT, AND THE COURT CAN ASSESS NOT JUST WHAT THEY SAY, BUT HOW THEY SAY IT. THE COURT ASSESSES CREDIBILITY IN ALL FORMS, INCLUDING BODY LANGUAGE, AND SARCASM SOMETIMES, AND TONE OF VOICE THAT OCCURS, ALL OF WHICH, OR GENERALLY ALL OF WHICH, IS LOST IN A DRY RECORD.

BOTH SIDES HAVE ASKED THIS COURT TO USE ONLY, FOR THE PURPOSES OF THIS TRIAL, THE UNDERLYING EXHIBITS AND TESTIMONY FROM THAT TRIAL. HERE IS THE CONCERN THAT I HAVE, ASIDE FROM THE OBVIOUS OF WHAT I JUST SAID, MEANING IT WOULD BE EXCEEDINGLY DIFFICULT FOR THIS COURT TO MAKE INDEPENDENT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



ASSESSMENTS ON DRY TESTIMONY FROM A TRANSCRIPT WITHOUT HAVING THE WITNESS BEFORE THE COURT, BUT EVEN BEYOND THAT, LET ME JUST TAKE AS AN EXAMPLE, FOR MY PURPOSES, IN A VERY SIMPLE TRIAL INVOLVING A CAR ACCIDENT. FOR EXAMPLE, THERE MIGHT BE MULTIPLE WITNESSES THAT COME FORWARD THAT TALK ABOUT WHAT COLOR THE LIGHT WAS; SOME WITNESSES SAY IT'S YELLOW AND SOME WITNESSES SAY IT'S RED, BUT IF YOU HAVE A BENCH TRIAL AND THE JUDGE IS THE ONE WHO'S ULTIMATELY MAKING THE DETERMINATION, AT THE END OF THE DAY, THE JUDGE MAKES A FACTUAL FINDING BASED ON EVERYTHING THAT THE JUDGE HEARD, WHO THE JUDGE BELIEVED WAS CREDIBLE BASED ON THE EVIDENCE, AND THE JUDGE DETERMINES THE LIGHT WAS RED OR THE LIGHT WAS YELLOW. THAT IS THE FINDING OF FACT THAT BECOMES THE FACT OF THE CASE. IF THERE IS AN APPEAL, THAT IS THE FACT THAT THE COURT OF APPEAL WOULD USE.

HERE IN THE UNDERLYING CASE THAT THE PARTIES ARE ASKING THE COURT TO USE IS THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS CASE, WHICH THE COURT'S GOING TO REFER TO AS AAUP. THERE WAS, I THINK, A NINE-DAY TRIAL INVOLVING PERHAPS 15 WITNESSES IN FRONT OF JUDGE YOUNG IN MASSACHUSETTS.

JUDGE YOUNG ISSUED A 161-PAGE ORDER THAT NOT ONLY RECOUNTED MANY OF THOSE UNDERLYING FACTS, TESTIMONY VERBATIM THAT OCCURRED, AND IN SOME INSTANCES DOCUMENTS, BUT THEN MADE FINDINGS OF FACT, INTERPRETED THOSE THINGS, AND REACHED FACTUAL CONCLUSIONS THAT ARE THE FACTS OF THE CASE.

WHY WOULD THIS COURT LOOK TO ANY OF THE UNDERLYING

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


DOCUMENTS OR EVIDENCE, UNLESS IT'S SOMETHING THAT, FOR WHATEVER REASON, DIDN'T MAKE ITS WAY TO JUDGE YOUNG'S ULTIMATE OPINION. WHY WOULD I LOOK TO THAT INSTEAD OF LOOKING TO THE ACTUAL FACTUAL FINDINGS THAT JUDGE YOUNG MADE?

**MR. FITZPATRICK:** SO, A COUPLE OF THOUGHTS THERE, YOUR HONOR.

FIRST, IN THE AAUP MATTER, THERE WERE QUESTIONS OF FACT IN THAT CASE THAT WE AREN'T DEALING WITH HERE --

**THE COURT:** SURE, SO SOME OF THEM MAY NOT APPLY.

**MR. FITZPATRICK:** THAT'S CORRECT.

A LARGE -- A LARGE ISSUE IN THE AAUP CASE WAS THE EXISTENCE OF WHETHER OR NOT THE ADMINISTRATION HAD A POLICY, AND IF SO, WHAT SORT OF AFFIRMATIVELY TARGETING PRO-PALESTINIAN SPEAKERS. SO, A LARGE AMOUNT OF THE TESTIMONY THAT YOUR HONOR REFERENCES WAS ON THAT POINT. THAT'S NOT AT ISSUE IN OUR CASE. OUR CASE IS SOLELY A LEGAL CONSTITUTIONAL CHALLENGE TO WHETHER THESE TWO STATUTES VIOLATE THE FIRST AMENDMENT.

I THINK ONE THING THAT MAY BE OF ASSISTANCE HERE, YOUR HONOR, IS WITH RESPECT TO THE FACTUAL RECORD THAT THE COURT MAY NEED TO CONSIDER HERE. I THINK IT'S MOSTLY ON THE ISSUE OF STANDING, AND THAT'S WHY MY FRIEND ON THE OTHER SIDE AND I WORKED INCREDIBLY CLOSELY AND COOPERATIVELY ON THE JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS, BUT WHEN IT COMES TO THE MERITS OF THIS CASE, WHEN IT COMES TO OUR CONSTITUTIONAL CHALLENGES, THERE SIMPLY AREN'T HE SAID/SHE SAID TYPE DISPUTES


AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


IN THE RECORD THAT WOULD ORDINARILY PRECLUDE SOMETHING LIKE SUMMARY JUDGMENT, AND TO THE EXTENT THERE ARE, THAT'S WHY WE'VE AGREED TO A TRIAL ON THE PAPERS, WHERE WE AGREE THAT TO THE EXTENT THERE ARE ANY MATERIAL FACTUAL DISPUTES, THAT THOSE CAN BE RESOLVED ON THE -- ON THE UNDERLYING DOCUMENTS HERE.

**THE COURT:** MEANING, IF THERE IS A FACTUAL DISPUTE THAT JUDGE YOUNG DID NOT ADDRESS?

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR.

**THE COURT:** WHAT ABOUT THE ONES THAT HE DID?

**MR. FITZPATRICK:** FOR, FOR THE ONES THAT JUDGE YOUNG DID ADDRESS, CERTAINLY, I THINK IT'S PERSUASIVE EVIDENCE. WE HAVE NOT --

**THE COURT:** WAIT. WHY IS IT PERSUASIVE, AND WHY IS IT NOT THE RULE OF THE CASE, ESSENTIALLY?

AND I MEAN THAT THE UNDERLYING FACTS. IF THE DOCUMENTS ARE THE SAME, AND THE WITNESSES THAT YOU'RE ASKING ME TO RELY ON, WHO I WILL NOT SEE, ARE THE SAME. WHY WOULD THIS COURT NOT SPECIFICALLY TAKE THOSE FACTUAL FINDINGS AS JUDGE YOUNG MADE THEM?

**MR. FITZPATRICK:** YOUR HONOR, I THINK THAT WOULD -- IN THE INTEREST OF PRESERVING OUR OWN RECORD -- I THINK THAT WOULD CREATE A SERIOUS NON-MUTUAL COLLATERAL ESTOPPEL PROBLEM, BECAUSE THERE ISN'T MUTUALITY OF PARTIES, WHICH ARE -- WHICH, IN OUR UNDERSTANDING, IS REQUIRED FOR NON-MUTUAL OFFENSIVE COLLATERAL ESTOPPEL. I HADN'T UNDERSTOOD MY FRIEND ON THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



OTHER SIDE TO HAVE AGREED TO NON-MUTUAL COLLATERAL ESTOPPEL IN THIS ACTION WHERE THEY AGREED TO BE BOUND BY JUDGE YOUNG'S FACTUAL FINDINGS, WHICH, I UNDERSTAND, THEY ARE APPEALING RIGHT NOW IN THE FIRST CIRCUIT.

**THE COURT:** IS THAT CORRECT?

**MR. HELLAND:** THAT IS CORRECT, YOUR HONOR. I'M -- I WILL ECHO WHAT HE SAID.

I WOULD ALSO, THOUGH, POINT OUT, YOUR HONOR, THAT IN THE PRETRIAL POSTURE, I BELIEVE YOUR HONOR ORDERED US TO NOTE ANY PARTICULAR FACTUAL POINTS THAT EITHER PARTY WAS ASSERTING, WHICH DEVIATED FROM THE FACTUAL FINDINGS IN THE AAUP CASE, AND NEITHER PARTY DID, RIGHT? SO, AS WE WERE PREPARING THE JOINT STATEMENT HERE, YOUR HONOR INSTRUCTED US TO ALERT YOU IF THERE WERE SUCH DEVIATIONS AND THERE WERE NONE.

SO, AGAIN, I THINK THIS SPEAKS TO BOTH THE COOPERATIVE APPROACH THAT BOTH SIDES HAVE TAKEN IN SUBMITTING THESE MATERIALS AND OUR SHARED VIEW THAT THIS IS ACTUALLY A FUNDAMENTALLY LEGAL ISSUE.

THERE'S THE STANDING ISSUE, AND THAT'S WHAT THE RECORD IS FOR, BUT THE ISSUE THAT REMAINS FOR TRIAL, BY AND LARGE, IS THIS LEGAL QUESTION ABOUT THE SCOPE OF THESE STATUTES AND WHETHER THEY VIOLATED THE CONSTITUTION.

AND SO, I DON'T THINK THAT YOU ACTUALLY NEED TO GET INTO THE AAUP FINDINGS TO ADDRESS THAT QUESTION.

**THE COURT:** I'M STILL TROUBLED BY THIS ISSUE.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



THERE ARE MANY THINGS FOR THIS COURT TO CONSIDER THAT ARE SEPARATE FROM WHAT WAS ADDRESSED BY JUDGE YOUNG. THERE ARE DIFFERENT PLAINTIFFS WHO ARE HERE, AND THE FACTS WITH REGARDS TO THOSE PLAINTIFFS ARE ENTIRELY UNDISPUTED. THOSE PLAINTIFFS ARE NOT COMING IN TO TESTIFY. THERE ARE DECLARATIONS THAT ARE IN THE RECORD, AND THERE REALLY ISN'T ANYTHING ELSE. AND I BELIEVE THAT THE POSITION THAT THE GOVERNMENT HAS TAKEN IS THAT IT ACCEPTS THOSE DECLARATIONS FOR WHAT THEY ARE; IS THAT CORRECT?

**MR. HELLAND:** YES.

**THE COURT:** BUT TO THE EXTENT THAT THERE IS ARGUMENT HERE, OR SOME DETERMINATION THAT THE COURT NEEDS TO MAKE ABOUT HOW OR WHY THE GOVERNMENT IS INTERPRETING OR APPLYING, WHETHER IT'S THE EXECUTIVE ORDERS OR THE UNDERLYING STATUTES, HOW IT'S APPLYING THAT IN THE REAL WORLD, AND HOW INDIVIDUALS ARE BEING AFFECTED BY THAT. THAT WAS, IN SIGNIFICANT PART, WHAT JUDGE YOUNG WAS CONSIDERING, AND HE DID MAKE FACTUAL FINDINGS ABOUT THIS. AND IF THOSE WITNESSES ARE NOT COMING IN HERE OR NEW WITNESSES WHO HAVE REPLACED, YOU KNOW, IN SOME INSTANCES, SOME OF THE SAME PEOPLE ARE NOT IN THOSE POSITIONS ANYMORE BECAUSE PEOPLE WHO TESTIFIED NO LONGER HAVE THOSE JOBS, AND THEY'VE BEEN REPLACED BY OTHER PEOPLE, BUT THOSE FOLKS AREN'T COMING IN HERE EITHER.

HOW IS THIS COURT TO DEAL WITH THAT?

**MR. FITZPATRICK:** SO A COUPLE OF THOUGHTS THERE,

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



YOUR HONOR.

FIRST, WITH RESPECT TO THE IMPACT ON NONCITIZENS, THE CHILL THAT SOME OF THE WITNESSES IN THE AAUP TRIAL TESTIFIED TO, WE HAVE A NUMBER OF JOINT FACTS IN OUR JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS THAT BRING IN NOW AS UNDISPUTED THE CHILL TO THE NONCITIZEN WRITERS, WRITERS AND EDITORS AT STANFORD DAILY. THE CHILL TO JANE DOE, THE CHILL TO JOHN DOE. SO THOSE ARE NOW NOT ONLY IN THE RECORD HERE FOR PURPOSES OF OUR PLAINTIFFS, BUT THEY'RE IN THE RECORD AS UNDISPUTED.

AND THEN WITH RESPECT TO THE OTHER TESTIMONY THAT YOUR HONOR REFERENCED FROM THE AAUP TRIAL, MY COLLEAGUE ON THE OTHER SIDE AND I AGREED THAT ALL OF THAT TESTIMONY COMES IN AS FAIR GAME IN THIS TRIAL ON THE PAPERS.

SO, WHAT I WOULD, SAY -- WHAT I WOULD POSIT TO THE COURT IS THAT IF THERE IS UNCONTRADICTED TESTIMONY IN THAT TRIAL RECORD THAT FOLKS ARE BEING CHILLED BY THESE ACTIONS, AND THERE ISN'T ANY COUNTERVAILING EVIDENCE OR TESTIMONY GOING THE OTHER WAY. THEN THE COURT SHOULD TAKE NOTE OF THAT, AND I THINK THAT WAS THE PARTY'S INTENT, TO SAY WE WILL LIVE AND DIE BY THE -- BY THE TRANSCRIPT AND THE EXHIBITS IN THE EIGHT CLAIMS.

**THE COURT:** AND WHAT I'M TRYING TO UNDERSTAND IS, WHY SHOULD YOU NOT LIVE AND DIE BY THE DETERMINATION THAT WAS MADE BY JUDGE YOUNG WITH REGARDS TO THAT?

**MR. FITZPATRICK:** SO, OBVIOUSLY, PLAINTIFFS ARE QUITE HAPPY WITH THE FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


JUDGE YOUNG MADE.

MY CONCERN ON A PROCEDURAL MATTER --

**THE COURT:** AND I WANT TO JUST STOP YOU FOR A MINUTE. I WANT TO BE CLEAR; I'M NOT TALKING ABOUT THE CONCLUSIONS OF LAW, BECAUSE THIS COURT NEEDS TO SEPARATELY ADDRESS THOSE AS IT RELATES TO THESE PLAINTIFFS AND THE CLAIMS THAT HAVE BEEN MADE, BUT THE FINDINGS, THE UNDERLYING FINDINGS OF FACT, THAT'S WHAT I'M ASKING YOU TO FOCUS ON.

**MR. FITZPATRICK:** ABSOLUTELY, YOUR HONOR, IN TERMS OF THE FINDINGS OF FACT -- SORT OF SETTING ASIDE THE PROCEDURAL ISSUES, I FULLY AGREE WITH THESE FINDINGS OF FACT. THE PROBLEM HERE IS THAT I DON'T BELIEVE IN A -- IN THE INTEREST OF NOT CREATING AN APPELLATE ISSUE FOR THE GOVERNMENT. I DON'T BELIEVE THE TEST FOR NON-MUTUAL COLLATERAL ESTOPPEL HAS BEEN SATISFIED HERE, SUCH THAT THE GOVERNMENT IS REQUIRED TO BE BOUND BY THOSE FINDINGS OF FACT -- BY THOSE FINDINGS OF FACT, ABSENT AN AGREEMENT FROM THE GOVERNMENT ON THAT POINT.

**THE COURT:** IS IT THE POSITION OF THE GOVERNMENT THAT ON APPEAL THAT THE COURT OF APPEAL EVEN COULD OVERRULE THE FINDINGS OF FACT THAT WERE MADE BY JUDGE YOUNG?

IT'S DIFFERENT TO SAY THAT THE COURT OF APPEAL MIGHT SAY THAT THE LEGAL FINDINGS WERE INCORRECT OR THE FACTS DIDN'T SUPPORT CERTAIN LEGAL FINDINGS, BUT DOES THE GOVERNMENT ACTUALLY TAKE THE POSITION THAT THOSE LEGAL FINDINGS ARE IN SOME WAY GOING TO BE OVERTURNED?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**MR. HELLAND:** DO YOU MEAN FACTUAL FINDINGS?

**THE COURT:** THAT'S WHAT I MEANT. THANK YOU.

**MR. HELLAND:** YOUR HONOR, I AM NOT ON THE LITIGATION TEAM FOR THAT CASE. I DO KNOW THAT THE APPEAL WAS FILED. I HONESTLY DO NOT KNOW THE INTRICACIES OF THE ARGUMENTS THAT THE GOVERNMENT INTENDS TO MAKE IN THAT CASE.

I DO BELIEVE THAT COURTS OF APPEAL DO SOMETIMES OVERTURN FACTUAL FINDINGS, AT LEAST IN THE NINTH CIRCUIT. THAT'S USUALLY AN ABUSIVE DISCRETION STANDARD. SO, THAT IS, I THINK, ON THE TABLE. I'M -- I CAN'T SIT HERE -- OR STAND HERE AND TELL YOU THAT THAT WOULDN'T NECESSARILY -- ABSOLUTELY WOULD NOT HAPPEN IN THE FIRST CIRCUIT.

**THE COURT:** WHAT IS THE TIMING ON THAT?

**MR. HELLAND:** I WISH I HAD THAT ANSWER, YOUR HONOR. I'M SORRY, I DON'T.

**MR. FITZPATRICK:** YOUR HONOR, I MIGHT BE ABLE TO ASSIST A LITTLE BIT ON THAT.

I BELIEVE THE OPENING BRIEF FOR THE GOVERNMENT IS DUE EITHER AT THE VERY END OF JUNE OR EARLY JULY.

**MR. HELLAND:** MAY I MAKE ONE OTHER POINT ON THIS BROADER ISSUE, YOUR HONOR?

THESE QUESTIONS THAT ARE COMING TO YOUR HONOR, OF COURSE, COME WITH BURDENS AND STANDARDS. SO, IF YOUR HONOR IS REVIEWING THIS RECORD AND FEELS THAT THERE'S LINGERING QUESTIONS, I THINK THE WAY TO RESOLVE THOSE QUESTIONS IS TO

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

DETERMINE WHO HAS THE BURDEN ON THAT ISSUE, AND HAVE THEY SATISFIED IT, RIGHT?

THE PARTIES HAVE AGREED TO LIVE AND DIE BY THE RECORD IN AAUP, BUT ULTIMATELY THERE ARE BURDENS FOR THE CLAIMS AND ISSUES IN THIS CASE.

**THE COURT:** SO. I -- THIS IDEA THAT YOU LIVE AND DIE BY THE RECORD IN THAT CASE, AGAIN, FROM THE COURT'S PERSPECTIVE, AND I STILL HAVEN'T HEARD ANYTHING YET EXACTLY ABOUT WHY THE COURT IS WRONG ON THIS.

THE RECORD IN THAT CASE IS NOT JUST THE UNDERLYING EXHIBITS; IT'S NOT JUST THE RAW TRANSCRIPT; IT'S THE FINDINGS OF FACT THAT WERE MADE BY THE COURT ABOUT WHAT THOSE THINGS MEAN.

SOMETIMES A TRANSCRIPT ADEQUATELY PROVIDES THE COURT, I MEAN, HAVING AT ONE POINT, YOU KNOW, SAT ON A COURT OF APPEAL, I KNOW WHAT IT'S LIKE TO READ A RECORD AND TRY TO UNDERSTAND WHETHER, WITHOUT ANY VIDEO, WITHOUT, YOU KNOW, BEING ABLE TO SEE THE WITNESSES, WHETHER YOU'RE REALLY GETTING A CLEAR READ OF SOMETHING. SOMETIMES IT DOES, IT MEANS, SO IT SEEMS, BUT OTHER TIMES, WITHOUT BEING ABLE TO SEE AND HEAR A WITNESS, THE RECORD IS FLAT, AND IT'S UNCLEAR. AND THE ONLY PERSON WHO DID THAT, WHO WAS A FINDER OF FACT, HERE WAS JUDGE YOUNG.

JUDGE YOUNG'S OPINION IS REPLETE WITH FACTUAL FINDINGS. I'LL GIVE YOU ONE, FOR EXAMPLE, JUST FOR THE PURPOSES OF OUR RECORD HERE.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


DO YOU HAVE A COPY OF HIS OPINION?

**MR. HELLAND:** I DO NOT.

**MR. FITZPATRICK:** YOUR HONOR, I WOULD BE HAPPY TO SHARE WITH MY FRIEND ON THE OTHER SIDE.

**THE COURT:** THAT'S FINE. I'M LOOKING AT, WELL, ON MY COPY, BECAUSE IT'S NOT A WESTLAW COPY, IT'S A -- IT'S JUST THE UNDERLYING DOCUMENT, IT'S PAGE 101. IT'S ROUGHLY TWO-THIRDS, PERHAPS, OF THE WAY THROUGH UNDER SECTION F, INFERENCES FROM THE FACTUAL RECORD.

**MR. FITZPATRICK:** IS YOUR HONOR REFERRING TO THE HEADER THAT BEGINS WITH, "THE PUBLIC OFFICIALS PUBLICIZE"?

**THE COURT:** LET ME JUST SAY, THERE'S A SUBCATEGORY OR A SUBHEADING E, WHICH IS ON MY PAGE 94 THAT'S CALLED "THE PUBLIC OFFICIALS WITNESSES ALL DENY THE EXISTENCE OF AN IDEOLOGICAL DEPORTATION POLICY."

SHORTLY AFTER THAT, THE NEXT PARAGRAPH IS SUBSECTION F, INFERENCES FROM THE FACTUAL RECORD.

LET ME GO OFF THE RECORD FOR A MINUTE SO YOU CAN TAKE A LOOK.

(PAUSE IN PROCEEDINGS.)

**MR. FITZPATRICK:** ALL RIGHT, YOUR HONOR, WE ARE AT INFERENCES FROM THE FACTUAL RECORD, AND WHICH PARAGRAPH ARE YOU REFERRING TO?

**THE COURT:** SO IF YOU GO, IT'S PROBABLY A PAGE OR TWO; YOU'LL SEE ANOTHER HEADING THAT SAYS, "RULINGS OF LAW,"

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


ALTHOUGH JUDGE YOUNG WEAVES IN FACTUAL FINDINGS, AND THEN IN -- INTO THOSE RULINGS ABOUT TWO PARAGRAPHS DOWN THERE'S A PARAGRAPH THAT BEGINS WITH, "THIS COURT RULES THAT."

**MR. FITZPATRICK:** WE'RE THERE.

**THE COURT:** OKAY.

IT SAYS, "THIS COURT RULES THAT THE PLAINTIFFS HAVE SHOWN BY CLEAR AND CONVINCING EVIDENCE SECRETARIES NOEM AND RUBIO HAVE INTENTIONALLY AND IN CONCERT IMPLEMENTED EXECUTIVE ORDERS IN *14161 AND *14188 A VIEWPOINT DISCRIMINATE -- IN A VIEWPOINT DISCRIMINATORY WAY TO CHILL PROTECTED SPEECH. THIS CONDUCT VIOLATED THE FIRST AMENDMENT. THE COERCION LINE OF CASE LAW BOLSTERS THIS CONCLUSION, AND THE PUBLIC OFFICIALS' THREATS TO CONTINUE DETAINING, DEPORTING, AND REVOKING VISAS BASED ON POLITICAL SPEECH SERVES AS CIRCUMSTANTIAL EVIDENCE THAT SUCH ENFORCEMENT EXISTS, IS VIEWPOINT DISCRIMINATORY, AND HAS OBJECTIVELY CHILLED THE PLAINTIFF'S SPEECH," AND IT GOES ON FROM THERE.

SIMILARLY, RIGHT UNDER SECTION F, INFERENCES FROM THE FACTUAL RECORD, PARAGRAPH, THE SECOND ONE DOWN, THAT BEGINS, "THERE WAS NO IDEA OF AN IDEOLOGICAL DEPORTATION POLICY."

THE COURT FOUND IT WAS NEVER THE SECRETARIES IMMEDIATE INTENTION TO DEPORT ALL PRO-PALESTINIAN NON-CITIZENS FOR THAT OBVIOUS FIRST AMENDMENT VIOLATION THAT COULD HAVE RAISED A MAJOR OUTCRY; RATHER, THE INTENT OF THE SECRETARIES WAS MORE INSIDIOUS TO TARGET A FEW FOR SPEAKING OUT AND THEN USE THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


FULL RIGOR OF THE IMMIGRATION AND NATIONALITY ACT IN WAYS THAT IT HAD NEVER BEEN USED BEFORE, TO HAVE THEM PUBLICLY DEPORTED WITH THE GOAL OF TAMPING DOWN PRO-PALESTINIAN STUDENT PROTESTS AND TERRORIZING SIMILARLY SITUATED NON-CITIZENS AND OTHER PRO-PALESTINIANS INTO SILENCE BECAUSE THEIR VIEWS WERE UNWELCOME.

SO LET ME ASK AGAIN, HOW IS THIS COURT TO GO TO THE UNDERLYING DOCUMENTS AND TRANSCRIPTS THAT ARE HERE THAT ADDRESS THESE VERY POINTS WITHOUT SEEING THE WITNESSES AND USE THAT INSTEAD OF THESE FINDINGS TO INFORM THE COURT'S DECISION AS TO THE ISSUES THAT AFFECT THESE PARTICULAR PLAINTIFFS?

**MR. FITZPATRICK:** SURE, YOUR HONOR, SO A COUPLE OF THOUGHTS THERE.

THE FIRST IS THAT, WITH RESPECT TO SUBHEADING F, THAT YOUR HONOR JUST READ, THE EXISTENCE, OR LACK THEREOF, AN -- OF AN IDEOLOGICAL DEPORTATION POLICY SIMPLY ISN'T AT ISSUE IN THIS CASE.

WHAT WE DO NOT NEED TO PROVE, NOR DOES THE GOVERNMENT NEED TO DISPROVE, IS AN IDEOLOGICAL DEPORTATION POLICY. WE SIMPLY NEED TO ESTABLISH THAT WE HAVE --

**THE COURT:** I'M FOCUSED ON THE VIEWPOINT DISCRIMINATION ISSUE.

**MR. FITZPATRICK:** SURE. SO, I THINK -- I THINK ON VIEWPOINT DISCRIMINATION, THE COURT CAN RESOLVE THAT WITHOUT SEEING ANY WITNESSES FOR A COUPLE OF REASONS: ONE, THE PUBLIC

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

STATEMENTS BY THE PUBLIC OFFICIALS FROM PRESIDENT TRUMP, SECRETARY RUBIO, MR. MILLER, AND THE OTHERS, THOSE ARE ALL IN THE JOINT STATEMENT OF UNDISPUTED FACTS, WHERE THEY TALK ABOUT THAT WE'RE GOING TO GO OUT AND DEPORT PEOPLE WHO ARE EXPRESSING ANTI-AMERICAN AND ANTI-ISRAEL VIEWS. THOSE ARE ALL IN THE JOINT STATEMENT OF UNDISPUTED FACTS. THERE'S NO -- THERE AREN'T ANY WITNESSES THAT THE GOVERNMENT WOULD PROVIDE SAYING, NO, THEY NEVER SAID THOSE THINGS.

SO THE VIEWPOINT DISCRIMINATION IS ALSO BAKED, IN OUR VIEW, INTO THE IMMIGRATION DOCUMENTS THEMSELVES. WE REFERENCE THE SUBJECT PROFILES OF SOME OF THE INDIVIDUALS AND THE INTERNAL STATE DEPARTMENT DOCUMENTS, WHERE IT'S CLEAR THAT THEY ARE TALKING ABOUT, FOR EXAMPLE, RUMEYSA OZTURK'S OP-ED, AND IT'S -- I THINK WHAT'S EQUALLY IMPORTANT IS WHAT IS NOT IN THOSE DOCUMENTS. THERE IS NO ALLEGATION IN THOSE DOCUMENTS THAT THESE INDIVIDUALS WERE ACTUALLY ENGAGING IN INCITEMENT OR IN THE LEGAL DEFINITION OF HARASSMENT. IT'S PURE SPEECH. THEY'RE TALKING ABOUT, FOR EXAMPLE, MR. MAHDAWI'S 60 MINUTES INTERVIEW, RUMEYSA OZTURK'S OP-ED IN THE TUFTS UNIVERSITY STUDENT NEWSPAPER --

**THE COURT:** ALTHOUGH THESE ARE ALSO THINGS THAT JUDGE YOUNG RULED ON.

**MR. FITZPATRICK:** THEY ARE, YOUR HONOR, BUT, BUT FOR IMMEDIATE PURPOSES, THEY'RE ALL IN THE JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS, OBVIATING THE NEED FOR THIS COURT TO

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


MAKE ANY CREDIBILITY DETERMINATIONS BECAUSE WE ALL AGREE WHAT THE DOCUMENTS ARE AND WHAT THE PUBLIC OFFICIALS SAID.

**THE COURT:** I'M FINDING THAT HARD TO FOLLOW, BECAUSE IN PART THE PLAINTIFFS' ARGUMENT IS SOME OF WHAT THE GOVERNMENT HAS SAID, MEANING THAT THEY DO NOT EVER MAKE DETERMINATIONS ABOUT DEPORTATION, FOR EXAMPLE, OR REVOCATION OF VISAS BASED EXCLUSIVELY ON VIEWPOINT DISCRIMINATION, RIGHT, FOR CONTENT.

SO AS I UNDERSTAND IT, THE PLAINTIFFS' POINT, AT LEAST IN PART, IS WELL, THE GOVERNMENT MAY SAY THAT, IN FACT, THAT IS NOT TRUE, WHICH IS EXACTLY WHAT JUDGE YOUNG FOCUSED ON.

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR.

AND THE INTENT OF THE PARTIES IN AGREEING TO A TRIAL ON THE PAPERS, CERTAINLY ONE THAT PLAINTIFFS ARE READY TO PROCEED TO, IS THE GOVERNMENT MAY ARGUE THAT THEY ARE NOT TARGET -- THAT THEY ARE NOT TARGETING FOLKS ON THE BASIS OF VIEWPOINT. WHERE IS THEIR EVIDENCE IN THE RECORD? WHERE ARE THEIR EXHIBITS? WHERE IS THEIR TESTIMONY OF SOMEONE SAYING THAT, THAT THERE IS SOMETHING BEYOND PROTECTED SPEECH THAT THEY ARE PREDICATING THESE DEPORTATION PROVISIONS ON?

AT THE POINT THE GOVERNMENT DOESN'T HAVE THAT TESTIMONY, THAT MEANS THEY LOSE. THAT DOESN'T MEAN THAT WE CAN'T -- THAT WE CAN'T DO A TRIAL ON THE PAPERS. IT JUST MEANS THEY LOSE. THEY DON'T HAVE ANY FACTUAL SUPPORT.

**THE COURT:** CAN I GET A RESPONSE?

**MR. HELLAND:** FRANKLY, YOUR HONOR, I DON'T THINK YOU

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



NEED TO GET INTO THAT ISSUE BECAUSE OF THE NATURE OF THE CLAIM THAT PLAINTIFFS HAVE RAISED HERE. AS THEY SAID AT THE OUTSET, AND AS WE AGREE WITH, AND THAT'S WHY WE ALLOWED THIS CASE TO PROCEED THIS WAY, THEY'RE BRINGING A FUNDAMENTAL LEGAL CHALLENGE TO THE TEXT OF THESE STATUTES AND WHETHER THOSE STATUTES COMPLY WITH THE FIRST AMENDMENT.

THIS IS NOT AN AS-APPLIED CHALLENGE. YOUR HONOR DOESN'T NEED TO DECIDE WHETHER ANY PARTICULAR ENFORCEMENT ACTION VIOLATES THE CONSTITUTION, INCLUDING FOR WHATEVER REASONS THAT ENFORCEMENT ACTION WAS BROUGHT. THIS IS A FACIAL CHALLENGE. IT HAS TO DO WITH THE SCOPE OF THE TEXT OF THE STATUTES AND WHETHER THAT'S PERMISSIBLE UNDER THE CONSTITUTION.

SO, I DO -- I DON'T THINK YOU NEED TO GET INTO THIS DISPUTE -- TO THIS -- TO THE EXTENT THAT IT IS A DISPUTE -- THIS ISSUE, IT'S NOT WHAT PLAINTIFFS' CLAIM IS BASED ON.

**MR. FITZPATRICK:** PLAINTIFFS WOULD AGREE WITH THAT, YOUR HONOR. FROM OUR PERSPECTIVE, AND IF THE GOVERNMENT'S COUNSEL WANTS TO CONTRADICT ME ON THIS, I CERTAINLY WON'T, BEGRUDGE THEM. OUR UNDERSTANDING IS THAT THE SOLE POTENTIAL FACTUAL DISPUTES, LET'S SAY, BEFORE WE SUBMITTED OUR JOINT STATEMENT OF UNDISPUTED FACTS, REALLY RELATED TO THE ISSUE OF STANDING.

MY UNDERSTANDING IS THAT THE FACTS THAT THIS COURT FOUND SUFFICIENT -- FOUND SUFFICIENTLY ALLEGED FOR PURPOSES OF STANDING, THOSE ARE NOW ALL IN THE JOINT STATEMENT OF

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



UNDISPUTED -- OF UNDISPUTED FACTS. I UNDERSTAND THE GOVERNMENT STILL DOESN'T BELIEVE THOSE ARE SUFFICIENT TO CREATE STANDING, BUT THE ALLEGED FACTS ARE NOW THE JOINTS -- ARE NOW IN THE JOINT STATEMENT OF UNDISPUTED FACTS.

SO, IN OUR VIEW, THERE ARE NO REMAINING QUESTIONS OF FACT FOR THIS COURT TO RESOLVE; IT'S ONLY QUESTIONS OF LAW.

**THE COURT:** WELL, IN WHICH CASE IT'S NOT REALLY A QUOTE-UNQUOTE BENCH TRIAL, I SUPPOSE. IT'S AN ARGUMENT ON YOUR PAPERS.

**MR. FITZPATRICK:** SURE, SO IT'S A BENCH TRIAL ON THE PAPERS, AND ADMITTEDLY IT'S A PROCEDURAL MECHANISM THAT IS RARE, BUT THEY DO POP UP SOMETIMES IN THE ADMINISTRATIVE RECORD CONTEXT WHEN THE MAIN ISSUES HERE REALLY ARE LEGAL, JUST AS THEY WOULD HAVE BEEN AT SUMMARY JUDGMENT IF WE'D GONE THROUGH DISCOVERY AND WE'D BOTH PUT OUR WITNESSES UP AND ESSENTIALLY COME TO THE SAME ENDPOINT OF THE JOURNEY AS THE JOINT STATEMENT OF UNDISPUTED FACTS DOES.

(PAUSE IN PROCEEDINGS.)

**THE COURT:** I'M GOING TO GO BACK TO A POINT THAT I THINK YOU WERE BOTH MAKING REGARDING THE FACIAL VERSUS THE AS-APPLIED CHALLENGE.

THERE ARE -- IN THE OPERATIVE COMPLAINT THERE ARE EIGHT CLAIMS THAT HAVE BEEN MADE BY PLAINTIFFS. SOME OF WHICH THE PLAINTIFFS ACKNOWLEDGE IS NOT REALLY FOR THIS COURT TO DETERMINE AT THIS JUNCTURE, BUT THEY'RE REALLY AS A PLACEHOLDER

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


FOR REVIEW BY, ULTIMATELY, POTENTIALLY BY THE SUPREME COURT, CORRECT?

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR.

THERE ARE, THERE, ARE -- THERE ARE A COUPLE OF NARROW ISSUES WHERE THIS COURT CAN ENTER DECLARATORY RELIEF, BUT NOT INJUNCTIVE RELIEF.

**THE COURT:** LET ME BACK UP FOR JUST ONE MINUTE.

YOU SAID, ADMITTEDLY, THIS SORT OF PROCEDURAL POSTURE IS UNUSUAL, NOT UNHEARD OF IN SOME SITUATIONS, BUT CAN YOU POINT ME TO ANY CASE, ANY CASE THAT THE COURT COULD LOOK TO FOR DIRECTION SPECIFICALLY ABOUT WHAT YOU'RE ASKING THE COURT TO DO IN THIS WAY, IN TERMS OF THE FACTUAL RECORD?

**MR. FITZPATRICK:** SURE, SO A COUPLE OF THOUGHTS, YOUR HONOR, AND FORGIVE ME, THE FIRST CASE, I BELIEVE THE DEFENDANT WAS THE DEPARTMENT OF ENERGY. WE CITED IT IN OUR ORIGINAL STIPULATION, SUGGESTING A TRIAL ON THE PAPERS. I BELIEVE IT WAS A CALIFORNIA FEDERAL DISTRICT COURT THAT WAS FOLLOWING THE MECHANISM THAT WE PROPOSED HERE. I CAN -- I CAN GET THAT CITE IN A FEW MINUTES, BUT THE OTHER CASE THAT I THINK WOULD BE HELPFUL HERE, JUST IN TERMS OF HOW SORT OF PURE LEGAL CHALLENGES LIKE THIS OFTEN GET LITIGATED. 303 CREATIVE COMES TO MIND, WHERE THE PARTIES THERE PROCEEDED UNDER A JOINT STATEMENT OF UNDISPUTED FACTS AND AGREED TO LIVE AND DIE BASED ON THE BASED -- ON THE FACTS THAT THE SIDES HAD AGREED TO.

**THE COURT:** AND THE COURT MAKING DECISIONS ON

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



UNDISPUTED FACTS IS NOT AN UNUSUAL EVENT. IT HAPPENS ALL THE TIME IN MOTIONS FOR SUMMARY JUDGMENT.

IT'S JUST RARE THAT A SUBSTANTIAL PORTION OF THAT IS A TRANSCRIPT, PARTICULARLY A TRANSCRIPT FROM AN UNDERLYING TRIAL. PERIODICALLY, SOMETIMES PORTIONS OF DEPOSITIONS ARE USED TO CONTROVERT SOMETHING THAT SOMEONE HAS SAID, OR TO SHOW THAT THEY ARE DISINGENUOUS IN SOME WAY, OR TO SHOW THAT A DOCUMENT ISN'T WHAT IT PURPORTS TO BE, BUT FOR THE COURT TO ACTUALLY LOOK TO THE UNDERLYING TESTIMONY WITHOUT HAVING THE WITNESS, IN MY EXPERIENCE, IS UNUSUAL.

**MR. FITZPATRICK:** SURE. SO, PERHAPS ONE MORE, ONE MORE THOUGHT THERE, YOUR HONOR.

WHEN THE PARTIES HAD ORIGINALLY SORT OF SET THIS UP BACK IN OCTOBER AND NOVEMBER, IT WOULD HAVE BEEN TO PROCEED ON A SUMMARY JUDGMENT POSTURE. NOW, AS THE COURT, OF COURSE, KNOWS, ON A SUMMARY JUDGMENT POSTURE, IT WOULD BE UP TO THE COURT TO DETERMINE WHETHER THE NON-MOVING PARTY HAD SUPPLIED SUFFICIENT EVIDENCE, SUCH THAT A FACT FINDER COULD FIND IN FAVOR OF THE NON-MOVING PARTY IN ORDER TO NOT AWARD SUMMARY JUDGMENT.

**THE COURT:** I MEAN, I WILL ACCEPT -- I'M FOLLOWING YOU. I MEAN, IT WAS CLEVER OF YOU IN SOME WAYS, ON BOTH SIDES, AND I DON'T MEAN THAT IN A PEJORATIVE WAY. I MEAN -- I MEAN THAT, I SUPPOSE, IS COMPLIMENTARY, BUT TO AGREE ON ALL OF THESE FACTS TAKES IT OUT OF THE COURT'S HANDS TO SAY THAT THERE'S A DISPUTED ISSUE OF FACT, BECAUSE YOU'RE BOTH POINTING TO EXACTLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



THE SAME THINGS, GENERALLY. I MEAN, YOU'RE AGREEING TO WHAT THE UNIVERSE OF FACTS ARE, AND YOU'RE SAYING YOU'RE BOTH AGREEING THIS IS EXACTLY WHAT IT IS. WE DON'T HAVE ANY DISPUTE OVER THAT.

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR, THOUGH I WOULD SAY, AND WE REFERENCED THIS IN THE STIPULATION, THAT WE BOTH AGREED THAT, TO THE EXTENT THE GOVERNMENT, PARDON ME, THE COURT BELIEVES THERE ARE ANY FACTUAL DISPUTES, WE AGREE THAT THE COURT IS EMPOWERED TO RESOLVE THEM. SO THAT'S WHAT MAKES THIS A LITTLE BIT DIFFERENT FROM A SUMMARY JUDGMENT. ORDINARILY, IF THE COURT FOUND THAT THERE WAS A DISPUTE OF FACT THAT'S MATERIAL YOU WOULD HAVE TO EITHER TAKE IT TO A JUDGE OR TO A BENCH TRIAL.

HERE, THE PARTIES' AGREEMENT IS HERE'S NOT ONLY OUR OWN RECORD, BUT HERE'S THE RECORD OF THE AAUP VERSUS RUBIO CASE, WHICH ELICITED, FRANKLY, VERY SIMILAR TESTIMONY TO WHAT WE WOULD HAVE ELICITED IN DISCOVERY, AS THE PART -- AS THE COURT CAN SEE FROM THE DEARTH OF DISPUTED FACTS SUBMITTED, THE PARTIES REALLY DON'T DISAGREE ON THE MATERIAL OF WHAT HAPPENED HERE. WE DISAGREE ON WHAT THE LEGAL RAMIFICATIONS OF IT ARE, BUT WE REALLY DON'T DISAGREE ON WHAT HAPPENED HERE.

SO WE AGREED THAT -- WE BELIEVE THIS IS TEED UP FOR YOUR HONOR TO RESOLVE ON ISSUES OF LAW, AND IF THE COURT BELIEVES THERE ARE ANY UNDERLYING ISSUES OF FACT, WE EMPOWER THE COURT TO RESOLVE THOSE.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



YOUR HONOR, I DID HAVE THE CITE FROM THE CASE THAT YOU ASKED FOR PREVIOUSLY. IT'S SAN FRANCISCO BAYKEEPER VERSUS U.S. FISH AND WILDLIFE. THE CITE IS 2025 WL 2528687. IT IS A NORTHERN DISTRICT OF CALIFORNIA DECISION FROM SEPTEMBER 3 OF 2025.

**THE COURT:** COULD YOU GIVE ME THE VERY SHORT ONE- TO TWO-MINUTE OVERVIEW OF THE DIFFERENCE BETWEEN THE FACIAL VERSUS APPLIED CHALLENGE THAT'S BEING MADE HERE?

**MR. FITZPATRICK:** ABSOLUTELY, YOUR HONOR.

AND FOR THE LONGER VERSION, I DO HAVE A DEMONSTRATIVE MINUTE --

**THE COURT:** SURE. FINE.

**MR. FITZPATRICK:** -- BUT FOR THE TWO-MINUTE ELEVATOR VERSION.

THE GOVERNMENT HAS REPRESENTED THAT THERE ARE ESSENTIALLY TWO TYPES OF CHALLENGES IN THE WORLD; A FACIAL CHALLENGE, WHERE YOU LOOK AT THE TEXTUAL -- WHERE YOU LOOK AT THE PLAIN TEXT OF THE STATUTE, AND YOU TAKE ON THE -- TAKE ON EVERYTHING THAT THAT TEXT CONCEIVABLY COVERS, OR AN AS-APPLIED CHALLENGE, WHERE YOU SAY, HERE IS WHAT WE HAVE THAT PLAINTIFFS HAVE ENGAGED IN AND WE ASSERT THAT YOU ATTEMPTING TO USE THE STATUTE TO STOP US FROM DOING THESE PARTICULAR THINGS VIOLATES THE FIRST AMENDMENT. THE WORLD OF CONSTITUTIONAL CHALLENGES IS NOT SO CIRCUMSCRIBED.

THE SUPREME COURT HAS EXPRESSLY RECOGNIZED IN JOHN DOE

NUMBER 1 VERSUS REED THAT A PARTY CAN ATTACK A DISTINCT SUBSET OF APPLICATIONS OF A PARTICULAR STATUTE AND CHALLENGE THAT AS THOUGH IT'S A FACIAL ATTACK, SO WE AGREE THAT, INSOFAR AS HERE, WE ARE ATTACKING THESE TWO STATUTES IN TERMS OF THEIR ENFORCEMENT AGAINST PROTECTED SPEECH; THAT UNIVERSE OF APPLICATIONS WE HAVE TO SATISFY THE STANDARD FOR A FACIAL ATTACK ON, BUT THAT IS A -- THAT IS A NARROWER SLICE THAN THE ENTIRE TEXTUAL SCOPE OF THE STATUTE, AND JOHN DOE NUMBER ONE IS A PERFECT EXAMPLE OF THIS, THAT DEALT WITH WASHINGTON'S PUBLIC RECORDS STATUTE, WHERE THE PLAINTIFFS WISH TO CHALLENGE THAT STATUTE JUST WITH RESPECT TO THE STATUTE'S ENFORCEMENT AGAINST REFERENDUM PETITIONS. THERE WASN'T A SPECIAL PROVISION IN THERE ABOUT REFERENDUM PETITIONS; IT WAS THAT THEY CHALLENGED THE PUBLIC RECORDS ACT JUST TO THE EXTENT IT ALLOWED ENFORCEMENT AGAINST REFERENDUM PETITIONS AND ALLOWED THE DISCLOSURE OF THE SIGNERS OF THOSE PETITIONS.

AND THE SUPREME COURT SAID THAT THESE TYPES OF HALF-FISH/HALF-FOWL CHALLENGES ARE FINE, THAT YOU ARE ALLOWED TO ATTACK A SUBSET OF A STATUTE'S APPLICATIONS, BUT WHEN YOU DO, YOU HAVE TO SATISFY THE STANDARD FOR A FACIAL ATTACK AS WITH RESPECT TO THAT SUBSET LIKE IT WERE ITS OWN STANDALONE PROVISION.

I THINK I GOT IN UNDER TWO MINUTES. IF NOT, I THINK IT WAS CLOSE.

**THE COURT:** WELL, PLAINTIFFS ARE CHALLENGING THESE

PROVISIONS SPECIFICALLY AS APPLIED TO THEM, ON THE ONE HAND, CORRECT?

**MR. FITZPATRICK:** I SUPPOSE SO, BUT OUR OVERALL CHALLENGE HERE IS THAT WE ARE CHALLENGING THE ENFORCEMENT OF THESE STATUTES AGAINST THEM BECAUSE CASA RESTRICTS THE BREADTH OF A REMEDY WE ARE ABOUT -- WE ARE ALLOWED TO SEEK. WE ARE CHALLENGING THE STATUTES' ENFORCEMENT AGAINST THEM ON THE BASIS OF PROTECTED SPEECH; WE ARE NOT ASSERTING --

SO PERHAPS THIS WILL BE HELPFUL TO THE COURT. IN A PURE AS-APPLIED CHALLENGE, WE WOULD HAVE ATTACHED ARTICLES FROM STANFORD DAILY, WE WOULD HAVE ATTACHED A SPEECH ENGAGED IN BY JANE DOE AND JOHN DOE, AND WE WOULD HAVE ASKED THE COURT FOR A RULING THAT THE FIRST AMENDMENT PROHIBITS THEM FROM BEING DEPORTED ON THE BASIS OF THAT EXPRESSION. OUR ARGUMENT IS A LITTLE BIT BROADER, AND IT'S WHY IT'S A HYBRID CHALLENGE AND DOES NOT APPEAR AS AN APPLIED CHALLENGE, BECAUSE WE ARE ASSERTING THAT OUR PLAINTIFFS, WHO HAVE ENGAGED IN PROTECTED SPEECH, CANNOT CONSTITUTIONALLY HAVE THEIR VISAS BE REVOKED OR BE RENDERED DEPORTABLE BASED ON WHATEVER PROTECTED SPEECH THEY HAPPEN TO ENGAGE IN.

**THE COURT:** I WANT TO BE SURE I UNDERSTAND. THAT, AT LEAST WITH REGARDS TO SOME OF THE CLAIMS THAT ARE BEING MADE FOR THESE PARTICULAR PLAINTIFFS, THAT THE ARGUMENT IS AS TO THEM, THEIR SPEECH HAS BEEN CHILLED, THEIR FIRST AMENDMENT RIGHTS HAVE BEEN RESTRAINED, AND THEY SHOULD BE PROVIDED SOME

PROTECTION FOR THAT. AND THEN THERE'S ALSO THE LARGER ARGUMENT THAT THE DEPORTATION AND REVOCATION PROVISIONS ARE FACIALLY UNCONSTITUTIONAL AS APPLIED TO PROTECTED SPEECH.

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR. JUST AS IN JOHN DOE, THE ARGUMENT FROM THE PLAINTIFFS WAS THAT THE PUBLIC RECORDS ACT WAS UNCONSTITUTIONAL AS APPLIED TO REFERENDUM PETITIONS.

**THE COURT:** BUT THE COURT COULD GET TO THE FIRST ISSUE WITHOUT GETTING TO THE SECOND, CORRECT?

THE COURT COULD FIND THAT THERE'S BEEN SUFFICIENT INFORMATION AND EVIDENCE THAT'S BEEN PRESENTED IN THE RECORD THAT THE COURT HAS AND WHAT'S BEEN STIPULATED BETWEEN THE PARTIES; THE COURT COULD MAKE A FINDING HERE THAT THESE PARTICULAR PLAINTIFFS, THESE TWO DOE PLAINTIFFS, AND STANFORD DAILY ARE ENTITLED TO SOME PROTECTION AND WHAT THAT WOULD LOOK LIKE.

I MEAN, IT'S ESSENTIALLY FOR THE MEMBERS OF STANFORD DAILY AND THESE TWO DOE PLAINTIFFS' PROTECTION, MEANING FROM HAVING THEIR VISAS REVOKED OR HAVING -- OR BEING DEPORTED BASED ON THIS. THE COURT COULD GET TO THAT ISSUE, BUT NOT GET TO THE OTHER ISSUE THAT YOU'RE RAISING. AND WHEN I SAY NOT GET TO IT, I DON'T MEAN THAT THE COURT'S NOT CONSIDERING IT, BUT THE COURT COULD FIND FOR THE PLAINTIFFS ON THE FIRST PART BUT NOT ON THE SECOND PART; IS THAT RIGHT?

**MR. FITZPATRICK:** I THINK I WOULD -- I WOULD QUIBBLE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


WITH A COUPLE OF THINGS THERE, YOUR HONOR.

THE FIRST IS THAT THE CHILL TO THE WRITERS AND EDITORS AT STANFORD DAILY AND TO JOHN DOE AND JANE DOE, THOSE ARE FACTS THAT DON'T GO TO SORT OF A PURE AS-APPLIED CHALLENGE; THEY WERE -- THEY WERE NECESSARY FOR PRE-ENFORCEMENT STANDING, SO THOSE FACTS WEREN'T THERE TO SET UP A TRADITIONAL AS-APPLIED CHALLENGE, THEY WERE THERE BECAUSE WE -- THAT'S HOW WE ESTABLISH UNDER THE NINTH CIRCUIT IN THE SUPREME COURT'S REINFORCEMENT STANDING JURISPRUDENCE, THAT'S HOW WE ESTABLISH THAT THEY ARE THE PROPER PEOPLE TO CHALLENGE THE STATUTES.

WITH RESPECT TO, SORT OF, THE NARROWER SCOPE OF RELIEF, I SUPPOSE. IN A BROADER SENSE, THE COURT IS EMPOWERED TO ENTER WHATEVER RELIEF IT DEEMS APPROPRIATE. THE WORRY I WOULD HAVE, YOUR HONOR, WITH CONFINING THIS JUST TO A PURE AS-APPLIED, HERE'S THE SPEECH YOU ENGAGED IN --

**THE COURT:** LET ME JUST STOP YOU FOR JUST ONE SECOND, BECAUSE I KNOW THE PATH THAT YOU'RE GOING ON HERE, AND I'M NOT SAYING I AM GOING TO DO THAT. I'M TRYING TO UNDERSTAND THE DISTINCTION BETWEEN THE CLAIMS THAT YOU'VE MADE, WHERE THE COURT'S FOCUS ON RELIEF POTENTIALLY IS GOING TO BE AS IT RELATES TO THESE PLAINTIFFS, AS COMPARED TO THE BROADER ISSUE, WHICH THE COURT MAY OR MAY NOT FIND, DEPENDING ON THE EVIDENCE THAT IS HERE, WHERE THE COURT MIGHT CONCLUDE THAT THERE IS BROADER RELIEF AS IT RELATES TO -- I WILL HAVE QUESTIONS LATER ABOUT TO WHOM, OKAY -- BUT BROADER RELIEF THAT THE COURT COULD

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



IMPOSE. YOU'RE ASKING FOR BOTH OF THOSE THINGS, AND THOSE THINGS ARE SEPARATE BUT RELATED, CORRECT?

**MR. FITZPATRICK:** NOT NECESSARILY, YOUR HONOR.

SO WE ACKNOWLEDGE, FOR EXAMPLE, THAT UNDER CASA, WE CAN NO LONGER GET A NATIONWIDE INJUNCTION. THIS COURT, AT LEAST AS WE UNDERSTAND CASA, CAN NO LONGER ISSUE AN ORDER, FOR EXAMPLE, ENJOINING THE FEDERAL GOVERNMENT NATIONWIDE FROM INVOKING -- FROM REVOKING VISAS BASED ON PROTECTED SPEECH. CASA TAKES THAT AWAY.

**THE COURT:** BUT YOU ALSO HAVEN'T FILED A CLASS ACTION.

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR.

SO, SO, AND PERHAPS THE -- PERHAPS THIS WILL BE HELPFUL. WE ACKNOWLEDGE THAT THE RELIEF THIS COURT CAN AFFORD IS LIMITED TO OUR PLAINTIFFS; HOWEVER, WITH RESPECT TO THE SCOPE OF THE PROTECTED ACTIVITY THAT WE WOULD WANT TO BE PART OF THE COURT'S ORDER, WE DON'T WANT THAT TO BE LIMITED TO THE EXPRESSION THEY'VE ENGAGED IN.

AND I'LL GIVE YOU, YOUR HONOR, AN EXAMPLE WHY. STANFORD DAILY OBVIOUSLY DOES NOT JUST PUBLISH EDITORIALS ABOUT THE WAR IN GAZA. THEY PUBLISH EDITORIALS ABOUT THE ISSUES OF THE DAY, WHETHER IT'S CHINA OR UKRAINE OR DOMESTIC POLICIES.

WE WOULD BE VERY RETICENT TO HAVE AN ORDER THAT ONLY -- THAT ONLY TALKS ABOUT PRO-PALESTINIAN SPEECH AND PRIOR SPEECH BECAUSE, AND WE HAVE -- WE'VE SUBMITTED EVIDENCE IN THE RECORD

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

ON THIS, THE DECLARATIONS, FOR EXAMPLE, FROM GARRY KASPAROV AND URIEL EPSHTEIN, THAT OVERALL PONTIFICATING ON ISSUES OF FOREIGN POLICY ACROSS THE -- ON ISSUES ACROSS THE GLOBE HAS BEEN CHILLED, SO WE WOULD, WE WOULD ASK FOR A RULING, AND THAT'S WHY I'M MAKING THE DISTINCTION BETWEEN JUST PRO-PALESTINIAN SPEECH AND ALL OF THEIR SPEECH.

**THE COURT:** STANFORD DAILY CANNOT GET A VISA REVOKED. STANFORD DAILY, AS AN ENTITY, CANNOT BE DEPORTED. THE ONLY PEOPLE WHO COULD HAVE THEIR VISAS REVOKED BASED ON THIS -- FOR ENGAGING IN SPEECH THAT IS CONTENT SPECIFIC, AS ALLEGED BY PLAINTIFFS -- THE ONLY PEOPLE WHO ARE GOING TO BE AFFECTED BY THAT ARE PEOPLE WHO CAN HAVE THEIR VISAS OR THEIR STATUS OTHERWISE REVOKED OR CHANGED, OR -- AND THOSE ARE THE ONLY INDIVIDUALS WHO CAN BE DEPORTED, CORRECT? MEANING MEMBERS OF, BUT NOT -- BUT NOT THE ENTITY ITSELF.

**MR. FITZPATRICK:** THAT'S CORRECT, YOUR HONOR.

**THE COURT:** OKAY. THE PLAINTIFF COULD HAVE, BUT DID NOT, FOR WHATEVER REASON, COULD HAVE BROUGHT A CLASS ACTION WITH INDIVIDUALS, WHETHER THEY WERE DOES OR WHETHER THEY WERE NAMED, WHO CLAIM THAT THEIR FIRST AMENDMENT RIGHTS ARE BEING CHILLED, NOT JUST FOR PRO-PALESTINIAN SPEECH, BUT ARGUABLY FOR ANY TYPE OF SPEECH THAT IS VIEWED AS UNWELCOME UNDER A PARTICULAR ADMINISTRATION, WHETHER IT'S VIEWS THAT ARE CRITICAL TO THE ADMINISTRATION THAT'S THERE OR CRITICAL TO ITS INDIVIDUALS THAT HOLD POSITIONS OF POWER WITHIN THAT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


ADMINISTRATION.

I MEAN, AT THE TIME WHEN YOU STARTED DOWN THIS PATH, WHAT WAS HAPPENING ON THE -- IN GAZA AND, YOU KNOW, ISSUES WITH REGARDS TO ISRAEL AND PALESTINE WERE CERTAINLY IN THE CROSSHAIRS, BUT THERE ARE ALSO ISSUES WITH REGARDS TO WHAT'S HAPPENING WITH RUSSIA AND UKRAINE AND WHETHER SOMEBODY AGREES WITH THE POSITIONS THAT THE UNITED STATES HAS TAKEN THERE. SINCE THEN, THERE HAVE BEEN ISSUES ABOUT VENEZUELA, ABOUT GREENLAND, AND ABOUT THE STRAIT OF HORMUZ.

I MEAN, THAT IS NOT THE -- THAT IS NOT THE RECORD THAT THE COURT HAS BEFORE ME IN TERMS OF THE TRANSCRIPT, BUT MY POINT IS, TO THE EXTENT THAT YOU ARE ASKING ME TO NOT LIMIT RELIEF, AND I'M GETTING AHEAD OF MYSELF BECAUSE I OBVIOUSLY HAVEN'T HEARD YOUR UNDERLYING ARGUMENTS TO THE EXTENT THAT YOU'RE ASKING ME FOR RELIEF THAT'S THAT BROAD. I DON'T HAVE A CLASS ACTION, NOR DO I HAVE ANY PLAINTIFFS THAT ARE -- THAT HAVE TALKED ABOUT ANY OF THOSE THINGS. I DON'T HAVE ANY DECLARATIONS ABOUT ANY OF THOSE THINGS.

HOW COULD, OR WHY WOULD THE COURT GIVE RELIEF THAT'S THAT BROAD ON THE RECORD THAT THE COURT HAS?

**MR. FITZPATRICK:** SO YOUR HONOR, THAT'S JUST WHAT A FACIAL CHALLENGE DOES. WHEN THERE IS A FACIAL CHALLENGE TO THE LAW, YOU LOOK FOR A PLAINTIFF THAT HAS SUFFICIENT STANDING TO CHALLENGE IT, AND IF THEY -- IF THEY CAN MEET THE STANDARD FOR A -- FOR A FACIAL ATTACK AGAINST THAT STATUTE, THIS STATUTE IS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



FACIALLY INVALID. THEY DON'T HAVE TO EITHER BE PART OF A CLASS, NOR DO THEY HAVE TO JOIN WITH A SUFFICIENT NUMBER OF PLAINTIFFS TO COVER EVERY CONCEIVABLE APPLICATION OF THE STATUTE.

THE LAW JUST LOOKS TO WHETHER THE CHALLENGER OF THE LAW HAS SUFFICIENT STANDING TO DO SO, AND THEN WHETHER THEY'VE MET THE REQUISITE TEST FOR A FACIAL ATTACK ON THE STATUTE.

**THE COURT:** WAS THIS RELIEF REQUESTED IN AAUP?

**MR. FITZPATRICK:** NO, NO, YOUR HONOR, THE PLAINTIFFS IN AAUP DID NOT CHALLENGE THE UNDERLYING STATUTES.

**THE COURT:** ARGUABLY, WASN'T THAT A BETTER FACTUAL CASE FOR THIS?

**MR. FITZPATRICK:** YOUR HONOR, I DON'T HAVE INSIGHT INTO THE REASONS MY FRIENDS WHO LITIGATED AAUP HAD OR DIDN'T HAVE TO MAKE A STATUTORY CHALLENGE. I UNDERSTOOD THEIR ROUTE TO BE AN ADMINISTRATIVE PROCEDURE ACT CLAIM, AND THEY PREVAILED ON THAT CLAIM, BUT OUR CLAIM WAS, OF COURSE, MORE STATUTORY CENTERED.

(OFF THE RECORD DISCUSSION HELD.)

**THE COURT:** THIS IS GETTING US INTO SOME OF THE ISSUES THAT CAME UP IN MOODY AND IN THE NINTH CIRCUIT CASE OF KNUDSEN THAT WAS JUST RECENTLY FILED.

I'D LIKE TO TRY TO HAVE AS CLEAN OF A RECORD AS POSSIBLE HERE, AND THERE'S DEFINITELY SOME DIFFERENT ISSUES BETWEEN THE FIRST AMENDMENT AND THE FIFTH AMENDMENT CHALLENGES THAT HAVE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

BEEN MADE. AND I DON'T WANT TO PREVENT YOU ULTIMATELY FROM MAKING AN OPENING AND TRYING TO BRING THIS TOGETHER IN A WAY THAT WOULD BE HELPFUL NOT ONLY TO ME, BUT PROBABLY TO EVERYBODY WHO IS LISTENING HERE TODAY.

I'M TRYING TO BE SURE THAT I'M IN THE RIGHT FRAME OF MIND TO UNDERSTAND BOTH THE FACTUAL RECORD THAT YOU'RE ASKING THE COURT TO LOOK TO AND THE LEGAL FRAMEWORK THAT THE COURT NEEDS TO APPLY YOUR VARIOUS ARGUMENTS TO. SO I'M GOING TO TEASE OUT A FEW OF THESE, I THINK, RIGHT NOW. I'M SURE WE WILL COME BACK TO THEM DURING YOUR ARGUMENT, BUT MY PLAN WOULD BE AT THAT POINT TO TAKE A SHORT BREAK FOR THE BENEFIT OF THE REPORTER AND EVERYONE ELSE AND THEN TO COME BACK.

ARE YOU PREPARED TO MAKE SOME SORT OF AN OPENING OR AN OVERVIEW?

**MR. FITZPATRICK:** YES, YOUR HONOR.

**MR. HELLAND:** YES.

**THE COURT:** OKAY.

SO TO THE EXTENT THAT I'M ASKING SOME QUESTIONS THAT NOW ARE SCATTERED OR SEEM RANDOM, I'M JUST TRYING TO CAPTURE A LOT OF THE THOUGHTS I HAVE ABOUT THIS, WHICH I THINK WILL HELP LATER.

LOOKING TO MOODY, THE SUPREME COURT CASE FROM 2024. IF YOU DON'T HAVE THAT, MAYBE YOU CAN GRAB IT.

(PAUSE IN PROCEEDINGS.)

**THE COURT:** AND MORE THAN ASKING YOU A QUESTION, THIS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



IS REALLY ABOUT DIRECTING YOU, WHEN YOU'RE MAKING THE ARGUMENTS THAT YOU DO, THAT YOU SPEAK TO THIS FOR ME SO THAT I UNDERSTAND WHAT YOUR RESPECTIVE POSITIONS ARE.

I'M LOOKING AT THIS CASE; IN THIS INSTANCE, I AM LOOKING AT A WESTLAW COPY, SO IF YOU HAVE THAT, PERHAPS I'LL BE ON THE SAME PAGE. THIS SECTION -- THE RELEVANT SECTION STARTS AT SECTION TWO, THAT'S ON PAGE SEVEN, BUT AS YOU FLIP TO PAGE EIGHT, THERE'S A PARAGRAPH THAT BEGINS, "THIS IS TRUE."

**MR. FITZPATRICK:** WHICH SECTION?

**THE COURT:** IT'S UNDER SECTION TWO.

**MR. FITZPATRICK:** OKAY.

**THE COURT:** AND THE COURT IS TALKING ABOUT FACIAL CHALLENGES AND FACIAL INVALIDITY AND IS CROSS-REFERENCING SOME OTHER CASES AND DECISIONS IT'S HAD IN THE PAST FOR CLARIFICATION, BUT WHAT THE COURT SAYS IS AGAIN TALKING ABOUT FACIAL CHALLENGES FOR CONTENT.

IT INITIALLY BEGINS BY INDICATING THAT A PLAINTIFF CANNOT SUCCEED ON A FACIAL CHALLENGE UNLESS HE ESTABLISHES THAT NO SET OF CIRCUMSTANCES EXISTS UNDER WHICH THE LAW WOULD BE VALID, BUT THEN IT SKIPS DOWN AND SAYS, "IN FIRST AMENDMENT CASES, HOWEVER, THIS COURT HAS LOWERED THAT VERY HIGH BAR TO PROVIDE BREATHING ROOM FOR FREE EXPRESSION. WE HAVE SUBSTITUTED A LESS DEMANDING, THOUGH STILL RIGOROUS, STANDARD. THE QUESTION IS WHETHER A SUBSTANTIAL NUMBER OF THE LAW'S APPLICATIONS ARE UNCONSTITUTIONAL, JUDGED IN RELATION TO THE STATUTE'S PLAINLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


LEGITIMATE SWEEP." THERE ARE SOME CITATIONS IN THERE, AND THE COURT GOES ON TO SAY THAT, "SO IN THIS SINGULAR CONTEXT, EVEN A LAW WITH A PLAINLY LEGITIMATE SWEEP MAY BE STRUCK DOWN IN ITS ENTIRETY, BUT THAT IS SO, ONLY IF THE LAW'S UNCONSTITUTIONAL APPLICATION SUBSTANTIALLY OUTWEIGHS ITS CONSTITUTIONAL ONES."

AND I KNOW THAT PART OF THE ARGUMENT HERE IS NOT THE REVOCATION, AND I'M NOT FOCUSING ON THAT IN PARTICULAR, BUT THAT THE REQUEST IS NOT TO STRIKE IT DOWN IN ITS ENTIRETY, BUT ONLY TO STRIKE IT DOWN AS THE PLAINTIFF KEEPS TRYING TO NARROWLY TAILOR AS-APPLIED AS IT RELATES TO CONTENT-BASED SPEECH.

**MR. FITZPATRICK:** AS APPLIED TO PROTECTED SPEECH, CORRECT?

**THE COURT:** AND THE -- WHAT THE COURT DOES IS IT SPECIFICALLY SAYS THAT WHEN THIS ANALYSIS IS STARTING, THE FIRST STEP IS TO ASSESS THE STATE LAW'S SCOPE, WHICH HERE IS NOT A STATE LAW, BUT POINT TAKEN. AND THE COURT QUERIES, WHAT ACTIVITIES BY WHAT ACTORS DO THE LAWS PROHIBIT OR OTHERWISE REGULATE. BEFORE A COURT CAN DO ANYTHING -- IT'S AT THE VERY END OF THAT PARAGRAPH -- CAN DO ANYTHING ELSE WITH THESE FACIAL CHALLENGES IT MUST ADDRESS THAT SET OF ISSUES. IN SHORT, IT MUST DETERMINE WHAT THE LAW COVERS.

TO THE EXTENT PLAINTIFFS ARE ASKING THE COURT TO DO SOMETHING THAT HAS BEEN DONE BEFORE, BUT IT IS A BIT OF A HYBRID. I NEED TO UNDERSTAND SPECIFICALLY WHAT THE SCOPE OF

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

THIS IS, WHAT IT IS INTENDED TO COVER TO REGULATE AND WHAT IT IS NOT, AND HOW THE COURT COULD, PARTICULARLY WITH THE LIMITED FACTS BEFORE IT, REACH THE CONCLUSION THAT IN ALL CIRCUMSTANCES THAT THE USE -- THE INAPPROPRIATE USE OF THE PROTECTED SPEECH HERE WOULD INVALIDATE POTENTIALLY ANY OF THE OTHER WAYS THAT THE STATUTE COULD BE USED AND IS USED IN A LAWFUL MANNER. PARTICULARLY, BECAUSE YOU'RE NOT ASKING THE COURT TO STRIKE IT DOWN IN ITS ENTIRETY, SO THAT IS SOMETHING THAT I WANT TO BETTER UNDERSTAND.

**MR. FITZPATRICK:** YOUR HONOR, WOULD YOU LIKE ARGUMENT ON THIS ISSUE RIGHT NOW, OR WOULD YOU LIKE US TO RESERVE?

**THE COURT:** NO. I'D JUST LIKE YOU TO INCORPORATE IT INTO THE POINT WHERE YOU'RE MAKING THOSE ARGUMENTS IN A BIT, AND TO MAKE IT ABUNDANTLY CLEAR TO ME THAT WHEN THAT'S WHAT YOU'RE DISCUSSING, THAT THAT'S WHAT YOU'RE POINTING ME TO.

**MR. FITZPATRICK:** CERTAINLY, YOUR HONOR.

**THE COURT:** AN ISSUE I WOULD LIKE AN ANSWER ON RIGHT NOW IS WHETHER STUDENT VISA HOLDERS, AND IN PARTICULAR THE DOE DEFENDANTS IN PARTICULAR, HAVE FIRST AMENDMENT RIGHTS THAT ARE EQUAL TO CITIZENS, AND IF NOT, WHAT ARE THEIR FIRST AMENDMENT RIGHTS?

I'LL ACKNOWLEDGE, IN READING ALL OF THE MATERIALS THAT ARE HERE, DEFENDANTS HAVE FOCUSED ON THE CASE LAW WHERE PROHIBITIONS OF NON-CITIZENS REGARDING CAMPAIGN CONTRIBUTIONS ARE ONE LIMITATION. ARE THERE ANY OTHERS BEYOND THAT, OR IS

THAT REALLY THE LIMIT? AND IF YOU CAN GIVE ME ANY CASES ABOUT THAT.

I'LL START WITH THE GOVERNMENT WITH REGARDS TO THAT, BECAUSE IT'S REALLY DIRECTED THERE.

**MR. HELLAND:** YES, THANK YOU, YOUR HONOR.

THE -- THAT'S THE MAIN ONE WHERE I THINK THIS ISSUE HAS BEEN LITIGATED. THERE ARE OTHER CASES INVOLVING DEPORTATIONS THAT WERE BROUGHT, OSTENSIBLY FOR IMPERMISSIBLE FIRST AMENDMENT REASONS. I THINK THE HUMANITARIAN LAW PROJECT (HLP) CASE, AND RENO VERSUS AADC, WHICH CAME OUT OF THE NINTH CIRCUIT, THEY BOTH ADDRESSED QUESTIONS OF WHETHER A FIRST AMENDMENT GROUND COULD BE RAISED AS A DEFENSE TO DEPORTATION PROCEEDINGS AND HOW THAT WAS NOT AN AVAILABLE DEFENSE. THOSE FIRST AMENDMENT CONCERNS THAT MIGHT BE RAISED WOULD NOT BE A REASON TO STOP DEPORTATION PROCEEDINGS.

SO THAT'S, I THINK, ANOTHER AREA WHERE THE SUPREME COURT HAS INDICATED THAT THERE MIGHT BE REDUCED CONSTITUTIONAL PROTECTIONS THERE, BUT IT'S A RATHER UNIQUE SITUATION IN THE IMMIGRATION CONTEXT AS WELL, BECAUSE, OF COURSE, CITIZENS ALMOST UNIVERSALLY CANNOT BE DEPORTED. THE OTHER ISSUE --

**THE COURT:** ONE WOULD HOPE.

**MR. HELLAND:** YES.

THE SUPREME COURT HAS SAID, IN DIFFERENT CONTEXTS, BOTH THAT THERE IS THIS ASCENDING SCALE, OR SLIDING SCALE, OF RIGHTS THAT INCREASES AS AN INDIVIDUAL INCREASES THEIR CONNECTIONS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


WITH THE COUNTRY. THAT'S COME UP IN A FEW DIFFERENT CONTEXTS --

**THE COURT:** YOU BRIEF THAT, AND YET I'M TRYING TO UNDERSTAND ULTIMATELY, ALTHOUGH THAT LANGUAGE HAS BEEN USED.

WHAT PLAIN LANGUAGE DO I HAVE FROM ANY CASE THAT SUGGESTS, OTHER THAN IN THIS LIMITED SUGGESTION OF A DEPORTATION PROCEEDING OR WITH REGARDS TO CAMPAIGN FINANCE CONTRIBUTIONS, THAT A NON-CITIZEN'S FIRST AMENDMENT RIGHTS ARE IN ANY WAY LIMITED?

I MEAN, AND I ALSO WANT TO CLARIFY. IN A WAY THAT'S DIFFERENT THAN CITIZENS, BECAUSE EVERYBODY'S FIRST AMENDMENT RIGHTS CAN BE LIMITED IN SOME CERTAIN CIRCUMSTANCES, OBSCENITY AND THINGS LIKE THAT.

**MR. HELLAND:** RIGHT.

SO THE OTHER ONE THAT I WOULD POINT TO, WHICH AGAIN I THINK AROSE IN A DEPORTATION CONTEXT, BUT IT'S HARISIADES, RIGHT? AND THAT GOES BACK TO, YOU KNOW, THE 1950S ERA, BUT IT HAS NOT BEEN OVERTURNED, AND IT DOES STAND FOR THE PROPOSITION THAT A NON-CITIZEN'S SPEECH-RELATED CONDUCT IN THE UNITED STATES CAN BE A BASIS FOR REMOVING THEM FROM THE COUNTRY.

**THE COURT:** SO ANYTHING ELSE?

**MR. HELLAND:** THAT'S WHAT I'M AWARE OF, YOUR HONOR.

**THE COURT:** OKAY.

**MR. FITZPATRICK:** YOUR HONOR, I RESPECTFULLY DISAGREE WITH MY FRIEND ON THE OTHER SIDE ON ALL THREE POINTS.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

IN THE FIRST CASE, HE MENTIONS HOLDER. HOLDER EXPRESSLY ACKNOWLEDGES THAT THERE IS A DIFFERENCE IN TERMS OF PROVIDING MATERIAL SUPPORT TO TERRORISM AND MERE ADVOCACY OF TERRORISM. THE FORMER IS NOT PROTECTED; THE LATTER IS PROTECTED BECAUSE IT IS PURE ADVOCACY; IT HAS NO BEARING HERE.

THE SECOND CASE, MY FRIEND MENTIONED RENO, THAT WAS A CASE WHERE THE SUPREME COURT WAS ADDRESSING WHETHER OR NOT A SELECTIVE ENFORCEMENT DEFENSE IS AVAILABLE TO UNLAWFUL -- TO UNLAWFUL NON-CITIZENS, TO FOLKS WHO ARE ALREADY HERE ILLEGALLY, AND WHAT THE SUPREME COURT EXPLAINED THERE IS THAT IF YOU ARE ALREADY REMOVABLE FROM THE COUNTRY, IF YOU HAVE NO LEGAL RIGHT TO BE HERE, YOU CANNOT ASSERT A SELECTIVE ENFORCEMENT DEFENSE TO DEPORTATION, BECAUSE THE RELIEF WOULD BE TO ALLOW YOU TO STAY IN THE COUNTRY, WHICH YOU ALREADY DO NOT HAVE A RIGHT TO DO.

THERE IS NO COURT THAT THE GOVERNMENT HAS POINTED TO WHERE THEY RELIED ON RENO TO SAY THAT NON-CITIZENS WHO ARE HERE LEGALLY ARE NOT PROTECTED BY THE FIRST AMENDMENT IN THE CONTEXT OF DEPORTATION. THE CASE IS UNIFORMLY GOING THE OTHER WAY. ON HARISIADES, WE DISCUSSED THIS AT LENGTH IN OUR BRIEFING. HARISIADES WAS DECIDED IN THE PRE-BRANDENBURG CONTEXT, WHERE IT WAS ALSO ILLEGAL FOR UNITED STATES CITIZENS TO BE A MEMBER OF THE COMMUNIST PARTY. SO, WHAT HARISIADES SAID IS THAT IF AMERICAN CITIZENS CAN BE PUNISHED FOR BEING A MEMBER OF THE COMMUNIST PARTY, YOU ARE NOT GOING TO BE PROTECTED BY THE FIRST

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


AMENDMENT FROM BEING DEPORTED FOR BEING A MEMBER OF THE COMMUNIST PARTY.

THERE IS NO CASE, AND THIS GETS TO THE SLIDING SCALE QUESTION THAT YOUR HONOR ASKED TO HAVE -- ASKED ABOUT A LITTLE BIT EARLIER. THERE IS NO CASE IN WHICH THE GOVERNMENT -- THAT THE GOVERNMENT CAN PROVIDE WHERE SPEECH THAT WOULD BE PROTECTED IF THE -- IF A UNITED STATES CITIZEN HAD SPOKEN IT, PROVIDED A GROUND FOR DEPORTATION, AND A COURT FOUND THAT BECAUSE A NON-CITIZEN HAPPENED TO UTTER IT, THAT THAT PROVIDED A BASIS FOR DEPORTATION THAT SIMPLY DOESN'T EXIST.

**THE COURT:** IS HE RIGHT?

**MR. HELLAND:** I AM NOT AWARE OF SUCH A CASE, YOUR HONOR.

**THE COURT:** OKAY.

I'M NOT ASKING YOU TO ANSWER THIS NOW, BUT PLEASE INCORPORATE IT INTO THE ARGUMENTS THAT YOU MAKE ABOUT HOW THE COURT SHOULD THINK ABOUT THE COMPETING PUBLIC INTEREST BETWEEN THE FREEDOM OF SPEECH AND THE ISSUES OF NATIONAL SECURITY THAT COME UP WITHIN THE STATUTES THAT ARE AT ISSUE HERE.

IN TERMS OF THE DEPORTATION PROVISION AND TO SOME DEGREE, MAYBE BOTH OF THESE PROVISIONS, BUT IN A WAY IT IS INHERENTLY CONTENT-BASED. I DON'T JUST MEAN TO SPEECH, BUT THE DETERMINATION THAT'S BEING MADE IS WHAT'S GOING ON IN THE LIFE OF A PARTICULAR INDIVIDUAL. WHAT IS IT THAT THEY ARE SAYING OR DOING OR NOT DOING OR SAYING THAT CATCHES -- CAPTURES THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



ATTENTION OF THE GOVERNMENT IN SOME WAY, SUCH THAT THE GOVERNMENT WOULD, FOR THAT BASIS, CONCLUDE THAT IT HAS A SERIOUS IMPACT ON NATIONAL SECURITY. I THINK I'M ACTUALLY NOT USING PRECISELY THE RIGHT WORDS, AND YOU'LL CORRECT ME, BUT IT IS INHERENTLY, IN A WAY, CONTENT-BASED, ISN'T IT?

**MR. HELLAND:** IT IS, YOUR HONOR.

I MEAN, IN THE SENSE THAT IT REQUIRES GOVERNMENT OFFICIALS TO CONSIDER THE CONTENT OF SPEECH IN DECIDING WHETHER THAT DOES COMPROMISE A COMPELLING UNITED STATES FOREIGN POLICY INTEREST. YES, IT DOES. IT'S NOT ON ITS FACE CONTENT-BASED IN THE WAY THAT SOME STATUTES CITED BY THE OTHER SIDE WERE, WHERE CONGRESS HAS ITSELF SORT OF TILTED THE SCALES OF PERMISSIBLE SPEECH. IT'S NEUTRAL IN THAT REGARD, BUT IT DOES RELY ON GOVERNMENT OFFICIALS TO EVALUATE THE CONTENT OF SPEECH AND COMPARE THAT AGAINST THE UNITED STATES' FOREIGN POLICY INTERESTS IN MAKING THAT DETERMINATION.

AND AS WE SAY IN OUR PAPERS, IT COULDN'T BE ANY OTHER WAY, RIGHT? BECAUSE OF THE NATURE OF FOREIGN POLICY CONCERNS, YOU NEED TO HAVE FLEXIBILITY; YOU NEED TO HAVE THE ABILITY FOR GOVERNMENT OFFICIALS TO CONSIDER A CHANGING INTERNATIONAL LANDSCAPE AND CURRENT POLICY PRIORITIES, AND FOR THE REASONS WE'VE SAID IN OUR PAPERS, AND WE'LL GET INTO LATER TODAY, I'M SURE, THE MERE FACT THAT IT ALLOWS CONSIDERATION OF THE CONTENT OF SPEECH DOES NOT BY ITSELF VIOLATE THE FIRST AMENDMENT OR RENDER THE STATUTE UNCONSTITUTIONAL. IT'S SOMETHING THAT THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



COURT HAS TO CONSIDER, BUT YOU LOOK AT THE COUNTERVAILING INTERESTS AND WHAT OTHER OPTIONS CONGRESS HAD TO ACHIEVE THOSE INTERESTS.

**THE COURT:** JUST, IT APPEARS IN A SENSE THAT THE PARTIES AGREE. YOU'LL TELL ME IF YOU DON'T. IN AAUP, AND HERE, THE GOVERNMENT HAS ESSENTIALLY SAID WE DON'T EVER REVOKE SOMEBODY'S VISA, AND WE DON'T EVER DEPORT ANYBODY BASED SOLELY ON THEIR PROTECTED SPEECH; WE DON'T DO THAT. THAT IS THE GOVERNMENT'S POSITION?

**MR. HELLAND:** CORRECT. THAT'S RIGHT, YOUR HONOR.

**THE COURT:** DID JUDGE YOUNG MAKE A FACTUAL FINDING WITH REGARDS TO THAT?

**MR. FITZPATRICK:** WITH RESPECT TO THE EVER?

**THE COURT:** WELL, I MEAN, THAT IS THE GOVERNMENT'S POSITION. WE DON'T DO THAT. YOU DON'T NEED TO STOP US FROM DOING THAT, BECAUSE IT'S LIKE TELLING US JUST DON'T VIOLATE THE LAW. WE KNOW WE CAN'T DO THAT. WE DON'T DO THAT.

**MR. HELLAND:** RIGHT. SO, I KNOW THAT JUDGE YOUNG DISAGREED WITH THE GOVERNMENT'S VIEW OF THE ADDITIONAL -- THE THINGS THAT THE GOVERNMENT VIEWED AS ADDITIONAL TO PROTECTED SPEECH THAT WERE CONSIDERED IN THE ENFORCEMENT ACTIONS AT ISSUE IN AAUP. I DON'T KNOW IF JUDGE YOUNG MADE A FINDING AS TO SO --

**THE COURT:** MEANING ESSENTIALLY THAT JUDGE YOUNG CONCLUDED THAT THE GOVERNMENT ASSERTION THAT, IN FACT, IT WAS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



RELYING ON SOMETHING OTHER THAN PROTECTED SPEECH WAS INACTIVE -- INACCURATE.

**MR. HELLAND:** YES.

**THE COURT:** THAT THE GOVERNMENT REALLY WAS JUST FOCUSED ON WHAT, WHAT PEOPLE WERE SAYING, WHETHER THEY WERE WRITING IT IN A STUDENT NEWSPAPER, OR WHETHER THEY WERE WRITING A LETTER TO THE EDITOR, OR WHETHER THEY WERE GOING AND PROTESTING THAT THE SUGGESTIONS THAT THIS WAS BASED ON SOMETHING ELSE WAS REALLY FICTITIOUS, BECAUSE WHEN YOU SAY IT'S NOT JUST THE FACT THAT YOU'RE PROTESTING, BUT IT'S, YOU KNOW, THE FACT THAT YOU'RE PROTESTING, AND THAT THAT GETS PEOPLE RILED UP, AND THEN WHEN PEOPLE GET RILED UP, READ THAT ALL OF THIS IS PROBLEMATIC, AND THEY KIND OF PACKAGE THIS IN A WAY THAT SUGGESTS IT'S ABOUT SOMETHING MORE THAN THE SPEECH, BUT, IN FACT, IT'S A STRAIGHT FIRST AMENDMENT CONCERN.

**MR. HELLAND:** YES, AND I'M NOT SURE IT'S SO MUCH THAT HE THOUGHT IT WAS FICTITIOUS THAT THEY WERE CONSIDERING THOSE OTHER THINGS, BUT RATHER THEY DIDN'T APPRECIATE WHERE THE FIRST AMENDMENT LINE PROPERLY WAS. SO, THOSE OTHER THINGS, IN HIS VIEW, I THINK WERE PART OF THE PROTECTED -- WERE ON THE PROTECTED SIDE OF THE LINE.

**THE COURT:** SURE. AGREED.

**MR. FITZPATRICK:** YOUR HONOR, IF I MAY BRIEFLY RESPOND, RESPOND ON THIS POINT?

**THE COURT:** YES.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

UNITED STATES COURT REPORTERS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**MR. FITZPATRICK:** AND FORGIVE ME WITH LEADING WITH SORT OF AN OBVIOUS POINT HERE, BUT I DO THINK IT'S IMPORTANT IN TERMS OF WHAT'S IN THE RECORD.

ARGUMENTS AND BRIEFS ARE NOT EVIDENCE. WHAT THERE IS NONE OF IN THE RECORD IS A GOVERNMENT OFFICIAL, WHETHER IT'S MARCO RUBIO, DONALD TRUMP, STEPHEN MILLER, OR ANYONE ELSE, SAYING WE DON'T DO THAT. WE HAVE DIRECT EVIDENCE IN THE RECORD ABOUT, FOR EXAMPLE, THE CHARLIE KIRK VISA REVOCATIONS; WE HAVE THE SAMI HAMDI VISA REVOCATIONS, EVEN SETTING ASIDE --

**THE COURT:** BUT WERE THOSE QUESTIONS ASKED AT A -- IN AAUP?

**MR. FITZPATRICK:** YOUR HONOR, I BELIEVE THE AAUP TRIAL PREDATED BOTH OF THOSE VISA REVOCATIONS, BUT --

**THE COURT:** BUT EVEN FOR PRO-PALESTINIAN SPEECH THAT ENGAGED IN -- BECAUSE I MEAN, HE, HE ADDRESSED THESE -- SOME OF THESE PEOPLE WHO WERE SELECTIVELY, AS WE SAY, YOU KNOW, THIS, SORT OF, SELECTIVE ENFORCEMENT AGAINST; HE ANALYZED THAT. WERE ANY OF THE WITNESSES SPECIFICALLY ASKED, AS IT RELATED TO PRO-PALESTINIAN SPEECH, WHETHER THE GOVERNMENT EVER REVOKES VISA OR DEPORTS PEOPLE FOR SPEAKING THOSE THINGS? DID THAT COME UP?

**MR. FITZPATRICK:** YOUR HONOR, I DON'T BELIEVE IT DID, BUT IT DID COME UP IN THIS CASE IN JANUARY, BECAUSE YOUR HONOR ASKED MY FRIEND ON THE OTHER SIDE WHETHER HE COULD GUARANTEE THAT OUR PLAINTIFFS HERE WOULD NOT BE -- WOULD NOT HAVE THEIR

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



VISAS BE REVOKED OR BE RENDERED DEPORTABLE BASED ON THE PROTECTED SPEECH THEY HAVE ENGAGED IN, AND THE GOVERNMENT COULD NOT ASSURE THE COURT THAT THEY WOULD NOT BE.

AND I THINK IT'S VERY TELLING THAT IN THE BRIEFING, THE GOVERNMENT -- THE GOVERNMENT'S POSITION IS NOT, WE NEVER DO THIS. THERE ARE FULL LONG SECTIONS OF THEIR BRIEF WHERE THEY ARGUE THAT THEY HAVE THE CONSTITUTIONAL AUTHORITY UNDER CONGRESS'S PLENARY POWER TO REVOKE VISAS AND RENDER PEOPLE DEPORTABLE BASED ON PROTECTED SPEECH.

**THE COURT:** LET ME ASK A QUESTION A DIFFERENT WAY.

IS IT THE GOVERNMENT'S POSITION THAT IT COULD EITHER REVOKE SOMEBODY'S VISA OR DEPORT THEM STRICTLY BASED ON THEIR CONTENT-BASED SPEECH, THEIR FIRST — EXERCISING THEIR FIRST AMENDMENT RIGHTS?

**MR. HELLAND:** YES, IN SOME CIRCUMSTANCES, YOUR HONOR.

PART OF THE WRINKLE OF THIS CASE, THE CHALLENGE OF THIS CASE IS THAT PLAINTIFFS HAVE BROUGHT A FACIAL CHALLENGE. WE THINK THERE ARE CIRCUMSTANCES WHERE THAT IS CONSTITUTIONALLY PERMISSIBLE, BUT IT'S A CASE-BY-CASE INQUIRY. IT WOULD DEPEND ON WHO THE SPEAKER IS. WHO IS THIS PERSON? WHAT ARE THEIR TIES TO INTERNATIONAL ORGANIZATIONS THAT THE GOVERNMENT MAY HAVE INTERESTS REGARDING? WHAT ARE -- WHAT IS THE INTERNATIONAL GEOPOLITICAL POSTURE AT THAT TIME? HOW DOES THE SPEECH OF THAT PERSON IMPLICATE OR AFFECT THE GOVERNMENT'S POSITION IN THAT GEOPOLITICAL BALANCE? IT'S NOT GOING TO BE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


EVERY CASE, BUT WE THINK THAT THERE ARE SOME CASES WHERE THAT IS CONSTITUTIONALLY PERMISSIBLE.

**THE COURT:** DOES THE GOVERNMENT AGREE THAT THE UNIVERSE OF DOCUMENTS FROM AAUP, THAT THAT IS THE ENTIRETY OF THE EVIDENCE THAT THE COURT CAN LOOK TO HERE? IT'S A CLOSED UNIVERSE.

**MR. HELLAND:** WELL, AND I THINK OUR STIPULATION ALSO ALLOWED FOR JUDICIALLY NOTICEABLE FACTS.

AND TO BE CLEAR, THE PLEADINGS IN THE CASE, RIGHT? THE --

**THE COURT:** BUT I'M NOT GOING TO HAVE ANY WITNESS. THERE ISN'T ANY WITNESS IN AAUP, AND I'M NOT GOING TO HAVE ANY WITNESS HERE THAT IS GOING TO TESTIFY TO WHAT YOU JUST SAID, CORRECT?

**MR. HELLAND:** RIGHT, BECAUSE PLAINTIFFS HAVE BROUGHT A LEGAL CHALLENGE. THE QUESTION IS THE SCOPE OF THE STATUTE, WHAT THE TEXT OF THE STATUTE ALLOWS.

WE CAN TALK ABOUT WHETHER A PARTICULAR HYPOTHETICAL WOULD BE SUBJECT TO ENFORCEMENT UNDER THE STATUTE.

**THE COURT:** NO, I'M ASKING YOU JUST A STRAIGHT FACTUAL QUESTION.

IS IT THE GOVERNMENT'S POSITION THAT THEY CAN REVOKE SOMEBODY'S VISA OR DEPORT SOMEBODY BASED ON THAT PERSON'S EXERCISE OF FREE SPEECH, JUST SOMETHING THAT THEY SAY? AND YOUR RESPONSE WAS YES, IN CERTAIN CIRCUMSTANCES.

**MR. HELLAND:** CORRECT.

**THE COURT:** OKAY, THAT IS THE GOVERNMENT LAWYER, RIGHT, TELLING ME THAT IN COURT, BUT I DON'T ACTUALLY HAVE ANY EVIDENCE ONE WAY OR THE OTHER ABOUT THAT.

I'M HEARING FROM THE PLAINTIFFS, LIKE, IF IT DOESN'T EXIST IN THE RECORD, THEN IT DOESN'T EXIST, AND THE GOVERNMENT CAN'T RELY ON THAT. BUT I ALSO DON'T HAVE A WITNESS THAT ANYBODY'S GOING TO CROSS-EXAMINE WHO'S UP HERE OR GET A DIRECT EXAMINATION FROM THAT'S GOING TO COMMENT ON THAT.

**MR. HELLAND:** BUT THAT'S -- BECAUSE THIS IS A LEGAL QUESTION, YOUR HONOR. THIS IS A QUESTION OF WHAT THE GOVERNMENT IS AUTHORIZED TO DO UNDER THE STATUTE THAT'S ON PAPER IN FRONT OF ALL OF US AND WHAT THE CONSTITUTION ALLOWS. WHETHER THE GOVERNMENT CAN DO IT OR HAS THE AUTHORITY TO DO THAT IS A LEGAL QUESTION, NOT A FACTUAL QUESTION.

**MR. FITZPATRICK:** AND, YOUR HONOR, IF I MAY?

**THE COURT:** GO AHEAD.

**MR. FITZPATRICK:** VERY BRIEFLY, WITH RESPECT TO THE FACTS IN THE RECORD ABOUT WHETHER THE GOVERNMENT IS ACTUALLY TARGETING PEOPLE FOR DEPORTATION AND VISA REVOCATION BASED ON PROTECTED SPEECH. WE CAN GO TO THE JOINT STATEMENT OF FACTS. I'M READING HERE ON FACT NUMBER 128; THIS IS OPPOSED BY SECRETARY RUBIO. IF YOU ARE HERE ON A VISA AND CHEERING ON THE PUBLIC ASSASSINATION OF A POLITICAL FIGURE, PREPARE TO BE DEPORTED. YOU ARE NOT WELCOME IN THIS COUNTRY.

SO, WE HAVE STATEMENTS BY THE DEFENDANTS SAYING THAT THEY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



ARE GOING TO REVOKE VISAS BASED ON PROTECTED SPEECH. THE COURT DOESN'T -- THE COURT NEED NOT GUESS ABOUT THAT. IT'S A JOINT STATEMENT THAT SECRETARY RUBIO SAID THAT HE WOULD BE DOING THAT.

**THE COURT:** OKAY, I WANT TO -- I WANT US TO BE ABLE TO TAKE A BREAK, BUT I'D LIKE TO GET A SENSE OF HOW THINGS ARE GOING TO UNFOLD HERE.

HOW MUCH TIME DOES EACH SIDE NEED FOR AN OPENING, OR DID YOU NOT INTEND TO APPROACH IT IN THAT WAY?

**MR. FITZPATRICK:** I SUPPOSE IT DEPENDS ON THE COURT'S DEFINITION OF OPENING.

I HAD PREPARED SORT OF AN INTRODUCTORY PRESENTATION COVERING WHAT WE BELIEVE TO BE THE MAJOR ISSUES IN THIS CASE THAT I WOULD PROBABLY BALLPARK AROUND 45 TO 50 MINUTES, DEPENDING ON THE AMOUNT OF QUESTIONS THAT COME IN.

**THE COURT:** WHAT ABOUT ON THE GOVERNMENT SIDE?

**MR. HELLAND:** I WAS PLANNING ON MAKING SOME INTRODUCTORY REMARKS THAT WOULD TAKE ABOUT 10 TO 15 MINUTES AND THEN BE PREPARED TO RESPOND AND ANSWER THE COURT'S QUESTIONS.

**THE COURT:** AND IT SOUNDS LIKE ON THE PLAINTIFFS' SIDE THAT WAS THE INTRODUCTORY PART OF IT.

HOW LONG DID YOU ANTICIPATE FOR WHATEVER ARGUMENT YOU HAD BEYOND THAT?

**MR. FITZPATRICK:** OH, THAT WOULD HAVE BEEN SORT OF THE FULL PRESENTATION ON ALL OF THE ISSUES, YOUR HONOR.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

MY ACTUAL INTRODUCTION WILL TAKE MAYBE FIVE MINUTES, BUT AS THE COURT WILL SEE WHEN WE GET BACK FROM RECESS, WE PREPARED AN AGENDA OF THE ORDER THAT I PLAN TO ADDRESS THE ISSUES AFTER I GET PAST THE INTRODUCTORY REMARKS AND GET INTO THE INDIVIDUAL ISSUES THAT I KNOW THE COURT WILL NEED TO DECIDE. I THINK THE OVERALL PRESENTATION OF COVERING ALL OF THE ISSUES AND QUESTIONS MAY BE SOMEWHERE IN THE RANGE OF 45 MINUTES.

I'LL CERTAINLY SHOOT FOR THE UNDER.

**THE COURT:** OKAY.

ONE OF THE THINGS THAT I WANT TO BE SURE THAT YOU GET TO IS THE LEVEL OF SCRUTINY THAT THE COURT WOULD APPLY HERE AND WHAT THE BASIS FOR THAT IS.

THE OTHER IS, PLEASE BE CLEAR WHEN YOU'RE MAKING YOUR ARGUMENT ABOUT WHICH ISSUES APPLY TO THE FIRST -- THE FIRST AMENDMENT VERSUS THE FIFTH AMENDMENT AND TO THE EXTENT THAT THERE'S OVERLAP, THAT YOU'RE CLEAR ABOUT THAT.

I'D ALSO LIKE YOU TO THINK ABOUT, FROM YOUR RESPECTIVE POSITIONS, AND MAKE IT CLEAR TO ME, PERHAPS IN YOUR CLOSING REMARKS THAT YOU HAVE, ABOUT WHAT DO YOU ENVISION AN ORDER FROM THIS COURT LOOKING LIKE?

I KNOW THE STATEMENT "IN A PERFECT WORLD" IS OVERUSED, BUT IF THAT WAS THE CASE, AS IT RELATES TO YOUR RESPECTIVE POSITIONS, WHAT WOULD AN ORDER THAT YOU WANTED LOOK LIKE HERE? WHAT WOULD IT COVER, AND WHAT WOULD THE COURT FIND? HOW WOULD IT BE STRUCTURED? I THINK THAT IS SUFFICIENT AT THIS POINT.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


I WANT TO GO AHEAD AND TAKE A BREAK. WE'RE GOING TO TAKE A BREAK, PROBABLY FOR ABOUT 10 MINUTES, SO THAT EVERYBODY CAN GET UP AND DO WHAT THEY NEED TO DO, AND THEN WHEN WE COME BACK, I'M GOING TO JUST LAUNCH RIGHT INTO MAYBE SOME QUICK INTRODUCTORY REMARKS FROM BOTH SIDES, AND THEN INTO THE PRESENTATION BY THE PLAINTIFFS, AND THEN TO THE DEFENSE.

AND I WOULD ASK, EVEN WHEN YOU DO THAT, PROBABLY WHEN I HAVE QUESTIONS, I'LL WANT TO HEAR FROM BOTH OF YOU AT THE SAME TIME SO THAT THE OTHER PERSON IS ACCESSIBLE.

OKAY, THANKS EVERYBODY.

AND WE'LL BE BACK IN ABOUT 10 MINUTES.

(RECESS FROM 11:02 A.M. UNTIL 11:24 A.M.)

**THE CLERK:** ALL RISE.

THIS COURT IS AGAIN IN SESSION.

**THE COURT:** PLEASE BE SEATED.

(OFF THE RECORD DISCUSSIONS WERE HELD.)

**THE COURT:** ALL RIGHT, COUNSEL, ARE YOU READY TO PROCEED?

**MR. FITZPATRICK:** YES, YOUR HONOR.

**THE COURT:** OKAY, THEN PLEASE DO.

**MR. FITZPATRICK:** THANK YOU, YOUR HONOR.

BEFORE THE BREAK, I TOLD THE COURT THAT WE PREPARED AN AGENDA OF THE ORDER THAT WE ANTICIPATED ADDRESSING THE MAIN ISSUES IN THIS CASE. MAY I EITHER APPROACH OR HAND A COPY TO YOUR COURTROOM DEPUTY?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


**THE COURT:** SURE.

**MR. FITZPATRICK:** THANK YOU, YOUR HONOR.

AND I, OF COURSE, WELCOME THE COURT'S QUESTIONS AT ANY TIME.

**THE COURT:** YOU MIGHT WANT TO WAIT UNTIL YOU HEAR THEM FIRST.

GO AHEAD.

**MR. FITZPATRICK:** THANK YOU, YOUR HONOR.

THE SUPREME COURT COULD HARDLY HAVE BEEN MORE CLEAR TWO YEARS AGO IN THE UNANIMOUS NRA VERSUS VULLO, WHERE IT HELD THAT THE FIRST AMENDMENT PROHIBITS THE GOVERNMENT FROM QUOTE, "USING THE POWER OF THE STATE TO PUNISH OR SUPPRESS DISFAVORED EXPRESSION," END QUOTE, BUT OVER THE LAST YEAR SECRETARY RUBIO AND THE TRUMP ADMINISTRATION HAVE TARGETED LAWFULLY PRESENT NON-CITIZENS WHO VOICE SO-CALLED ANTI-AMERICAN OR ANTI-ISRAEL VIEWS.

CURRENT AND FORMER UNIVERSITY STUDENTS HAVE BEEN AMBUSHED BY MASKED FEDERAL AGENTS, THROWN INTO VANS, AND DETAINED THOUSANDS OF MILES FROM HOME TO AWAIT DEPORTATION, ALL FOR THE SUPPOSED OFFENSE OF HANDING OUT FLYERS AT A PROTEST, JOINING IN A CHANT, OR EVEN CO-AUTHORING AN OP-ED IN THEIR STUDENT NEWSPAPER.

TARGETING NON-CITIZENS BASED ON PROTECTED EXPRESSION VIOLATES THE SUPREME COURT'S COMMAND IN BRIDGES VERSUS WIXON THAT NON-CITIZENS ARE ENTITLED TO FREEDOM OF SPEECH AND FREEDOM

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

OF THE PRESS, AND IT VIOLATES THE NINTH CIRCUIT'S HOLDING IN AADC THAT THE FIRST AMENDMENT PROHIBITS DEPORTING A NON-CITIZEN BASED ON THEIR PROTECTED SPEECH.

THEREFORE, THE REVOCATION AND DEPORTATION PROVISIONS, WHICH, AS YOUR HONOR HEARD EARLIER, MY COLLEAGUE CONCEDES, AUTHORIZES THE GOVERNMENT TO RENDER NONCITIZENS DEPORTABLE AND REVOKE THEIR VISAS BASED ON PROTECTED SPEECH, ARE UNCONSTITUTIONAL AS APPLIED TO PROTECTED SPEECH.

YOUR HONOR, WHEN WE WERE LAST TOGETHER IN JANUARY, YOU'LL RECALL THAT THE GOVERNMENT INSISTED THAT IT HAD NONSPEECH REASONS FOR TARGETING NONCITIZENS LIKE RUMEYSA OZTURK, MOHSEN MAHDAWI, AND MAHMOUD KHALIL.

NOW, WITH THE BENEFIT OF THE AAUP TRIAL EXHIBITS, MANY OF WHICH BECAME PUBLICLY AVAILABLE FOR THE FIRST TIME ONLY AFTER OUR JANUARY HEARING, WE CAN SEE IT WAS ALWAYS ABOUT THEIR SPEECH.

WE HAVE NOW, FOR EXAMPLE, THE INTERNAL STATE DEPARTMENT SUBJECT PROFILE OF MOHSEN MAHDAWI. AS REFLECTED IN JOINT UNDISPUTED FACTS 225 THROUGH 227, ALL THE GOVERNMENT HAD WAS MR. MAHDAWI'S 60 MINUTES INTERVIEW, WHICH A FEW PEOPLE ON TWITTER CHARACTERIZED AS JUSTIFYING THE OCTOBER 7 ATTACK, AND THEY HAD HEARSAY FROM A COLUMBIA STUDENT WHO CLAIMED TO HAVE HEARD MR. MAHDAWI, QUOTE, "SPEAKING ABOUT JEWS IN A DEROGATORY WAY," END QUOTE.

YOUR HONOR, THAT SPEECH, WHETHER WE LIKE IT OR NOT, THAT

IS SPEECH. NOW LET'S LOOK AT RUMEYSA OZTURK'S -- THIS IS THE MEMO PREPARED FOR SENIOR STATE DEPARTMENT BUREAU OFFICIAL JOHN ARMSTRONG, ADVISING HIM ON THE POTENTIAL BASIS TO REVOKE HER VISA. AND YOUR HONOR, THIS IS A JOINT STATEMENT NUMBER 213, AND WE ALSO HAVE THE RECORD CITE AT THE TOP.

**THE COURT:** DO YOU HAVE ANY OF THIS AS PART OF THE PRESENTATION THAT YOU HAVE THAT CAN GO ON THE COMPUTER OR NOT?

**MR. FITZPATRICK:** YOUR HONOR, I DON'T BELIEVE WE HAVE A PRESENTATION FOR THE COMPUTER. WE CERTAINLY HAVE THESE FILES IN PDF IN A WAY THAT COULD BE PUBLISHED TO THE COMPUTER, BUT WE WOULD NEED A LITTLE BIT OF TIME TO SET THAT UP.

**THE COURT:** THAT'S OKAY. IT WAS ONLY FOR THE BENEFIT OF EVERYBODY ELSE WHO'S HERE. IT'S EASIER FOR THEM TO SEE ON THE SCREENS.

**MR. FITZPATRICK:** OF COURSE, YOUR HONOR.

SO, IF WE LOOK TO THE BOTTOM PARAGRAPH ON THIS MEMO, THAT IS AN EXPLICIT ACKNOWLEDGMENT THAT THE STATE DEPARTMENT HAD NO EVIDENCE THAT MS. OZTURK ENGAGED IN ANTI-SEMITIC ACTIVITY.

IT READS, "WHILE OZTURK HAS BEEN INVOLVED WITH ACTIONS PROTESTING PUFFS' RELATIONSHIP WITH ISRAEL, DHS, ICE, AND HSI HAS NOT PROVIDED ANY EVIDENCE SHOWING THAT OZTURK HAS ENGAGED IN ANTI -- IN ANY ANTI-SEMITIC ACTIVITY OR MADE ANY PUBLIC STATEMENTS INDICATING SUPPORT FOR A TERRORIST ORGANIZATION OR ANTI-SEMITISM GENERALLY." WHILE THE REPORT IMPLIES A CONNECTION BETWEEN OZTURK AND THE NOW BANDED TUFTS STUDENTS FOR

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



JUSTICE IN PALESTINE, THE REPORT PRESENTS NO EVIDENCE OTHER THAN OZTURK'S MEMBERSHIP IN GRADUATE STUDENTS FOR PALESTINE, WHICH SUPPORTED PROPOSALS TO TUFTS, WHICH WERE ALSO SUPPORTED BY TSJP.

**THE COURT:** DOES THAT CORRESPOND WITH THE SAME NUMBER IN THE FILES?

**MR. FITZPATRICK:** YES, YOUR HONOR, IT DOES.

**THE COURT:** OKAY.

**MR. FITZPATRICK:** YOUR HONOR, THAT IS AN EXPLICIT ACKNOWLEDGMENT BY THE GOVERNMENT IN THEIR OWN INTERNAL FILES THAT THEY NEVER THOUGHT WOULD SEE THE LIGHT OF DAY; THAT ALL THEY HAD WAS MS. OZTURK'S SPEECH.

YOUR HONOR, I THINK ALSO JOINT FACT NUMBER 220 SHOWS WHAT THIS CASE IS ABOUT. THAT IS THE VIDEO, AND WE FILED A HARD COPY OF THAT VIDEO WITH THE REPORT OF ICE AMBUSHING, ARRESTING, AND DETAINING RUMEYSA BECAUSE SHE CO-AUTHORED THAT OP-ED. WHEN YOU LISTEN TO HER SCREAMS AND HER CONFUSION ABOUT WHY SHE'S BEING PLACED IN HANDCUFFS AND WATCH HER BEING MARCHED TO A GOVERNMENT SUV, IT MAKES PLAIN WHY JANE DOE, JOHN DOE, AND THE NON-CITIZEN WRITERS AND EDITORS AT STANFORD DAILY ARE SO SCARED TO SPEAK. WITHOUT DECLARATORY AND INJUNCTIVE RELIEF FROM THIS COURT, THEY WILL CONTINUE TO LIVE IN FEAR THAT THEIR NEXT ARTICLE, THEIR NEXT EDITORIAL, OR THEIR NEXT SOCIAL MEDIA POST WILL LEAD TO THEIR ARREST, DETENTION, AND DEPORTATION.

THIS COURT IS UNIQUELY ABLE TO RULE ON THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


CONSTITUTIONALITY OF THESE STATUTES BECAUSE PLAINTIFFS HAVE NOT YET FACED ADVERSE IMMIGRATION ACTION AND THEREFORE ARE NOT SUBJECT TO THE INS JURISDICTIONAL BARS.

THIS COURT SHOULD ACT QUICKLY AND HOLD THAT THE FIRST AMENDMENT BARS THE GOVERNMENT FROM ENFORCING THESE STATUTES BASED ON PROTECTED SPEECH.

YOUR HONOR, AS YOU'LL SEE IN THE AGENDA, THE FIRST MAJOR ISSUE I'D LIKE TO ADDRESS TODAY, AND WE TALKED ABOUT IT A LITTLE BIT EARLIER, IS THE ISSUE OF HYBRID CHALLENGES AND WHAT EXACTLY WE'RE CHALLENGING HERE.

SO, I'LL TRY NOT TO TREAD OVER TOO MUCH GROUND THAT WE ALREADY COVERED EARLIER, BUT I, OF COURSE, WELCOME ANY OTHER ADDITIONAL FOLLOW-UP.

**THE COURT:** I'D LIKE TO GET THE INTRO FROM BOTH SIDES, AND SO DOES THAT COVER EVERYTHING THAT YOU WANT TO COVER JUST IN THE INITIAL REMARKS?

**MR. FITZPATRICK:** YES, YOUR HONOR.

**THE COURT:** OKAY. GO AHEAD, MR. HELLAND.

**MR. HELLAND:** THANK YOU, YOUR HONOR.

YOUR HONOR, NEARLY 30 YEARS AGO CONGRESS OVERHAULED THE IMMIGRATION LAWS AND CREATED THE LANGUAGE THAT IS AT ISSUE THAT WE'RE TALKING ABOUT TODAY.

CONGRESS RESPONDED TO CONCERNS THAT THE PREVIOUS EXISTING LAWS WERE TOO BROAD AND ALLOWED TOO MUCH DISCRETION IN ENFORCING THE IMMIGRATION LAWS ON THE BASIS OF SPEECH.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



CONGRESS CONSIDERED A PROPOSAL THAT WOULD HAVE TAKEN AWAY THAT BASIS ALTOGETHER. IT WOULD NOT HAVE ALLOWED FOREIGN POLICY INTERESTS TO BE A BASIS FOR REMOVING PEOPLE FROM THE COUNTRY, BUT CONGRESS REJECTED THAT PROPOSAL.

INSTEAD, IN 1990 CONGRESS CREATED THE CAREFUL FRAMEWORK THAT NOW EXISTS IN THE IMMIGRATION LAWS, WHICH IS THAT, AN INDIVIDUAL'S SPEECH CAN BE USED AS A BASIS FOR REMOVAL PROCEEDINGS, BUT ONLY IF THE SECRETARY OF STATE DETERMINES THAT THAT SPEECH COMPROMISES A COMPELLING UNITED STATES' FOREIGN POLICY INTEREST AND MAKES A REPORT ON THAT DECISION TO CONGRESS; THAT IS, CONGRESS NARROWED A PREVIOUS EXISTING PUBLIC INTEREST BASIS FOR REMOVAL. IT MAINTAINED A BASIS FOR REMOVAL BECAUSE, HAVING CONSIDERED REMOVING IT ALTOGETHER, IT DECIDED THAT THAT WAS NOT IN THE UNITED STATES' BEST INTERESTS. AND SO, THAT CAREFUL FRAMEWORK IS WHAT EXISTS IN THE LAW TODAY.

PLAINTIFFS WOULD HAVE THIS COURT TAKE A SLEDGEHAMMER TO THAT FRAMEWORK. PLAINTIFFS ARGUE THAT BECAUSE THIS FRAMEWORK DOES ADMITTEDLY ALLOW FOR THE CONSIDERATION OF SPEECH, IT VIOLATES THE FIRST AMENDMENT IN ALL OF ITS APPLICATIONS.

IMPORTANTLY, PLAINTIFFS BRING A FACIAL CHALLENGE HERE. WE'VE TALKED A LITTLE BIT ABOUT THE SCOPE OF THEIR CHALLENGE. I EXPECT WE'RE GOING TO TALK MORE ABOUT IT, BUT THE IMPORTANT THING FOR THE COURT TO CONSIDER IS THAT PLAINTIFFS ARE NOT TYING THEIR CLAIMS TO ANY PARTICULAR SPEECH. THEY'RE SAYING THE FACT THAT THESE STATUTES ALLOW FOR THE CONSIDERATION OF

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



SPEECH IS THE CONSTITUTIONAL PROBLEM, BUT CONGRESS DELIBERATELY MAINTAINED THE GOVERNMENT'S ABILITY TO CONSIDER SPEECH. IT FOUND THAT THAT WAS AN IMPORTANT THING TO DO. IN FACT, COUNTRIES THROUGHOUT THE WORLD DO THE SAME THING, AND THE UNITED STATES SHOULD NOT BE LIMITED IN ITS OWN ABILITY TO TAKE SIMILAR ACTION. ALL OF THIS IS IN THE CONGRESSIONAL RECORD THAT WE SUBMITTED IN OUR -- WE REFERRED TO IN OUR ORIGINAL MOTION FOR SUMMARY JUDGMENT, AND WE DESCRIBED AT LENGTH IN OUR SUPPLEMENTAL BRIEF.

NOW, PLAINTIFFS WOULD HAVE THE COURT DECLARE THESE STATUTES UNCONSTITUTIONAL BASED ON ANY KIND OF SPEECH, EVEN BEYOND WHAT PLAINTIFFS THEMSELVES HAVE ANY INTEREST IN SAYING, RIGHT? THEY HAVE NEVER TIED IT TO PARTICULAR SPEECH BASED ON PALESTINE, ISRAEL, OR OTHERWISE. THEY WANT THE COURT -- ADMITTEDLY, THE COURT CAN ONLY GRANT RELIEF AS TO THESE PLAINTIFFS, BUT THEY WANT THE COURT TO SAY THAT THERE ARE NO CIRCUMSTANCES WHERE THE UNITED STATES' FOREIGN POLICY INTERESTS PROVIDE A LEGITIMATE BASIS TO REMOVE SOMEONE ON THE BASIS OF SPEECH, RIGHT? PLAINTIFFS ARE DOE PLAINTIFFS. WE DON'T KNOW THEIR BACKGROUNDS. WE DON'T KNOW WHAT INTERNATIONAL CIRCUMSTANCES MIGHT BE IMPLICATED BY THE KIND OF SPEECH THAT THEY WOULD RAISE, AND THIS IS ALL BY DESIGN.

TO SAY THAT THERE ARE NO CIRCUMSTANCES WHATSOEVER THAT THE GOVERNMENT CAN CONSIDER AN INDIVIDUAL SPEECH AS A BASIS FOR REMOVAL FOR FOREIGN POLICY REASONS, IT THROWS OUT THE BABY WITH

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

THE BATHWATER, YOUR HONOR.

IN THIS CASE, THE QUESTION FOR YOUR HONOR IS NOT WHETHER THE STATUTE COULD BE USED IN WAYS THAT VIOLATE THE CONSTITUTION; VIRTUALLY ANY STATUTE COULD BE USED IN WAYS THAT VIOLATE THE CONSTITUTION, THE QUESTION FOR YOUR HONOR UNDER MOODY AND NETCHOICE AND THE GOVERNING FIRST AMENDMENT DOCTRINE, IS WHETHER THE UNCONSTITUTIONAL USES OF THE STATUTE SUBSTANTIALLY OUTWEIGH THE LEGITIMATE ONES.

THAT REQUIRES YOUR HONOR TO UNDERSTAND THE SCOPE OF THE STATUTES, AND IT REQUIRES YOUR HONOR TO UNDERSTAND THE NATURE OF THE FOREIGN POLICY INTERESTS THAT ARE AT STAKE IN THESE KINDS OF ACTIONS AND THEN TO EVALUATE THEM TO WEIGH POTENTIALLY IMPERMISSIBLE USES AGAINST THE PLAINLY LEGITIMATE ONES.

WE SUBMIT THAT UNDER THE SUPREME COURT'S CASE LAW RECOGNIZING THE COMPELLING FOREIGN POLICY INTERESTS OF THE UNITED STATES THAT THERE ARE CASES -- THESE STATUTES WERE DRAWN WITH CASES IN MIND WHERE SPEECH CAN BE USED AS A BASIS FOR IMMIGRATION ENFORCEMENT ACTION, AND FOR THIS COURT TO DECLARE THE STATUTES UNCONSTITUTIONAL FACIALLY, TO SAY THAT THE GOVERNMENT CAN NEVER TAKE THAT ACTION, IS UNSUPPORTED BY THE RECORD OR THE CASE LAW.

YOUR HONOR, THERE ARE CASES BEING LITIGATED AROUND THE COUNTRY WHERE AS-APPLIED CHALLENGES ARE LITIGATING WHETHER AN INDIVIDUAL'S INTEREST, AN INDIVIDUAL'S PARTICULAR SPEECH, WAS OF THE TYPE THAT THE GOVERNMENT CAN RELY ON IN ORDER TO TAKE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


IMMIGRATION ENFORCEMENT ACTION; THAT IS THE PROPER WAY FOR INDIVIDUALS WHO ARE CONCERNED ABOUT THEIR SPEECH ACTIVITY TO VINDICATE THOSE INTERESTS. BUT THE GOVERNMENT NEEDS TO HAVE THE ABILITY TO TAKE ENFORCEMENT ACTION WHEREIN THE UNITED STATES' FOREIGN POLICY INTERESTS ARE IMPLICATED, AND A FACIAL RULING HERE WOULD DECLARE THE STATUTES UNCONSTITUTIONAL. IT WOULD PROHIBIT THE GOVERNMENT FROM DOING THAT, AND THAT GOES TOO FAR, YOUR HONOR.

WE THINK THAT THE COURT SHOULD DENY PLAINTIFFS' CLAIMS AND ENTER JUDGMENT IN FAVOR OF THE GOVERNMENT.

**THE COURT:** OKAY.

**MR. FITZPATRICK:** AND THEN, YOUR HONOR, IN TERMS OF AN ORDER OF PRESENTATION, WOULD YOUR HONOR PREFER TO FOLLOW THE AGENDA THAT WE SUPPLIED IN TERMS OF THE ORDER OF THE ISSUES? WOULD YOU LIKE ME TO RESPOND TO THE ARGUMENTS FROM MY FRIEND ON THE OTHER SIDE? I'M HAPPY TO PROCEED --

**THE COURT:** I ASSUME, BASED ON MY LOOK AT YOUR APPROACH TO YOUR ARGUMENT, THAT YOU ARE GOING TO GET TO EACH OF THOSE ISSUES, ALTHOUGH PERHAPS NOT IN THE ORDER THAT WERE -- THAT THEY WERE JUST RAISED. I DO WANT TO GET TO ALL OF THEM.

I SPECIFICALLY WANT TO BE SURE THAT I UNDERSTAND -- I WANT PLAINTIFFS, IN PARTICULAR, TO SPEAK TO MOODY AND WHAT IS REQUIRED BY MOODY AND WHETHER THAT HAS BEEN PROVIDED, WHICH IS THAT -- I UNDERSTAND THAT THE SUPREME COURT HAS LOWERED THE BAR, BUT IT'S QUALITATIVE HOW THEY HAVE LOWERED IT, NOT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

QUANTITATIVE. I MEAN, IT IS -- YOU KNOW, IT SAYS IN THE ALMOST THE NEXT SENTENCE, THAT THE BAR IS STILL VERY HIGH, AND ESSENTIALLY THE COURT NEEDS TO UNDERSTAND ALL OF THE DIFFERENT APPLICATIONS THAT MIGHT POSSIBLY BE OUT THERE SUCH THAT IT CAN QUESTION WHETHER A SUBSTANTIAL NUMBER OF THOSE APPLICATIONS ARE UNCONSTITUTIONAL WHEN WEIGHED AGAINST THE LEGITIMACY OF THE STATUTE ITSELF.

SO, I WANT TO UNDERSTAND THAT. HOW THAT WORKS HERE. HOW THE PLAINTIFF HAS DONE THAT HERE. AND IT WOULD ALSO BE HELPFUL IF YOU CLARIFIED WHETHER YOU THINK THIS COURT GOT IT WRONG IN PRICHETT.

**MR. FITZPATRICK:** UNDERSTOOD, YOUR HONOR.

I WILL GO RIGHT TO MOODY, AND WE CAN DEAL WITH THAT HEAD-ON.

MOODY AND THE NINTH CIRCUIT HELD THIS EXPRESSLY TWO MONTHS AGO, WHERE IT WAS DISCUSSING THE RULE FOR FIRST AMENDMENT OVERBREADTH CLAIMS, AND WE ARE NOT ASSERTING A FIRST AMENDMENT OVERBREADTH CLAIM. I WILL READ DIRECTLY FROM THE NINTH CIRCUIT'S PUBLISHED DECISION IN MARCH, IMPERIAL SOVEREIGN COURT OF MONTANA VERSUS KNUDSEN. THIS IS AT 170 F.4TH 820, AND THIS IS AT PAGE 844. QUOTE, "DEFENDANTS THEN CORRECTLY NOTE THAT WE LOWER THE STANDARD IN THE FIRST AMENDMENT --

**THE COURT:** HOLD ON. I'M SORRY. WHAT WAS THE PAGE NUMBER?

**MR. FITZPATRICK:** 844, YOUR HONOR.

**THE COURT:** OKAY, GO AHEAD.

**MR. FITZPATRICK:** STARTING WITH THE SENTENCE THAT SAYS, "DEFENDANTS THEN CORRECTLY NOTE THAT WE LOWER THE STANDARD IN THE FIRST AMENDMENT CONTEXT, SO A FACIAL CHALLENGE CAN SUCCEED IF THE PLAINTIFF SHOWS THAT A SUBSTANTIAL NUMBER OF THE LAW'S APPLICATIONS ARE UNCONSTITUTIONAL JUDGED IN RELATION TO ITS PLAINLY LEGITIMATE SWEEP, AND DEFENDANTS CORRECTLY NOTE THAT THIS LOWER STANDARD IS THE STANDARD WE APPLY WHEN ANALYZING A FIRST AMENDMENT FACIAL OVERBREADTH CLAIM, BUT DEFENDANTS THEN APPEAR TO ARGUE THAT THESE CASES MEAN THAT THE DISTRICT COURT ERRED BY APPLYING STRICT SCRUTINY TO PLAINTIFFS' FACIAL CONTENT-BASED CLAIM. THIS IS THE POINT AT WHICH DEFENDANT, OR DEFENDANTS' ARGUMENT, GOES IN THE WRONG DIRECTION. IT IS WELL ESTABLISHED THAT PLAINTIFFS MAY BRING A FIRST AMENDMENT CHALLENGE ON THE GROUND THAT A STATUTE IS CONTENT- OR VIEWPOINT-BASED", END QUOTE.

AND THEN CONTINUING TO PAGE 845, QUOTE, "MOODY, HOWEVER, DID NOT DISPLACE THE LONGSTANDING AND MYRIAD PRECEDENTS SETTING FORTH THE TIERED SCRUTINY ANALYSIS WE APPLY TO A FACIAL CLAIM CHALLENGING A LAW ON THE GROUND THAT IT IS AN UNCONSTITUTIONAL CONTENT-BASED RESTRICTION ON SPEECH," END QUOTE.

AND, YOUR HONOR, THAT IS IN ACCORD WITH THE SUPREME COURT'S DECISION IN IANCU IN 2019, WHERE THE SUPREME COURT HELD, QUOTE, "THIS COURT HAS NEVER APPLIED THAT KIND OF ANALYSIS, THE WEIGHING THE NUMBER OF UNCONSTITUTIONAL

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



APPLICATIONS VERSUS THE PLAINLY LEGITIMATE SWEEP. THIS COURT HAS NEVER APPLIED THAT KIND OF ANALYSIS TO A VIEWPOINT-DISCRIMINATORY LAW," END QUOTE. AND THAT'S AT PAGES 398 TO 399 OF THE IANCU DECISION.

YOUR HONOR, MOODY DID NOT EVEN DISCUSS IANCU. WE KNOW JUSTICE SCALIA, HIS FAMOUS, YOU KNOW, FAMOUS PHRASE THAT "CONGRESS DOES NOT OFTEN HIDE ELEPHANTS IN MOUSEHOLES." I WOULD SUBMIT TO THE COURT THAT THE SUPREME COURT DOES NOT HIDE ELEPHANTS IN MOUSEHOLES EITHER. IT WOULD BE QUITE SOMETHING IF THE SUPREME COURT WERE OVERTURNING DECADES OF FIRST AMENDMENT DOCTRINE OF HOW FIRST -- OF HOW FACIAL CHALLENGES APPLY AND DIRECTLY CONTRAVENING AN EXPLICIT STATEMENT OF HOW THESE CHALLENGES WORK FROM FIVE YEARS AGO WITHOUT EVEN MENTIONING THE CASE THAT IT WAS OVERTURNED.

BUT EVEN IF THE MOODY ANALYSIS CONTROLS, AND I THINK THE IMPERIAL SOVEREIGN COURT DECISION MAKES CLEAR THAT IT DOESN'T, WE DO NOT HAVE AN OVERBREADTH CLAIM IN THIS CASE; WE ARE NOT CHALLENGING THESE STATUTES ON OVERBREADTH GROUNDS.

THIS PLAINLY LEGITIMATE SWEEP TEST HAS NO ROLE TO PLAY WITH OUR CLAIMS. WE ARE CHALLENGING THESE STATUTES AS VIEWPOINT-DISCRIMINATORY AND CONTENT-DISCRIMINATORY. AT EVERY POINT THAT THE SECRETARY OF STATE DETERMINES THAT SOMEONE'S EXPRESSION COMPROMISES A COMPELLING FOREIGN POLICY INTEREST AND TAKES ACTION AGAINST THEM, HE IS NECESSARILY SINGLING OUT AND DISCRIMINATING AGAINST THAT PERSON'S VIEWPOINT, BECAUSE IF THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

SECRETARY OF STATE HAD BELIEVED THAT THE PERSON'S COMMENTS HELPED THE UNITED STATES' FOREIGN POLICY INTEREST OR SUPPORTED THEM, THE SECRETARY OF STATE WOULD NOT HAVE EVEN BEEN STATUTORILY EMPOWERED TO TAKE THAT ACTION.

SAME THING WITH CONTENT-BASED, AND YOUR HONOR RAISED THIS ISSUE WITH MY FRIEND ON THE OTHER SIDE EARLIER. ANY TIME THE GOVERNMENT IS REVOKING SOMEONE'S VISA OR RENDERING THEM DEPORTABLE BASED ON SOMETHING THEY SAID, AT MINIMUM, IT'S CONTENT-BASED BECAUSE THEY ARE NECESSARILY CONSIDERING THE CONTENT OF WHAT THEY ARE SAYING AND SO, WE RELY ON THE DECADES OF PRECEDENT THAT A STATUTE WHICH DISCRIMINATES BASED ON VIEWPOINT AND DISCRIMINATES BASED ON CONTENT IS SUBJECT TO STRICT SCRUTINY, THAT IS THE HOLDING OF IMPERIAL SOVEREIGN COURT OF MONTANA. IT WAS THE HOLDING OF IANCU.

I FULLY GRANT THAT I SURE WISH MOODY HAD BEEN PHRASED A LITTLE BIT MORE CLEARLY. I GATHER THE NINTH CIRCUIT AGREES WITH THAT AS WELL, BUT THAT'S WHY THE NINTH CIRCUIT WENT OUT OF ITS WAY TO SAY HERE'S WHAT MOODY ACTUALLY DOES. HERE'S THE TYPE OF CLAIMS IT AFFECTS. HERE'S THE TYPE OF CLAIM IT DOESN'T AFFECT, AND IT DOES NOT AFFECT, IN THIS, IN THE NINTH CIRCUIT'S WORDS, THE TRADITIONAL, THE TRADITIONAL FACIAL ATTACK ON A CONTENT-BASED SPEECH. BUT EVEN IF THE COURT THINKS THAT THE NINTH CIRCUIT GOT IT WRONG IN IMPERIAL SOVEREIGN, AND EVEN IF THE COURT BELIEVES THAT THIS OTHER TYPE OF ANALYSIS GOVERNS -- THAT AN OVERBREADTH ANALYSIS GOVERNS THE CASE STILL COMES OUT

THE SAME WAY. AND THAT IS BECAUSE OUR CHALLENGE PROPERLY UNDERSTOOD AND PROPERLY NARROWED SOLELY TO INDIVIDUALS HAVING THEIR VISAS REVOKED OR BEING RENDERED DEPORTABLE BASED ON PROTECTED SPEECH. THERE IS NO PLAINLY LEGITIMATE SWEEP TO THAT STATUTE AT ALL. THE REASON WE KNOW THAT IS WIXON WHERE THE SUPREME COURT SAYS THAT NON-CITIZENS ARE ENTITLED TO FREEDOM OF SPEECH AND FREEDOM OF THE PRESS. IT DIDN'T SAY SOMETIMES. IT DIDN'T GIVE EXCEPTIONS. IT HELD THAT NON-CITIZENS ARE ENTITLED TO FREEDOM OF SPEECH AND FREEDOM OF THE PRESS.

SO THE GOVERNMENT ARGUED THAT THERE ARE CERTAIN CIRCUMSTANCES IN WHICH PROTECTIVE SPEECH COULD SERVE AS A LEGITIMATE BASIS. WHAT ARE THEY? THE GOVERNMENT HASN'T OFFERED THEM.

THE GOVERNMENT APPEARS TO BE ARGUING THAT THERE IS SOME SCENARIO IN WHICH A PERSON'S BELIEFS, A PERSON'S SPEECH, A PERSON'S TWEET COULD BE SO CONTRARY TO AMERICAN FOREIGN POLICY THAT EVEN IF YOU POSTED IT FROM HOME, WE WOULD BE COMPLETELY LEGALLY SHIELDED. THAT THERE IS SOMEHOW A CONSTITUTIONAL UNIVERSE IN WHICH SOMEONE'S OPINION COULD BE SO INSINUATORY THAT EVEN THOUGH IT DOESN'T RISE TO THE LEVEL OF INCITEMENT OR DEFAMATION OR ANY OTHER CATEGORY OF UNPROTECTED SPEECH, THAT SOMEONE'S OPINION COULD SERVE AS A BASIS FOR THROWING SOMEONE OUT OF THE COUNTRY. THERE IS SIMPLY NO PRECEDENCE FROM THE SUPREME COURT, THE NINTH CIRCUIT, OR ANYWHERE ELSE THAT SUPPORTS THAT ARGUMENT.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


THE NEXT POINT IS THAT WHEN BONTA -- WHEN THE NINTH CIRCUIT -- SO MY FRIEND ON THE OTHER SIDE RELIED ON THE BONTA DECISION FROM THE NINTH CIRCUIT, THAT WAS DEALING WITH A VERY, VERY DIFFERENT SET OF CIRCUMSTANCES. THERE THEY WERE DEALING WITH A CHALLENGE TO A STATUTE THAT HAD SOME SPEECH APPLICATIONS AND SOME NON-SPEECH APPLICATIONS.

BUT HERE WITH RESPECT TO THE SCOPE OF OUR CHALLENGE, WHAT WE ARE CHALLENGING, IN TERMS OF THE DEPORTATION PROVISION AND THE REVOCATION PROVISION AND THEIR USE BASED ON PROTECTIVE SPEECH, ALL OF THOSE APPLICATIONS OF THOSE STATUTES RELATE TO SPEECH. SO THERE'S NO NON-SPEECH LEGITIMATE SWEEP THAT COULD POTENTIALLY BE CAUGHT UP IN A FACIAL RULING HERE BECAUSE, FOR EXAMPLE, THE GOVERNMENT HAS ARGUED THAT WELL, IF THERE WERE AN INDIVIDUAL WHOSE PRESENCE IN THE UNITED STATES WE CONSIDERED CONTRARY TO AMERICAN POLICY THAT WE NEED TO BE ABLE THROW THEM OUT. SURE, THERE IS A SEPARATE STATUTE THAT ALLOWS THEM TO DO THAT THAT WE ARE INTENTIONALLY NOT CHALLENGING. WE ARE SOLELY CHALLENGING THE DEPORTATION OVERRIDE THAT SAYS, THAT "ORDINARILY THE GOVERNMENT IS STATUTORILY PROHIBITED FROM RENDERING SOMEONE REMOVABLE BASED ON THE PROTECTED SPEECH UNLESS THE SECRETARY OF STATE, IN HIS UNREVIEWABLE DISCRETION, DETERMINES THAT IT COMPROMISES A COMPELLING FOREIGN POLICY THREAT." BUT THE POINT THAT THE GOVERNMENT IS RELYING ON ISN'T SPEECH. IT'S SOMETHING ELSE. IT'S SOMETHING OTHER THAN THEIR OPINION. THEY HAVE PLENTY OF OTHER STATUTES TO RELY ON.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

**THE COURT:** HOW WILL WE EVER KNOW THE ANSWER TO THIS, THOUGH? BECAUSE NORMALLY THE BASIS FOR WHAT THE GOVERNMENT IS DOING, IT'S NOT AS THOUGH SOMEBODY'S WRITING A MEMO FOR EACH PERSON.

**MR. FITZPATRICK:** SO HERE, YOUR HONOR, THEY ARE. THERE ARE MEMOS THAT GO TO THE SECRETARY OF STATE EXPLAINING WHY THEY BELIEVE THE SECRETARY OF STATE SHOULD RENDER SOMEONE REMOVABLE.

THAT'S HOW, FOR EXAMPLE, WE KNOW WITH RESPECT TO MAHMOUD KHALIL AND MOHSEN MAHDAWI AND BADAR KHAN SURI'S STORY THAT THE GOVERNMENT IS RELYING SOLELY ON THEIR PROTECTED SPEECH.

**THE COURT:** MY POINT IS, WHAT IF THE GOVERNMENT IS SIMPLY SILENT?

**MR. FITZPATRICK:** IF SO, IF THE GOVERNMENT --

**THE COURT:** WHAT IS THE RECORD? WHAT IS THE RECORD THAT WE WOULD HAVE TO KNOW WHETHER THE GOVERNMENT IS DOING THIS BASED ON SPEECH OR SOMETHING ELSE?

**MR. FITZPATRICK:** OKAY, I UNDERSTAND YOUR QUESTION, YOUR HONOR.

SO, WITH RESPECT TO THE DEPORTATION PROVISION, THE ONLY TIME THAT STATUTE EVER COMES INTO PLAY, IN ORDER FOR THEM TO INVOKE THE STATUTE, THEY ARE CONCEDING THAT IT IS BASED ON SPEECH, BECAUSE OTHERWISE THAT STATUTE HAS NO ROLE TO PLAY.

SOMEONE IS NOT REMOVABLE UNDER THE DEPORTATION PROVISION

UNLESS THE SECRETARY OF STATE HAS PERSONALLY DETERMINED THAT THEIR LAWFUL SPEECH COMPROMISES A COMPELLING FOREIGN POLICY OBJECTIVE. SO AT THE POINT WHERE SOMEBODY'S BEEN RENDERED DEPORTABLE AND THEIR DEPORTATION PAPER REFERENCES THAT STATUTE, IT'S NECESSARILY BASED ON SPEECH, IT'S JUST PART AND PARCEL WITH THAT STATUTE BEING CITED.

WITH RESPECT TO A VISA REVOCATION, AND THIS ADMITTEDLY DOVETAILS A LITTLE BIT WITH OUR VAGUENESS ARGUMENT, IT'S ONE OF THE BIG PROBLEMS WITH 1201I, WITH THE REVOCATION PROVISION, WHICH IS IT EMPOWERS THE SECRETARY OF STATE TO REVOKE A VISA AT ANY TIME FOR ANY REASON.

SO THERE'S A VERY BIG VAGUENESS PROBLEM THERE, AND WE'LL GET TO THAT LATER ON WHEN WE TALK ABOUT OUR FIFTH AMENDMENT, BUT WITH RESPECT TO THE -- WITH RESPECT TO THE FIRST AMENDMENT, PRESUMABLY THE PERSON IN AN IMMIGRATION ACTION WOULD CHALLENGE THE BASIS FOR THE REVOCATION, AND THE GOVERNMENT WOULD HAVE TO EXPLAIN WHAT THEIR BASIS FOR REVOKING THE VISA IS.

**THE COURT:** ARE THEY REQUIRED TO DO THAT?

**MR. FITZPATRICK:** YOUR HONOR, I BELIEVE THEY ARE, BUT IF THEY'RE NOT, THE NON-CITIZEN WOULD BE ABLE TO ASSERT, ADMITTEDLY, IT WOULD BE VERY LATE DOWN THE LINE IN TERMS OF THE IMMIGRATION APPELLATE PROCESS. THEY WOULD LIKELY HAVE TO WAIT UNTIL IT MAKES IT TO THE CIRCUIT COURT OF APPEALS. THEY WOULD BE ABLE TO ASSERT THAT THE VISA REVOCATION WAS IT -- WAS CONTRARY TO THEIR CONSTITUTIONAL RIGHTS.

SO, FOR EXAMPLE, A SORT OF A SIMILAR SCENARIO IS WHAT MAHMOUD KHALIL IS NOW GOING THROUGH, WHICH IS HE HAS GONE THROUGH THE IMMIGRATION COURT SYSTEM, AND HE WILL SOON BE FILING THIS PETITION IN THE FIFTH CIRCUIT, AND HE NOW, FOR THE FIRST TIME, WILL BE ABLE TO MAKE HIS CONSTITUTIONAL ARGUMENTS AGAINST THE GOVERNMENT'S ACTION AGAINST HIM.

SO RUMEYSA OZTURK, IN THE LAST MONTH, HAS DECIDED TO SELF-DEPORT TO TURKEY. SHE LOST ALL THE WAY THROUGH IN THE IMMIGRATION COURTS. HER FIRST CHANCE TO CHALLENGE THE CONSTITUTIONALITY OF THAT VISA REVOCATION WOULD HAVE BEEN IN THE CIRCUIT COURT OF APPEALS.

SO, EVENTUALLY THE GOVERNMENT WOULD HAVE HAD TO COME BACK WITH AN EXPLANATION AFTER SHE ARGUES, YOU REVOKED MY VISA BASED ON PROTECTED SPEECH, THE GOVERNMENT WOULD HAVE HAD TO COME BACK WITH SOMETHING, BUT THAT, OF COURSE, WOULD BE --

**THE COURT:** HOW WOULD THEY DO THAT PROCEDURALLY AT THE -- AT THE CIRCUIT COURT?

I MEAN, THEY'D HAVE TO SEND IT BACK TO THE DISTRICT COURT, WOULDN'T THEY, OR TO AN IMMIGRATION COURT?

**MR. FITZPATRICK:** YOUR HONOR, I MAY DEFER TO ONE OF MY IMMIGRATION COLLEAGUES ON THAT. I DO BELIEVE THERE IS A METHOD FOR FACT FINDING THERE. IF YOUR HONOR IS MORE CURIOUS ABOUT THAT, I CAN DEFER TO OUR IMMIGRATION COUNSEL ON HOW THAT WOULD WORK.

**THE COURT:** IT DOES SEEM TO ME THAT THERE IS AN

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


OPPORTUNITY FOR THE GOVERNMENT TO SIMPLY JUST MAKE A DECISION ABOUT REVOCATION WITHOUT EXPLANATION.

**MR. FITZPATRICK:** AND SO, A COUPLE OF THOUGHTS THERE.

**THE COURT:** I'M NOT SAYING IT'S NEFARIOUS, I MEAN THERE MIGHT BE A LEGITIMATE BASIS FOR IT OR NOT, BUT IT WOULD SEEM TO ME, ESPECIALLY IF IT HAPPENS IN A SWEEPING WAY, THAT THERE MAY SIMPLY NOT BE ANY RECORD OF THE WHY.

**MR. FITZPATRICK:** SO, YOUR HONOR, IS RIGHT, AND THAT'S A PRINCIPAL REASON WHY WE'RE CHALLENGING THE STATUTE ON FIFTH AMENDMENT DUE PROCESS GROUNDS, AND I BELIEVE IT WAS A JUDGE, JUDGE MARYANNE TRUMP BARRY, WHEN SHE WAS ADDRESSING THE DEPORTATION PROVISION, TALKS OF -- TALKED ABOUT HER BELIEF THAT THE DEPORTATION PROVISION WAS VOID FOR VAGUENESS, BECAUSE IT COULD BE BASED ON FOREIGN POLICY REASONS THAT THE SECRETARY OF STATE NEED NOT EITHER EXPLAIN NOR DESCRIBE, AND THAT'S WHY THAT COURT FOUND THE DEPORTATION PROVISION TO VIOLATE THE FIFTH AMENDMENT.

SO, WITH RESPECT TO VISA REVOCATIONS UNDER 1201I, THAT'S WHY WE'VE CARVED OUT PROTECTED SPEECH AS A SUBSET OF WHAT -- OF WHAT WE'RE CHALLENGING, IN TERMS OF THE BASIS FOR A VISA DETERMINATION. AND, SO, HERE, FOR EXAMPLE, IF RELIEF IS ENTERED IN FAVOR OF PLAINTIFFS, THEY WOULD BE ABLE TO CHALLENGE, THEY WOULD BE ABLE TO CHALLENGE THEIR VISA REVOCATION ON THE GROUNDS THAT IT WAS BASED ON PROTECTED SPEECH, AND THEY WOULD, OF COURSE, HAVE AN ENFORCEABLE ORDER

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



TO -- THEY WOULD, OF COURSE, HAVE AN ENFORCEABLE ORDER TO DO SO.

WHERE THE PARTIES DIFFER HERE IS THAT THE GOVERNMENT CONTENDS, FOR EXAMPLE, IN MS. OZTURK'S CASE, THAT ONCE -- IF SHE HAD DECIDED TO STAY IN THE UNITED STATES AND FOUGHT WHAT OCCURRED IN THE CIRCUIT COURT OF APPEALS, THE GOVERNMENT'S POSITION IS, YES, WE BASED IT ON YOUR OP-ED, CONGRESS'S PLENARY POWER MEANS THAT WE'RE ALLOWED TO DO THAT, AND WE AREN'T CONSTRAINED BY THE FIRST AMENDMENT.

SO THAT'S REALLY SORT OF THE RUB OF WHERE THE CHALLENGE HERE IS. IT'S THAT THE GOVERNMENT IS CONTENDING THAT NOT ONLY DO WE HAVE THIS TOTAL, UNREVIEWABLE, UNCONSTRAINED STATUTORY POWER TO REVOKE VISAS, WE CAN EVEN DO IT BASED ON PROTECTED SPEECH. WE CAN DO IT BECAUSE WE DON'T LIKE A TWEET THAT YOU POSTED. WE CAN DO IT BECAUSE WE DON'T LIKE THE HAT THAT YOU'RE WEARING.

**THE COURT:** BUT COULDN'T THEY DO IT FOR NO REASON WHATSOEVER? LEGITIMATELY. COULDN'T THEY SAY, COULDN'T THE ADMINISTRATION MAKE A DETERMINATION, OR THE SECRETARY MAKE A DETERMINATION, THAT WE ARE SIMPLY NOT GOING TO ALLOW ANY STUDENT VISAS, BECAUSE WE'VE MADE A DECISION THAT HAVING STUDENTS THAT ARE INTERNATIONAL STUDENTS THAT ARE COMING IN FOR UNDERGRADUATE OR FOR GRADUATE EDUCATION ARE HAVING -- IT'S HAVING AN IMPACT ON THE COST OF -- OR AVAILABILITY, ACCESS TO EDUCATION FOR PEOPLE HERE, SO WE'RE JUST NOT GOING TO DO IT?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

UNITED STATES COURT REPORTERS

PERIOD. ACROSS THE BOARD.

**MR. FITZPATRICK:** SO CONGRESS, I BELIEVE, COULD PERMISSIBLY, IF IT WANTED TO, COMPLETELY SCRAP THE VISA PROGRAM, JUST AS CONGRESS COULD, FOR EXAMPLE, COMPLETELY SCRAP A --

**THE COURT:** I'M NOT SAYING BY STATUTE DECIDE THAT THEY'RE GOING TO SCRAP IT, BUT THE DECISION OF THE ADMINISTRATION AT ANY PARTICULAR TIME IS, FOR NOW WE ARE JUST NOT GOING TO USE OUR DISCRETION TO GRANT ANY OF THEM, AND IF WE'VE GRANTED THEM, WE'RE GOING TO REVOKE THEM BECAUSE WE DON'T WANT THEM.

**MR. FITZPATRICK:** AND I WANT TO MAKE SURE I UNDERSTAND YOUR HONOR'S QUESTION. IS -- DOES THE QUESTION -- IS THE QUESTION LIMITED TO, DOES IT RELATE TO ALL VISAS OR JUST REVOCATIONS BASED ON SPEECH?

**THE COURT:** ALL VISAS.

**MR. FITZPATRICK:** SURE, IF CONGRESS WANTED TO --

**THE COURT:** ALL STUDENT VISAS, LET'S JUST SAY IN THIS INSTANCE.

**MR. FITZPATRICK:** ASSUMING THAT, LET'S SAY, SETTING ADMINISTRATIVE PROCEDURE ACT QUESTIONS TO THE SIDE, AND ASSUMING THAT CONGRESS WANTED TO COMPLETELY SCRAP THE VISA PROGRAM, I DON'T THINK THERE'S ANYTHING IN THE CONSTITUTION THAT WOULD PROHIBIT THAT.

**THE COURT:** I JUST WANT TO BE CLEAR ABOUT THIS,

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


BECAUSE I -- THERE'S A PRACTICAL APPLICATION TO THIS THAT REALLY MATTERS, I THINK, TO PEOPLE.

**MR. FITZPATRICK:** SO, CONGRESS CAN --

**THE COURT:** LET'S JUST GO BY EXECUTIVE ORDER, NOT EVEN AN ACT OF CONGRESS THAT HAPPENS. EXECUTIVE ORDER, FOR RIGHT NOW, WE DON'T -- WE'RE NOT GOING TO TAKE STUDENT VISAS FROM ANYONE. WE'RE JUST NOT GOING TO DO IT.

**MR. FITZPATRICK:** I DON'T THINK IT WOULD CREATE A FIRST AMENDMENT PROBLEM. WHERE THE FIRST AMENDMENT PROBLEM COMES IN IS WHEN THE GOVERNMENT, WHETHER IT'S CONGRESS OR THE EXECUTIVE BRANCH, IS DECIDING TO TREAT PEOPLE DIFFERENTLY BASED ON SPEECH. THE FIRST AMENDMENT CONSTRAINS CONGRESS'S POWER, NOT THE OTHER WAY AROUND, AND THAT'S WHERE I HAVE MAJOR DIFFERENCES WITH THE GOVERNMENT'S, WITH THE GOVERNMENT'S ARGUMENT, BECAUSE THE GOVERNMENT KEEPS ARGUING THAT, WELL, CONGRESS WANTED THE PRESIDENT TO HAVE THIS AUTHORITY TO THROW PEOPLE OUT BASED ON SPEECH.

YOUR HONOR, THE FIRST SENTENCE OF THE FIRST AMENDMENT IS THAT CONGRESS SHALL MAKE NO LAW. CONGRESS IS PROHIBITED FROM PASSING LAWS THAT INFRINGE FREEDOM OF SPEECH. SO YES, CONGRESS CONCEIVABLY COULD STATUTORILY ELIMINATE THE VISA PROGRAM WHOLESALE.

WHAT CONGRESS CANNOT DO IS MAKE A BENEFIT CONTINGENT ON AN UNCONSTITUTIONAL BASIS. JUST AS IT COULD NOT MAKE A TAX CREDIT AVAILABLE TO ONE RACE AND NOT ANOTHER, IT CANNOT MAKE VISAS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE TO PEOPLE WHO AGREE WITH THE GOVERNMENT BUT NOT THOSE WHO DISAGREE WITH THE GOVERNMENT.

THAT IS WHERE THE CONSTITUTION COMES INTO PLAY. THAT IS BRIDGES VERSUS WIXON, THAT IS AADC.

**THE COURT:** DO YOU WANT TO SPEAK TO THIS POINT?

**MR. HELLAND:** WELL, I DO, YOUR HONOR.

AND BY THIS POINT, I REALLY WANT TO START BACK AT MOODY, WHERE THIS WHOLE LINE OF INQUIRY BEGAN. I THINK MY FRIEND ON THE OTHER SIDE MISUNDERSTANDS WHAT MOODY ITSELF WAS ABOUT AND ITS IMPACT, INCLUDING HOW IT'S BEEN INTERPRETED BY THE NINTH CIRCUIT. MOODY WAS NOT BROUGHT AS AN OVERBREADTH CASE. THERE WERE TWO CASES, ONE IN TEXAS AND ONE IN FLORIDA. THE OVERBREADTH DOCTRINE WAS NOT INVOKED IN THE COMPLAINTS IN THOSE CASES. THE DISTRICT COURT DECISIONS IN THOSE CASES DID NOT DISCUSS THE OVERBREADTH DOCTRINE IN ANY MATERIAL WAY.

THE FIFTH CIRCUIT HAD A SECTION OF ITS OPINION EXPLAINING WHY OVERBREADTH DID NOT APPLY, BUT THE ELEVENTH CIRCUIT ALSO DIDN'T DISCUSS OVERBREADTH IN ANY MATERIAL WAY. IT WAS THE SUPREME COURT THAT SAID, THE WAY YOU ARE BRINGING THIS CLAIM, YOU NEED TO COMPARE WHAT YOU'RE ALLOWED -- WHAT YOU'RE ALLEGING IS UNCONSTITUTIONAL AGAINST WHAT THE STATUTE DOES ALLOW.

THE CLAIMS IN THAT CASE WERE FUNCTIONALLY CONTENT- AND VIEWPOINT-BASED CLAIMS. TECH COMPANIES WERE SAYING THAT THEY WERE BEING COMPELLED TO ALLOW SPEECH THAT THEY MIGHT OTHERWISE DISAGREE WITH BY CERTAIN STATES THAT WERE PASSING

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


CONTENT-MODERATION LAWS. THE TECH COMPANIES WEREN'T -- THEY WEREN'T BRINGING AN OVERBREADTH CHALLENGE IN THE FIRST INSTANCE, THEY DIDN'T THINK SO, BUT THE SUPREME COURT SAID YOU HAVE -- TAKE A STEP BACK HERE, WHAT YOU'RE DOING IS FUNCTIONALLY IMPLICATING, YOU'RE ASKING FOR A FACIAL RULING THAT THESE STATUTES ARE UNCONSTITUTIONAL, WHEN YOU DO THAT, EVEN IF YOU DIDN'T APPLY AN OVERBREADTH LABEL TO YOUR CLAIM IN THE FIRST INSTANCE, YOU NEED TO GO THROUGH THIS ANALYSIS. YOU ARE TRYING TO OBTAIN RELIEF BEYOND THE ACTUAL FACTS OF YOUR CASE, THE ACTUAL APPLICATION OF THE STATUTE TO YOURSELF, AND WHEN YOU DO THAT, YOU NEED TO LOOK AT WHAT THE STATUTE FULLY ALLOWS AND ALLOW THE COURT TO EVALUATE THE UNCONSTITUTIONAL USES AGAINST THE CONSTITUTIONAL ONES, AND IT'S THE PLAINTIFF'S BURDEN, IMPORTANTLY, MOODY SAYS THIS, AND SUBSEQUENT CASES DO AS WELL. IT'S THE PLAINTIFF'S BURDEN TO ESTABLISH THE SCOPE OF THE STATUTES AND ESTABLISH THE UNCONSTITUTIONAL USES, AND PUT IT BEFORE THE COURT TO EVALUATE THEIR USE.

**THE COURT:** DID IT -- DID IT OVERRULE ITS OWN PRECEDENT IN DOING THAT WITHOUT SAYING SO?

**MR. HELLAND:** I DON'T THINK THAT IT DID, YOUR HONOR.

FIRST OF ALL, IANCU ITSELF DID BRIEFLY TOUCH ON OVERBREADTH ISSUES, BUT MOODY, YES, I MEAN, MOODY DID COME AFTER IANCU. THEY CONCERNED DIFFERENT KINDS OF CHALLENGES. IN IANCU ITSELF, THE LANGUAGE OF THE STATUTE CONGRESS USED GOING TO IMMORAL OR SCANDALOUS BEHAVIOR, I THINK THE SUPREME COURT,

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


IN IT, YOU KNOW, IT ALMOST VIEWED THE OVERBREADTH ISSUE AS TRIVIAL, BECAUSE THERE WAS SO MUCH PROBLEMATIC ABOUT THE LANGUAGE -- THE LANGUAGE USED IN THAT CASE, THAT IS, IT WAS SO OBVIOUSLY PROBLEMATIC THAT THE GOVERNMENT CAN'T JUST CALL SOMETHING IMMORAL OR SCANDALOUS, AND HAVE THAT BE AT THE END OF THE DAY.

**THE COURT:** SO WHAT'S THE STANDARD THAT THE COURT SHOULD USE RIGHT NOW, GIVEN THE STATE OF THE LAW?

**MR. HELLAND:** SO I -- SO I WANT TO GET TO THAT BY WAY OF THE NINTH CIRCUIT'S DECISION IN KNUDSEN, BECAUSE MY FRIEND ON THE OTHER SIDE SAID KNUDSEN CABINED MOODY'S ANALYSIS AND REALLY MADE IT CLEAR THAT IT WAS ONLY DEALING WITH OVERBREADTH CLAIMS, THAT'S NOT WHAT KNUDSEN SAID. KNUDSEN WAS RESPONDING TO A SPECIFIC ARGUMENT MADE BY THE STATE OF MONTANA IN THAT CASE, THAT THE TIERED LEVELS OF SCRUTINY NO LONGER APPLY IN OVERBREADTH CASES, THAT THAT'S WHAT MOODY STANDS FOR. SO, IN REJECTING THAT ARGUMENT, THAT SPECIFIC ARGUMENT THAT WE ARE NOT MAKING HERE THE NINTH CIRCUIT SAID MOODY DIDN'T DO THAT, YOU STILL HAVE TIERED SCRUTINY ARGUMENTS FOR TRADITIONAL FACIAL OVERBREADTH -- FACIAL CLAIMS, INCLUDING FOR CONTENT-BASED OR VIEWPOINT-BASED CLAIMS.

**THE COURT:** SO, DO YOU THINK THAT THAT'S THE CASE HERE?

**MR. HELLAND:** YES, I DO, BUT I DON'T THINK THAT LETS YOU GET OUT OF THE OBLIGATION TO CONSIDER LAWFUL USES OF THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



STATUTE AND UNCONSTITUTIONAL ONES, AND EVALUATE THEM AGAINST EACH OTHER.

**THE COURT:** AND WHAT DO YOU POINT ME TO, TO SAY THAT SAYS THAT?

**MR. HELLAND:** MOODY ITSELF, BUT THEN ALSO BONTA. MY FRIEND ON THE OTHER SIDE BRIEFLY MENTIONED IT, NETCHOICE VERSUS BONTA, MAY OF, OR, SORRY, MARCH OF THIS YEAR FROM THE NINTH CIRCUIT, ALMOST CONTEMPORANEOUS WITH THE KNUDSEN DECISION THAT ALSO JUST CAME OUT, IT'S CITED IN OUR PAPERS.

IN BONTA, THE NINTH CIRCUIT REVERSED JUDGE LABSON FREEMAN OF THIS COURT, WHO HAD HERSELF ADOPTED SOMETHING LIKE THE PLAINTIFF'S VIEW ABOUT ONLY FOCUSING ON CERTAIN APPLICATIONS OF A STATUTE AND ONLY FOCUSING ON THE CONSTITUTIONALITY OF THOSE AND IGNORING OTHER PARTS OF THE STATUTE, AGAIN, NOT BROUGHT AS AN OVERBREADTH CHALLENGE.

**THE COURT:** IT'S A CONFUSING STANDARD, THOUGH, THEN BECAUSE WHEN YOU'RE TALKING ABOUT FIRST AMENDMENT -- A FIRST AMENDMENT VIOLATION OR AN ALLEGATION ABOUT THAT BASED ON PROTECTED SPEECH THAT NORMALLY YOU WOULD GO RIGHT TO A STRICT SCRUTINY ANALYSIS, CORRECT?

**MR. HELLAND:** YES, BUT --

**THE COURT:** AND YET HERE IT SOUNDS LIKE IT'S A HYBRID, IT'S WHAT HAS TO BE ALLEGED IS NOT JUST THAT IT'S A FIRST AMENDMENT VIOLATION, NOT JUST THAT THERE'S BEEN PROTECTED SPEECH THAT HAS BEEN COMPROMISED OR THAT'S BEING USED IN A WAY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

THAT IS UNCONSTITUTIONAL IN A STATUTE, BUT THAT IN ALLEGING THAT, IT'S NOT SUFFICIENT FOR THE PLAINTIFF TO ALLEGE THAT THEY MUST ALSO IN THEIR ALLEGATIONS PROVIDE THE FULL BREADTH OF EVERY ALTERNATIVE OF HOW THIS MIGHT BE USED, AND THEN WHAT? HOW WOULD THE COURT ANALYZE BOTH THAT AND THE STRICT SCRUTINY ANALYSIS TOGETHER?

**MR. HELLAND:** YES, SO FIRST OF ALL, I DON'T CONCEDE THAT STRICT SCRUTINY IS THE STANDARD WHEN YOU GET TO THAT LEVEL OF THE ANALYSIS. I THINK THE DEPARTMENT OF STATE VERSUS MUNOZ CASE SUPPORTS THAT IT'S ACTUALLY A FACIALLY LEGITIMATE AND BONA FIDE REASON STATUTE -- STANDARD.

**THE COURT:** LET'S, BUT LET'S ASSUME, FOR MY PURPOSES TODAY, THAT A STRICT SCRUTINY STANDARD WOULD BE WHAT WOULD BE REQUIRED.

**MR. HELLAND:** RIGHT.

**THE COURT:** BUT HELP ME UNDERSTAND HOW I WOULD BLEND THOSE THINGS.

**MR. HELLAND:** YES, SO I THINK YOU, YOU MAP OUT WHAT THE KIND OF, WHAT THE STATUTE APPLIES TO, WHAT IT GOVERNS, AND THEN YOU LOOK AT THAT UNIVERSE --

**THE COURT:** WHEN YOU SAY, YOU, DO YOU MEAN THE COURT, OR DO YOU MEAN THE PLAINTIFF?

**MR. HELLAND:** I MEAN, PLAINTIFFS, IT'S THEIR BURDEN. THEY SHOULD BE PUTTING THIS BEFORE YOU. YOU LOOK AT WHAT IT COVERS, WHAT THE TEXT OF IT APPLIES TO, AND THEN YOU CONSIDER

WHETHER THE APP -- THOSE APPLICATIONS, HOW MANY OF THOSE ARE GOING TO SERVE COMPELLING INTERESTS, AND ARE, YOU KNOW, HOW MANY OF THEM ARE NOT GOING TO MEET THAT LEVEL. SO --

**THE COURT:** OKAY, BUT WHEN YOU'RE TALKING ABOUT SPEECH, IT'S INFINITE, RIGHT?

**MR. HELLAND:** YES.

**THE COURT:** I MEAN, AREN'T THERE INFINITE WAYS, ESSENTIALLY, THAT THIS COULD BE APPLIED?

**MR. HELLAND:** YES, THERE ARE, YOUR HONOR.

AND THAT'S PART OF WHY WE THINK THAT THIS IS NOT THE RIGHT KIND OF MECHANISM FOR BRINGING CLAIMS SUCH AS THIS.

**THE COURT:** MEANING NOBODY COULD EVER CHALLENGE THEM?

**MR. HELLAND:** NO, NO, PEOPLE CHALLENGE THEM ALL THE TIME, BUT NOT FACIALLY. PEOPLE CHALLENGE THEM AS APPLIED, AND SO, I THINK A FACIAL CHALLENGE LIKE THIS SHOULD FAIL, UNLESS YOUR HONOR THINKS THAT SPEECH CAN JUST NEVER BE USED FOR CONSIDERATION OF FOREIGN POLICY REASONS, WHICH IS THEIR CONTENTION, WE DISAGREE. UNLESS YOUR HONOR IS WILLING TO GO THAT FAR WE DON'T THINK THAT THIS IS THE APPROPRIATE MECHANISM. I THINK THE EXISTENCE OF AS-APPLIED CHALLENGES IS THE WAY FOR PARTICULAR SPEECH TO BE LITIGATED.

AND CAN I JUST POINT OUT, YOUR HONOR, IN OUR MOST RECENT BRIEF, WE POINTED YOU TO THE PROJECT VERITAS DECISION OUT OF THE FIRST CIRCUIT, WHICH HELD THAT IN SIMILAR CLAIMS THEY WERE NOT RIPE BECAUSE THE UNIVERSE OF CONDUCT THAT PLAINTIFFS WERE

TRYING TO PUT AT ISSUE WAS TOO UNDEFINED, IT WAS TOO ABSTRACT. SO THE FIRST CIRCUIT IN THAT CASE SAID THIS IS NOT ACTUALLY JUSTICIABLE, LIKE, THE KIND OF CONDUCT THAT YOU ARE PUTTING AT ISSUE IN THIS CASE IS NOT JUDICIALLY UNDERSTANDABLE, AND FOR THAT REASON IT'S NOT AN APPROPRIATE CHALLENGE.

AGAIN --

**THE COURT:** IS IT THE GOVERNMENT'S POSITION, THEN, THAT YOU COULD NEVER MAKE A CONSTITUTIONAL CHALLENGE, A FACIAL CHALLENGE FOR THE FIRST AMENDMENT?

**MR. HELLAND:** NO, I THINK, YOU KNOW, THAT IT WAS DONE IN IANCU. IT DOES HAPPEN ALL THE TIME, AND THE QUESTION IS GOING TO BE, WHAT IS COVERED BY THOSE STATUTES, AND CAN THE COURT EVALUATE, YOU KNOW, HOW CLEAR IS IT THAT WHAT IS COVERED BY THOSE STATUTES IS OR IS NOT CONSTITUTIONALLY PERMISSIBLE. I THINK HERE IT'S VIRTUALLY IMPOSSIBLE FOR THE COURT TO DECIDE THAT, BECAUSE OF THE INFINITE SPEECH ISSUES THAT YOU'VE ALREADY MENTIONED.

I THINK YOU CAN COME UP WITH STATUTES, IANCU IS PROBABLY ONE. THE NINTH CIRCUIT CASE, KNUDSEN INVOLVED --

**THE COURT:** THIS FEELS CIRCULAR IN A WAY TO ME, BECAUSE WE ONLY GET TO THIS EXCEPTION IF YOU'RE TALKING ABOUT PROTECTED SPEECH, CORRECT?

THIS IS AN EXCEPTION FOR THE SECRETARY, BECAUSE ESSENTIALLY, ON THE ONE HAND, IT SAYS DON'T EVER DO THIS, WELL, UNLESS YOU DO THIS BECAUSE YOU DETERMINE THAT IT COMPROMISES A

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


COMPELLING U.S. FOREIGN POLICY INTEREST.

**MR. HELLAND:** YES.

**THE COURT:** SO IT'S, IT'S ONLY ESSENTIALLY ADDRESSING PROTECTED SPEECH.

**MR. HELLAND:** YES, AT LEAST FOCUSING ON THIS PART OF THE, WHAT THEY'RE CALLING THE DEPORTATION PROVISION. YES, IT IS.

**THE COURT:** AND SO, YOU'RE SAYING IT COULD NEVER BE FACIALLY CHALLENGED. THIS PARTICULAR STATUTE COULD NEVER BE FACIALLY CHALLENGED AS IT'S WRITTEN ON A FIRST AMENDMENT GROUND.

**MR. HELLAND:** YES, I THINK SUCH A CHALLENGE FAILS. I THINK THEY CAN BRING IT, AND IT FAILS. IT FAILS BECAUSE --

**THE COURT:** NOT JUST THESE PLAINTIFFS, ANY PLAINTIFFS?

**MR. HELLAND:** YES, I THINK THAT'S RIGHT.

I THINK THE STATUTE IS FACIALLY CONSTITUTIONAL SO SUCH A FACIAL CHALLENGE FAILS. THERE ARE, AS-APPLIED, CHALLENGES YOU COULD LOOK AT INSTANCES OF SPEECH FOR WHICH THAT WOULD VIOLATE THE FIRST AMENDMENT.

**THE COURT:** CAN YOU GIVE ME ANY EXAMPLE OF ANY OTHER STATUTE, ANY OTHER CONSTITUTIONAL PROVISION THAT YOU WOULD SAY IT JUST ALWAYS FAILS? RIGHT, NOBODY COULD EVER BRING SUCH A, SUCH A CLAIM.

**MR. HELLAND:** WELL, I MEAN, STATUTES THAT HAVE BEEN

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


HELD CONSTITUTIONAL, THAT HAVE BEEN UPHELD AGAINST FACIAL CHALLENGES, WOULD QUALIFY.

SO, THE FREE SPEECH COALITION CASE IN TEXAS, THE CONTENT, OF THE AGE RESTRICTION STATUTE THERE SURVIVED INTERMEDIATE SCRUTINY, SO THAT SURVIVED THE FACIAL CHALLENGE IN THE <u>HLP</u> CASE, WHICH WE TALKED ABOUT EARLIER, MATERIAL SUPPORT FOR TERRORIST TO THE EXTENT THAT INCLUDES SPEECH --

**THE COURT:** LET ME TRY THIS A DIFFERENT WAY.

DESCRIBE TO ME THE BURDEN, THE ROLE OF EACH PARTY IN THIS. RIGHT, PLAINTIFFS COME FORWARD AND SAY IT SAYS SPECIFICALLY HERE, THIS IS AN EXCEPTION, IT'S ALL BASED ON PROTECTED SPEECH. WE SAY IT'S SO WE CAN IDENTIFY, WE'VE GOT SOME PLAINTIFFS THAT ARE BRINGING THIS THAT FALL AT LEAST INTO THE CATEGORY OF PEOPLE WHO WOULD BE IMPACTED BY THIS. WE, OBVIOUSLY, CAN'T HAVE EVERY PERSON WHO WOULD EVER SPEAK BE INCLUDED AS A PLAINTIFF. WE RAISE THE ISSUE.

AT WHAT POINT, IF EVER, DOES THE BURDEN SHIFT TO THE DEFENSE?

**MR. HELLAND:** BURDEN SHIFTS TO THE DEFENSE TO PUT FORWARD THE COMPELLING INTERESTS THAT SUPPORT THE STATUTE'S APPLICATION ACROSS THE SPECTRUM THAT PLAINTIFFS HAVE PUT AT ISSUE. THAT'S WHEN THE BURDEN SHIFTS TO THE DEFENSE.

**THE COURT:** DID THAT HAPPEN HERE?

**MR. HELLAND:** I DON'T THINK IT HAS BECAUSE -- WELL, WE'RE HAPPY TO EXPLAIN WHY IT MAKES ANY STANDARD, BUT I DON'T

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


THINK PLAINTIFFS HAVE ADEQUATELY MAPPED OUT FOR YOUR HONOR THE SCOPE OF THE STATUTES IN THE FIRST PLACE. THE -- SO STATUTES, THEY SAY IT COVERS ALL SPEECH AND ALL SUCH SPEECH IS PROTECTED, BUT I THINK THE FIRST AMENDMENT ANALYSIS IS QUITE A BIT MORE CASE SPECIFIC THAN THAT, AND WE TALKED THROUGH THIS IN OUR PAPERS, BUT I THINK THE EXACT -- THE CONTENT OF THE SPEECH WOULD MATTER, WHETHER SOMETHING, YOU KNOW, EVEN IF NOT STRICTLY INCITEMENT, WHETHER IT CAN BE VIEWED AS ENCOURAGING VIOLENCE TOWARDS OTHERS. WEIGHING IN ON A PEACE DEAL THAT'S BEING NEGOTIATED ABROAD IT MIGHT BE SOMETHING THAT IMPLICATES VERY IMPORTANT UNITED STATES' FOREIGN POLICY INTERESTS, RIGHT, SO THIS IS A --

**THE COURT:** I'M NOT DOING A VERY GOOD JOB, I -- AND I MEAN, I'M NOT BEING -- THIS IS NOT HYPERBOLE. I FEEL LIKE THERE'S SOMETHING VERY SPECIFIC I WANT FROM BOTH SIDES ABOUT THIS, AND I NEED TO BE ASKING A BETTER QUESTION.

I WANT TO UNDERSTAND SPECIFICALLY WHAT EACH SIDE BELIEVES THAT THEY NEED TO SHOW TO BE SUCCESSFUL IN A CLAIM SUCH AS THIS, INCLUDING WHAT THEIR BURDEN IS, HOW THEY WOULD HAVE TO ARTICULATE THAT, AND THEN WHAT HAPPENS AT THAT JUNCTURE, IF THEY -- IF THEY DO THAT, WHAT HAPPENS, AND WHAT LEVEL OF SCRUTINY GETS APPLIED? WHERE DOES THAT HAPPEN? HOW DOES -- WHAT DOES THAT LOOK LIKE?

AND I WANT TO UNDERSTAND FROM EACH SIDE, SO I'M HEARING YOU SAY, WELL, THERE ARE CIRCUMSTANCES WHERE IT COULD BE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

ENOUGH, OR THERE HAVE BEEN CASES, BUT WHAT NEEDS TO BE PLED, WAS THAT PLED HERE? IF IT WASN'T, WHY WAS THAT DEFICIENT? AND ASSUMING IT WAS PROPERLY PLED, WHAT DOES THE GOVERNMENT HAVE TO DO ABOUT IT? AND WHAT LEVEL OF SCRUTINY DOES THE COURT HAVE TO -- WHAT'S THE FILTER THAT I HAVE TO LOOK THROUGH IN ORDER TO MAKE A DETERMINATION ABOUT WHETHER THE PLAINTIFF MET ITS BURDEN?

**MR. HELLAND:** SURE. SO, I THINK THEY --

**THE COURT:** SORRY, THAT WAS A LOT.

**MR. HELLAND:** THAT'S OKAY.

**THE COURT:** YOU CAN GO BACK TO THE TRANSCRIPT LATER WHEN YOU DO SUPPLEMENTAL BRIEFING.

**MR. HELLAND:** I'LL TAKE A STAB AT IT.

SO, I THINK THEY NEED TO PLEAD THAT THESE STATUTES COVER -- THEY NEED TO DESCRIBE THE SCOPE OF CONDUCT THAT THE STATUTES COVER AND MAKE SOME EFFORT TO EXPLAIN WHAT PARTS OF THEM ARE CONSTITUTIONAL AND WHAT PARTS OF THEM ARE NOT.

I DON'T THINK THEY'VE DONE THAT, EXCEPT TO SAY THAT IN THEIR VIEW IT'S ALL UNCONSTITUTIONAL. WE DISAGREE WITH THAT, AND SO, YOU KNOW, PART OF OUR BRIEFING HAS BEEN ON WHY WE THINK IT'S NOT SO BLACK AND WHITE AS THEY SEEM TO SAY, BUT THAT'S WHERE THEY'VE LEFT IT, RIGHT, THEY HAVE NOT ALLOWED THAT THERE IS ANY CONSTITUTIONAL USE FOR THE -- AT LEAST THE DEPORTATION PROVISION, RIGHT? SO I THINK THEY HAVEN'T PLED WHAT THEY NEED TO DO THERE.

NOW, ONCE YOU HAVE THAT TERRITORY, YOU HAVE WHAT IS AT ISSUE, THAT IS WHAT'S WHAT FALLS WITHIN THE STATUTE, AND WHAT DO THEY CONTEND ARE THE IMPERMISSIBLE USES WITHIN THE STATUTE, THEN I THINK YOU MOVE ON TO THE TIERED SCRUTINY LEVELS.

HERE, AGAIN, WE HAVE A DISPUTE. WE THINK THAT THE FACIALLY LEGITIMATE BONA FIDE STANDARD APPLIES. THEY THINK IT'S STRICT SCRUTINY, AT LEAST I UNDERSTAND THEM TO BE SAYING THAT IT'S A STRICT SCRUTINY, BUT WHEN YOU'RE IN THERE, THEN YOU APPLY THAT TO THE TWO DIFFERENT TERRITORIES OF THE STATUTE, AND YOU EVALUATE, HAS THE GOVERNMENT ARTICULATED COMPELLING REASONS FOR ITS ABILITY TO ACT IN THIS SPACE, AND ARE THERE OTHER WAYS THAT THE GOVERNMENT, ASSUMING IT'S A STRICT SCRUTINY, ARE THERE OTHER WAYS THE GOVERNMENT COULD ALSO ACHIEVE THOSE COMPELLING INTERESTS.

HERE, AT THE END OF THE DAY, OUR POSITION IS FOR THESE KINDS OF ISSUES, THESE FOREIGN POLICY KINDS OF ISSUES. CONGRESS ALREADY NARROWED THINGS SIGNIFICANTLY IN 1990 BY RAISING THE STANDARD, BY REQUIRING A FINDING BY THE SECRETARY --

**THE COURT:** I MEAN, AND TO BE CLEAR, THE GOVERNMENT ACTUALLY HASN'T FULLY BRIEFED THIS, RIGHT?

AND PERHAPS YOU DIDN'T FULLY BRIEF IT BECAUSE YOU DON'T THINK THAT THEY DID WHAT THEY NEEDED TO DO TO GET THE ISSUE TO YOU, BUT I DON'T FEEL LIKE THERE'S ANYTHING THAT I'VE RECEIVED, AND YOU CAN POINT ME TO SOMETHING IF I'VE MISSED IT, THAT GOES

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


THROUGH EXACTLY HOW, IF AT ALL, THE GOVERNMENT COULD HAVE MORE NARROWLY TAILORED THIS, OR WHY IT WAS IMPOSSIBLE TO DO SO.

**MR. HELLAND:** I THOUGHT THAT WE MADE THOSE ARGUMENTS, AND ESPECIALLY OUR SUPPLEMENTAL PAPERS IF NOT IN OUR MOTION FOR SUMMARY JUDGMENT ITSELF, BUT --

**THE COURT:** OKAY, SO POINT ME TO THAT, BECAUSE I HAVE IT IN FRONT OF ME.

**MR. HELLAND:** SURE.

SO DOCKET 84.

**THE COURT:** HAVE IT.

**MR. HELLAND:** IF YOU'LL JUST GIVE ME ONE SECOND.

SO PAGES THREE TO EIGHT THAT FALL UNDER THE HEADING THE STATUTE'S LEGITIMATE SCOPE IS BROAD. THIS IS WHERE WE MADE OUR ARGUMENT ABOUT INCLUDING LEGISLATIVE HISTORY, WHAT CONGRESS CONSIDERED AND COULD HAVE DONE DIFFERENTLY AND THEN --

**THE COURT:** I WILL TELL YOU, I HAVE -- I HAVE READ ALL OF THIS. I EVEN HAVE NOTES THAT ARE IN HERE, BUT CAN YOU POINT ME TO SOMETHING HERE, OR EVEN AN ARGUMENT THAT YOU HAVE, THAT -- AND MAYBE THE NUANCE OF WHICH I AM MISSING, THAT IS HERE, THAT WHERE THE GOVERNMENT IS ESSENTIALLY SAYING IT IS NOT POSSIBLE TO TAILOR THIS ANY MORE NARROWLY WITHOUT COMPROMISING NATIONAL SECURITY?

**MR. HELLAND:** I RECALL US SAYING, IT COULD NOT BE OTHERWISE, THAT IS, FOR THIS KIND OF STATUTE IT HAD TO BE DRAFTED LIKE CONGRESS DRAFTED IT. IN FOREIGN POLICY ARENAS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


CONGRESS PAINTS WITH A BROADER BRUSH. IT HAS TO BE ABLE TO ACCOUNT FOR THE UNKNOWN AND QUICKLY CHANGING CIRCUMSTANCES OF FOREIGN POLICY.

I RECALL SAYING THAT IN OUR PAPERS, AND I'M SAYING IT NOW, CERTAINLY IN FRONT OF YOU. AT THE VERY LEAST, I THINK IN OUR SUPPLEMENTAL -- RESPONSIVE SUPPLEMENTAL BRIEF, I RECALL SAYING IT COULD NOT BE OTHERWISE ON EXACTLY THIS ISSUE.

**THE COURT:** LET TURN BACK TO PLAINTIFF FOR A MINUTE WHILE YOU'RE LOOKING AT THIS.

IS A PLAINTIFF'S ARGUMENT AN OVERBREADTH ARGUMENT OR NOT?

**MR. FITZPATRICK:** NO, YOUR HONOR.

**THE COURT:** OKAY, IT'S JUST A STRAIGHT FACIAL CHALLENGE, CORRECT?

**MR. FITZPATRICK:** YES, YOUR HONOR.

**THE COURT:** OKAY, SO CAN YOU ANSWER THE QUESTION THAT THE COURT WAS ASKING?

**MR. FITZPATRICK:** ABSOLUTELY, YOUR HONOR, AND I KNOW THERE ARE A FEW ON THE TABLE, AND IF I LEAVE ANY BEHIND, PLEASE DO TELL ME.

SO, WITH RESPECT TO WHETHER OR NOT WE EVER DEFINED THE SCOPE OF WHAT WE'RE CHALLENGING, I WILL READ DIRECTLY FROM OUR COMPLAINT, WHERE WE DESCRIBED AND CATEGORIZE THE DEPORTATION PROVISION. THIS IS ON PAGE 44, AS USED IN THE PRAYER WORK FOR RELIEF DEPORTATION PROVISION, HAS THE SAME MEANING AS IN PARAGRAPH SEVEN ABOVE, WHERE WE LIMITED IT TO THE SECRETARY OF


AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

STATE OR OVERRIDING THE PROHIBITION ON USING PROTECTED SPEECH, AND THEN WE SAY DIRECT QUOTE, "TO BE CLEAR, PLAINTIFFS' LAWSUIT DOES NOT CHALLENGE THE SECRETARY'S SEPARATE EXCLUSION AUTHORITY. PLAINTIFFS CHALLENGE IS SOLELY TO 8 U.S.C. 1227(A)(4)(C)(I) AS APPLIED TO THE INITIATION OF DEPORTATION PROCEEDINGS BASED ON PROTECTED SPEECH."

SO IN OUR VIEW, THIS IS A TRADITIONAL FIRST AMENDMENT ATTACK ON THE STATUTE ON THE BASIS THAT IT IS FACIALLY VIEWPOINT-DISCRIMINATORY AND CONTENT-DISCRIMINATORY.

**THE COURT:** I JUST WANT TO KNOW THE PROCESS.

**MR. FITZPATRICK:** SURE.

SO, YOUR HONOR, THE PROCESS IS STRICT SCRUTINY, AND WE KNOW THAT BECAUSE OF THE PLAYBOY DECISION THAT WE DISCUSS IN OUR PAPERS, WHICH IS THAT WHEN A PLAINTIFF HAS STANDING TO CHALLENGE A STATUTE ON THE BASIS THAT IT IS CONTENT- OR VIEWPOINT-DISCRIMINATORY, THE GOVERNMENT HAS TO SURVIVE STRICT SCRUTINY. THEY MUST SHOW THAT THE STATUTE IS NARROWLY TAILORED IN THE LEAST RESTRICTIVE MEANS TO ACHIEVE A COMPELLING GOVERNMENTAL INTEREST, THAT IS THE TEST.

THE INTERPRETATION OF MOODY, THAT MY FRIEND ON THE OTHER SIDE IS ARGUING, I THINK, AS YOUR HONOR CORRECTLY NOTED, WOULD END FACIAL CHALLENGES. THERE WOULDN'T BE ANY WAY, SHORT OF A CLASS ACTION ENCOMPASSING ANYONE WHO COULD EVER BE CONCEIVABLY COVERED BY A STATUTE. HEAVEN KNOWS HOW YOU GET THROUGH CLASS CERTIFICATION THERE, BUT THAT WOULD BE THE ONLY CONCEIVABLE WAY

TO MAKE A FACIAL CHALLENGE, AND I THINK IN THE IMPERIAL SOVEREIGN VERSUS KNUDSEN DECISION, THAT'S WHAT THE NINTH CIRCUIT IS SAYING ISN'T NECESSARY, THAT WHEN YOU ARE SAYING THAT A GOVERNMENTAL ACTION, WHETHER IT'S A STATUTE, AN EXECUTIVE ORDER OR A PROHIBITION ON DRAG SHOWS IS EITHER CONTENT-BASED OR VIEWPOINT-BASED -- VIEWPOINT-BASED, WE GO TO STRICT SCRUTINY. IT'S WHAT WE'VE DONE FOR HALF A CENTURY, AND NOTHING IN MOODY CHANGES THAT.

NOW, THE STATUTES THAT MY FRIEND ON THE OTHER SIDE CITED WERE JUST STATUTES THAT HAPPENED TO SURVIVE THE REQUISITE LEVEL OF SCRUTINY IN FSC VERSUS PAXTON, THE LAW FOR -- THE LAW REGULATING INTERNET WEBSITES AND OBSCENE AS TO MINOR CONTENT, THE COURT FOUND THAT IT SATISFIED THE REQUISITE LEVEL OF SCRUTINY, BUT YOU STILL DID YOUR SCRUTINY ANALYSIS TO FIGURE OUT WHETHER STRICT SCRUTINY APPLIES, WHETHER INTERMEDIATE SCRUTINY APPLIES, OR WHETHER SOMETHING DIFFERENT APPLIES BECAUSE IT RELATES TO MINORS, AND THEN YOU GO ON YOUR WAY, YOU DO YOUR TRADITIONAL CONSTITUTIONAL ANALYSIS.

THE OTHER POINT, WITH RESPECT TO BONTA, AND WITH RESPECT TO THIS IDEA THAT THERE'S AN ENTIRELY NEW REGIME HERE FOR FIRST AMENDMENT CHALLENGES TO STATUTES IS, EVEN IF I ACCEPT HIS GAME BOARD, WHICH THE COURT KNOWS FROM OUR PAPERS WE DON'T. EVEN IF I ACCEPT HIS GAME BOARD, THEY'VE YET TO NAME ANY LEGITIMATE SUITE OF USING SOLELY PROTECTED SPEECH, WHICH IS THE SCOPE OF OUR CHALLENGE, THEY HAVE YET TO EXPLAIN TO THE COURT -- WITHOUT

USING NON-SPEECH CONDUCT -- THEY HAVE YET TO EXPLAIN WHAT THAT LEGITIMATE SWEEP COULD BE.

**THE COURT:** WHEN DID THAT BURDEN SHIFT TO THEM?

**MR. FITZPATRICK:** THE BURDEN SHIFTS TO -- THE BURDEN SHIFTS TO THEM TO DEFEND A STATUTE ON THE BASIS -- TO DEFEND A VIEWPOINT-DISCRIMINATORY AND CONTENT-DISCRIMINATORY STATUTE, SO ONCE WE SHOW THAT THE STATUTE DISCRIMINATES BASED ON VIEWPOINT AND CONTENT, WHICH I BELIEVE WE HAVE, THE DEPORTATION PROVISION IS NECESSARILY CONTENT- AND VIEWPOINT-BASED, BECAUSE IT REQUIRES THE SECRETARY OF STATE'S DETERMINATION THAT THIS THING YOU SAID, I THINK IT IMPERILS AMERICA -- AMERICAN FOREIGN POLICY, AND SO, THEREFORE, I AM RENDERING YOU REMOVABLE FROM THIS COUNTRY.

THAT IS TEXTBOOK VIEWPOINT- AND CONTENT-DISCRIMINATION, BECAUSE SOMEONE WHO VOICED THE OPPOSITE OPINION THAT SUPPORTED THE SECRETARY OF STATE'S FOREIGN POLICY WOULD NOT BE REMOVABLE, SO IT'S FACIALLY VIEWPOINT-DISCRIMINATORY AND CONTENT-DISCRIMINATORY, BUT IT'S BAKED INTO THE STATUTE.

**THE COURT:** IS THERE ANY REASONABLE INTERPRETATION OF MOODY THAT IT REQUIRES A BIT OF A HYBRID, WHICH IS, WHEN YOU'RE GETTING INTO THIS AREA AND YOU'RE, KIND OF, CARVING OUT THIS PIECE THAT'S HERE, IT'S FACIAL, BUT ONLY AS APPLIED IN A, YOU KNOW, IN A PARTICULAR AREA HERE, AS IT RELATES TO PROTECTED SPEECH. THAT YOU STILL HAVE THE OBLIGATION AS A PLAINTIFF, EVEN IF STRICT SCRUTINY APPLIES, YOU STILL HAVE THE OBLIGATION

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


TO SAY, WHAT ARE -- WHAT ARE THE UNIVERSE OF APPLICATIONS THAT THERE MIGHT BE, AND HOW DOES THIS COMPARE TO THAT?

**MR. FITZPATRICK:** I SUPPOSE SO. SO, HERE ARE MY THOUGHTS. HERE ARE MY THOUGHTS ON THAT.

WITH RESPECT TO THE UNIVERSE OF APPLICATIONS, WE DID THAT WITH HOW WE FRAMED OUR CLAIMS, WHICH IS THAT WE LIMITED IT TO THE USE OF THESE STATUTES BASED ON PROTECTED SPEECH, SO THE UNIVERSE, AND THIS IS, I THINK, CLEAR IN OUR COMPLAINT, THE UNIVERSE OF THE POTENTIAL APPLICATIONS OF THESE STATUTES THAT'S AT ISSUE IS REVOKING A VISA BASED ON PROTECTED SPEECH, THAT'S THE UNIVERSE THAT WE'RE DEALING WITH HERE, AND RENDERING SOMEONE DEPORTABLE BASED ON PROTECTED SPEECH.

SO IF -- OUR ARGUMENT FROM THE VERY BEGINNING HAS BEEN THAT CIRCLE, THOSE DETERMINATIONS BEING BASED ON PROTECTED SPEECH, 100 PERCENT OF THAT CIRCLE NECESSARILY VIOLATES THE FIRST AMENDMENT BECAUSE OF BRIDGES VERSUS WIXON AND AADC.

IN YOUR HONOR'S MOST RECENT COLLOQUY WITH MY FRIEND ON THE OTHER SIDE, ONE OF THE EXAMPLES HE GAVE OF WHAT MIGHT BE A LEGITIMATE GOVERNMENTAL INTEREST IN REVOKING SOMEONE'S VISA FOR SPEECH WAS QUOTE, "WEIGHING IN ON A PEACE DEAL," END QUOTE.

YOUR HONOR, THE GOVERNMENT IS ARGUING THAT IF STANFORD DAILY PUBLISHES A NON-CITIZENS EDITORIAL CRITICIZING THE PROPOSED PEACE DEAL WITH IRAN RIGHT NOW, THAT THAT IS A COMPELLING FOREIGN POLICY INTEREST, AND THE SECRETARY OF STATE CAN RENDER THEM DEPORTABLE.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



THAT IS WHY WE SAY THAT THESE STATUTES HAVE NO LEGITIMATE SWEEP IN TERMS OF HOW WE ARE CHALLENGING THEM, AND TO GET THERE WE NEED ONLY GO TO MOODY, BECAUSE MOODY MADE CLEAR -- AND I BELIEVE THE CITE FOR THIS IS ON PAGE 470 BUT I'LL SEE -- I'LL SEE HOW GOOD -- I SEE HOW -- I'LL SEE HOW GOOD MY MEMORY IS. WHERE IT'S WHEN IT EXPLAINED THAT RESTRICTING SPEECH IS NEVER A LEGITIMATE GOVERNMENTAL INTEREST, IT IS NEVER A LEGITIMATE SWEEP FOR THE GOVERNMENT TO PUT A THUMB ON THE SCALE OF PUBLIC DEBATE, THAT IS WHAT THE FIRST AMENDMENT IS ABOUT.

**THE COURT:** IS IMMIGRATION DIFFERENT? IS NATIONAL SECURITY DIFFERENT?

**MR. FITZPATRICK:** NO, YOUR HONOR -- NO, YOUR HONOR, IT'S -- NO, YOUR HONOR, IT'S NOT.

AND I -- THE SUPREME COURT IN ROBEL SAID, QUOTE, "FACED WITH A CLEAR CONFLICT BETWEEN A FEDERAL STATUTE ENACTED IN THE INTEREST OF NATIONAL SECURITY AND AN INDIVIDUAL'S EXERCISE OF HIS FIRST AMENDMENT RIGHTS, WE HAVE CONFINED OUR ANALYSIS TO WHETHER CONGRESS HAS ADOPTED A CONSTITUTIONAL MEANS IN ACHIEVING ITS PLAINLY, CONCEDEDLY LEGITIMATE LEGISLATIVE GOAL," END QUOTE.

NO DOUBT NATIONAL SECURITY IS IMPORTANT, BUT CONGRESS HAS ENUMERATED POWERS UNDER OUR CONSTITUTION, AND THOSE POWERS ARE LIMITED BY THE FIRST AMENDMENT.

THEN THE SUPREME COURT ALSO IN HOLDER - THIS IS ON PAGE 34 OF HOLDER - QUOTE, "PRECEDENTS OLD AND NEW MAKE CLEAR THAT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

CONCERNS OF NATIONAL SECURITY AND FOREIGN RELATIONS DO NOT WARRANT ABDICATION OF THE JUDICIAL ROLE," END QUOTE.

YOUR HONOR, THIS IDEA THAT THE GOVERNMENT HAS PRESENTED, THAT IF SOMEONE'S SPEECH IS CONTRARY TO THE NATIONAL INTEREST, THAT THEY'D BE ABLE TO STEP IN, IS A VERY DISTINCTLY UN-AMERICAN APPROACH TO SPEECH, AND WE GIVE SOME OF THE EXAMPLES IN OUR PAPERS. WHERE THE CHINESE CONSTITUTION, ARTICLE 51 PROVIDES THAT ITS CITIZENS HAVE FREEDOM OF SPEECH UNLESS IT CONFLICTS WITH THE INTEREST OF THE STATE. SO TOO DOES THE RUSSIAN FEDERATION.

SO THE IDEA THAT THERE'S SOME, THAT THERE IS SOME NARROW LOOPHOLE FOR THE GOVERNMENT TO BE ABLE TO CENSOR SPEECH JUST BASED ON NATIONAL INTERESTS. WELL, WE KNOW FROM THE EXPERIENCE OF COUNTRIES LIKE CHINA AND RUSSIA THAT THAT IS A LOOPHOLE WITH INFINITE DIAMETER, AND THE FIRST AMENDMENT FOREVER CLOSES THIS, AND WE KNOW THIS GOING ALL THE WAY BACK TO THE 1790S. GOING BACK TO THE ALIEN FRIENDS ACT, WHICH ALLOWED JOHN ADAMS TO DEPORT ANY NONCITIZEN HE DEEMED DANGEROUS TO THE UNITED STATES. JUSTICE GORSUCH CALLED THE ALIEN FRIENDS ACT "ONE OF THE MOST NOTORIOUS LAWS IN OUR COUNTRY'S HISTORY." JAMES MADISON CALLED "IT A MONSTER THAT MUST FOREVER DISGRACE ITS PARENTS." JUSTICE GORSUCH EXPLAINED THAT THAT LAW LIKELY LED TO THE EXTINCTION OF THE FEDERALIST PARTY.

THIS COUNTRY, MORE THAN 225 YEARS AGO, PUT TO BED THE IDEA THAT WE ARE GOING TO THROW OUT FOREIGNERS BECAUSE WE DON'T LIKE

WHAT THEY HAVE TO SAY. THAT WAS THE LAW IN THE 1790S WHEN WE WEREN'T GOING TO THROW OUT THE FRENCH AND THE IRISH AND THE DUTCH, WHO SYMPATHIZE WITH THE FRENCH REVOLUTION, AND IT'S THE LAW TODAY.

MY COLLEAGUE CANNOT POINT TO A SINGLE CONSTITUTIONAL EXAMPLE THAT WOULD NOT VIOLATE BRIDGES VERSUS WIXON OR AADC, WHERE SOMEONE'S OPINION COULD -- QUOTE -- "COULD MEET THE RIGOROUS TEST OF STRICT SCRIPT."

**THE COURT:** OKAY, I WANT TO TAKE A BREAK FOR A MOMENT, AND THINK ABOUT WHAT OUR TIME LOOKS LIKE AT THIS JUNCTURE.

WE'RE GETTING CLOSE TO 12:30.

(OFF THE RECORD DISCUSSIONS WERE HELD.)

**THE COURT:** MOMENTARILY WE'RE GOING TO TAKE A BREAK FOR LUNCH, AND THEN FOR THE COURT TO HEAR ANOTHER CASE THAT IT WILL HAVE, AND THEN IT WILL COME BACK TO THIS CASE AS SOON AS IT'S AVAILABLE. I SUSPECT THAT THAT'S GOING TO BE PROBABLY AROUND SOMEWHERE BETWEEN 2:30 AND 2:45.

I WANT TO BE CLEAR ABOUT SOME OF THE THINGS I WANT TO BE SURE THAT WE GET TO.

I CAN IMAGINE PERHAPS FOR SOME OF THE PEOPLE WHO ARE LISTENING, PERHAPS FOR COUNSEL, THEMSELVES, THIS FEELS MESSY AND CONVOLUTED IN SOME WAYS. IT MIGHT BE HARD PROCEDURALLY TO BE ABLE TO FOLLOW IT, AND IT'S A CRITICALLY IMPORTANT ISSUE.

I MEAN, IT'S NOT JUST IMPORTANT FOR THE PLAINTIFFS WHO

HAVE RAISED THIS ISSUE, BUT IT'S A CRITICALLY IMPORTANT ISSUE IN THE UNITED STATES, I MEAN, JUDGE YOUNG INDICATED IN THE AAUP CASE, IT WAS PROBABLY IN HIS VERY LONG JUDICIAL CAREER, IT MAY HAVE BEEN THE MOST IMPORTANT CASE HE EVER HEARD, OR CERTAINLY AMONG THEM. AND I RECOGNIZE THAT THE ISSUES, CERTAINLY OF NATIONAL SECURITY AND NATIONAL POLICY AND IMMIGRATION POLICY, ARE OF GREAT INTEREST TO MANY OF THE PEOPLE IN THIS COUNTRY, INCLUDING THE, YOU KNOW, THE LEADERS WHO ARE MAKING THE DECISIONS ABOUT THESE THINGS. AND SO, YOU FIND ME GOING BACK AND FORTH BETWEEN THE UNDERLYING SUBSTANCE, WHICH IS SIGNIFICANT, BUT REALLY VERY MUCH TRYING TO BE SURE PROCEDURALLY I APPROACH THIS CASE PROPERLY, AND IT'S TRICKY BECAUSE THERE'S NOT MANY OTHER THINGS OUT THERE LIKE IT.

I'M HAVING A BENCH TRIAL, SET IN AIR QUOTES, THAT I HAVE UP HERE WITHOUT ANY DIRECT EVIDENCE THAT HAS COME THROUGH HERE, ONLY EVIDENCE THAT'S COME IN IN ANOTHER PROCEEDING THAT BOTH PARTIES ARE NOT WILLING FOR ME AT THIS -- AT THIS JUNCTURE TO FULLY CAPTURE ALL OF THE FACTUAL FINDINGS FROM, LET ALONE THE CONCLUSIONS OF LAW, BECAUSE OF THE POSTURE OF THAT CASE, OF NOT CLEARLY HAVING A PATH FORWARD BASED ON ANOTHER CASE THAT IS SIMILAR THAT THE COURT COULD SPECIFICALLY LOOK TO OF EXACTLY HOW TO DO THIS.

AND FOR A FIRST AMENDMENT CHANNEL CHALLENGE, WERE THERE EVEN FUNDAMENTAL DIFFERENCES BETWEEN THE PARTIES ABOUT EXACTLY WHAT IT IS THE PLAINTIFF NEEDS TO ALLEGE WHEN THE BURDEN SHIFTS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


TO THE DEFENSE, AND EXACTLY WHAT THE DEFENSE NEEDS TO DO WITH IT, AND EVEN ASSUMING, AS THE COURT IS INCLINED TO DO SO HERE, THAT WHAT THE COURT IS TALKING ABOUT IS STRICT SCRUTINY. DO I HAVE THE RECORD THAT I NEED FOR THAT, IN TERMS OF IN, IN INCLUDING, YOU KNOW, HAS THE PLAINTIFF DONE ENOUGH IN THAT REGARD, AND HAS THE DEFENSE PROVIDED THE COURT WITH ENOUGH TO UNDERSTAND WHETHER THE COURT, WHETHER THE GOVERNMENT HAS ADEQUATELY NARROWLY TAILORED THIS, IF STRICT SCRUTINY APPLIES?

AND I WILL ULTIMATELY BE ABLE TO FIGURE OUT HOW TO APPLY WHATEVER THE RECORD IS HERE TO THE LAW, BUT I REALLY WANT TO BE SURE THAT I HAVE THE PROCEDURE RIGHT AND I HAVE THE LAW CORRECT, AND I -- THAT IS WHERE I'M MOST LOOKING TO YOU TO HELP ME WITH. AND I'M QUITE CONFIDENT AT THIS POINT, NO MATTER HOW THOROUGH OF A JOB YOU HAVE DONE, I'M GOING TO WANT YOU TO DISTILL THAT A LITTLE BIT MORE FOR ME PROCEDURALLY. WE CAN TALK ABOUT THAT AT THE VERY END TODAY, ABOUT WHAT THAT MIGHT LOOK LIKE.

I ALSO WILL HAVE A CHANCE TO CLEAR MY HEAD AND THINK THROUGH WHAT ARE SOME OF THE MORE SPECIFIC QUESTIONS THAT I HAVE, BUT I DO WANT YOU TO BE SURE THAT YOU ADEQUATELY ARGUE THE ISSUES OF THE FIFTH AMENDMENT AS WELL, AND THE VAGUENESS ISSUES THAT HAVE BEEN ALLEGED, AND SO, I UNDERSTAND THAT ON ITS OWN, AND THE INTERSECTION BETWEEN THAT AND THE FIRST AMENDMENT ARGUMENTS, IF ANY, THAT THERE ARE.

DOES ANYBODY HAVE ANY QUESTIONS BEFORE WE TAKE A BREAK?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


**MR. HELLAND:** MY ONLY REQUEST IS, CAN I POINT YOU TO THE PLACES IN THE BRIEFING THAT I WAS LOOKING FOR PREVIOUSLY, WHERE WE DID ARGUE NARROW TAILORING? I CAN GET THEM ON THE RECORD, AND THEN PERHAPS DURING RECESS YOU CAN REFER TO THEM.

**THE COURT:** SURE. SURE.

**MR. HELLAND:** IN OUR SUPPLEMENTAL BRIEF DOCKET 84 ON PAGE 13, WE TALK ABOUT NARROW TAILORING AND WE ACTUALLY CITE THERE OUR MOTION FOR SUMMARY JUDGMENTS, REFERRING BACK.

AND THEN AGAIN IN DOCKET 90, OUR RESPONSIVE SUPPLEMENTAL BRIEF, PAGE 9. THE FIRST FULL PARAGRAPH WE TALK ABOUT THIS ISSUE AGAIN.

**THE COURT:** OKAY, AND TO THE EXTENT, I KNOW I MENTIONED IT BEFORE, BUT I'D LIKE TO UNDERSTAND WHAT THE RESPECTIVE VIEWS ARE ABOUT THIS COURT'S PREVIOUS DETERMINATION AND PRICHETT, HOW IT'S RELATED, IF AT ALL, AND IF YOU THINK THAT THE COURT GOT IT WRONG, WHY THAT IS.

ARE THERE ANY OTHER QUESTIONS?

**MR. FITZPATRICK:** JUST A HOUSEKEEPING QUESTION, YOUR HONOR.

MAY WE KEEP OUR STUFF HERE AT COUNSEL TABLE, OR WOULD THE COURT PREFER FOR US TO PACK UP?

**THE COURT:** NO, YOU MAY KEEP ALL OF YOUR MATERIALS HERE.

**MR. FITZPATRICK:** THANK YOU.

**MR. HELLAND:** THANK YOU.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**THE COURT:** ALL RIGHT. THANK YOU.

HOLD ON ONE SECOND.

COUNSEL, ONE CLARIFYING POINT. BECAUSE I WILL TAKE THE FOLKS FOR PRETRIAL AHEAD OF TIME, IF YOU CAN JUST BE SURE THERE'S ENOUGH CLEARED SPACE AT THE TABLE, BUT YOU DO NOT NEED TO REMOVE EVERYTHING THAT YOU HAVE FROM THE COURTROOM, BUT THERE'S ENOUGH SPACE FOR COUNSEL TO BE ABLE TO DEAL WITH THE PRETRIAL WHEN THEY COME IN, I WOULD APPRECIATE THAT.

**MR. FITZPATRICK:** OF COURSE, YOUR HONOR.

**THE COURT:** ALL RIGHT. THANK YOU VERY MUCH.

I WILL SEE YOU LATER THIS AFTERNOON.

(RECESS FROM 12:33 P.M. UNTIL 2:42 P.M.)

**THE CLERK:** ALL RISE.

THIS COURT IS AGAIN IN SESSION.

RECALLING 25-CV-06618, STANFORD DAILY PUBLISHING CORPORATION ET AL., VERSUS RUBIO, ET AL.

MAY I PLEASE HAVE APPEARANCES, BEGINNING WITH THE PLAINTIFF.

**MR. FITZPATRICK:** GOOD AFTERNOON, YOUR HONOR.

CONOR FITZPATRICK HERE ON BEHALF OF PLAINTIFFS, ALONG WITH MY COLLEAGUES COLIN MCDONELL AND MARK VAN DER HOUT.

**MR. HELLAND:** GOOD AFTERNOON, YOUR HONOR. ASSISTANT U.S. ATTORNEY KELSEY HELLAND FOR THE GOVERNMENT.

**THE COURT:** THANK YOU.

WE ALSO -- PLEASE BE SEATED.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


WE ARE ALSO BACK ON AN AUDIO FOR ZOOM, FOR THE BENEFIT OF EVERYBODY WHO IS LISTENING TO THE AUDIO STREAM, AS WELL AS EVERYBODY WHO IS HERE IN THE COURT.

JUST A REMINDER, WITH THE EXCEPTION OF THE PEOPLE WHO ARE UP AT COUNSEL'S TABLE, NOBODY MAY HAVE ANY DEVICE OUT WHATSOEVER. IF YOU HAVE A DEVICE, PLEASE TURN IT OFF ENTIRELY, AND BE SURE THAT IT IS PUT AWAY. THERE IS NO RECORDING OF THIS EVENT IN THIS HEARING IN ANY WAY, MEANING NO AUDIO RECORDING, NO VIDEO RECORDING BY ANY DEVICE OR BY ANY MEANS.

WE ARE PICKING UP WHERE WE LEFT OFF THIS MORNING, IT IS -- IT WAS A FULL MORNING. I'M GLAD EVERYBODY'S HAD A LITTLE BIT OF A TIME IN BETWEEN TO PERHAPS THINK ABOUT HOW BEST TO DISTILL SOME OF THE REMAINING ISSUES THAT WE HAVE.

I WOULD WELCOME COUNSEL TO RETURN UP TO THE PODIUMS.

I'M GOING TO START WITH PLAINTIFFS FOR A MOMENT. WHAT DO YOU THINK IS THE MOST USEFUL AND PRODUCTIVE WAY TO GET THROUGH THE REMAINING ISSUES THAT WE HAVE TO ADDRESS TODAY?

**MR. FITZPATRICK:** SO, YOUR HONOR, I SUPPOSE MY THOUGHT IS THAT I KNOW THE GOVERNMENT AND I ARE HERE TODAY PRINCIPALLY TO ADDRESS THE COURT'S CONCERNS.

OVER THE BREAK I ENDEAVORED TO LOOK INTO THE ISSUES THAT THE COURT ASKED BOTH SIDES TO LOOK INTO. I'M CERTAINLY PREPARED TO ADDRESS THOSE. I DO WANT TO MAKE SURE, AS YOUR HONOR MENTIONED BEFORE THE BREAK, THAT WE HAVE SUFFICIENT TIME TO ADDRESS THE VAGUENESS, THE FIFTH AMENDMENT CHALLENGE,

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


BECAUSE THAT WILL HAVE A LOT OF UNIQUE ASPECTS TO IT THAT THE FIRST AMENDMENT CLAIM DOESN'T, SO FOR EXAMPLE, MOODY SIMPLY DOESN'T APPLY TO OUR FIFTH AMENDMENT CLAIM IN THE WAY THAT IT DOES TO OUR FIRST AMENDMENT CLAIM, SO I DO WANT TO MAKE SURE THAT WE HAVE ENOUGH TIME FOR THAT.

SO I AM MORE THAN HAPPY TO TAKE THE COURT'S LEAD ON THIS. I DON'T HAVE THIS, DESPITE THE FACT THAT I PRINTED OUT AND HANDED THE COURT AN AGENDA, I DO NOT HAVE A SET AGENDA THAT I --

**THE COURT:** I WAS GOING TO ASK THIS TO BOTH SIDES. I'M JUST THINKING, YOU KNOW, COUNSEL IS ON BOTH SIDES HERE, I THINK IS, YOU KNOW, VERY WELL VERSED IN THE FACTS AND THE LAW, IS EXCELLENT COUNSEL. IT'S A PRIVILEGE TO LISTEN TO BOTH OF YOU, AND TO HEAR THE ARGUMENTS THAT YOU HAVE.

BUT BECAUSE YOU'RE AS WELL VERSED IN THESE ISSUES AS YOU ARE, AND YOU CAN, I'M SURE YOU'RE GETTING A SENSE OF WHAT THE COURT IS GRAPPLING WITH, TRYING TO DECIDE WHAT MAKES THE MOST SENSE. DOES IT MAKE THE MOST SENSE RIGHT NOW TO TAKE A DIVE INTO THE FIFTH AMENDMENT, TO BE SURE THAT WE HAVE COVERED THAT, AND THEN TO GO BACK AND, SORT OF, COVER THE OUTSTANDING ISSUES THAT ARE HERE OR DO YOU THINK THAT THERE'S SOME BETTER WAY TO APPROACH IT?

**MR. FITZPATRICK:** SO, YOUR HONOR, ONE THING I MIGHT SUGGEST IS TO COVER IS TO, TO THE EXTENT WE CAN, PERHAPS TIE A BOW ON THE MOODY AND THE SCOPE DISCUSSION. I'M PREPARED TO

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

DISCUSS THE PRICHETT CASE THAT I KNOW YOUR HONOR RAISED BEFORE THE BREAK AND WONDERED ABOUT OUR THOUGHTS ON, OR WE CAN GO DIRECTLY TO DATES.

**THE COURT:** HOW DO YOU FEEL ABOUT THAT?

**MR. HELLAND:** THAT'S FINE, I THINK WE PROCEED THAT WAY.

**THE COURT:** I MEAN, IF EITHER OR BOTH OF YOU CAN TIE A BOW ON THIS MORNING, THAT WOULD BE LOVELY. I WOULD REALLY APPRECIATE THAT.

I WOULD ALSO ACKNOWLEDGE THAT THE NETCHOICE CASE, IMPERIAL SOVEREIGN, THESE ARE CASES THAT CAME OUT FOLLOWING THE BRIEFING THAT WE HAD HERE AND SO, TO THE EXTENT THAT THERE WAS SOMETHING FURTHER THAT YOU HAVE TO SAY ABOUT THAT THAT HASN'T BEEN SAID ALREADY, I WOULD WELCOME THAT.

BUT OKAY, WITH THAT IN MIND, WHY DON'T YOU SEE WHAT YOU CAN DO ABOUT RE -- YOU KNOW, CLOSING UP THE ISSUES FROM THIS MORNING, PARTICULARLY AS THEY RELATED TO THE FIRST AMENDMENT AND THE CONCERN THAT THE COURT HAS, STARTING ON THE PLAINTIFF'S SIDE. I'LL GO TO THE DEFENSE, AND THEN WE'LL MOVE TO THE FIFTH AMENDMENT.

**MR. FITZPATRICK:** CERTAINLY, YOUR HONOR, AND THANK YOU.

AND I APPRECIATE THE COURT COMMENDING PRICHETT VERSUS NEWSOM TO OUR ATTENTION, BECAUSE I ACTUALLY THINK IT CAN HELP US QUITE A BIT HERE ON THE MOODY ISSUE. WHEN I WAS

RE-REVIEWING IT OVER THE BREAK, AND I FIRST TURNED TO PAGE 7, AND I NOTICED THE COURT'S CONCERN THAT AT THE HEARING ON THE MOTION, PLAINTIFFS CONCEDED THAT THEY WERE NOT ARGUING THAT EVERY ASPECT OF AB 715 WAS UNCONSTITUTIONAL, AND THAT, OF COURSE, PRESENTED A PROBLEM FOR THE COURT IN A TRADITIONAL FACIAL TYPE ANALYSIS, BECAUSE YOU HAVE A -- YOU HAVE A LOT OF POTENTIALLY NONSPEECH-BASED APPLICATIONS, AND YOU HAVE TO JUDGE, OKAY, IF THERE ARE SOME FIRST AMENDMENT CONCERNS HERE, HOW DO WE WEIGH THAT? AND THEN A FEW PAGES LATER, I THINK ON PAGE 17, THE COURT EXPRESSED CONCERN THAT THE PLAINTIFFS THERE HAD NOT SORT OF CABINED AND ENUNCIATED THE SCOPE OF THEIR CHALLENGE IN A MANNER THAT WAS SUFFICIENTLY HELPFUL TO THE COURT.

WHAT WE'VE ENDEAVORED TO DO HERE, YOUR HONOR, IS IDEALLY TO DO THAT WORK FOR THE COURT THROUGH A HYBRID CHALLENGE, SO I THINK YOUR HONOR WOULD BE FACING VERY SIMILAR ISSUES TO THE PRICHETT CASE IF WE HAD JUST TAKEN ON THE DEPORTATION AUTHORIZATION, NOT THE OVERRIDE, JUST THE DEPORTATION BASED ON FOREIGN POLICY AUTHORIZATION OR THE VISA REVOCATION STATUTE AS A WHOLE. IF WE HAD NEVER LIMITED OUR CHALLENGE TO REVOCATIONS BASED ON PROTECTED SPEECH OR THE SECRETARY OF STATE'S PERSONAL DETERMINATION TO OVERRIDE THE PROHIBITION, I THINK YOUR HONOR WOULD BE IN A VERY SIMILAR SPOT, BUT HERE WE HAVE INTENTIONALLY CONFINED THE SCOPE OF OUR CHALLENGE IN A WAY THAT I THINK MAKES IT MATERIALLY DIFFERENT IN A MORE HELPFUL WAY TO THE COURT THAN

PRICHETT, BECAUSE ALL OF THE APPLICATIONS, IN TERMS OF OUR CHALLENGE, IN OUR HYBRID CHALLENGE, ALL OF THE APPLICATIONS RELATE TO SPEECH, BECAUSE WE ARE ONLY CHALLENGING THEM INSOFAR AS THEY ALLOW ENFORCEMENT, IMMIGRATION ENFORCEMENT BASED ON PROTECTED SPEECH.

I DIRECT THE COURT'S ATTENTION TO PAGE 17 OF THE PRICHETT ANALYSIS, WHEN THE COURT SAID, THE COURT IS WITHOUT AN ADEQUATE RECORD TO TACKLE THE CHALLENGE. IN ITS 13 SECTIONS, AB 715 AMONG OTHER THINGS, AMENDS SEVERAL STATUTES AND CREATES AN ENTIRELY NEW GOVERNMENT AGENCY. PLAINTIFFS HAVE NOT PUT FORTH THE FULL RANGE OF ACTIVITIES COVERED BY THE LAW NECESSARY TO ALLOW THE COURT TO MEASURE THE CONSTITUTIONAL AGAINST THE UNCONSTITUTIONAL APPLICATIONS OF THE LAW.

SO WE DON'T HAVE THAT PROBLEM HERE, BECAUSE THROUGH OUR HYBRID CHALLENGE, THAT'S THE WORK WE WERE -- THAT'S THE WORK WE'VE DONE ALREADY, SO THE COURT DOESN'T HAVE TO DO IT.

THE COURT DOESN'T HAVE TO WEIGH THE SPEECH APPLICATIONS VERSUS THE NON-SPEECH APPLICATIONS, BECAUSE OUR CHALLENGE ONLY RELATES TO THE SPEECH APPLICATIONS, AND THAT, YOUR HONOR, I THINK CONSIDERABLY HELPS WITH THE MOODY ANALYSIS.

IT HAS BEEN FIRST AMENDMENT LAW FOR DECADES THAT WHEN YOU ARE CHALLENGING A STATUTE THAT IS VIEWPOINT- OR CONTENT-DISCRIMINATORY ON ITS FACE, YOU FOR -- THE PLAINTIFFS' BURDEN IS TO SHOW THAT IT -- THAT IT REGULATES PROTECTED SPEECH, AND I HAVE NOT UNDERSTOOD MY COLLEAGUE ON THE OTHER

SIDE AT ANY TIME TODAY, OR IN THE BRIEFING, TO ARGUE THAT THE STATUTES DO NOT PERMIT REGULATION OF PROTECTED SPEECH. IF I'M MISTAKEN ON THAT, I'M SURE MY FRIEND WILL CORRECT ME.

SO THAT MEANS OUR CHALLENGE HERE IS SOLELY TO TWO STATUTES, AND THE SCOPE OF OUR CHALLENGE IS PURE SPEECH. I AM NOT AWARE OF ANY BASIS WHERE ONCE THERE IS AN AGREEMENT THAT A STATUTE REGULATES SPEECH AND AN ARGUMENT FROM THE PLAINTIFF THAT IT DOES SO IN A VIEWPOINT- AND CONTENT-DISCRIMINATORY WAY, THAT THE NEXT STEP ISN'T THAT THE GOVERNMENT HAS TO SHOW THAT IT SATISFIES THE REQUISITE LEVEL OF SCRUTINY.

SO THAT'S YOUR HONOR, WHERE I, WHERE I THINK PRICHETT CAN BE, CAN BE QUITE HELPFUL WHEN IT COMES TO THIS CASE, IN TERMS OF THE WORK THAT THE COURT SEEMED TO BELIEVE HADN'T BEEN DONE THERE IN TERMS OF SEPARATING OUT THE SPEECH VERSUS THE NON-SPEECH APPLICATIONS. AND ALLOWING THE COURT TO KNOW WHAT ARE YOU ACTUALLY CHALLENGING HERE, AND HOW CAN I SEPARATE THE SPEECH FROM THE NON-SPEECH? WE'VE DONE THAT WORK FOR THE COURT ALREADY.

**THE COURT:** I ASKED A QUESTION EARLIER TODAY, PERHAPS NOT VERY ARTFULLY, ABOUT HOW TO SQUARE MOODY AND WHAT CAME BEFORE IT, AND PERHAPS THE LACK OF CERTAINTY AROUND HOW CLEARLY DOES THAT ADDRESS THINGS THAT ARE OVERBROAD VERSUS A CHALLENGE THAT'S JUST A STRAIGHT FACIAL CHALLENGE ON PROTECTED SPEECH, AND I HAVEN'T HAD A CHANCE TO THINK THIS THROUGH SINCE THIS MORNING, AND I -- IT WILL BE ALMOST CERTAINLY SOMETHING I WOULD

-- I'M GOING TO INCLUDE AMONG THE THINGS THAT WE'LL GET TO YOU IN WRITING THAT I'D LIKE SOME GREATER CLARIFICATION AROUND, BUT IT OCCURS TO ME EVEN IF THIS WASN'T SQUARELY WITHIN WHAT THE SUPREME COURT WAS THINKING ABOUT AT THE TIME, THAT THERE ARE SOME CHALLENGES THAT ARE FAIRLY NARROW.

IN SOME OF THESE CHALLENGES, THESE FACIAL CHALLENGES THAT HAVE BEEN MADE, THEY'RE VERY SPECIFIC, THEY'RE VERY NARROW, YOU KNOW, YOU CAN'T -- YOU CAN'T HAVE TRANS STORY HOUR, IT'S, IT'S JUST, IT'S ONE THING, IT'S NARROW, IT'S, IT DOESN'T OPEN UP A BOX OF OTHER POTENTIAL THINGS, AND SO, WHILE HERE, PLAINTIFF DIDN'T MAKE AN OVERBROAD CHALLENGE, THE VERY NATURE OF THE FACIAL CHALLENGE THAT'S HERE IS -- BECAUSE IT'S ALL SPEECH ABOUT THIS, IT COULD BE A TWEET, IT COULD BE AN ARTICLE, IT COULD BE SOMETHING YOU SAY, IT COULD BE A PROTEST. I MEAN, IT'S, IT'S TRULY ALMOST INFINITE, AND THE VARIATIONS THAT THIS COULD BE THAT, WHETHER, LIKE IN MOODY, THERE'S THIS IDEA THAT THERE ARE SOME FIRST AMENDMENT CHALLENGES THAT YOU MAY GET, THAT JUST THE NATURE OF THEM ARE SO BIG, THAT EVEN IF THEY WEREN'T RAISED AS SOMETHING THAT WAS OVERBROAD, YOU HAVE TO -- THE PLAINTIFF HAS TO ADDRESS SOME OF THAT BREADTH BY CONSIDERING AND CONTEMPLATING AND PUTTING BEFORE THE COURT WHAT THE ALTERNATIVES MIGHT BE. HOW IN THAT RANGE OF POSSIBILITIES THERE MIGHT BE SOME THINGS THAT MIGHT BE OKAY AND SOME THINGS THAT ARE NOT, SO THAT THE COURT COULD WEIGH AND BALANCE THAT, PERHAPS STILL WITHIN THE PURVIEW OF STRICT SCRUTINY.

IT IS A -- AGAIN, I NEED TO SPEND MORE TIME WITH THE CASES TO SEE. I DON'T KNOW IF I'M ONTO SOMETHING HERE, OR IF I'M, IF I AM NOT. IT MAY BE THAT SOME OF THE OTHER CASES CLARIFY THIS, BUT MOODY IS RELATIVELY RECENT, AND SO WITHOUT MORE, I DON'T, WE DON'T HAVE ANYTHING MORE FROM THE SUPREME COURT ITSELF. WE ONLY HAVE, YOU KNOW, THE NINTH CIRCUIT SAYING WHAT IT THINKS IT MIGHT MEAN HERE, AND NOT UNDER FACTS THAT ARE SPECIFICALLY CONSISTENT WITH WHAT WAS BEFORE THE COURT TODAY, BUT I'M HOPING TO GET ENOUGH FACTS FROM ALL OF YOU THAT NO MATTER HOW I SQUARE THIS, THAT I HAVE ENOUGH INFORMATION THAT I COULD ANALYZE IT ONE WAY OR THE OTHER, OR SAY I JUST, I DON'T HAVE ENOUGH INFORMATION TO BE ABLE TO DO THAT, EITHER BECAUSE THE PLAINTIFF DIDN'T GIVE ME ENOUGH INFORMATION, OR THE PLAINTIFF DID, AND IT WENT TO THE DEFENSE, AND THE DEFENSE, AND ITS BURDEN DIDN'T PROVIDE ME A SUFFICIENT AMOUNT IN RESPONSE. AND SO, I DON'T KNOW IF YOU HAVE ANY THOUGHT ABOUT THAT, IF THAT'S AN APPROPRIATE WAY TO SQUARE THESE TWO IDEAS, OR IF I'M OFF-BASE.

**MR. FITZPATRICK:** SURE, YOUR HONOR.

SO, A COUPLE OF -- A COUPLE OF THOUGHTS THERE, AND I'LL TELL THE COURT WHY WE DIDN'T LODGE AN OVERBREADTH CHALLENGE. IN AN OVERBREADTH CLAIM, YOU ARE TAKING ON A STATUTE WITH A CONCEIVABLE CONSTITUTIONAL BREACH, BUT YOU ARE SAYING THAT THE STATUTE, AS WRITTEN, IS SO BROAD THAT IT ENCOMPASSES A SIGNIFICANT AMOUNT OF PROTECTED SPEECH.

SO, LET'S THINK, FOR AN EXAMPLE, ABOUT UNITED STATES_

VERSUS STEVENS, THAT IS A STATUTE THAT CONGRESS PASSED TO PROHIBIT CRUSH VIDEOS, BUT THE COURT HELD THAT THE STATUTE WAS OVERBROAD BECAUSE, THOUGH THE STATUTE WAS WRITTEN WITH THAT INTENT, IT ENCOMPASSED THINGS LIKE HUNTING VIDEOS AND SHOWS ON ESPN WHERE PEOPLE WERE FISHING, AND SO, YOU BRING AN OVERBREADTH CLAIM WHERE YOU'RE ESSENTIALLY ACKNOWLEDGING THAT THERE ARE SOME THEORETICAL CONSTITUTIONAL SCENARIOS IN WHICH THE STATUTE WOULD BE LAWFUL, BUT THE -- BUT THE AMOUNT OF UNCONSTITUTIONAL APPLICATIONS SUBSTANTIALLY OUTWEIGHS THE CONSTITUTIONAL APPLICATIONS.

THE REASON WE DIDN'T DO THAT HERE, YOUR HONOR, IS PART AND PARCEL WITH WHY WE TAILORED OUR CLAIMS THE WAY WE DID, WHICH IS THAT -- OUR POSITION IS THAT ANY TIME PROTECTED SPEECH, SOMEONE'S VIEWPOINT, SOMEONE'S OPINION, IS FORMING THE BASIS, IT IS THE BUT-FOR CAUSE OF EITHER A VISA REVOCATION OR A REMOVABILITY DETERMINATION THAT IS UNCONSTITUTIONAL, FULL STOP.

IN OUR HYBRID CHALLENGE, EVERY USE OF PROTECTED SPEECH TO REVOKE A VISA OR TO RENDER SOMEONE DEPORTABLE NECESSARILY VIOLATES THE FIRST AMENDMENT, AND THE REASON WE SAY THAT IS BECAUSE OF WIXON, IS BECAUSE OF AADC, WHERE IN THE 1995 AADC HOLDING, THE NINTH CIRCUIT EXPLICITLY HELD THAT AT DEPORTATION NONCITIZENS ARE TO BE -- THEIR FIRST AMENDMENT RIGHTS ARE TO BE ADJUDGED BY THE SAME STANDARD AS CITIZENS.

THOUGH MY FRIEND ON THE OTHER SIDE HAS --

**THE COURT:** I UNDERSTAND, AND YOU HAVE BRIEFED THIS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



IN THE VERY WAY THAT YOU'RE DESCRIBING, I THINK.

MY QUESTION IS, THIS IS HOW YOU DISTINGUISH MOODY. YOU BASICALLY SAY MOODY JUST DOESN'T APPLY. CORRECT?

**MR. FITZPATRICK:** OUR POSITION IS MOODY IS -- AND THIS IS WHAT THE NINTH CIRCUIT EXPLAINED IN IMPERIAL SOVEREIGN. THE MOODY LANGUAGE IS ABOUT OVERBREADTH, BUT EVEN IF IT'S NOT, THERE IS NO PLAINLY LEGITIMATE SWEEP OF THESE STATUTES WITH RESPECT TO THEIR INVOCATION BASED ON PROTECTED SPEECH. THERE JUST ISN'T.

**THE COURT:** I'M GOING LESS TO THE CONCLUSION ABOUT THIS AND MORE ABOUT, OR IS THERE AN OBLIGATION UNDER MOODY, IF MOODY WERE TO APPLY, WAS THERE AN OBLIGATION ON THE PLAINTIFF TO PROVIDE THE RANGE OF POSSIBLE WAYS THAT THIS COULD BE APPLIED, SUCH THAT -- THAT'S THE WHOLE ANALYSIS --

**MR. FITZPATRICK:** OH, I UNDERSTAND WHAT YOU'RE SAYING, YOUR HONOR.

NO, I DON'T BELIEVE -- I DON'T BELIEVE THERE IS.

WE PROVIDED THE -- WE PROVIDED THE SCOPE OF RELIEF THAT WE'RE SEEKING, FOR THAT ALL USES OF PROTECTED SPEECH TO INVOKE THESE STATUTES ARE UNCONSTITUTIONAL.

I THINK A GOOD EXAMPLE OF HOW, SORT OF, THESE FACIAL CHALLENGES PLAY OUT IN PRACTICE --

**THE COURT:** I ACTUALLY THINK YOU JUST ANSWERED MY QUESTION. MEANING IT'S -- BECAUSE WE DON'T HAVE TO DO AN ANALYSIS REGARDING A SUBSTANTIAL NUMBER OF THESE BEING

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


UNCONSTITUTIONAL, WEIGH IT AGAINST, YOU KNOW, WHAT MIGHT BE CONSTITUTIONAL, BECAUSE THERE ISN'T -- ON ITS FACE, THERE IS NO VERSION OF IT THAT'S CONSTITUTIONAL, BECAUSE ONCE YOU GET TO THE POINT WHERE WE'RE MAKING A FACIAL CHALLENGE ON THIS BASED ON PROTECTED SPEECH, THAT'S IT.

**MR. FITZPATRICK:** THAT'S PRECISELY RIGHT.

**THE COURT:** OKAY, SO.

I MEAN, AT LEAST APPRECIATE THAT CLARITY, SO LET'S JUST, LET'S SAY YOU'RE RIGHT, AND THAT YOU'VE ADEQUATELY PLED, AND THEN IT GOES BACK TO THE DEFENSE AT THIS POINT, AND THEN IT REALLY IS A STRAIGHT -- LET'S JUST CALL IT A STRAIGHT, STRICT SCRUTINY ANALYSIS. IF THAT'S THE -- IF THAT IN FACT IS THE BUCKET THAT WE ARE IN FOR THE FIRST AMENDMENT, THEN FOR THE GOVERNMENT SIDE, WHAT'S THE COMPELLING INTEREST?

**MR. HELLAND:** SO, YOU HAVE TO IMAGINE WHAT POSSIBLE COMPELLING INTERESTS COULD BE SERVED BY THE STATUTE, RIGHT, THIS IS A FACIAL CHALLENGE, SO IT'S WHAT CONGRESS HAD IN MIND. AND THE COMPELLING INTEREST IS THE UNITED STATES' FOREIGN POLICY AND NATIONAL SECURITY INTERESTS.

THE SUPREME COURT HAS REPEATEDLY RECOGNIZED THOSE AS COMPELLING INTERESTS, CALLING NATIONAL SECURITY AN INTEREST OF THE UTMOST IMPORTANCE, AND SAME WITH FOREIGN POLICY, DESCRIBING IT AS EXTREMELY IMPORTANT. SO THOSE ARE THE INTEREST TO BE SERVED.

AGAIN, THIS IS A FACIAL CHALLENGE, WHICH MEANS PLAINTIFFS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


ARE SAYING THOSE NEVER QUALIFY, BASICALLY, UNDER THIS STATUTE. OUR VIEW IS THAT THERE ARE CASES WHERE THE FOREIGN POLICY INTERESTS WOULD BE SUFFICIENT ENOUGH. THE SECRETARY OF STATE HAS FOUND THEM TO BE COMPELLING. THEY WOULD IMPLICATE VERY SERIOUS INTERNATIONAL FOREIGN POLICY ISSUES, AND THE STATUTES ARE THERE IN ORDER TO ALLOW THOSE DETERMINATIONS TO BE MADE.

NOT EVERY CASE IS GOING TO RISE TO THAT LEVEL, AND THAT'S WHERE WE THINK, AS-APPLIED CHALLENGES ARE APPROPRIATE. IF SOMEONE BELIEVES THAT THE FOREIGN POLICY INTERESTS IN THEIR PARTICULAR CASE WEREN'T SUFFICIENT, THEY CAN BRING THAT CHALLENGE, BUT AT THE -- AT AN ABSTRACT LEVEL, IT IS THE FOREIGN POLICY AND NATIONAL SECURITY INTERESTS OF THE UNITED STATES.

**THE COURT:** AND THEN TO THE EXTENT THAT THAT IS THE COMPELLING INTEREST. HOW IS THIS -- HOW ARE THESE STATUTES, THESE REGULATIONS, HOW ARE THEY NARROWLY TAILORED?

**MR. FITZPATRICK:** RIGHT. AND THIS IS WHAT I WAS REFERRING TO AT THE END OF THIS MORNING'S HEARING, SO CONGRESS COULD NOT HAVE DRAFTED THIS IN A -- IN A NARROWER WAY TO ACCOMMODATE THE SECRETARY OF STATE AND THE EXECUTIVE BRANCH'S NEED TO CONSIDER FAST-CHANGING AND UNKNOWABLE FOREIGN POLICY ISSUES.

WE'VE QUOTED SEVERAL PORTIONS OF THE LEGISLATIVE HISTORY WHERE YOU HAVE EITHER EXECUTIVE BRANCH OFFICIALS OR ELSE IT'S IN THE CONGRESSIONAL RECORD, THAT IS A REPORT ACCOMPANYING THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

LEGISLATION, WHERE CONGRESS WAS PRESENTED WITH TESTIMONY, AND THEN CONGRESS MADE FINDINGS SAYING IT'S IMPORTANT FOR THE EXECUTIVE TO MAINTAIN DISCRETION IN THIS AREA, BECAUSE WE CANNOT SPELL OUT IN ADVANCE THE FOREIGN POLICY EXIGENCIES THAT ARE GOING TO REQUIRE THIS POWER TO BE USED.

**THE COURT:** WELL, I CAN COMPLETELY RESPECT AND APPRECIATE THE IDEA THAT TO PROVIDE GRANULAR EXAMPLES OR TO TRY TO CAPTURE IN A SERIES OF SUBSECTIONS ALL OF THE VARIOUS WAYS THAT THIS MIGHT BE NECESSARY FOR NATIONAL SECURITY PURPOSES MIGHT BE IMPOSSIBLE. IT MAY SIMPLY BE ASKING THE GOVERNMENT TO DO TOO MUCH THAT'S HERE, BUT I WANT TO GO TO THE FIRST POINT, WHERE THAT YOU SAID, WHICH IS IT WOULD NOT HAVE BEEN POSSIBLE FOR THIS TO BE MORE NARROWLY TAILORED.

AND I'M NOT IN ANY WAY TRYING TO SUPPLANT MYSELF FOR CONGRESS AND CONGRESSIONAL AUTHORITY, BUT JUST TRYING TO TEASE OUT HERE -- AND I'M JUST LOOKING RIGHT NOW AT 1182. I'M LOOKING AT, YOU KNOW, THE SUBSECTION C3.

DO YOU HAVE ALL THIS IN FRONT OF YOU? IT WOULD BE EASIER TO TAKE A MOMENT.

**MR. HELLAND:** YES, I HAVE AT LEAST A PORTION OF THAT SESSION IN FRONT OF ME, WHICH PROBABLY INCLUDES THE RELEVANT LANGUAGE.

**THE COURT:** I SUSPECT.

OKAY, SO I'M REFERENCING SECTION 1182(A)(3)(C)(III) FOR THE BENEFIT OF OUR COURT REPORTER HERE. BUT -- AND TO HAVE A

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



CLEAR RECORD, (III), THAT SAYS EXCEPTION FOR OTHER ALIENS READS AN ALIEN NOT DESCRIBED IN CLAUSE (II) SHALL NOT BE EXCLUDABLE OR SUBJECT TO RESTRICTIONS OR CONDITIONS ON ENTRY INTO THE UNITED STATES UNDER CLAUSE (I), BECAUSE OF THE ALIEN'S PAST, CURRENT, OR EXPECTED BELIEFS, STATEMENTS, OR ASSOCIATIONS, IF SUCH BELIEFS, STATEMENTS, OR ASSOCIATIONS WOULD BE LAWFUL WITHIN THE UNITED STATES, UNLESS THE SECRETARY OF STATE PERSONALLY DETERMINES THAT THE ALIEN'S ADMISSION WOULD COMPROMISE A COMPELLING UNITED STATES FOREIGN POLICY INTEREST.

HOPEFULLY, I GOT THAT RIGHT.

**MR. HELLAND:** YES.

**THE COURT:** YOU'RE FOLLOWING ALONG.

AND THERE ARE OTHER CROSS REFERENCES THAT EXPLAIN WHY THAT'S APPLICABLE HERE, BUT FOR OUR PURPOSES FOCUSED ON THIS LANGUAGE.

SO LET ME JUST TAKE ONE OF THE BROADEST PARTS OF THIS. PAST, CURRENT, OR EXPECTED, THE WORD EXPECTED AS AN ADJECTIVE FOR BELIEFS, IS EXTRAORDINARILY BROAD AND NONSPECIFIC. I MEAN, THIS ISN'T JUST WHAT SOMEBODY HAS WRITTEN, HAS TWEETED, HAS PROTESTED, THAT THEY'RE PROTESTING NOW, BUT WHAT YOU THINK THEY MIGHT BELIEVE IN THE FUTURE. WHY COULDN'T JUST THAT LANGUAGE HAVE BEEN STRICKEN? I MEAN, I'M NOT EVEN SURE WHAT IT MEANS, BUT, BUT GIVING CONGRESS THE BENEFIT OF THE DOUBT HERE, WHY WOULDN'T JUST THAT EVEN BE A WAY TO MORE NARROWLY TAILOR THIS STATUTE?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


**MR. HELLAND:** YOUR HONOR, I IMAGINE CONGRESS INCLUDED THAT LANGUAGE BECAUSE IT BELIEVED THAT THERE WERE SITUATIONS WHERE A FOREIGN NATIONAL'S EXPECTED BELIEFS WOULD COMPROMISE THE UNITED STATES' FOREIGN POLICY INTERESTS IF THAT PERSON WERE ABLE TO REMAIN IN THE UNITED STATES.

I COULD IMAGINE THAT WOULD BE SOMETHING LIKE A SPIRITUAL LEADER WHO IN A HOME COUNTRY HAD ADVOCATED FOR PRACTICES THAT THE UNITED STATES DISAGREES WITH. THAT PERSON COULD BE THEN IN THE UNITED STATES, PERHAPS THAT QUALIFIES UNDER THE EXPECTED BELIEFS LANGUAGE, AND CONGRESS WANTED TO MAINTAIN THE EXECUTIVE'S AUTHORITY TO REMOVE SOMEONE WHO QUALIFIED IN THAT WAY.

I THINK THEY WERE, YOU KNOW, THEY WERE TRYING TO COVER THE POTENTIAL BASIS THAT NATIONAL SECURITY AND FOREIGN POLICY CAN BE IMPLICATED WHILE SETTING UP A FRAMEWORK THAT REQUIRED A PERSONAL DETERMINATION BY THE SECRETARY OF STATE AND REPORTING TO CONGRESS WHEN THE SECRETARY MAKES THAT DETERMINATION, SO PUTTING IN POLITICAL OVERSIGHT OF EXACTLY THESE DETERMINATIONS.

THEY DIDN'T WANT TO LIMIT IT AT THE FRONT END BECAUSE THEY IMAGINED THAT THERE COULD BE SITUATIONS WHERE NATIONAL SECURITY OR FOREIGN POLICY WERE IMPLICATED BY THOSE THINGS, RATHER THEY CHECKED IT ON THE BACK END BY REQUIRING THAT PERSONAL DETERMINATION BY AN APEX OFFICIAL AND POLITICAL ACCOUNTABILITY THROUGH REPORTING TO CONGRESS.

**THE COURT:** DOES THE GOVERNMENT HERE SURVIVE STRICT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

SCRUTINY?

**MR. HELLAND:** YES.

**THE COURT:** TELL ME WHY.

**MR. HELLAND:** BECAUSE THE INTERESTS THAT I'VE ALREADY IDENTIFIED ARE COMPELLING FOREIGN POLICY AND NATIONAL SECURITY.

AGAIN, FACIAL CHALLENGE, YOU HAVE TO THINK ABOUT THE WAYS THE STATUTE COULD BE USED IN DIFFERENT CIRCUMSTANCES. THOSE INTERESTS ARE COMPELLING. THE SUPREME COURT HAS PREVIOUSLY SAID SO, AND I DON'T THINK THAT THERE IS A NARROWER WAY. CERTAINLY NOT A NARROWER WAY THAT RESOLVES THE CONCERNS THAT PLAINTIFFS HAVE LITIGATED HERE, SPEECH-BASED CONCERNS ABOUT ACTUAL SPEECH OUT IN THE WORLD. THERE'S NOT A NARROWER WAY CONGRESS COULD HAVE DRAFTED THAT TO STILL MAINTAIN THE GOVERNMENT'S ABILITY TO VINDICATE ITS FOREIGN POLICY AND NATIONAL SECURITY INTERESTS IN A NARROWER WAY. SO THAT IS, THAT IS HOW YOU PASS STRICT SCRUTINY.

NOW IF YOU LOOK AT THE HLP CASE, RIGHT, HUMANITARIAN LAW PROJECT. THAT CASE, IT DID INVOLVE SPEECH, CONTRARY TO WHAT MY FRIEND ON THE OTHER SIDE SAID EARLIER. THE SUPREME COURT RECOGNIZED THAT THE ISSUE IN THAT CASE WAS ABOUT SPEECH, IT WAS NOT -- IT WAS NOT SOMETHING OTHER THAN SPEECH, RIGHT? IT WAS WHETHER MATERIAL SUPPORT FOR A TERRORIST ORGANIZATION COULD BE PROVIDED THROUGH SPEECH, AND THE SUPREME COURT IN THAT CASE APPLIED WHAT THEY CALLED RIGOROUS SCRUTINY, AND NEVERTHELESS UPHELD THE LAW IN THAT CASE, BECAUSE THE FOREIGN POLICY AND

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


NATIONAL SECURITY INTERESTS OF PREVENTING THE PROVISION OF MATERIAL SUPPORT TO A TERRORIST ORGANIZATION WERE SUFFICIENT, AND IT DIDN'T NEED TO BE DRAWN MORE NARROWLY THAN THE STATUTE WAS DRAWN IN THAT CASE. THAT WAS AN EXAMPLE OF THE CASE THAT SURVIVED, ALTHOUGH THE COURT, I DON'T THINK, LITERALLY USED THE WORD STRICT SCRUTINY. IT WAS FUNCTIONALLY A STRICT SCRUTINY TEST, AND IT SURVIVED IT. I THINK THE SAME IS TRUE HERE. AGAIN, THAT WAS A PARTICULAR CASE ABOUT PARTICULAR EXAMPLES OF SPEECH, WHETHER CERTAIN PLAINTIFF ORGANIZATIONS COULD SPEAK TO CERTAIN TERRORIST ORGANIZATIONS IN CERTAIN WAYS.

HERE IT'S A FACIAL CHALLENGE, SO WE HAVE TO TAKE A STEP BACK AT A MORE ABSTRACT LEVEL OF GENERALITY. BUT THE QUESTION IS, CAN THESE STATUTES BE USED, OR COULD THEY HAVE BEEN DRAWN MORE NARROWLY, SO AS TO PRESERVE THE GOVERNMENT'S ABILITY TO VINDICATE ITS LEGITIMATE FOREIGN POLICY AND NATIONAL SECURITY INTERESTS IN WAYS THAT AVOID ENFORCEMENT WHEN THOSE INTERESTS ARE NOT SUFFICIENT.

I DON'T THINK CONGRESS COULD HAVE DRAFTED IT MORE NARROWLY, AND AGAIN, THERE'S DIFFERENT OVERSIGHT, DIFFERENT MECHANISMS TO PROTECT THOSE INTERESTS IF THE ENFORCEMENT GOES TOO FAR. THERE'S THE DETERMINATION BY THE SECRETARY OF STATE, THE POLITICAL REPORTING, AND AS-APPLIED AND INDIVIDUAL CHALLENGES IN IMMIGRATION CASES, IF THESE GROUNDS ARE BEING USED, RIGHT? PEOPLE ARE NOT WITHOUT REMEDIES IN THESE CASES. THE ONLY QUESTION THAT PLAINTIFFS HERE CAN HAVE IS WHETHER THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

STATUTE IS DECLARED UNCONSTITUTIONAL ON ITS FACE.

**THE COURT:** SO, HYPOTHETICALLY, IF THE GOVERNMENT TOOK THIS NARROW EXCEPTION, I'M CALLING IT NARROW BECAUSE EVEN THE GOVERNMENT'S OWN ARGUMENT ABOUT IT, AND ONE OF THE REASONS WHY IT'S IMPORTANT IS BECAUSE HISTORICALLY PEOPLE HAVE BEEN IN THIS COUNTRY WHO ARE TERRORISTS, PEOPLE WHO HAVE COME IN WHO ARE NOTORIOUS IN SOME WAY, WHERE THERE IS SOME SORT OF EXIGENT CIRCUMSTANCE AROUND IT, THAT THERE HAS BEEN -- THERE HAS BEEN VALUE IN THAT. IT IS HARD TO SQUARE THAT WITH AN IDEA THAT AN EXCEPTION THAT IS NARROW, AND I SAY THAT BECAUSE THE STATUTE USES THESE WORDS: "COMPROMISE A COMPELLING UNITED STATES' FOREIGN POLICY INTERESTS." IT'S A VERY SIGNIFICANT AND SERIOUS INTEREST THAT THE GOVERNMENT WOULD HAVE.

LET'S SAY, HYPOTHETICALLY, THE GOVERNMENT CHOSE TO USE THIS POWER INDISCRIMINATELY. THEY CHOSE TO USE THIS POWER BEYOND THE SCOPE OF WHAT IT WAS INTENDED FOR, OR OBJECTIVELY IN A WAY THAT IS AGAINST PEOPLE WHO, IT'S PROBABLY NO FAIR ARGUMENT, THAT THEIR SPEECH, THEIR POST ON SOCIAL MEDIA, THE SIGNS THAT THEY WRITE AT THEIR UNIVERSITY COMPROMISES A COMPELLING UNITED STATES FOREIGN POLICY INTEREST, SAY THE GOVERNMENT DOES THAT. IF THIS CAN'T BE STRUCK DOWN FACIALLY FOR THE REASONS THAT YOU'VE SAID, OR THE GOVERNMENT OVERCOMES THAT BECAUSE IT HAS A COMPELLING INTEREST AND HAS BEEN ADEQUATELY NARROWLY TAILORED.

IS IT THE POSITION OF THE GOVERNMENT THAT THE ONLY WAY

THAT THE PLAINTIFF CAN SUCCEED IS ONE-BY-ONE ON AN AS-APPLIED CHALLENGE?

**MR. HELLAND:** ON AN AS-APPLIED CHALLENGE, YES. I DON'T KNOW THAT IT NECESSARILY NEEDS TO BE ONE-BY-ONE.

**THE COURT:** TWO-BY-TWO, 100-BY-100.

**MR. HELLAND:** YOU COULD HAVE MULTIPLE FACT PATTERNS, RIGHT? AND THOSE CASES, OF COURSE, COULD GO UP TO HIGHER COURTS, AND THEN THE PRECEDENTIAL VALUE WOULD BE EXPANDED MORE BROADLY, BUT I DO THINK, AS-APPLIED, ARE THE WAY TO LITIGATE THESE ISSUES.

**THE COURT:** COULD IT BE EVERY STUDENT?

**MR. HELLAND:** A CLASS OF EVERY STUDENT, SO I MEAN, I SAY A CLASS BECAUSE I THINK IT WOULD ALMOST CERTAINLY HAVE TO BE BROUGHT AS A CLASS ACTION, AND JUST THINKING WHAT THAT WOULD ENTAIL, I COULD IMAGINE THERE'S RULE 23 ISSUES WITH TRYING TO CERTIFY A CLASS ON GROUNDS LIKE THIS.

**THE COURT:** LET ME LIMIT IT. EVERY INTERNATIONAL STUDENT WHO WANTS TO EXERCISE THEIR FIRST AMENDMENT -- TO EXERCISE THE RIGHTS THAT THE FIRST AMENDMENT GUARANTEES TO PEOPLE WHO ARE NON-CITIZENS.

**MR. HELLAND:** I, SITTING -- STANDING HERE TODAY, I WOULD PLAN TO ARGUE MAJOR COMMONALITY ISSUES WITH A CLASS ACTION PROPOSAL LIKE THAT.

THE CIRCUMSTANCES OF ALL THESE STUDENTS WOULD BE INCREDIBLY VARIABLE. THE THINGS THAT THEY WOULD PLAN TO SAY

WOULD BE, YOU KNOW, INFINITE, PERHAPS. I DON'T THINK --

**THE COURT:** YOU'RE ACTUALLY STARTING TO DRILL DOWN TO THE VERY CONCERN THAT THE COURT HAS, BECAUSE I -- THE LAW IS WHAT IT IS, AND THE COURT WILL FOLLOW IT, BUT IF THE POSITION OF THE GOVERNMENT IS, YOU CAN'T -- YOU CAN'T REALLY TACKLE THIS UNIVERSALLY, YOU CAN'T MAKE THE ARGUMENT THAT IT IS FACIALLY INVALID, BECAUSE WE SURVIVE THAT, AND YOU CAN'T COME AT IT IN A FAIRLY COMPREHENSIVE WAY, EVEN BY PEOPLE WHO ARE SIMILARLY SITUATED AND WHO ARE AT RISK UNDER THE STATUTE, MEANING INTERNATIONAL STUDENTS, EVEN IF YOU BROKE THEM DOWN TO THE INTERNATIONAL STUDENTS OR GRADUATE STUDENTS AT UNIVERSITIES, AND, YOU KNOW, IN THE UNITED STATES, THAT THE GOVERNMENT WOULD CHALLENGE THAT, SAYING IT'S TOO BROAD, IT'S TOO SWEEPING, IT IMPLICATES TOO MANY DIFFERENT CONCERNS, THEN REALLY ALL THAT IS LEFT FOR PEOPLE TO PROTECT THIS CORE VALUE AND THIS CORE COMPONENT OF OUR CONSTITUTION UNDER THE FIRST AMENDMENT IS FOR CASES, ONE OR TWO PEOPLE AT A TIME, OR A HANDFUL OF PEOPLE AT A TIME BRING. YOU CAN SEE THE RESOURCES THAT ARE INVOLVED IN THIS CASE. FOR ONE SMALL CASE, AND YOU KNOW, BIG IN MANY WAYS, BUT, BUT SMALL IN THE SENSE THAT YOU KNOW IT'S A, IT'S A FEW PEOPLE WHO ARE IMPLICATED. THE VAST MAJORITY OF PEOPLE WILL NEVER BE ABLE TO BRING A CASE LIKE THAT. THEY WON'T HAVE THE RESOURCES TO DO IT. THEY HAVE NO WAY TO BE ABLE TO PROTECT THOSE RIGHTS.

HOW DO -- HOW DO WE ALIGN THAT WITH THE VALUES THAT WE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



HAVE AROUND THE FIRST AMENDMENT?

**MR. HELLAND:** I THINK THAT WE HAVE HIGH-PROFILE CASES THAT GO UP THE CHAIN OF COURTS AND EVENTUALLY YOU HAVE HIGHER COURTS MAKING THEIR STATEMENTS WITH PRECEDENTIAL VALUE, BINDING PRECEDENTIAL VALUE ON WHAT THE LAW IS IN THIS AREA. AND THEN THE GOVERNMENT RUNS THE RISK OF DEVIATING FROM THE PRECEDENTIAL AND BINDING STATEMENTS OF COURTS IN PAST CASES.

SO I THINK THAT IS THE SOLUTION TO THIS PROBLEM, AT LEAST UNDER THE LAW AS IT STANDS TODAY, INCLUDING, AS MY FRIEND REFERRED TO PREVIOUSLY, THE CASA DECISION FROM THE SUPREME COURT THAT LIMITS THE, YOU KNOW, EXTENT OF NATIONWIDE INJUNCTIONS, SO --

**THE COURT:** DOESN'T THAT PRESUME, AND MAYBE YOU'RE SAYING THAT THE COURT IS OBLIGATED TO MAKE THAT ASSUMPTION, THAT AFTER ONE OR TWO, OR A HANDFUL OF AS-APPLIED CASES, THIS CASE WERE TO BE LIMITED TO THAT? THAT THE COURT WOULD MAKE A FINDING THAT THERE IS A FIRST AMENDMENT VIOLATION, A CHILLING THAT HAS HAPPENED WITH REGARDS TO THESE PARTICULAR STUDENTS.

AREN'T YOU ASKING THIS COURT TO ASSUME THAT AFTER THIS CASE, OR MAYBE THIS CASE AND ANOTHER ONE, OR AAUP, RIGHT, THAT IMPLICATES SIMILAR THINGS THAT THE GOVERNMENT IN ITS TOTALITY AND ITS LARGESS AND POLICY MAKING HERE WILL SAY, OH, WE'VE MADE A MISTAKE, WE'VE OVERSTEPPED, WE WILL CHANGE OUR POLICY, WE WILL NOT ENFORCE IN THIS WAY.

IS THAT WHAT THIS COURT HAS TO ASSUME?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


**MR. HELLAND:** I THINK THIS COURT HAS THE POWER THAT IT HAS FOR THE PARTIES BEFORE IT. I THINK THE NINTH CIRCUIT HAS A BROADER POWER THAT CAN SET A PRECEDENT THAT IS BINDING IN FUTURE DISTRICT COURT CASES, AND THE SUPREME COURT HAS EVEN GREATER POWER STILL, AND DEPENDING HOW FAR THESE CASES MAKE IT IN THE APPELLATE REVIEW PROCESS. THE PRONOUNCEMENTS OF THOSE COURTS ARE WHAT THE GOVERNMENT TAKES INTO ACCOUNT AS IT -- AS IT CONSIDERS ITS ENFORCEMENT AUTHORITY.

**THE COURT:** BUT THE ONLY WAY THAT THOSE COURTS ARE GOING TO GET THESE ISSUES, ARGUABLY, IS IF THERE ARE CASES THAT HAVE MANY, MANY, MANY MORE PLAINTIFFS THAN THE PLAINTIFFS THAT ARE HERE, CORRECT?

**MR. HELLAND:** I'M NOT SURE I AGREE WITH THAT.

I MEAN, YOU COULD HAVE A SMALL NUMBER OF PLAINTIFFS GO UP TO THE SUPREME COURT AND MAKE THEIR ARGUMENT, POTENTIALLY WHEN ON -- YOU KNOW, THE TYPE OF SPEECH THAT THEY PUT AT ISSUE HERE, AND THE -- WHATEVER THE FOREIGN POLICY INTERESTS ARE IN THEIR CASE. WHATEVER THE SUPREME COURT SAYS ON THAT CASE IS A GOAL POST, RIGHT, THAT'S A MARKER FOR WHAT THE FIRST AMENDMENT DOES OR DOES NOT PROTECT.

FUTURE COURTS WOULD THEN HAVE TO -- THE GOVERNMENT WOULD HAVE TO CONSIDER THE IMPACT OF THAT, AND FUTURE LOWER COURTS WOULD HAVE TO CONSIDER THE IMPACT OF THAT IN NEW CASES. THE GOVERNMENT, I THINK, YOU KNOW, WOULD BE ABLE TO MAKE ARGUMENTS TRYING TO DISTINGUISH THAT, BUT IT WOULD RUN THE RISK THAT THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



SUPREME COURT HAS MADE THE ANNOUNCEMENT ON THIS.

SO I THINK THAT IS THE PROCESS THROUGH WHICH THIS PLAYS OUT, I DON'T THINK IT'S THROUGH A SMALL NUMBER OF PLAINTIFFS BRINGING A FACIAL CHALLENGE AND RULING OUT ANY POSSIBLE ENFORCEMENT, NO MATTER THE FOREIGN POLICY AND CONSEQUENCES.

**THE COURT:** THAT MIGHT BE AS MUCH OF A BOW FROM THE GOVERNMENT'S SIDE THAT I CAN GET FROM THIS MORNING.

DO YOU HAVE ANYTHING THAT YOU WANT TO ADD?

**MR. FITZPATRICK:** YES, YOUR HONOR, BRIEFLY, JUST TO RESPOND TO SOME OF THE HIGH POINTS THAT MY FRIEND ON THE OTHER SIDE RAISED.

I THINK THE MOST IMPORTANT SINGLE CONCESSION IN TODAY'S PROCEEDINGS WAS WHEN, AS AN EXAMPLE OF THE TYPE OF SPEECH THAT WOULD MEET THE GOVERNMENT'S ASSERTED COMPELLING INTEREST, THE GOVERNMENT GAVE THE EXAMPLE OF OPPOSING A PEACE DEAL. THAT MEANS THAT RIGHT NOW STANFORD DAILY'S WRITERS AND EDITORS ARE RISKING VISA DEPORT — ARE RISKING VISA REVOCATION AND DEPORTATION IF THEY WORK ON OR PUBLISH AN EDITORIAL OPPOSING THIS ADMINISTRATION'S ATTEMPTED PEACE DEAL WITH IRAN. THAT IS WHY A STRICT AS-APPLIED REMEDY HERE, LIMITED TO PRO-PALESTINIAN SPEECH OR SPEECH ABOUT THE MIDDLE -- ABOUT THE CONFLICT IN GAZA JUST WON'T WORK. THAT'S WHY FACIAL CHALLENGES EXIST TO BE ABLE TO VINDICATE THE FULL SCOPE OF A LITIGANT'S CONSTITUTIONAL RIGHTS.

MY FRIEND ON THE OTHER SIDE'S ARGUMENT IS REALLY A PLEA

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

FOR A COMPLETELY NEW DOCTRINE THAT ANY STATUTE THAT TOUCHES ON NATIONAL SECURITY CAN NEVER BE CHALLENGED FACIALLY, AND THAT'S JUST NOT THE LAW. I WOULD POINT THE COURT'S ATTENTION TO THE BOOS V. BARRY DECISION, WHERE THE SUPREME COURT STRUCK DOWN REGULATIONS BARRING DEMONSTRATIONS CRITICAL OF FOREIGN GOVERNMENTS WITHIN 500 FEET OF A FOREIGN EMBASSY.

THE GOVERNMENT IS TRYING TO TREAT THE INVOCATION OF NATIONAL SECURITY INTEREST AS THIS TALISMANIC GET-OUT-OF-JAIL-FREE CARD, WHERE NONE OF THE USUAL FIRST AMENDMENT RULES APPLY, AND THERE'S SIMPLY NO CASE LAW TO SUPPORT THAT.

**THE COURT:** I WILL SAY, ALTHOUGH I UNDERSTAND THAT THE GOVERNMENT ALLUDED TO THAT POSITION, I THINK THEY ALSO TOOK THE OPPOSITE - I SHOULDN'T SAY OPPOSITE, BUT ADDITIONAL POSITION THAT EVEN IF YOU COULD, AND STRICT SCRUTINY APPLIED, THEY CAN SURVIVE IT.

**MR. FITZPATRICK:** AND I'D LIKE TO MOVE ON TO THAT NEXT, YOUR HONOR.

THE ASSERTED COMPELLING INTEREST THAT THE GOVERNMENT IS OFFERING, THAT THERE COULD BE INSTANCES WHERE A NONCITIZEN IS MAKING CERTAIN ARGUMENTS, VOICING CERTAIN OPINIONS THAT IMPERILS AMERICAN FOREIGN POLICY, AND THE GOVERNMENT NEEDS TO HAVE THE OPPORTUNITY TO SUPPRESS THAT TO PROTECT OUR FOREIGN POLICY, THAT RUNS CONTRARY TO MOODY ITSELF, AND THIS IS ON PAGE 740. WHERE THE SUPREME COURT SAID THAT SUPPRESSION OF FREE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



EXPRESSION IS NOT A VALID GOVERNMENTAL INTEREST, THE GOVERNMENT IS ASSERTING AN INTEREST IN KEEPING CERTAIN SPEAKERS FROM VOICING CERTAIN IDEAS WITHIN OUR POLITY. THAT IS SIMPLY NOT A VALID, LET ALONE A COMPELLING, GOVERNMENTAL INTEREST.

THOMAS JEFFERSON WROTE THAT "THE OPINIONS OF MEN ARE NOT THE OBJECT OF CIVIL GOVERNMENT." MADISON WROTE THAT "OPINIONS ARE NOT THE OBJECT OF LEGISLATION."

MY FRIEND CANNOT POINT TO A SINGLE CASE OR LAW AT ANY TIME IN THIS NATION'S HISTORY SINCE THE ILL-FATED ALIEN FRIENDS ACT THAT PERMITTED THE GOVERNMENT TO SUBJECT SOMEONE TO DISFAVORED TREATMENT BECAUSE CONGRESS MADE A DETERMINATION THAT THEIR VIEW SHOULD NOT BE HEARD. THERE IS NOT A SINGLE EXAMPLE OF THAT IN THE HISTORY OF THIS REPUBLIC.

**THE COURT:** HOW HAS THIS STATUTE SURVIVED SO LONG UNDER THAT -- UNDER THOSE CIRCUMSTANCES?

**MR. FITZPATRICK:** SO, YOUR HONOR, BEFORE 2025, THESE STATUTES HAD NEVER BEEN INVOKED ON THE BASIS OF PROTECTED SPEECH. EVERY EXAMPLE IN THE GOVERNMENT'S BRIEFING ABOUT PRIOR USES OF THESE STATUTES RELATED TO EXCLUSIONS. AND AS WE'VE GONE OVER IN OUR BRIEFING, THE SUPREME COURT HAS MADE VERY CLEAR THAT A TOTALLY DIFFERENT LEGAL REGIME GOVERNS ENTRY INTO THE COUNTRY THAN IT DOES EXCLUSION FROM THE COUNTRY.

**THE COURT:** BUT THE STATUTE REMAINED THE SAME DURING THAT TIME. I MEAN, THE PLAIN LANGUAGE OF THE STATUTE WAS THE SAME, SO THE FACT THAT THEY WEREN'T CHOOSING TO ENFORCE IT IN

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

THAT WAY --

**MR. FITZPATRICK:** SO, A COUPLE THOUGHTS THERE, YOUR HONOR.

ONE, I BELIEVE THERE WAS A FIRST AMENDMENT CHALLENGE IN THE MASSIEU CASE BACK IN 1996. I BELIEVE THE JUDGE ENDED UP RESOLVING IT ON FIFTH AMENDMENT GROUNDS RATHER THAN FIRST AMENDMENT GROUNDS, BUT I DO THINK THERE WAS A FIRST AMENDMENT CHALLENGE LODGED THERE.

THE SECOND --

**THE COURT:** WHAT CASE WAS THAT?

**MR. FITZPATRICK:** THE MASSIEU VERSUS RENO CASE FROM 1996. THAT WAS THE ONE THAT HELD THAT THE -- NOT EVEN THE SPEECH PORTION, JUST THE ABILITY OF THE SECRETARY OF STATE TO RENDER SOMEONE DEPORTABLE BASED ON FOREIGN POLICY REASONS IN TOTO WAS VOID FOR VAGUENESS IN VIOLATION OF THE FIFTH AMENDMENT.

BUT, YOUR HONOR, DIRECTLY ADDRESSING YOUR QUESTION, WHY IT HASN'T BEEN CHALLENGED YET. I THINK BACK TO THE DISCUSSIONS WE HAD ON STANDING, WHERE YOU HAVE TO SHOW A CREDIBLE THREAT OF ENFORCEMENT.

I THINK IT'S QUITE ARGUABLE THAT BEFORE THIS ADMINISTRATION TOOK POWER, THERE PERHAPS WASN'T A CREDIBLE THREAT OF ENFORCEMENT, BECAUSE NOBODY, NO PRIOR ADMINISTRATION, REPUBLICAN OR DEMOCRAT, HAD REVOKED A VISA OR RENDERED SOMEONE DEPORTABLE BASED PURELY ON PROTECTED SPEECH.

WITH RESPECT TO THE NARROW TAILORING ISSUE MY FRIEND SAID THAT CONGRESS COULD NOT HAVE DRAFTED A NARROWER LAW. THEIR OWN BRIEF DISAGREES WITH THAT. I COUNTED IT UP IN THEIR SUPPLEMENTAL BRIEF, THEY CALL THE LAW BROAD EIGHT TIMES. THE LAW DOES NOT PLACE ANY CONSTRAINTS ON THE SECRETARY OF STATE'S DISCRETION. THE ONLY TAILORING THE PROVISION DOES IS IT SAYS WHO MAKES THE DECISION, THE SECRETARY OF STATE, BUT IT DOESN'T PLACE ANY CONSTRAINTS ON WHAT THE SECRETARY OF STATE HAS TO CONSIDER OR CAN AND CAN'T BASE THAT DETERMINATION ON.

AND THE GOVERNMENT'S POSITION HAS BEEN THAT WHEN THE SECRETARY OF STATE MAKES THAT DETERMINATION, THAT SOMEONE IS A COMPELLING FOREIGN POLICY THREAT, THE JUDICIARY IS CATEGORICALLY PROHIBITED FROM INQUIRING INTO THE LEGITIMACY OF THOSE REASONS. THAT'S NOT NARROW TAILORING AT ALL.

AND SECOND, WITH RESPECT TO NARROW TAILORING, THERE'S ANOTHER PART OF THAT, IN STRICT SCRUTINY, THEY HAVE -- IT HAS TO BE THE LEAST RESTRICTED MEANS OF ACCOMPLISHING THE GOVERNMENT'S OBJECTIVES.

YOUR HONOR, IF I MAY, I DO HAVE ONE MORE SORT OF HANDOUT AND VISUAL THAT I THINK WOULD BE HELPFUL TO THE COURT.

(PAUSE IN PROCEEDINGS.)

YOUR HONOR, THESE ARE EXISTING GROUNDS FOR REMOVAL UNDER THE IMMIGRATION AND NATIONALITY ACT. WHETHER SOMEONE IS ENGAGING IN TERRORIST ACTIVITY, ESPIONAGE, ACTIVITY TO OPPOSE THE U.S. GOVERNMENT BY FORCE, CRIMINAL ACTIVITY THAT ENDANGERS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



NATIONAL SECURITY, PARTICIPATING IN NAZI PERSECUTION OR GENOCIDE, AND A HOST OF OTHER CATEGORIES. THOSE ARE THE LEAST RESTRICTIVE MEANS.

IF THE GOVERNMENT NEEDS TO PROTECT NATIONAL SECURITY, IT CAN. THERE ARE A BEVY OF PROVISIONS IN THE IMMIGRATION AND NATIONALITY ACT READY AND WAITING. AND MY FRIEND ON THE OTHER SIDE ARGUED THAT HOLDER VERSUS HLP INVOLVED PURE SPEECH. THAT'S NOT TRUE. I'LL READ DIRECTLY FROM THE COURT'S OPINION, AND THIS IS ON PAGE 28. THE FIRST AMENDMENT ISSUE BEFORE US IS MORE REFINED THAN EITHER PLAINTIFFS OR THE GOVERNMENT WOULD HAVE IT. IT IS NOT WHETHER THE GOVERNMENT MAY PROHIBIT PURE POLITICAL SPEECH OR MAY PROHIBIT MATERIAL SUPPORT IN THE FORM OF CONDUCT, IT IS INSTEAD WHETHER THE GOVERNMENT MAY PROHIBIT WHAT PLAINTIFFS WANT TO DO, PROVIDE MATERIAL SUPPORT TO THE PKK AND THE LTTE IN THE FORM OF SPEECH, MATERIAL SUPPORT, THINGS THAT ARE ACTUALLY PROVIDING SUPPORT TO A TERRORIST ORGANIZATION BEYOND PURE POLITICAL SPEECH.

SO ON EVERY ASPECT OF NOT ONLY THE COMPELLING GOVERNMENTAL INTEREST, BUT NARROW TAILORING AND LEAST RESTRICTIVE MEANS, THE GOVERNMENT COMES TO THE COURT WITH EMPTY HANDS.

THERE HAS NEVER BEEN A CASE WHERE A GOVERNMENT SUPPRESSION OF A SPEAKER'S PARTICULAR VIEWS HAS SURVIVED STRICT SCRUTINY. FOR ALL OF THE TIME THAT WE HAVE SPENT TOGETHER TODAY, THE GOVERNMENT, FOREIGN POLICY OR NOT, CANNOT SUPPLY THE COURT A SINGLE EXAMPLE OF A NATIONAL SECURITY OR ANY OTHER STATUTE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

DISCRIMINATING BASED ON VIEWPOINT, AND ITS SURVIVING STRICT SCRUTINY. THE ABSENCE OF THAT CASE LAW TELLS THE STORY.

**MR. HELLAND:** VERY BRIEFLY, YOUR HONOR?

**THE COURT:** YEAH, BUT I MEAN, I DO WANT TO ACKNOWLEDGE, I APPRECIATE THAT YOU'VE ACTUALLY PROVIDED ME THE, THE OTHER GROUNDS FOR REMOVAL, AND IT COVERS A LOT OF -- COVERS A LOT OF TERRITORY, THERE'S A LOT OF OTHER THINGS THAT THE GOVERNMENT CAN DO, BUT, YOU KNOW, I THINK BACK TO A TIME SHORTLY AFTER 9/11 WHEN OUR SAYING, YOU KNOW, OUR OWN BORDERS WERE BREACHED WHEN IT CAME TO TERRORISM, THERE WERE VERY SERIOUS AND GRAVE CONCERNS, ESPECIALLY IN THE DAYS THAT WERE FOLLOWING 9/11 ABOUT, YOU KNOW, WHO ELSE MIGHT BE HERE IN THE COUNTRY, WHAT OTHER PLANS THERE MIGHT BE WITH REGARDS TO THIS, AND QUICKLY, I MEAN, I'M NOT SURE I EVEN HAVE A CLEAR IDEA OF WHERE IN THE EVOLUTION OF THE WEB WE WERE THEN. HOW MUCH OF A DARK WEB THERE WAS VERSUS WHAT'S HERE NOW AND AVAILABLE, BUT QUICKLY WE KNOW BECAUSE OF INFORMATION THAT CAME OUT AFTERWARDS, OUR GOVERNMENT WAS QUICKLY LOOKING TO SEE WHO WAS IN THIS COUNTRY, WHO FIT CERTAIN PARAMETERS, JUST FIT THOSE PARAMETERS, YOU KNOW, FROM AFGHANISTAN OR FROM PAKISTAN, THAT HAD CERTAIN RELIGIOUS OR OTHER AFFILIATIONS, NOT THAT THEY HAD EVER COMMITTED A CRIME, NOT THAT THEY HAD IN FACT ENGAGED IN ANY SORT OF TERRORIST ACTIVITY, BUT JUST BASED ON WHERE THEY WERE FROM, WHEN THEY ARRIVED HERE, MAYBE SOME THINGS THAT THEY HAD SAID, RIGHT, JUST NOTING SUPPORT OR INQUIRING ABOUT CERTAIN

THINGS, BUT FILLING THE REST OF THOSE, CHECKING THE REST OF THOSE BOXES ABOUT WHO THEY WERE, THAT, RIGHT AWAY, THAT THOSE WERE PEOPLE WHO WERE EITHER, YOU KNOW, DETAINED, DEPORTED.

IT'S A WHOLE NOTHER ISSUE ABOUT WHO WENT TO GUANTANAMO BAY AND WHAT THE CIRCUMSTANCES WERE AROUND THAT, BUT WE HAVE A LOT OF YEARS BETWEEN 9/11 AND NOW, AND EVEN THE DISCUSSION WE MIGHT BE HAVING IN COURT RIGHT NOW WOULD BE DIFFERENT IF THIS WAS A CHALLENGE THAT WAS HAPPENING IN THE WEEKS OR MONTHS AFTER THAT THAN WE ARE THESE MANY YEARS LATER.

BUT I HAVE TO SAY I CAN ENVISION A SITUATION WHERE THE GOVERNMENT MIGHT, IN AN EMERGENCY, START TO LOOK AT THIS KIND OF CONTENT AS A PIECE OF INFORMATION THAT'S BEEN -- THAT DOESN'T NECESSARILY FALL INTO ANY OF THESE OTHER CATEGORIES, AND IF THERE IS AN EXCEPTION, ANY EXCEPTION THAT MIGHT BE APPLICABLE FOR THE SECURITY OF OUR COUNTRY, FOR FOREIGN POLICY, FOR OUR NATIONAL SECURITY.

WHAT IS THIS COURT TO DO WITH THAT?

**MR. FITZPATRICK:** SO, A COUPLE OF THOUGHTS THERE, YOUR HONOR.

THE FIRST IS THAT, THE FIRST AMENDMENT CAME INTO BEING IN 1791 AND WAS RATIFIED IN A TIME OF SIGNIFICANT NATIONAL UNCERTAINTY. AND ONE OF THE GREAT EXPOSITIONS ABOUT FREEDOM OF SPEECH THAT HAS ALWAYS STAYED WITH ME IS THOMAS JEFFERSON'S FIRST INAUGURAL IN 1801, WHERE HE SAID THAT IF ANYONE SHOULD ADVOCATE, ESSENTIALLY, OVERTHROWING THE UNITED STATES

GOVERNMENT, LET THEM BE HEARD, LET REASON BE FREE TO COMBAT THEM.

OUR FIRST AMENDMENT HAS ALWAYS UNDERSTOOD THAT LIBERTY AND FREEDOM WILL NEVER BE FURTHERED BY THE GOVERNMENT TELLING ITS CITIZENRY WHAT THEY ARE AND AREN'T ALLOWED TO THINK. OUR SYSTEM IS THAT WE ALLOW ALL VIEWS TO BE AIRED AND TRUTH WILL COME OUT. THE KNOWLEDGE AND THE WISDOM OF OUR POLITY AND OUR PEOPLE ARE STRONG ENOUGH TO HANDLE DIFFICULT VIEWS.

AND THE IDEA THAT WELL, THERE ARE CERTAIN VIEWS THAT WE'RE GOING TO ALLOW AMERICAN CITIZENS TO HAVE IN VOICE, BUT IF A NON-CITIZEN VOICES THAT WE'RE GOING TO ALLOW THE GOVERNMENT TO TAKE ACTION, WHICH IS NECESSARILY WHAT THE GOVERNMENT'S PATH LEADS TO HERE. THINK ABOUT WHAT THAT WOULD MEAN. THAT IN A DEMONSTRATION AFTER 9/11 YOU WOULD HAVE FEDERAL LAW ENFORCEMENT GOING FROM PROTESTER TO PROTESTER, ASKING TO SEE PAPERS. WE HAVE TO CHECK TO SEE WHETHER YOU'RE ALLOWED TO VOICE THAT VIEWPOINT. THERE IS NO BASIS FOR THAT IN CENTURIES OF FIRST AMENDMENT LAW. IT VIOLATES THE SPIRIT OF THE FIRST AMENDMENT.

THE SOLE LIMITED SCOPE HERE IS SPEECH THAT IS LAWFUL, THAT YOU OR I DID IT, WE WOULD BE FULLY PROTECTED FROM ANY SORT OF GOVERNMENT RETRIBUTION. IT IS THE GOVERNMENT THAT IS ASKING FOR THIS NOVEL AUTHORITY, NOT SEEN SINCE 1798 OF, WE SHOULD BE ABLE TO THROW PEOPLE OUT JUST BECAUSE WE THINK WHAT THEY'RE SAYING IS DANGEROUS.

**THE COURT:** AND I HEAR WHAT YOU WERE SAYING, AND I DO

WANT TO MOVE TO THE FIFTH AMENDMENT ISSUE, BECAUSE I WANT TO BE SURE WE HAVE ENOUGH TIME FOR IT. BUT ONE OF THE PLACES WHERE I'D LIKE TO HEAR MORE WHEN YOU END UP DOING YOUR SUPPLEMENTAL BRIEFING, IN TERMS OF HOW THIS IS TAILORED, OR WHAT, IF ANYTHING ELSE, THE GOVERNMENT COULD DO.

I'M NOT DISPUTING ANYTHING THAT YOU HAVE JUST SAID, IS THERE NEVERTHELESS TIMES WHEN THE GOVERNMENT COULD CONSIDER THAT IN CONJUNCTION WITH OTHER FACTORS THAT MIGHT ON THEIR OWN BE BENIGN, RIGHT? WHEN YOU SEE THESE FACTORS IN CONCERT WITH EACH OTHER, THINGS THAT SOMEBODY'S NATIONALITY, THE TIME WHEN SOMEBODY ARRIVED IN THE COUNTRY, THINGS THAT THEY ESPOUSED THAT MIGHT OTHERWISE BE ENTIRELY NEUTRAL ARE CERTAINLY FINE IF A U.S. CITIZEN MADE THOSE REMARKS, BUT WHEN YOU LOOK AT THOSE THINGS IN CONCERT, THAT FOR NATIONAL SECURITY PURPOSES, THAT THE GOVERNMENT SHOULD BE ABLE TO CONSIDER?

AND I MIGHT BE ANSWERING MY OWN QUESTION, BECAUSE THERE'S ONE INTERPRETATION, I THINK, OF THIS SUBPART 3 THAT I HAD READ TO YOU BEFORE, THAT SUGGESTS THAT IT'S NOT IN CONCERT, IT SUGGESTS THAT IT -- THAT IT'S BEING CONSIDERED ALONE. IT IS THE SOLE BASIS. IT DOESN'T EXACTLY READ THAT WAY, BUT I UNDERSTAND. I THINK THE PLAINTIFFS DO, IN FACT, READ IT THAT WAY. THERE'S -- I THINK, THAT IS CERTAINLY A FAIR READING OF IT, BUT IT COULD BE -- IT COULD BE WRITTEN DIFFERENTLY, I THINK, TO MAKE THAT POINT MORE CLEAR.

BUT IS THERE ANYTHING FURTHER THAT YOU HAVE TO SAY ON

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


THIS?

**MR. HELLAND:** NO, YOUR HONOR.

**THE COURT:** THEN I THINK WE SHOULD PIVOT TO THE FIFTH AMENDMENT ISSUES.

**MR. FITZPATRICK:** IF I MAY, YOUR HONOR.

THE SUPREME COURT WAS CLEAR IN SESSIONS VERSUS DIMAYA THAT, QUOTE, "THE MOST EXACTING VAGUENESS STANDARD SHOULD APPLY IN REMOVAL CASES." THAT IS, BECAUSE SESSIONS EXPLAINED ON PAGE 156, THAT IMMIGRATION LAWS AND DEPORTATION IMPOSE QUOTE, "A GREATER CONCERN THAN JAIL," END QUOTE.

SO THE FIRST AMENDMENT, AND PARDON ME, THE FIFTH AMENDMENT IMPOSES EXACTING VAGUENESS REQUIREMENTS ON IMMIGRATION LAWS BECAUSE THEY CAN LEAD TO SOMEONE'S EXILE FROM OUR BORDERS.

JUSTICE GORSUCH IS CONCURRENCE IN SESSION. I'M SORRY. PARDON ME, THAT WAS MY FAULT. JUSTICE GORSUCH'S CONCURRENCE IN SESSIONS WARNS OF THE DANGER --

**THE COURT:** CAN YOU SLOW DOWN JUST A LITTLE BIT THERE?

**MR. FITZPATRICK:** OF COURSE, IN SESSIONS, JUSTICE GORSUCH, HIS CONCURRENCE WARNS OF THE DANGER OF VAGUE IMMIGRATION LAWS, AND THAT IT LEAVES GOVERNMENT ENFORCERS QUOTE, "FREE TO CONDEMN ALL THAT THEY PERSONALLY DISAPPROVE, AND FOR NO BETTER REASON THAN THAT THEY DISAPPROVE IT," END QUOTE.

I THINK THAT'S PRECISELY THE DANGER THAT WE'RE DEALING

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

WITH HERE.

MY COLLEAGUE ON THE OTHER SIDE HAS ADMITTED THAT THERE ARE NO GUARDRAILS AND NO CONSTRAINTS GOVERNING THE BASIS UPON WHICH THE SECRETARY OF STATE CAN REVOKE A VISA UNDER THE REVOCATION PROVISION OR THE BASIS UPON WHICH HE CAN RENDER SOMEONE DEPORTABLE BASED ON -- BASED ON THE DEPORTATION -- BASED ON THE DEPORTABILITY DETERMINATION.

AND YOUR HONOR, NOT TO GET --

**THE COURT:** IN A SENSE, ISN'T THAT THE OPPOSITE OF VAGUE?

**MR. FITZPATRICK:** NO, YOU -- SO NO, YOUR HONOR.

SO THE TWO REQUIREMENTS OF THE VAGUENESS DOCTRINE ARE FIRST, THAT IT MUST GIVE THE AVERAGE A PERSON OF -- A REASONABLE PERSON OF AVERAGE INTELLIGENCE SUFFICIENT INFORMATION TO KNOW HOW TO CONFORM THEIR CONDUCT TO THE LAW, AND IT ALSO MUST IMPOSES SUFFICIENT GUIDELINES ON THE GOVERNMENT ENFORCERS TO AVOID ARBITRARY ENFORCEMENT.

SO THIS IS THE POLAR OPPOSITE OF -- THIS IS THE POLAR OPPOSITE OF A LAW THAT PROVIDES SUFFICIENT GUARDRAILS. THIS IS A, "BECAUSE I WANT TO AND BECAUSE I SAID SO" STATUTE.

THERE ARE ZERO CONSTRAINTS ON WHAT THE SECRETARY OF STATE MAY OR MAY NOT CONSIDER, AND --

**THE COURT:** I DIDN'T MEAN THAT TO BE SMUG OR FLIP WHEN I SAID IT. I QUITE LITERALLY MEANT, I MEAN, MAYBE IT HAS OTHER PROBLEMS, BUT IF THAT IS THE NATURE OF THIS, WHICH IS

THAT THERE ARE NO GUARDRAILS, THERE ARE NO CONSTRAINTS, IT'S WHATEVER THE GOVERNMENT CHOOSES TO LOOK TO FOR THAT, THEN YOU'RE ON NOTICE THAT IT CAPTURES EVERYTHING.

**MR. FITZPATRICK:** WELL, AND YOUR HONOR, A LAW THAT CAPTURES EVERYTHING IS --

**THE COURT:** MEANING WHEN IT COMES TO SPEECH, RIGHT, THAT YOU -- THERE IS NO -- THERE IS NO SPEECH THAT WITH CERTAINTY THAT YOU CAN ENGAGE IN.

**MR. FITZPATRICK:** I THINK THAT'S CERTAINLY THE LAW AS IT'S WRITTEN, AND IT'S WHY IT'S VOID FOR VAGUENESS, AND JUDGE YOUNG, IN HIS AAUP DECISION, AND THIS IS AT 189 AND, I THINK, HE PUT IT VERY, VERY WELL WHEN HE SAID, QUOTE, "THE PLAINTIFFS, NON-CITIZEN MEMBERS HERE HAVE ALL BEEN MADE TO UNDERSTAND THAT THERE ARE CERTAIN THINGS THAT IT MAY BE GRAVELY DANGEROUS FOR THEM TO SAY OR DO, BUT HAVE NOT BEEN TOLD PRECISELY WHAT THOSE THINGS ARE OR ARE NOT," END QUOTE.

THAT IS THE TEXTBOOK DEFINITION OF A VAGUENESS PROBLEM.

THE FIFTH AMENDMENT REQUIRES THAT IF CONGRESS IS GOING TO RESTRICT OR REGULATE SOMEONE'S CONDUCT, THAT THE GOVERNED INDIVIDUAL HAS TO BE ON NOTICE OF WHAT IT IS THEY'RE ALLOWED TO DO OR NOT TO DO.

THIS STATUTE PROVIDES ZERO GUIDANCE FOR NON-CITIZENS ON VISAS REGARDING WHAT THEY'RE ALLOWED TO SAY OR NOT TO SAY. THIS IS -- THIS IS THE GOVERNMENT WIELDING "BECAUSE I WANT TO AND BECAUSE I SAID SO" AUTHORITY, AND THAT IS WHAT THE FIFTH

AMENDMENT -- THAT IS WHAT THE FIFTH AMENDMENT IS DESIGNED TO PREVENT. THAT -- SO MUCH OF OUR CONSTITUTION WAS ABOUT AVOIDING THE FORMER BRITISH PRACTICES OF THINGS LIKE GENERAL WARRANTS AND PREVENTING ARBITRARY POWER AND ARBITRARY ENFORCEMENT COMING FROM THE CROWN.

SO, A LAW ALLOWING ENFORCEMENT ACTION WHENEVER WE WANT IS, IN OUR VIEW, WOULD BE THE TEXTBOOK DEFINITION OF A VAGUE LAW.

AND, YOUR HONOR, TO GO BACK TO HISTORY ONE MORE TIME. I THINK JAMES MADISON'S CRITIQUE OF THE ALIEN FRIENDS ACT HITS THE VAGUENESS ISSUE ON THE HEAD. WHERE HE SAID, QUOTE, "THE ALIEN ACT DECLARES THAT IT SHALL BE LAWFUL FOR THE PRESIDENT TO ORDER ALL SUCH ALIENS AS HE SHALL JUDGE DANGEROUS TO THE PEACE AND SAFETY OF THE UNITED STATES, OR SHALL HAVE REASONABLE GROUNDS TO SUSPECT, ARE CONCERNED IN ANY TREASONABLE OR SECRET MACHINATIONS AGAINST THE GOVERNMENT TO DEPART," END QUOTE.

THEN MADISON SAYS, "COULD A POWER BE WELL GIVEN IN TERMS LESS DEFINITE, LESS PARTICULAR, AND LESS PRECISE TO BE DANGEROUS TO THE PUBLIC SAFETY, TO BE SUSPECTED OF SECRET MACHINATIONS AGAINST THE GOVERNMENT. THESE CAN NEVER BE MISTAKEN FOR LEGAL RULES OR CERTAIN DEFINITIONS. THEY LEAVE EVERYTHING TO THE PRESIDENT. HIS WILL IS THE LAW," END QUOTE.

YOUR HONOR, THAT WAS THE ATTACK ON THE ALIEN FRIENDS ACT THAT CARRIED THE DAY AND CARRIED THROUGH THE COURT OF HISTORY, AS JUST AS JUSTICE GORSUCH EXPLAINED.

**THE COURT:** IS THE FIRST AMENDMENT OR THE FIFTH

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



AMENDMENT CHALLENGE HERE -- I'M GOING BACK TO A QUESTION I ASKED BEFORE, WHICH IS THE WORDS HAVE BEEN THE SAME FOR MANY YEARS. DOES IT ONLY BECOME VAGUE NOW BECAUSE OF THE WAY THAT IT'S BEING ENFORCED?

**MR. FITZPATRICK:** NO, YOUR HONOR.

SO, WITH RESPECT -- LET'S START WITH THE -- START WITH THE DEPORTATION PROVISION. THE DEPORTATION PROVISION WAS CHALLENGED ON VAGUENESS GROUNDS IN 1996 BY MR. RUIZ MASSIEU, AS WE DISCUSSED IN OUR SUPPLEMENTAL BRIEFING, AND HE WON ON THAT POINT IN THE DISTRICT COURT. THAT VICTORY ENDED UP BEING VACATED ON PROCEDURAL GROUNDS BECAUSE HE DIDN'T EXHAUST HIS ADMINISTRATIVE REMEDIES, BUT IN THE FEW -- IN THE CASES IN WHICH THE GOVERNMENT HAS ACTUALLY TRIED TO WIELD THIS POWER, IT'S BEEN CHALLENGED. IT WAS -- IT WAS CHALLENGED 30 YEARS AGO, AND THE ARGUMENT -- AND THE ARGUMENT WAS ACCEPTED.

WITH RESPECT TO THIS DEPORTATION PROVISION OVERRIDE THAT WE'VE BEEN TALKING ABOUT. AS FAR AS I'M AWARE, THE TRUMP ADMINISTRATION IS THE FIRST ADMINISTRATION THAT HAS EVER ACTUALLY INVOKED THAT STATUTE, THAT OVERRIDE PROVISION.

THE GOVERNMENT HAS PROVIDED ZERO EXAMPLES PRIOR TO MAHMOUD KHALIL, MOHSEN MAHDAWI AND THE OTHERS OF THAT STATUTE EVER BEING USED BEFORE. SO YOU NEED A -- YOU NEED A PLAINTIFF, AND TO HAVE A CREDIBLE THREAT OF ENFORCEMENT, IT HELPS TO HAVE SOMEONE TO POINT TO TO SAY, SEE, THIS IS WHY OUR SPEECH IS CHILLED. THEY'RE ENFORCING IT AGAINST OTHER PEOPLE.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



SO, I THINK TEXTURALLY --

**THE COURT:** MEANING THAT THE LANGUAGE HASN'T CHANGED, IT'S JUST THAT THERE WOULD HAVE BEEN NO ONE WHO HAD STANDING BEFORE, BECAUSE IT HAD NEVER BEEN ENFORCED, AND SO, THERE WAS NO PLAINTIFF TO BRING SUCH A CASE.

**MR. FITZPATRICK:** PERHAPS, YOUR HONOR.

**THE COURT:** WALK ME THROUGH ON THE FIFTH AMENDMENT PROCEDURALLY AGAIN, WHAT IT IS THAT THE PLAINTIFF NEEDS TO DO, AND AT WHAT POINT IT GOES TO THE DEFENSE.

**MR. FITZPATRICK:** RIGHT.

SO -- HERE I BELIEVE OUR BURDEN IS JUST, IS TO SHOW -- IS TO SHOW THE CONSTRUCTION OF THE LAW, AND THEN IT'S THE GOVERNMENT'S BURDEN TO PROVE THE CONSTITUTIONALITY OF THE STATUTE. IT IS THE GOVERNMENT'S BURDEN TO US TO SHOW THAT THE LAW PROVIDES A REASONABLE PERSON ADEQUATE NOTICE OF WHAT THEY CAN AND CAN'T DO, AND PROVIDES ADEQUATE GUARDRAILS TO ENFORCERS TO GUARD AGAINST SUBJECTIVE AND ARBITRARY ENFORCEMENT, AND THAT'S WHERE -- THAT'S WHERE THE LAW IS LACKING HERE.

**THE COURT:** OKAY.

**MR. HELLAND:** YOUR HONOR, THE VERSION OF THE LAW AT ISSUE TODAY IS A NARROWER VERSION THAN WHAT HAS HISTORICALLY BEEN ON THE BOOKS, BUT THOSE HISTORIC VERSIONS HAVE BEEN REPEATEDLY UPHELD BY THE SUPREME COURT AGAINST VAGUENESS CHALLENGES. IN A SERIES OF CASES THAT WE CITED IN OUR MOTION FOR SUMMARY JUDGMENT, AND AGAIN IN OUR SUPPLEMENTAL BRIEFING.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



INDIVIDUALS WHO WERE SUBJECT TO REMOVAL OR DEPORTATION BROUGHT VAGUENESS CHALLENGES AGAINST HISTORIC VERSIONS OF THE EQUIVALENT STATUTES. STATUTES THAT SAID THAT THEY WERE, FOR EXAMPLE, AN UNDESIRABLE RESIDENT OF THE UNITED STATES, OR THAT THEIR PRESENCE IN THE UNITED STATES WAS CONTRARY TO THE PUBLIC INTEREST. THE SUPREME COURT UPHELD THEIR REMOVALS AGAINST VAGUENESS CHALLENGES, FINDING THAT IN THE SPECIAL AREA OF IMMIGRATION REGULATION AND FOREIGN POLICY THAT WAS SUFFICIENTLY CLEAR FOR THE INDIVIDUALS TO KNOW WHAT THE LAW PUT AT ISSUE, WHAT CONDUCT WAS PRESCRIBED BY THE LAW, AND FINDING THAT THE FIFTH AMENDMENT DID NOT REQUIRE SOMETHING MORE DEFINITE.

**THE COURT:** WHAT'S THE BEST AUTHORITY YOU CAN GIVE ME FOR THIS? BECAUSE TO THE PLAINTIFF'S POINT HERE, HOW WOULD ANYONE, JUST EVEN LOOKING AT THE PLAINTIFFS WHO ARE HERE, THE DOE PLAINTIFFS WHO ARE HERE, AND THE MEMBERS OF STANFORD DAILY, HOW WOULD THEY KNOW RIGHT NOW WHAT IT IS OKAY TO WRITE ABOUT? WHAT IT IS OKAY TO PROTEST ABOUT, BASED ON THE WAY THAT THIS LAW IS WRITTEN?

**MR. HELLAND:** YES, THE LAW OF NECESSITY, AND THIS GOES TO WHAT OTHER OPTIONS CONGRESS HAD TO NARROW IT. THE LAW OF NECESSITY IS DRAFTED IN RELATIVELY BROAD TERMS. WE ADMIT THAT MY FRIEND ON THE OTHER SIDE POINTED IT OUT EARLIER, AND, YES, WE ADMIT IT, BECAUSE, AS WE'VE SAID REPEATEDLY TODAY AND PREVIOUSLY, IT HAD TO TO ACCOMPLISH THESE ENDS.

NOW, A PERSON COULD LOOK AROUND AND SEE WHAT OTHER

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

COMPARABLE ENFORCEMENT ACTIONS ARE BEING TAKEN, AND THAT ARGUABLY PUTS THEM ON NOTICE, AND THEY COULD SEE HOW THOSE CASES ARE PERMEATING OR PERCOLATING THROUGH THE COURT SYSTEMS. THEY COULD SEE WHAT ENFORCEMENT OFFICIALS ARE SAYING PUBLICLY, AT LEAST THEY HAVE SOURCES OF INFORMATION FOR WHAT THE CURRENT ADMINISTRATION VIEWS AS RENDERING THEM SUBJECT TO ENFORCEMENT UNDER THESE STATUTES.

BUT GOING BACK TO YOUR HONOR'S QUESTION --

**THE COURT:** I MEAN, I GUESS THAT GOES TO A POINT THAT WAS RAISED IN THE PLAINTIFFS BRIEFS, AND EARLIER IN THE ARGUMENT TODAY, THAT IS PART OF THE CHILLING EFFECT THAT THEY ASSERT, WHICH IS IT'S NOT TO GO AFTER EVERYONE. I'M ALSO CAPTURING SOME LANGUAGE, I THINK, FROM AAUP, BUT IF THE ADMINISTRATION GOES AFTER A SELECT FEW, WHETHER IT IS FOR ESPOUSING VIEWS THAT ARE SYMPATHETIC TO PALESTINE OR EXPRESSING THAT THEY DO NOT HAVE GRIEF OVER THE DEATH OF CHARLIE KIRK, OR WHETHER THEY ARE OPPOSED TO PEACE NEGOTIATIONS BETWEEN THE UNITED STATES AND IRAN.

I GUESS, YOU DON'T KNOW UNTIL SOMEBODY ELSE GETS PROSECUTED, AND THEN WHEN THEY GET PROSECUTED, YOU REALIZE, NOW I'M NOT PERMITTED TO TALK ABOUT THOSE THINGS, BUT THEN YOU HAVE TO WAIT TO SEE WHAT ELSE IT IS OKAY FOR YOU TO SAY.

**MR. HELLAND:** I DON'T THINK THE FIFTH AMENDMENT REQUIRES ANYTHING MORE DEFINITE IN THESE CONTEXTS.

SO YOU ASKED FOR AUTHORITY --

**THE COURT:** I DID.

**MR. HELLAND:** SO THE THREE CASES HISTORICALLY THAT WE'VE CITED ALREADY ARE THE BOUTILIER VERSUS INS CASE FROM 1967, THE JORDAN VERSUS DE GEORGE CASE FROM 1951, AND THE MAHLER VERSUS EBY CASE FROM 1924. THOSE ARE HISTORIC CHALLENGES TO DEPORTATIONS BASED ON PREVIOUS VERSIONS OF A SIMILAR STATUTE, AND IN WHICH CASE THE SUPREME COURT IN EACH OF THEM UPHELD THE REMOVALS AGAINST VAGUENESS CHALLENGES.

MORE RECENTLY, THERE'S CASES LIKE HLP, RIGHT, ANOTHER ONE THAT THERE WAS A VAGUENESS CHALLENGE IN THAT CASE AS WELL, AND THE SUPREME COURT UPHELD THE MATERIAL SUPPORT STATUTE AGAINST A VAGUENESS CHALLENGE, AND WE'VE ALSO CITED IN OUR PAPERS, THESE ARE NOT NOW REMOVAL CASES, BUT THEY DO IMPLICATE FOREIGN POLICY AND INTERNATIONAL TRAVEL ISSUES, THINGS LIKE HAIG VERSUS AGEE AND ZEMEL VERSUS RUSK CASES, WHERE AMERICAN CITIZENS' PASSPORTS WERE EITHER DENIED OR REVOKED, AND THE SUPREME COURT IN THOSE CASES SAID IN SUCH AS THESE INTERNATIONAL AREAS, CONGRESS, OF NECESSITY, PAINTS WITH A BROADER BRUSH, RIGHT, THAT'S A QUOTE FROM ZEMEL VERSUS RUSK. SO, THE SUPREME COURT HAS RECOGNIZED THAT CONGRESS HAS TO USE MORE BROAD LANGUAGE THAN MIGHT BE APPROPRIATE FOR DOMESTIC AFFAIRS FOR THIS AREA OF LAW. AND I THINK, IN PARTICULAR, GIVEN THE WELL-RECOGNIZED REDUCED FIFTH AMENDMENT RIGHTS OF FOREIGN NATIONALS, SAY WHATEVER YOU WANT ABOUT RELATIVE LACK OF CLARITY IN THE LAW ON THE FIRST AMENDMENT, I THINK THERE'S AMPLE AUTHORITY INDICATING THAT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


FOREIGN NATIONALS HAVE REDUCED FIFTH AMENDMENT CONSTITUTIONAL RIGHTS.

SO, WITH THAT BACKGROUND PRINCIPLE, AND THESE CASES WERE INDICATING THAT MORE CLARITY IS NOT REQUIRED UNDER THE FIFTH AMENDMENT FOR REMOVAL PROVISIONS, SUCH AS THESE. I DON'T THINK ANYTHING FURTHER IS REQUIRED HERE.

AND AGAIN, THE VERSION --

**THE COURT:** WHAT IS THE BEST AUTHORITY THAT YOU HAVE THAT SOMEBODY WHO IS LAWFULLY IN THIS COUNTRY, BUT NOT A CITIZEN, HAS A REDUCED RIGHT UNDER THE FIFTH AMENDMENT TO CHALLENGE A STATUTE ON THE BASIS OF IT BEING VOID FOR VAGUENESS?

**MR. HELLAND:** THE CASES THAT I'M FAMILIAR WITH, YOUR HONOR, ARE IN THE IMMIGRATION CONTEXT, IN WHICH CASE THE LAWFULNESS OF THE INDIVIDUAL'S PRESENCE WAS IN DISPUTE, I THINK. AND ALMOST UNIFORMLY IN THOSE CASES, WHEN IT'S REACHED THE SUPREME COURT, THE COURT HAS SAID THESE INDIVIDUALS HAVE REDUCED FIFTH AMENDMENT INTEREST.

**THE COURT:** I THINK THAT THAT'S A CRITICAL DISTINCTION, THOUGH, THAT THERE IS A DIFFERENCE, POTENTIALLY, BETWEEN THE WAY THE COURT, THE SUPREME COURT, AND OUR GOVERNMENT MAY VIEW THE RIGHTS, IF ANY, THAT SOMEONE HAS WHO HAS ENTERED, OR WHO IS IN THE COUNTRY UNLAWFULLY.

I WANT TO DISTINGUISH THIS BETWEEN SOMEBODY, PERHAPS, WHO HAS A VISA, AND, YOU KNOW, YOU, YOU TERMINATE THE VISA AT NOON,

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AND THEN YOU ARREST THEM AT 1 O'CLOCK RIGHT ON THE SAME DAY.

BUT, BUT I'M TALKING ABOUT, GENERALLY SPEAKING, SOMEBODY WHO'S LAWFULLY IN THIS COUNTRY ON ANY KIND OF A VISA, OR IS HERE WITH THE GOVERNMENT'S UNDERSTANDING, BECAUSE THEY HAVE REQUESTED ASYLUM. THE GOVERNMENT KNOWS WHO THEY ARE, THEY HAVE IN, IN OFTEN, OFTEN THE SITUATION IS THEY'RE AUTHORIZED TO WORK, THEY'RE FREQUENTLY PAYING TAXES, I'M NOT TALKING ABOUT PEOPLE WHO HAVE A CRIMINAL RECORD, PEOPLE WHO ARE HERE AS STUDENTS, THEY'RE HERE AS WORKERS IN OUR COMPANIES.

IS THERE ANY CASE THAT YOU CAN POINT ME TO THAT SAYS THAT ANY OF THESE FOLKS WHO ARE HERE LAWFULLY, THAT DON'T FIT INTO ONE OF THESE OTHER CATEGORIES, HAVE A REDUCED RIGHT UNDER THE FIFTH AMENDMENT?

**MR. HELLAND:** I DON'T REMEMBER THE FACTS OF THE CASES AS SAID IN OUR PAPERS WELL ENOUGH TO BE ABLE TO DO THAT IN REAL TIME FOR YOUR HONOR. I DO KNOW THAT WE CITED CASES IN VARIOUS CONTEXTS FOR THE PRINCIPLE THAT FOREIGN NATIONALS HAVE REDUCED FIFTH AMENDMENT RIGHTS. I JUST DON'T RECALL OFF THE TOP OF MY HEAD, IF THOSE ARE IN THAT --

**THE COURT:** OKAY. THERE WILL BE SOME ADDITIONAL BRIEFINGS AND I'D ASK THAT YOU POINT THAT OUT.

DO YOU HAVE ANYTHING THAT YOU WANT TO ADD ON THE FIFTH AMENDMENT SIDE?

**MR. HELLAND:** NO, YOUR HONOR, I THINK WE'VE COVERED IT.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**THE COURT:** ANYTHING FURTHER?

**MR. FITZPATRICK:** INCREDIBLY BRIEFLY, YOUR HONOR. THE GUIDELINES THAT MY FRIEND ON THE OTHER SIDE POSITED FOR HOW NON-CITIZENS ARE SUPPOSED TO KNOW WHAT SPEECH COULD POTENTIALLY IMPERIL THEIR IMMIGRATION STATUS, REALLY BOILS DOWN TO, WELL, YOU BETTER NOT SAY SOMETHING THAT THE GOVERNMENT MIGHT DISAGREE WITH. THAT IS NOT ONLY INCREDIBLY VAGUE, IT IS COMPLETELY ANTITHETICAL TO THE FIRST AMENDMENT MARKETPLACE OF IDEAS THAT OUR CONSTITUTION PROMISES.

(PAUSE IN PROCEEDINGS.)

**THE COURT:** HAS ANY OTHER COURT CONSIDERED, WHETHER IT ACCEPTED IT OR REJECTED IT, THE EXCEPTION IN THE DEPORTATION PROVISION THAT A NON-CITIZEN CANNOT BE DEPORTED FOR PROTECTED SPEECH UNLESS THE SECRETARY OF STATE PERSONALLY DETERMINES THAT THE NON-CITIZEN STATEMENTS COMPROMISE THE COMPELLING U.S. FOREIGN POLICY INTEREST? HAS ANYBODY TAKEN THIS ON SQUARELY?

**MR. FITZPATRICK:** I'M NOT AWARE OF ANY STATUTORY CHALLENGE AGAINST THOSE. I BELIEVE THEY, SORT OF, COME UP ON THE PERIPHERY OF SOME OF THE HABEAS ACTIONS, BUT THEY'RE, SORT OF, SIDECAR ISSUES TO THE UNDERLYING DETENTION.

**MR. HELLAND:** I'M NOT AWARE OF ANY OTHERS.

**THE COURT:** HOW IS COUNT ONE IN THE OPERATIVE COMPLAINT DIFFERENT THAN COUNT FIVE?

**MR. FITZPATRICK:** YOUR HONOR, YOU SAID COUNT ONE AND COUNT?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**THE COURT:** MEANING IS IT -- IS ESSENTIALLY -- WELL, LET ME JUST LET YOU ADDRESS THAT.

**MR. FITZPATRICK:** OH, SURE.

SO, COUNT ONE THAT SEEKS DECLARATORY RELIEF AGAINST THE DEPORTATION PROVISION. COUNT FIVE SEEKS DECLARATORY RELIEF AGAINST THE RELOCATION PROVISION.

**THE COURT:** ESSENTIALLY, JUST SO I'M CLEAR ABOUT THE WAY THAT THIS IS ORGANIZED, YOU STRUCTURED IT, ESSENTIALLY, THE DEPORTATION PROVISION FIRST WITH THE FIRST FOUR COUNTS, FIRST AMENDMENT DECLARATORY RELIEF, FIRST AMENDMENT INJUNCTIVE RELIEF, FIFTH AMENDMENT DECLARATORY RELIEF, FIFTH AMENDMENT INJUNCTIVE RELIEF, BUT ALL RELATED TO THE DEPORTATION PROVISION.

**MR. FITZPATRICK:** THAT'S CORRECT.

**THE COURT:** AND THEN FOLLOWING THAT SAME MODEL FOR THE REVOCATION PROVISION, IS THERE A REASON -- IS WHATEVER LINE OF THINKING THE COURT HAS AS IT RELATES TO --

LET ME START WITH STANDING. ONCE THE COURT RESOLVES THAT ISSUE, HOWEVER, IT DOES, MEANING THAT THE COURT FOUND THAT THERE WAS ADEQUATE STANDING TO GET TO THIS POINT, THAT -- AND WHICH DOESN'T MEAN THAT THE COURT OVERLOOKS IT AT THIS JUNCTURE. IT DIDN'T MEAN THAT THE GOVERNMENT COULDN'T RAISE IT MORE SUBSTANTIVELY, BUT IT CERTAINLY GOT PAST THE MOTION TO DISMISS, BUT IF I FIND THAT THERE IS STANDING, IS THAT FINDING ESSENTIALLY APPLICABLE ACROSS THE BOARD?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

UNITED STATES COURT REPORTERS

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**MR. FITZPATRICK:** YES, YOUR HONOR.

I CAN EXPAND IT IF YOU WOULD LIKE?

**THE COURT:** MAYBE BRIEFLY.

**MR. FITZPATRICK:** SURE.

SO AS YOUR HONOR RULED IN JANUARY, AND AS WE ALLEGED, OUR PLAINTIFFS HAVE CURTAILED THEIR SPEECH BECAUSE THEY'RE AFRAID OF TWO POSSIBILITIES: ONE, THAT THEY MAY HAVE THEIR VISAS REVOKED, AND THE OTHER IS THAT THEY'RE AFRAID THAT THE SECRETARY OF STATE WILL DEEM THEM A COMPELLING FOREIGN POLICY THREAT AND RENDER THEM REMOVABLE, SO BECAUSE THE COURT HAS FOUND THAT THEY HAVE STANDING, AND THEY HAVE THAT CHILL, THEY HAVE STANDING TO CHALLENGE THESE STATUTES FOR BOTH DECLARATORY AND INJUNCTIVE RELIEF.

AND, YOUR HONOR, ONE THING I MIGHT ADD THAT PERHAPS WE'LL MAKE IT, I WON'T -- I WON'T GO SO FAR AS TO SAY HELPFUL, BUT IT'S SOMETHING ELSE FOR THE COURT TO CONSIDER.

THE REASON WE STRUCTURED THESE CLAIMS THE WAY WE DID IS BECAUSE OF THE UNIQUE 1252 PROBLEMS, SO ORDINARILY WE WOULD COMBINE OUR REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF, WE SEPARATED THEM OUT IN THIS CASE BECAUSE OF THE 1252 UNIQUE CIRCUMSTANCE THERE, BECAUSE WE WANTED TO GIVE THE COURT THE ABILITY TO GRANT RELIEF STRAIGHT UP OR STRAIGHT DOWN ON EACH INDIVIDUAL TYPE OF RELIEF, RATHER THAN, FOR EXAMPLE, GRANTING IN PART AND DENYING IN PART RELIEF. SO THAT'S WHY WE DID WHAT WE DID.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**THE COURT:** THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AT PAGE 6 DISCUSSES WHEN SOMEONE EXPOSES HATEFUL IDEOLOGY OR OTHERWISE EXPLOITS IMMIGRATION LAWS FOR MALEVOLENT PURPOSES. WHAT DOES THAT MEAN?

**MR. HELLAND:** YOU'RE REFERRING TO THE TEXT OF THE EXECUTIVE ORDER, I THINK, CORRECT?

**THE COURT:** I AM.

**MR. HELLAND:** YOUR HONOR, I DON'T KNOW HOW MUCH I CAN EXPLAIN FURTHER BEYOND ITS PLAIN MEANING, BUT I UNDERSTAND IT TO MEAN, THAT IT'S POLICY OF THE UNITED STATES TO -- WELL, FIRST OF ALL, THERE'S A REFERENCE TO INTENT TO COMMIT TERRORIST ATTACKS, THREATEN OUR NATIONAL SECURITY, THOSE ARE RELATIVELY SELF-EXPLANATORY, I THINK. ESPOUSED HATEFUL IDEOLOGY OR OTHERWISE EXPLOIT THE IMMIGRATION LAWS FROM MALEVOLENT PURPOSES. I BELIEVE EXPOSED HATEFUL IDEOLOGY, AS USED IN THE EXECUTIVE ORDER, IS MAKING REFERENCE TO, WELL, I KNOW, YOU KNOW, CONCERNS ABOUT ANTI-SEMITISM WERE FIRST AND FOREMOST AMONG SOME OF THE NATION DISCOURSE AT -- AROUND THE TIME OF THE INAUGURATION, AND SO, I BELIEVE THAT IS AMONG THE THINGS THAT'S BEING REFERRED TO IN THAT CONCEPT, BUT I DON'T KNOW WHAT ELSE --

**THE COURT:** ONE OF THE ISSUES THAT CAME UP HERE WITH REGARDS TO ONE OF THE PEOPLE EARLY ON, OTHER PEOPLE WHO ARE TAKEN INTO CUSTODY, NOT THE PLAINTIFFS HERE, WAS AN ARTICLE THAT WAS WRITTEN, A POSITION THAT WAS TAKEN IN THAT THERE WAS A

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


GENOCIDE OCCURRING IN GAZA, JUST AN OPINION THAT SOMEBODY WAS OFFERING, IS THAT ANTI-SEMITISM?

**MR. HELLAND:** I DON'T BELIEVE THAT IT IS, YOUR HONOR, AND I WOULD HAVE TO GO BACK TO LOOK AT THE PARTY'S STATEMENT OF UNDISPUTED FACTS, BUT I BELIEVE THERE WAS SOMETHING IN THERE, OR AT LEAST A REFERENCE MADE IN OUR EARLIER BRIEFING, THAT THAT KIND OF TERM ALONE WOULD NOT BE, AT LEAST GOING BACK TO THE QUESTION OF IMMIGRATION ENFORCEMENT UNDER THE STATUTES, THAT THAT KIND OF LANGUAGE ALONE WOULD NOT BE SUFFICIENT TO TRIGGER ENFORCEMENT ACTION.

**THE COURT:** THERE'S A REFERENCE HERE, THE FOLLOWING PAGE OF IT THAT TALKED ABOUT PERPETRATORS OF UNLAWFUL ANTI-SEMITIC HARASSMENT. CAN ANTI-SEMITIC HARASSMENT BE SPEECH ALONE?

**MR. HELLAND:** I THINK, IF IT'S SPEECH ADVOCATING FOR VIOLENCE, THEN IT POTENTIALLY CAN BE. AND I THINK THE QUESTION IS, HOW CONCRETE AND DIRECT OR SEVERE IS THE CALL FOR VIOLENCE.

**THE COURT:** WHO WOULD MAKE THE DECISIONS ABOUT WHETHER ANY OF THESE INDIVIDUAL STATEMENTS MIGHT BE MADE BY ANYONE WHO IS NOT A CITIZEN, BUT WHO'S OTHERWISE LAWFULLY HERE, WHO WOULD MAKE THE DECISION ABOUT WHETHER THIS SPEECH CROSSES THE LINE, DEFIES THE EXECUTIVE ORDER, DEFIES THE LAW AS IT'S WRITTEN, BUT ALSO AS IT'S BEING INTERPRETED, AS IT'S BEING APPLIED NOW?

**MR. HELLAND:** YES, SO I THINK THERE'S A, YOU KNOW, A

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY
UNITED STATES COURT REPORTERS

MULTI-AGENCY BROADER IMMIGRATION ENFORCEMENT MECHANISM, WHICH INCLUDES AN INVESTIGATION BY DHS, HSI, HOMELAND SECURITY INVESTIGATIONS.

AT SOME POINT, IF IT IS THE KIND OF THING THAT'S GOING TO RESULT IN A POTENTIAL REMOVAL ACTION BEING INITIATED, THEN, YOU KNOW, MEMOS ARE PREPARED, THEY GO THROUGH ESCALATING WITH HIGHER OFFICIALS, AND ULTIMATELY, IF THAT DECISION IS MADE, THEN IT'S THE SECRETARY OF STATE WHO MAKES THE DECISION THAT, AGAIN, IF IT IS A SPEECH-BASED DETERMINATION, THEN IT'S MADE BY THE SECRETARY OF STATE IN THE END.

**THE COURT:** WE TALKED EARLIER, BECAUSE I ASKED YOU TO -- ABOUT STRICT SCRUTINY AS BEING THE STANDARD, BUT THE GOVERNMENT HAD ARGUED THAT A RATIONAL BASIS REVIEW WAS APPROPRIATE. CAN YOU REMIND ME WHY?

**MR. HELLAND:** YES, IT'S BECAUSE THIS IS IN THE IMMIGRATION CONTEXT.

AND SO, THERE ARE OTHER SUPREME COURT CASES, THE DEPARTMENT OF STATE VERSUS MUNOZ IS PERHAPS THE MOST RECENT ONE. I THINK IT RELIES ON KLEINDIENST VERSUS MANDEL THAT USE THIS ESSENTIALLY RATIONAL BASIS LANGUAGE FOR SIMILAR DETERMINATIONS. SO OUR VIEW IS THAT THAT SAME ANALYSIS APPLIES FOR THE JUSTIFICATION REQUIRED FOR THE STATUTE HERE.

**THE COURT:** BUT AGAIN, TO BE CLEAR, NONE OF THOSE CASES DEALT WITH PEOPLE WHO WERE LAWFULLY IN THE UNITED STATES; IS THAT CORRECT?

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**MR. HELLAND:** WELL -- SO DEPARTMENT OF STATE VERSUS MUNOZ WAS ACTUALLY A CITIZEN'S CLAIM THAT THEY HAD A CONSTITUTIONAL RIGHT FOR THEIR FAMILY MEMBER TO BE BROUGHT FROM ABROAD AND JOIN THEM IN THE UNITED STATES, AND THE SUPREME COURT SAID THAT -- I THINK I ACKNOWLEDGED A HISTORIC POTENTIAL EXCEPTION THAT SAID, AS LONG AS THE GOVERNMENT ARTICULATES A FACIALLY LEGITIMATE AND BONA FIDE REASON, THEN THAT IS SUFFICIENT FOR PURPOSES OF THE CONSTITUTION. SO --

**THE COURT:** I SHOULD CLARIFY. SOMEBODY WHO IS LAWFULLY CURRENTLY IN THIS COUNTRY AND WHO IS A NON-CITIZEN.

**MR. HELLAND:** YES. NOT, NOT THAT I'M AWARE OF, YOUR HONOR.

**THE COURT:** OKAY.

I THINK THIS WAS CLEAR ON THE RECORD EARLIER, IN FACT, I THINK THE GOVERNMENT WAS QUITE CLEAR, BUT I JUST WANT TO HAVE IT -- MORE DIRECT, BECAUSE MY QUESTIONS SOMETIMES CAN BE LONG, AND THEY'RE NOT ALWAYS AS CLEAR AS I THINK THEY ARE WHEN I'M SAYING THEM.

SO I WANT TO ASK DIRECTLY ABOUT THE ISSUE OF A CONCESSION, OR AT LEAST A POINT FROM THE GOVERNMENT. SO THE PLAINTIFF HAS SAID HERE THAT THE GOVERNMENT CONCEDES THAT THE PROVISIONS ALLOW TO REVOKE VISAS AND DEPORT BASED ON PROTECTED SPEECH; IS THAT CORRECT?

**MR. HELLAND:** YES. WELL, IF I MAY, YOUR HONOR?

YOU KNOW, PROTECTED SPEECH IS POTENTIALLY A TERM OF ART

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


THERE, RIGHT? WHETHER IT'S ACTUALLY PROTECTED, THAT IS, WHETHER THE FIRST AMENDMENT WOULD ACTUALLY APPLY TO PREVENT THE ENFORCEMENT ACTION FROM BEING TAKEN, IS SOMETHING THAT WE --

**THE COURT:** CONTENT-BASED SPEECH, RIGHT, OPINION-BASED SPEECH. I'M NOT TRYING TO CATCH YOU IN SOMETHING.

**MR. HELLAND:** RIGHT.

**THE COURT:** I'M SAYING I RECOGNIZE THAT THERE IS SOME SPEECH THAT THERE'S PLENTY OF CASE LAW OUT THERE THAT'S NOT REALLY APPLICABLE FOR OUR PURPOSES TODAY, BUT -- ABOUT THINGS THAT PEOPLE, WHETHER YOU'RE A CITIZEN OR NOT, WANT TO SAY THAT YOU CANNOT SAY, BUT YOU CANNOT SAY WITHOUT BEING SUBJECT POTENTIALLY TO SOME REPERCUSSIONS FOR THAT. THAT ASIDE.

I THINK THE GOVERNMENT JUST DOESN'T PULL ANY PUNCHES ABOUT THIS, BUT THE VIEW IS THAT THESE STATUTES PERMIT THE PLAIN LANGUAGE OF THEM TO ALLOW THE SECRETARY OF STATE TO REVOKE A VISA AND DEPORT SOMEBODY BASED ON PROTECTED SPEECH, ASSUMING THAT THE SECRETARY OF STATE, FOR EXAMPLE, HAS CONCLUDED THAT THAT SPEECH CREATES A NATIONAL SECURITY INTEREST. SORRY, I'LL MOVE BACK TO THE LANGUAGE THAT -- IT'S BEEN A LONG DAY -- COMPROMISES A COMPELLING U.S. FOREIGN POLICY INTEREST.

**MR. HELLAND:** YES.

**THE COURT:** I THINK WE JUST COVERED THIS, BUT ON THE PLAINTIFF'S SIDE, THE GOVERNMENT HAS INDICATED THAT IT'S NOT AWARE OF THE SUPREME COURT EVER INVALIDATING AN IMMIGRATION

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

STATUTE ON VOID FOR VAGUENESS GROUNDS; IS THAT RIGHT?

**MR. FITZPATRICK:** THAT IS THE GOVERNMENT'S CONTENTION, HOWEVER, THE GOVERNMENT IS INCORRECT.

**THE COURT:** AND TELL ME -- CAN YOU REFER ME TO THE CASE?

**MR. FITZPATRICK:** SESSIONS VERSUS DIMAYA.

**MR. HELLAND:** AND, YOUR HONOR, IF I MAY, I THINK THE FOOTNOTE THAT FOLLOWS THE VERY SENTENCE YOU READ EXPLAINS WHY SESSIONS VERSUS DIMAYA ONLY CONCERNED A RESIDUAL CLAUSE, IT WAS NOT A FULL PART OF THE STATUTE, EVEN, AND THAT RESIDUAL CLAUSE ITSELF HAD PREVIOUSLY, OR THE LANGUAGE THEREIN HAD PREVIOUSLY BEEN FOUND VOID FOR VAGUENESS IN A SEPARATE CASE INVOLVING CRIMINAL LAW, SO IT'S -- THAT IS THE ONLY EXAMPLE THAT THEY HANG THEIR HAT ON.

**THE COURT:** IS THERE ANY CASE OTHER THAN SESSIONS?

**MR. FITZPATRICK:** MASSIEU VERSUS RENO, THAT WE DISCUSSED EARLIER, WHERE THE DISTRICT COURT, BEFORE GETTING VACATED ON UNRELATED PROCEDURAL GROUNDS, BUT HELD THAT THE FOREIGN POLICY PROVISION ITSELF WAS VOID FOR VAGUENESS, THE STATUTE THAT WE'RE HERE TALKING ABOUT, SO THAT WOULD BE MY SECOND EXAMPLE.

**THE COURT:** WHICH DISTRICT COURT WAS THAT?

**MR. FITZPATRICK:** THE DISTRICT OF NEW JERSEY. IT WAS JUDGE MARYANNE TRUMP BARRY, AS IRONY WOULD HAVE IT.

**THE COURT:** IS IT THE GOVERNMENT'S POSITION THAT THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



REASON WHY THERE ARE NO OTHER CASES THAT HAVE HELD THIS IS BECAUSE IMMIGRATION IS SOMEHOW EXEMPT?

**MR. HELLAND:** YES, YOUR HONOR.

THAT'S THE FIRST PART OF OUR MOTION FOR SUMMARY JUDGMENT ON THIS ISSUE.

**THE COURT:** AND WHAT IS THE BEST AUTHORITY FOR THAT?

**MR. HELLAND:** I THINK IT'S HAWAII. I THINK IT'S, I THINK IT'S ZIVOTOFSKY CASE.

YOUR HONOR, I'M SORRY, I'M DRAGGING A LITTLE BIT HERE.

**THE COURT:** I THINK THAT'S FAIR ALL THE WAY AROUND FOR US THIS AFTERNOON.

**MR. HELLAND:** BUT RIGHT, SO HAWAII AND HARISIADES ARE THE TWO LEAD CASES WE CITE FOR THIS ISSUE.

WE TALK ALSO, AND I'VE CITED TO YOUR HONOR EARLIER TODAY, THE ZEMEL VERSUS RUSK CASE AND THE HAIG VERSUS AGEE CASE, WHICH, AGAIN, INVOLVED THE RIGHTS OF CITIZENS TO THEIR PASSPORT, BUT ALSO INVOLVED THE INTERNATIONAL TRAVEL ASPECT, AND SO, SIMILARLY RELATED TO SOME FOREIGN POLICY ISSUES.

I THINK <u>HAWAII</u> AND <u>HARISIADES</u> AND HAIG THAT I'VE CITED ARE PROBABLY THE BEST CASES THAT WE HAVE ON THIS.

**THE COURT:** OKAY.

AFTER WE FINISH IN JUST A COUPLE OF MINUTES, I'M GOING TO GO OFF THE RECORD JUST LONG ENOUGH TO BE SURE THAT THERE ISN'T ANYTHING ELSE THAT I'VE MISSED. I JUST WANT TO TAKE A MOMENT TO DO THAT.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



I'M NOT ASKING FOR ANY KIND OF CLOSING REMARKS. I DO NOT NEED YOU TO TIE UP THE ENTIRE THING WITH A BOW. WE HAVE GONE ON FOR A VERY LONG TIME TODAY, WE'VE COVERED A LOT OF GROUND.

I WILL GO BACK THROUGH THE TRANSCRIPT AS WELL AS I HAD INDICATED, WE MAKE SOME REQUESTS FOR ADDITIONAL BRIEFING AFTER WE'VE HAD A CHANCE TO DO THAT, BUT IS THERE ANYTHING AT THIS POINT MEANING IT'S IMPORTANT TO ADD, OR THAT YOU'VE MISSED? DO NOT FEEL LIKE YOU NEED TO FILL UP THE SILENCE TO COME UP WITH SOMETHING, BUT IS THERE SOMETHING THAT YOU -- THAT WE'VE MISSED?

**MR. HELLAND:** YOUR HONOR, THE ONLY THING I WOULD ADD, WITH RESPECT TO YOUR HONOR'S QUESTION TO MY FRIEND ON THE OTHER SIDE OF WHETHER A CERTAIN TYPE OF ADVOCACY, I BELIEVE IT WAS ACCUSING ISRAEL OF GENOCIDE, COULD CONSTITUTE A GROUND FOR REMOVAL. JOINT STATEMENT OF FACT 227 IS THAT MR. MAHDAWI'S STATE DEPARTMENT PROFILE REFERENCED HIM ACCUSING ISRAEL OF GENOCIDE, AND THAT WAS ONE OF THE BASIS USED TO RENDER HIM DEPORTABLE.

**THE COURT:** ANYTHING ELSE?

**MR. HELLAND:** NO, YOUR HONOR.

**THE COURT:** WE'RE GOING TO TAKE A BREAK FOR JUST A FEW MINUTES, AND THEN I'LL COME BACK ON BEFORE WE CLOSE UP.

(RECESS FROM 4:12 P.M. UNTIL 4:23 P.M.)

**THE CLERK:** ALL RISE.

THIS COURT IS AGAIN IN SESSION.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

**THE COURT:** ALL RIGHT, WE'RE BACK ON THE RECORD.

YOU CAN BE SEATED AND COUNSEL CAN COME BACK UP.

THERE'S ONE FOLLOW-UP QUESTION THAT I HAVE, AND THEN SOME THINGS I WANT TO TALK ABOUT IN TERMS OF WHAT HAVE -- WHAT'S COMING NEXT.

IF YOU GO TO THE EIGHT CLAIMS THAT ARE IN THE COMPLAINT, AND THEN THE PRAYER FOR RELIEF, WHICH IS -- BEGINS ON PAGE 43 OF THE COMPLAINT.

I UNDERSTAND THAT WHAT PLAINTIFFS WANT, CRITICALLY, IS SOMETHING THAT AS I UNDERSTAND WAS NOT REQUESTED IN AAUP, WHICH IS THE PLAINTIFFS WANT THE COURT, TO STRIKE DOWN THE RELEVANT STATUTES THAT ARE HERE ON THE FIRST AND FIFTH AMENDMENT GROUNDS THAT HAVE BEEN RAISED AS APPLIED TO PROTECTED SPEECH.

**MR. FITZPATRICK:** YES, YOUR HONOR.

**THE COURT:** I UNDERSTAND THAT THAT IS THE PLAINTIFF'S REQUEST. HOWEVER, ONE THING THE COURT COULD DO, EITHER IN CONJUNCTION WITH THAT OR SEPARATELY FROM THAT, AND ALONE, IS THE COURT CAN ADDRESS THE CLAIMS SPECIFICALLY AS APPLIED TO THE PLAINTIFFS AND NOT FACIALLY.

SO -- YOU'RE LOOKING PERPLEXED, AND SO, I JUST WANT TO BE VERY CLEAR ABOUT THIS. THERE IS THE -- THE STATUTE IS UNCONSTITUTIONAL AS APPLIED AND LIMITED TO THE PLAINTIFFS WHO HAVE BROUGHT THIS CASE, AS COMPARED TO THE LARGER FACIAL APPLICATION TO ANYONE AND EVERYONE, RIGHT?

**MR. FITZPATRICK:** I THINK, I THINK I UNDERSTAND THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



DISCREPANCY HERE, YOUR HONOR.

WHAT YOUR HONOR JUST DESCRIBED IS A FACIAL ATTACK POST CASA. POST CASA, THIS COURT IS NO LONGER ABLE TO ENTER WHAT USED TO BE A NATIONWIDE INJUNCTION ENJOINING THE GOVERNMENT FROM ENFORCING THE STATUTE AGAINST ANYONE.

SO HERE THE FACIAL RELIEF THAT WE ARE ASKING FOR IS THAT THE GOVERNMENT, OR PARDON ME, THAT THE COURT ENTERS IN ORDER BOTH DECLARING AND AN INJUNCTION WHERE IT CAN, THAT PLAINTIFFS CANNOT BE -- HAVE THEIR VISAS REVOKED OR BE DEPORTED BASED ON PROTECTED SPEECH, THAT IS -- THAT IS FACIAL RELIEF, AS-APPLIED RELIEF WOULD BE JUST WITH RESPECT TO THE SPEECH THAT'S PLED IN THE COMPLAINT. SO WE CAN GET FACIAL RELIEF WITHOUT THE COURT HAVING TO, FRANKLY, BECAUSE IT CAN'T ISSUE RELIEF THAT THAT IS APPLICABLE TO THE ENTIRE UNITED STATES.

**THE COURT:** I WANT TO BE SURE, AT THIS LATE HOUR, THAT I'M BEING AS CLEAR AS I CAN BE.

THERE IS RELIEF SPECIFICALLY THAT THE COURT MIGHT BE ABLE TO PROVIDE TO THESE PLAINTIFFS, AND THESE PLAINTIFFS ALONE, VERSUS RELIEF THAT WOULD BENEFIT THESE PLAINTIFFS, BUT POTENTIALLY BENEFIT MANY OTHERS, NOT BECAUSE THE COURT IS ISSUING A NATIONWIDE INJUNCTION -- THAT HAS NOT BEEN REQUESTED HERE -- BUT BECAUSE THE PLAINTIFFS ARE SEEKING A DETERMINATION FROM THIS COURT THAT -- LET ME JUST GO WITH THE DEPORTATION PROVISION, THAT DEPORTATION PROVISION IS FACIALLY INVALID. THERE IS NO VERSION OF IT THAT CAN BE VALID AS IT RELATES TO

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

PROTECTED SPEECH, SO THE PLAINTIFFS ARE THE ONES WHO HAPPEN TO HAVE BROUGHT IT, BUT THAT THIS COURT IS GOING TO MAKE A DETERMINATION THAT HAS BROADER SIGNIFICANCE THAN THESE INDIVIDUAL PLAINTIFFS.

AM I MAKING MYSELF CLEAR?

**MR. FITZPATRICK:** I THINK SO, YOUR HONOR.

**THE COURT:** WELL, I DO WANT TO -- I WANT TO UNDERSTAND THIS SPECIFICALLY OF WHAT THE PLAINTIFFS ARE SEEKING, BECAUSE IF THE COURT CONCLUDES I DO NOT HAVE ENOUGH, FOR WHATEVER REASON, TO GET TO THE BROADER ISSUE, EITHER BECAUSE THE PLAINTIFFS HAVEN'T PROPERLY ALLEGED IT, OR BECAUSE THE DEFENDANTS CAN OVERCOME, EVEN IF IT'S STRICT SCRUTINY, THEY WERE ABLE TO ARTICULATE AN INTEREST THAT IS SUFFICIENT, AND THAT IT IS NARROWLY TAILORED, THAT I CAN'T GET THERE FOR THE PLAINTIFFS. IS IT THE PLAINTIFF'S POSITION THAT THEY LOSE ENTIRELY AND THERE'S NO RELIEF AT ALL THAT'S AVAILABLE FOR THESE PLAINTIFFS? OR DO YOU BELIEVE THAT YOU HAVE ALLEGED THAT THERE'S ALSO RELIEF THAT CAN COME JUST TO THESE PLAINTIFFS?

**MR. FITZPATRICK:** I THINK THERE IS RELIEF THAT CAN COME JUST TO THESE PLAINTIFFS, BUT AND MAYBE THIS WILL HELP BRIDGE THE GAP HERE.

WE WOULD CERTAINLY HOPE THAT THE RELIEF, FOR EXAMPLE, EVEN THOUGH IT'S NOT THIS PARTICULAR SPEECH ALLEGED IN THE COMPLAINT, WOULD PROTECT STANFORD DAILY, IF, FOR EXAMPLE, THEY DECIDE TO WRITE AND PUBLISH AN OP-ED ABOUT IRAN, OPPOSING THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



PEACE DEAL IN IRAN, SO THAT'S WHERE SORT OF MY HESITANCY ABOUT JUST LIMITING IT TO THE SPEECH IN THE COMPLAINT COMES UP. BECAUSE OUR CLIENTS NEED TO KNOW THAT, REGARDLESS OF THE FOREIGN POLICY ISSUE, THEY'RE PROTECTED.

**THE COURT:** AND IT'S A FAIR POINT THAT YOU ARE MAKING, BUT THE RELIEF THAT THE COURT CAN GIVE NEEDS TO MIRROR AND NOT EXCEED WHAT'S BEEN REQUESTED IN THE COMPLAINT, AND TO THE EXTENT THAT THIS IS SOMETHING THE COURT COULD DO, NOT -- AGAIN, I HAVEN'T EVEN BEGUN TO GET THERE YET, BUT IF THAT WAS SOMETHING THAT THE COURT WAS GOING TO DO HERE, THAT IT IS LIMITED TO THE PLAINTIFFS. MEANING THE DOE PLAINTIFFS AND THE MEMBERS WITHIN STANFORD DAILY, WHICH COUNTS, IN COUNTS ONE THROUGH EIGHT, COULD THE COURTS PROVIDE THAT RELIEF IN THE LIMITED WAY I'VE DESCRIBED? AND HOW IS THAT REFLECTED IN THE PRAYER FOR RELIEF A THROUGH H? BECAUSE THE RELIEF THAT'S IN A THROUGH H DOESN'T SEEM TO EXACTLY TRACK, COUNT BY COUNT, WHAT WAS REQUESTED.

**MR. FITZPATRICK:** SO I SUPPOSE IF THERE'S A DISCREPANCY THAT THE COURT HAS IN MIND, I'M, I'M PERFECT -- I'M HAPPY TO ADDRESS.

**THE COURT:** WHY DON'T YOU JUST FOCUS ON THE COUNTS?

**MR. FITZPATRICK:** SURE, SO IN, IN EACH OF, AND IF THE COURT WOULD LIKE, I CAN GO COUNT -- COUNT BY COUNT.

**THE COURT:** THE RELIEF THAT I'M REFERENCING IS, IF THE COURT WERE TO ULTIMATELY CONCLUDE THAT THESE STATUTES, THE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

REVOCATION PROVISION AND THE DEPORTATION POSITION PROVISION, PRESUMABLY, AS APPLIED TO THESE PARTICULAR PLAINTIFFS, THAT THEY ARE ENTITLED TO SOME PROTECTION, THEY HAVE ALLEGED SUFFICIENTLY THAT THEY ARE ENTITLED TO PROTECTION UNDER THIS, BECAUSE OF HOW IT'S BEING APPLIED TO THEM, WHICH OF THESE COUNTS WOULD THE COURT BE GETTING TO FOR THAT?

**MR. FITZPATRICK:** I BELIEVE ALL OF THEM, YOUR HONOR.

SO, ASSUMING -- I'M ASSUMING, FOR PURPOSES OF YOUR HYPOTHETICAL, THAT THE COURT IS AGREEING WITH US ON BOTH THE FIRST AND THE FIFTH AMENDMENT GROUNDS, BECAUSE WE SEPARATED OUR CLAIMS OUT BY FIRST AMENDMENT AND FIFTH AMENDMENT. SO IF THE COURT AGREES WITH US ON THE MERITS OF OUR CHALLENGE, OTHER THAN 1252(F) WHICH PROHIBITS THE COURT FROM GRANTING INJUNCTIVE RELIEF AGAINST THE DEPORTATION PROVISION THAT'S RESERVED TO THE SUPREME COURT. I BELIEVE --

**THE COURT:** WHICH IS COUNT -- IT'S CLAIM II AND CLAIM IV.

**MR. FITZPATRICK:** THAT'S CORRECT.

**THE COURT:** BUT ASIDE FROM THAT, IT'S CLAIM I, AND CLAIMS III, AND V, AS IT RELATES TO -- NO, SORRY, I, V -- I AND V AS IT RELATES TO THE FIRST AMENDMENT, AND III AND VII, AS IT RELATES TO THE FIFTH AMENDMENT?

**MR. FITZPATRICK:** SO -- I -- SO THE COURT DOES HAVE THE ABILITY TO ENTER INJUNCTIVE RELIEF AGAINST THE REVOCATION PROVISION, SO THAT WOULD BE CLAIM VI, THE COURT COULD ENTER AN

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


INJUNCTION PROHIBITING THE GOVERNMENT FROM REVOKING PLAINTIFFS' VISAS ON THE BASIS OF PROTECTED SPEECH, EITHER BECAUSE IT VIOLATES THE FIRST AMENDMENT OR BECAUSE THE UNDERLYING STATUTE AS APPLIED TO PROTECTED SPEECH IS VOID FOR VAGUENESS, AND SO THE SAME WOULD BE TRUE WITH RESPECT TO CLAIM VII, WHICH IS THE CORRESPONDING DECLARATORY RELIEF CLAIM.

**THE COURT:** OKAY, IT WOULD BE HELPFUL IN THE SUPPLEMENTAL BRIEFING THAT COMES IN, IF PLAINTIFFS CAN CLARIFY THAT AS MUCH AS POSSIBLE.

**MR. FITZPATRICK:** SURE.

**THE COURT:** CLAIM BY CLAIM.

**MR. FITZPATRICK:** YES.

**THE COURT:** ALL RIGHT.

LET ME TELL YOU SOME THINGS THAT I KNOW THAT I WANT FROM THE PARTIES.

FIRST, I'D LIKE PROPOSED FINDINGS OF FACT. YOU WERE ABLE TO GET THERE MOST OF THE WAY IN TERMS OF WHAT AGREEMENTS YOU HAD COMING INTO THIS HEARING TODAY, BUT IN THE FORM OF PROPOSED FINDINGS OF FACT, AND THAT THEY BE ENTIRELY JOINT, AND TO THE EXTENT THAT YOU GET TO ANY FACTS, IF YOU DO, WHERE THERE'S A DISAGREEMENT AT THE END FOR THE PLAINTIFF TO INDICATE WHICH ONES THEY THINK SHOULD BE INCLUDED AND WHY THE DEFENSE DISAGREES, AND CONVERSELY FOR THE GOVERNMENT TO INDICATE IF THERE IS ANY ADDITIONAL FINDINGS OF FACT THAT YOU COULD NOT AGREE UPON, AND FOR THE PLAINTIFF TO TELL ME WHY THEY DISAGREE.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

THE SECOND THING THAT I WANT FROM EACH SIDE IS A PROPOSED ORDER. I DON'T WANT TO GIVE YOU A PAGE LIMIT FOR THIS, BUT IT'S NOT BECAUSE I WANT IT TO BE -- I'M NOT ASKING FOR SOMETHING THAT'S EXCEEDINGLY LONG. I'M ASKING FOR SOMETHING THAT IS CONCISE AND IS APPROPRIATE, BUT I DON'T WANT TO BE ARBITRARY AND SAY IT MUST BE 25 PAGES OR LESS, BECAUSE MAYBE YOU NEED 27, I DON'T KNOW, BUT I'M REALLY NOT LOOKING FOR SOMETHING THAT JUST PUTS EVERYTHING IN THERE. I WANT A PROPOSED ORDER FROM EACH SIDE THAT CAPTURES EVERYTHING THAT YOU THINK THE COURT WOULD NEED TO CAPTURE FROM YOUR RESPECTIVE POSITIONS. IF YOU WERE THE COURT AND YOU WERE WRITING THE ORDER IN YOUR CLIENT'S FAVOR, I WANT TO SEE THAT ORDER. AND I'VE ASKED FOR MANY OF THESE OVER THE YEARS, I'M JUST GOING TO OFFER A PIECE OF ADVICE THAT YOU CAN TAKE IN THE SPIRIT IN WHICH IT WAS INTENDED BECAUSE I AM GOING TO ASK THAT YOU PLEASE PROVIDE THESE ALSO IN A WORD VERSION TO THE COURT. THE COURT SPEAKS WITH A PARTICULAR VOICE, SO I DON'T NECESSARILY EXPECT YOU TO KNOW MY VOICE, BUT I'VE WRITTEN PLENTY OF THINGS OVER THE YEARS THAT ARE OUT THERE, AND YOU CAN GET A SENSE OF HOW MUCH HYPERBOLE OR OTHERWISE THE COURT IS INCLINED TO ENTERTAIN. MY THRESHOLD FOR THAT IS QUITE LOW. I WOULD ENCOURAGE YOU TO WRITE A DRAFT ORDER IN A MANNER THAT IS AS MEASURED AND AS JUDICIAL AS YOU CAN, BECAUSE I SUSPECT THAT WHAT YOUR DESIRE IS, IS TO HAVE THE COURT ADOPT AS MUCH OF IT AS POSSIBLE, AND I AM MORE INCLINED TO DO THAT, PRESUMING THAT IT IS AN ACCURATE

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



REFLECTION OF THE LAW, IF IT IS IN A FORM AND IN A TONE THAT THE COURT CAN MORE EASILY ADOPT.

IF THERE WAS ANY DEMONSTRATIVE THAT YOU USED TODAY THAT WAS NOT OTHERWISE PART OF THE COURT'S RECORD, PLEASE LODGE THAT WITH THE COURT CONSISTENT WITH OUR STANDING ORDER NOW.

(OFF THE RECORD DISCUSSIONS WERE HELD.)

**MR. FITZPATRICK:** I HAVE A QUESTION THAT MAY --

**THE COURT:** GO AHEAD. I'M BACK ON THE RECORD.

**MR. FITZPATRICK:** YOUR HONOR MENTIONED SUPPLEMENTAL BRIEFING?

**THE COURT:** YES, BUT I AM GOING TO ISSUE SOMETHING THAT WILL BE MORE TAILORED ABOUT THAT.

THERE IS A NUMBER OF THINGS THAT I'VE RAISED WITH EACH SIDE, THINGS THAT I CARE ABOUT, YOU'LL BE ABLE TO GET THAT FROM THE TRANSCRIPT. I'M ASSUMING YOU'VE TAKEN SOME NOTES ABOUT THAT TOO. I'D LIKE YOU TO INCLUDE THOSE THINGS, AND YOU CAN GET AHEAD OF IT. I DON'T, I WANT TO BE AS SPECIFIC ABOUT THE SUPPLEMENTAL BRIEFING AS POSSIBLE, BOTH SIDES HAVE WORKED VERY HARD ON THIS. IT IS NOT LOST ON ME THE AMOUNT OF EFFORT THAT IT HAS TAKEN TO PREPARE FOR THIS HEARING, A HEARING I KNOW THAT YOU HAVE WANTED FOR QUITE SOME TIME, AND SO, I DON'T WANT TO JUST ASK YOU TO REINVENT SOMETHING THAT YOU'VE ALREADY GIVEN, ALTHOUGH I'VE WORKED HARD TO GET THROUGH ALL THE MATERIALS THAT YOU HAVE PROVIDED. IT IS IN FACT VOLUMINOUS. I CAN'T CALL EVERYTHING TO MIND IMMEDIATELY WITHOUT GOING BACK THROUGH, BUT

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



THERE ARE SOME THINGS THAT HAVE LEFT ME UNCERTAIN.

I NEED TO TAKE A DEEPER DIVE INTO THE CASES AND REVIEW SOME OF YOUR BRIEFS ACCORDINGLY. I DO THINK THAT THERE MIGHT BE SOME WAYS THAT YOU COULD SIMPLIFY THIS FOR ME, AND THIS IS REFRESHING MY RECOLLECTION ABOUT ONE OF THE THINGS I KNOW THAT I'M GOING TO WANT IN THE SUPPLEMENTAL BRIEFING, WHICH IS, I ASKED ABOUT IT EARLIER TODAY, AND I THINK BOTH SIDES ATTEMPTED TO PROVIDE IT. I REALLY WANT TO KNOW HERE FOR EACH OF THE ISSUES THAT'S BEEN THAT'S BEFORE THE COURT FROM EACH SIDE, WHAT THE POSITION IS OF WHAT IT IS EXACTLY THAT THE PLAINTIFF HAD TO ALLEGE. WHAT THE BASIS FOR THAT IS. WHAT THE BURDEN IS. HOW AND WHEN THAT BURDEN SHIFTS TO THE DEFENSE. AND WHAT THE DEFENSE HAS TO DO AT THAT JUNCTURE.

I'M NOT LOOKING FOR A RECITATION OF THE UNDERLYING ARGUMENT AND HOW YOU DID IT, AND IN EACH OF THESE THINGS, BUT QUITE LITERALLY THE PROCEDURE OF THIS AND I THINK I HAVE A GOOD SENSE OF IT. IT IS EASIER IN SOME PLACES THAN OTHERS, TO BE CLEAR, PARTICULARLY, IF THE COURT ENDS UP FOLLOWING A PATH OF STRICT SCRUTINY. IT'S A FAR MORE DEFINED APPROACH, BUT THAT WOULD BE HELPFUL.

I WILL ISSUE AN ORDER THAT'S PROBABLY QUITE BRIEF, JUST REITERATING THE THINGS THAT I'VE TALKED ABOUT RIGHT NOW, THE PROPOSED FINDING OF FACT, THE PROPOSED ORDER FROM EACH SIDE, BUT I WILL LIKELY ISSUE A FOLLOW-UP AFTER I'VE HAD A CHANCE TO REVIEW THE TRANSCRIPT AND THE CASES ABOUT SOME MORE SPECIFIC

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


QUESTIONS THAT I MAY HAVE.

FOR THE THINGS THAT I'VE ALREADY INDICATED, HOW MUCH TIME DO YOU NEED TO DO THAT?

**MR. FITZPATRICK:** YOUR HONOR, FORGIVE ME -- FORGIVE ME FOR ANSWERING YOUR QUESTION WITH A QUESTION.

WOULD IT BE THE COURT'S PREFERENCE THAT THE PROPOSED ORDER INCLUDE REFERENCES TO THE PARTY'S JOINT PROPOSED FINDINGS OF FACT?

**THE COURT:** YES.

**MR. FITZPATRICK:** OKAY.

SO -- IF SO -- AND -- SORRY.

**THE COURT:** LET ME GO -- LET ME GO OFF THE RECORD, SO YOU SHOULD TALK, ACTUALLY, FREELY ABOUT THIS, AND WE'LL PUT IT BACK ON THE RECORD AFTERWARDS.

(OFF THE RECORD DISCUSSIONS WERE HELD.)

**THE COURT:** JUNE 26TH, AND IT'S A FRIDAY, CORRECT?

I'LL USE THAT DAY INSTEAD OF GOING TO THE MONDAY TO PRESERVE ONE MORE WEEKEND FOR ALL OF YOU THAT YOU MIGHT OTHERWISE SPEND WORKING ON IT. SO IF YOU CAN GET IT TO THE COURT, PLEASE, BY CLOSE OF BUSINESS ON FRIDAY THE 26TH.

THE COURT IN THE INTERIM, WE'LL GET TO YOU THE ADDITIONAL QUESTIONS THAT WE HAVE.

THE ORDER THAT WILL COME OUT FROM TODAY WILL LIKELY BE VERY BRIEF, PROBABLY A DOCKET ORDER, JUST SUMMARIZING WHAT WE'VE JUST SAID WITH THIS.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY


IS THERE ANYTHING FURTHER?

**MR. FITZPATRICK:** ONE QUESTION, YOUR HONOR.

WITH RESPECT TO EITHER THE SUPPLEMENTAL BRIEFING OR THE PROPOSED ORDER, WILL THERE -- ARE THOSE, SORT OF, ONE-TIME SUBMISSIONS, OR DOES THE COURT ENVISION RESPONSES TO EACH OTHER'S RESPECTIVE SUPPLEMENTAL BRIEFS?

**THE COURT:** I WANT TO BE CLEAR THAT THE PROPOSED ORDER IS NOT A BRIEF, YOU HAVE ADEQUATELY BRIEFED. TO THE EXTENT THAT I WANT SUPPLEMENTAL BRIEFS, I ASKED THAT THAT PLEASE BE ENTIRELY SEPARATE ON THE ISSUES THAT I'VE RAISED TODAY, AND WHATEVER ELSE IT IS THAT I ASKED FOR, THAT THE -- I RECOGNIZE THAT A PROPOSED ORDER CAN AND SHOULD BE IN MY MIND SOMETHING THAT FEELS LESS ADVERSARY -- ADVERSARIAL THAN IT MIGHT BE IN A BRIEF, AND I THINK THERE WILL BE ADEQUATE TIME, AND CERTAINLY, IF I HAVE QUESTIONS AFTER YOUR SUPPLEMENTAL BRIEFING, I WILL RAISE THEM BACK TO YOU, EITHER IN WRITING OR HAVE YOU COME BACK IN.

BECAUSE THIS IS A PENDING CASE, I ALWAYS NEED TO HAVE A FURTHER DATE OUT, THE COURT WILL SET THIS OUT FOR A FOLLOW-UP CASE MANAGEMENT HEARING SEVERAL WEEKS AFTER THAT, PROBABLY LOOKING AT SOME TIME IN JULY.

(OFF THE RECORD DISCUSSIONS WERE HELD.)

WHAT ABOUT THE MORNING OF JULY 28TH, FOR CASE MANAGEMENT? THAT COULD BE BY ZOOM.

**MR. FITZPATRICK:** SURE. I'M JUST BRIEFLY CHECKING MY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



CALENDAR SO I DON'T WRITE A CHECK THAT MY CALENDAR CAN'T CASH.

**THE COURT:** IT'S A TUESDAY.

**MR. HELLAND:** AS LONG AS IT CAN BE BY ZOOM.

I'LL BE TRAVELING, I THINK, BUT I CAN APPEAR BY ZOOM.

**THE COURT:** AND I DON'T KNOW THAT I WILL NEED IT. I'M JUST HOLDING THAT DATE RIGHT NOW. IT MAY WELL BE THAT, BASED ON THE STATUS OF THE BRIEFING AND WHAT THE COURT IS DOING, THAT I MIGHT MOVE IT OUT FURTHER, OR I COULD USE THAT TIME TO FOLLOW UP ON A COUPLE OF THE ISSUES THAT WE HAVE.

BUT FOR NOW IT SOUNDS LIKE IT'S FINE WITH EVERYBODY AT 9 O'CLOCK ON JULY 28TH.

NORMALLY THERE WOULD BE A REQUIREMENT FOR A JOINT CASE MANAGEMENT STATEMENT, THE COURT DOES NOT NEED THAT FROM THE PARTIES, UNLESS, OF COURSE, THE PARTIES WERE ENTIRELY TO SETTLE THE MATTER, AND THEN YOU COULD LET ME KNOW.

WOULDN'T THAT BE LOVELY?

IS THERE ANYTHING FURTHER?

**MR. FITZPATRICK:** NO, YOUR HONOR.

**MR. HELLAND:** NO, YOUR HONOR.

**THE COURT:** I DO WANT TO THANK YOU AGAIN. I REALLY DO APPRECIATE THE THOUGHTFUL ADVOCACY. IT IS REALLY A PLEASURE TO BE ABLE TO HAVE THE BENEFIT OF SUCH GOOD LAWYERING, SO THANK YOU.

AND WITH THAT, IT'S GOING TO TAKE ME QUITE A WHILE TO CLEAN UP HERE, BUT WE ARE OFF THE RECORD.

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY



**MR. HELLAND:** THANK YOU, YOUR HONOR.

**MR. FITZPATRICK:** THANK YOU, YOUR HONOR.

**THE CLERK:** COURT IS ADJOURNED.

(COURT CONCLUDED 4:48 P.M.)

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

TIFFANY SALINAS-HARWELL
CERTIFICATE NUMBER 971863

DATED: MAY 27, 2026

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

08:52:11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| STANFORD DAILY PUBLISHING CORPORATION, ET AL., | ) | CV-25-06618-NW |
| | ) | SAN JOSE, CALIFORNIA |
| PLAINTIFFS, | ) | |
| | ) | JANUARY 6, 2026 |
| VS. | ) | |
| | ) | PAGES 1 - 84 |
| RUBIO, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE NOEL WISE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFFS: FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
BY: CONOR T. FITZPATRICK
DANIEL ZAHN
700 PENNSYLVANIA AVENUE SE, STE 340
WASHINGTON, DC 20003

FOR THE PLAINTIFFS: VAN DER HOUT, LLP
BY: MARC VAN DER HOUT
360 POST STREET, STE 800
SAN FRANCISCO, CA 94108

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S: (CONT'D)

FOR THE DEFENDANTS: UNITED STATES ATTORNEY'S OFFICE
BY: KELSEY JOHN HELLAND
450 GOLDEN GATE AVENUE, BOX 36055
SAN FRANCISCO, CA 94102

SAN JOSE, CALIFORNIA JANUARY 6, 2026

P R O C E E D I N G S

(COURT CONVENED AT 9:03 A.M.)

09:03:07 THE CLERK: NOW CALLING 25-CV-06618. STANFORD DAILY PUBLISHING CORPORATION VERSUS RUBIO, ET AL.

09:03:16 MAY I PLEASE HAVE APPEARANCES BEGINNING WITH THE PLAINTIFF.

09:03:19 MR. FITZPATRICK: GOOD MORNING, YOUR HONOR.

09:03:21 CONNOR FITZPATRICK ALONG WITH -- FOR PLAINTIFF. I'M JOINED BY MY CO-COUNSEL DANIEL ZAHN AND MARK VAN DER HOUT.

09:03:28 MR. ZAHN: GOOD MORNING, YOUR HONOR.

09:03:30 MR. VAN DER HOUT: GOOD MORNING, YOUR HONOR.

09:03:31 THE COURT: GOOD MORNING.

09:03:32 MR. HELLAND: GOOD MORNING, YOUR HONOR.

09:03:32 ASSISTANT UNITED STATES ATTORNEY KELSEY HELLAND FOR THE GOVERNMENT.

09:03:37 THE COURT: ALL RIGHT. HAVE I MISSED ANYONE OR IS THERE ANYONE ELSE YOU WANT TO IDENTIFY THAT'S HERE?

09:03:42 MR. HELLAND: NO, YOUR HONOR.

09:03:43 MR. FITZPATRICK: NOT FOR PLAINTIFFS, YOUR HONOR.

09:03:45 THE COURT: ALL RIGHT. THANK YOU.

09:03:50 ALL RIGHT. THE DEFENDANTS HAVE MOVED TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. THEY REALLY RAISE JUST A SINGLE ARGUMENT THAT PLAINTIFFS LACK ARTICLE III STANDING. THIS HEARING IS GOING TO

BE TO ADDRESS EXCLUSIVELY THE MERITS OF THAT MOTION.

I'M GOING TO SAY THAT I'M GOING TO GIVE EACH SIDE 20 MINUTES, HOWEVER I HAVE A NUMBER OF QUESTIONS THAT I HAVE TO ASK. I WILL BE SURE TO HAVE ADEQUATE TIME ON BOTH SIDES TO ANSWER THOSE. APART FROM THAT, DOES THE GOVERNMENT WANT TO RESERVE ANY TIME FOR REBUTTAL?

MR. HELLAND: WE WOULD ASK TO RESERVE FIVE MINUTES, YOUR HONOR.

THE COURT: IT IS THE GOVERNMENT'S MOTION SO THE GOVERNMENT IS GOING TO BEGIN.

WOULD YOU PREFER TO MAKE IT FROM YOUR TABLE?

MR. HELLAND: I WOULD PREFER TO SPEAK AT THE PODIUM IF THAT'S ALL RIGHT, YOUR HONOR.

THE COURT: YES. I WOULD ASK TO BRING A FEW THINGS WITH YOU THOUGH, BECAUSE SOME OF THE QUESTIONS THAT I HAVE RELATE TO SPECIFIC THINGS THAT WERE INCLUDED WITHIN THE BRIEFS, IF YOU HAVE EASY ACCESS TO THOSE WITH YOU.

MR. HELLAND: I DO HAVE THE BRIEFS HERE, YOUR HONOR, I DON'T HAVE THE DECLARATIONS THAT WE PREVIOUSLY SUBMITTED.

THE COURT: I THINK THAT WILL BE OKAY.

MR. HELLAND: OKAY.

THE COURT: WHENEVER YOU ARE READY.

MR. HELLAND: THANK YOU, YOUR HONOR.

YOUR HONOR, PLAINTIFFS ARE SEEKING TO INVOKE THE JURISDICTION OF THIS COURT TO ASK FOR THE DRAMATIC RELIEF OF

HOLDING UNCONSTITUTIONAL, TWO STATUTES PASSED BY CONGRESS DECADES AGO.

PLAINTIFFS HAVE THE BURDEN OF PROVING STANDING TO MAKE THEIR CLAIMS AND PLAINTIFFS HAVE NOT MET THEIR BURDEN HERE.

I WANT TO START WITH THE INDIVIDUAL PLAINTIFFS, YOUR HONOR, BECAUSE THEY ARE SEEKING A PRE-ENFORCEMENT CHALLENGE. BECAUSE THEY ADMIT THAT THEY HAVE NOT BEEN SUBJECT TO ENFORCEMENT YET, PLAINTIFFS HAVE THE BURDEN OF SHOWING THAT THEY FACE A SUBSTANTIAL THREAT OF ENFORCEMENT UNDER THESE STATUTES.

THE MOST SALIENT FACT IN THAT ANALYSIS IS THE FACT THAT THE GOVERNMENT HAS ALREADY CONDUCTED AN ENFORCEMENT INITIATIVE RELATED TO THE CAMPUS PROTESTS THAT PLAINTIFFS HAVE PUT AT ISSUE. AT LEAST ONE OF THE INDIVIDUAL PLAINTIFFS WAS REFERRED AS PART OF THAT INVESTIGATION AND NO ENFORCEMENT ACTION WAS TAKEN AGAINST EITHER INDIVIDUAL PLAINTIFF.

THAT IS POWERFUL EVIDENCE THAT THE PURE SPEECH THAT PLAINTIFFS ARE TRYING TO BASE THEIR CLAIMS UPON HAS NOT BEEN THE SOLE REASON FOR ENFORCEMENT UNDER THESE STATUTES AND THEREFORE PLAINTIFFS DO NOT FACE A SUBSTANTIAL THREAT OF ENFORCEMENT. THAT IS, I THINK THE SINGLE MOST POWERFUL FACT, BUT THERE IS A COUPLE OTHER FACTS THAT THE COURT NEEDS TO CONSIDER ABOUT THIS.

PLAINTIFFS OF COURSE ARE TRYING TO ANALOGIZE THEMSELVES TO A HANDFUL OF OTHER HIGH PROFILE ACTIONS WHERE ENFORCEMENT HAS

BEEN TAKEN, BUT IN EACH OF THOSE OTHER CASES THERE WERE ADDITIONAL FACTORS BEYOND THE PURE SPEECH THAT PLAINTIFFS ARE TRYING TO RELY ON THAT WENT INTO THE GOVERNMENT'S CONSIDERATION ABOUT WHETHER TO BRING ENFORCEMENT ACTION.

SO THOSE OTHER INDIVIDUALS HAD FAMILY MEMBERS WHO WERE HAMAS LEADERS, THEY WERE THE LEAD ORGANIZERS OR NEGOTIATORS IN CAMPUS PROTESTS THAT RESULTED IN ENTIRE SCHOOL BUILDINGS BEING LOCKED DOWN.

THERE WAS PERCEIVED CONNECTIONS WITH STUDENT GROUPS THAT HAD BEEN BANNED FOR DISTRIBUTING VIOLENT IMAGERY. ALL OF THIS IS SET FORTH IN THE COURT'S DECISION IN AAUP AND THE UNDERLYING TESTIMONY FROM GOVERNMENT WITNESSES THAT WE PREVIOUSLY SUBMITTED FROM THAT CASE.

SO THERE'S THESE ADDITIONAL FACTORS. I HAVEN'T SEEN PLAINTIFFS YET DISPUTE THAT THE GOVERNMENT DID IN FACT CONSIDER THOSE ADDITIONAL FACTORS, THEY MERELY CHOOSE TO FOCUS ON THE SPEECH THOSE INDIVIDUALS IN PLAINTIFFS' ACTION OF WHY THOSE ENFORCEMENT ACTIONS HAVE BEEN BROUGHT.

BUT I THINK THE RECORD IS CLEAR, THE GOVERNMENT DID CONSIDER THOSE ADDITIONAL FACTORS, AND THOSE ARE ABSENT FROM PLAINTIFF'S ALLEGATIONS ABOUT THEIR OWN SPEECH HERE. THERE WAS MORE THAN THE PURE SPEECH THAT PLAINTIFFS PUT AT ISSUE IN THOSE OTHER CASES.

AND WHERE THERE ARE MATERIAL DIFFERENCES WITH OTHER PAST ACTS OF ENFORCEMENT, THAT LESSENS THE INFERENCE THAT THESE

PLAINTIFFS FACE A SUBSTANTIAL THREAT OF FUTURE ENFORCEMENT. THAT'S THE THOMAS CASE. THERE ARE OTHER CASES THAT SHOW THAT WHERE THERE ARE DIFFERENCES BETWEEN THE PAST ACTS OF ENFORCEMENT THAT MAKES IT LESS LIKELY THAT PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF FUTURE ENFORCEMENT.

THE OTHER FACTOR THAT I THINK YOUR HONOR NEEDS TO CONSIDER ABOUT THE INDIVIDUAL PLAINTIFFS' CLAIMS IS THE GOVERNMENT'S DISAVOWAL OF SEEKING ENFORCEMENT ACTION BASED ON PURELY THE SPEECH THAT PLAINTIFFS ARE PUTTING AT ISSUE, RIGHT.

AGAIN I POINT TO THE TESTIMONY FROM AAUP. THE GOVERNMENT WITNESSES THERE, THE NON ATTORNEY WITNESSES TESTIFIED TO HOW LINE AGENTS CONDUCT INVESTIGATIONS, MAKE DECISIONS BASED ON -- CONSIDERING A WIDE VARIETY OF FACTORS, AND ONLY THEN RAISE UP FOR ESCALATION TO HIGHER LEVELS, THOSE INDIVIDUALS -- THOSE LINE PROSECUTORS, I SHOULD SAY LINE AGENTS, CONSIDER HAVING DEMONSTRATED CONDUCT THAT WOULD BE SUFFICIENT TO TAKE ENFORCEMENT ACTION.

THESE ARE NOT MANDATED BY THE POLITICAL LEADERSHIP OF THESE AGENCIES, THEY ARE GROUND-UP INVESTIGATIONS.

THE TESTIMONY FROM AAUP FROM THOSE OFFICERS AND AGENTS SHOW THAT PURE SPEECH WAS NOT THE SOLE BASIS FOR THESE ENFORCEMENT ACTIONS, THERE WAS NOT A POLICY OF LOOKING AT PURE SPEECH AND TAKING ENFORCEMENT ACTION BASED ON THAT, RATHER FOR THE SMALL NUMBER OF CASES WHERE ENFORCEMENT ACTION WAS PURSUED, IT WAS BASED ON MORE THAN SPEECH, IT WAS BASED ON MORE

AGGRAVATING FACTORS.

THOSE I THINK, YOUR HONOR, ARE THE MOST SALIENT POINTS ABOUT THE INDIVIDUAL PLAINTIFFS' CLAIM FOR STANDING. THE OTHER, OF COURSE MAJOR PLAINTIFF IN THIS CASE, THE LEAD PLAINTIFF, IS *STANFORD DAILY* ITSELF, A STUDENT NEWSPAPER. THE NEWSPAPER HAS PUT FORWARD THREE DIFFERENT THEORIES FOR WHY IT ENJOINS STANDING IN THIS CASE, BUT I THINK WE HAVE SHOWN IN OUR PAPERS THAT NONE OF THEM HOLDS WATER.

PREVIOUSLY THEY HAD MADE THEIR LEAD ARGUMENT THE ASSOCIATIONAL STANDING DOCTRINE. TO ME IT SEEMS LIKE THAT IS A POOR FIT FOR THE CLAIMS IN THIS CASE. PREVIOUS ORGANIZATIONS THAT HAVE EITHER SUCCESSFULLY OR UNSUCCESSFULLY USED THE ASSOCIATIONAL STANDING DOCTRINE WERE ORGANIZATIONS THAT ADVOCATED FOR THE INTERESTS OF THEIR MEMBERS.

THE NINTH CIRCUIT HAS SAID THAT THIS DOCTRINE IS RESERVED FOR ORGANIZATIONS THAT PROTECT AND EXPRESS THE VIEWS OF THEIR MEMBERS.

WELL *STANFORD DAILY* IS A STUDENT NEWSPAPER, ITS PURPOSE IS TO PROVIDE STUDENTS WITH JOURNALISM EXPERIENCE AND TO REPORT ON CAMPUS EVENTS. THIS IS PLAIN FROM THE COMPLAINT ITSELF, THE AMENDED COMPLAINT, WHICH SETS FORWARD IN PARAGRAPH 84, THE WIDE RANGE OF REPORTING ACTIVITIES THAT *STANFORD DAILY* CONDUCTS, IT'S PLAIN FROM THE GOVERNING DOCUMENTS THAT WE PREVIOUSLY SUBMITTED AND REFERRED TO IN OUR PAPERS FROM *STANFORD DAILY*'S BYLAWS.

MISSING FROM ANY OF THOSE SOURCES IS A MISSION TO ADVOCATE FOR THE INTERESTS OF ITS MEMBERS.

I THINK IN THEIR PAPERS PLAINTIFFS HAVE TRIED TO SAY THAT IN THE PAST, *STANFORD DAILY* HAS TAKEN CERTAIN KINDS OF ADVOCACY ACTION, INCLUDING IN THE 70'S, FILING A LAWSUIT AND PERHAPS WRITING OPINION EDITORIALS OR SOME KIND OF PIECE OF ADVOCACY THAT THEY DON'T IDENTIFY IN THE LAST COUPLE OF YEARS, BUT THOSE AREN'T CORE PARTS OF THE NEWSPAPER'S MISSION. AS PLAINTIFFS STATED, THE MISSION OF THE NEWSPAPER IS TO CONDUCT JOURNALISM AND PROVIDE STUDENTS WITH EXPERIENCE.

SO I THINK THAT PLACES IT SQUARELY OUTSIDE OF THE TYPES OF ORGANIZATIONS THAT THE NINTH CIRCUIT AND SUPREME COURT HAVE SAID CAN INVOKE THE ASSOCIATIONAL STANDING DOCTRINE.

BUT EVEN IF THEY WERE OF THE TYPE OF ORGANIZATION THAT COULD INVOKE IT, THEY DON'T MEET THAT DOCTRINE'S ELEMENTS.

I THINK MOST IMPORTANTLY AND FOR SIMILAR REASONS, THEIR INTEREST IN THIS CASE IS NOT GERMANE TO THEIR PURPOSE OF CONDUCTING CAMPUS JOURNALISM AND PROVIDING STUDENTS WITH EXPERIENCE.

I THINK THE FLECK CASE FROM THE NINTH CIRCUIT AND THE TAX CASE FROM THE NINTH CIRCUIT ARE THE MOST SALIENT CASES ON POINT FOR THIS PRINCIPLE.

THE COURT: COULD YOU HOLD ON FOR JUST A MOMENT.

I JUST WANT TO BE SURE THAT NOBODY IN THIS COURTROOM RIGHT NOW HAS ANY DEVICE THAT IS ON, SO NO DEVICE CAN BE RECORDING,

NO DEVICE CAN BE TAKING ANY PHOTOGRAPHS OR RECORDING IN ANY WAY, SO JUST TO CONFIRM.

ALL RIGHT. THANK YOU. GO AHEAD.

MR. HELLAND: THANK YOU, YOUR HONOR.

SO AS I WAS SAYING, I THINK THAT THE INTEREST OF THE NEWSPAPER HERE, SOME INTEREST IN IMMIGRATION ISSUES OR FIRST AMENDMENT ISSUES, THOSE INTERESTS HERE ARE NOT GERMANE TO THEIR PURPOSE OF CAMPUS JOURNALISM AND PROVIDING STUDENTS WITH JOURNALISM EXPERIENCE.

I CITED THE FLECK CASE AND THE NINTH CIRCUIT'S TAX CASE WHERE THAT COURT RECOGNIZED DIFFERENCES BETWEEN THE INTERESTS BEING PURSUED AND THE ACTUAL MISSIONS OF THE ORGANIZATION. AND I THINK THAT'S THE CASE HERE.

PLAINTIFFS HAVE CITED A COUPLE CASES WHERE OTHER MEDIA ADVOCACY ORGANIZATIONS WERE ABLE TO INVOKE THE DOCTRINE, BUT IN THOSE CASES, THOSE ORGANIZATIONS ACTUALLY HAD BONA FIDE ADVOCACY ACTIVITIES, THEY HAD ESTABLISHED PROGRAMS TO LOBBY OR TRACK POLICE ACTIVITY OR THEIR VERY PURPOSE WAS TO PROTECT THE MEDIA'S FIRST AMENDMENT RIGHTS. AGAIN, THAT IS MISSING FROM *STANFORD DAILY*'S CHARTER AND FROM ITS HISTORY OF ACTIVITIES HERE.

BRIEFLY, WE HAVE ALSO SET FORWARD IN OUR PAPERS WHERE THE NEWSPAPER FAILS TO MEET THE OTHER ELEMENTS OF OUR DOCTRINE. IN SHORT, THEY WOULD NEED THE PARTICIPATION OF THE INDIVIDUAL MEMBERS IN THIS CASE. AND THE REASON THERE, YOUR HONOR, IS

BECAUSE THE KIND OF FIRST AMENDMENT CLAIMS THAT THEY WERE BRINGING HERE DEPEND ON THE STATUS OF THE SPEAKER, THE CONTENT OF THE SPEECH, AND THE UNITED STATES'S INTEREST WITH RESPECT TO THAT SPEECH. SO IT'S A CASE-SPECIFIC INQUIRY, AND SO THE INDIVIDUAL SPEECH OR BELIEFS OR CONDUCT OF *STANFORD DAILY*'S MEMBERS WOULD BECOME IMPORTANT FOR THE LITIGATION.

AND AS I HAVE ALREADY EXPLAINED FOR THE INDIVIDUAL PLAINTIFFS, THE INDIVIDUAL MEMBERS OF *STANFORD DAILY* WOULD LACK STANDING IN THEIR OWN RIGHT, AND THAT IS THE LAST ELEMENT OF ASSOCIATIONAL STANDING FIREFIGHTER.

VERY BRIEFLY, YOUR HONOR, THE NEWSPAPER HAS ALSO TRIED TO INVOKE WHAT THEY CALL THE CORPORATE STANDING DOCTRINE AS WELL AS THE ORGANIZATIONAL STANDING DOCTRINE. I WILL BE HONEST, I'VE HAD DIFFICULTY APPRECIATING THE DIFFERENCES IN THE CASE LAW BETWEEN THESE TWO DOCTRINES, THERE IS NOT A LOT OF CASES ON CORPORATE STANDING. THEY CITE THE NAACP CASE, AN OLDER CASE. TO ME THAT CASE STANDS FOR THE PROPOSITION THAT AN ORGANIZATION CAN INVOKE STANDING IN ITS OWN RIGHT WHEN GOVERNMENT ACTION IS IMPEDING ITS FIRST AMENDMENT OR IS IMPEDING ITS OWN CORE ACTIVITIES, BECAUSE IN THAT CASE THERE WAS A STATE LAW THAT PREVENTED THE NAACP FROM OFFERING LEGAL SERVICES TO BLACK INDIVIDUALS IN THE SOUTH. SO THE NAACP IN THAT CASE WAS ITSELF AFFECTED BY THE LAW AT ISSUE, IT WAS NOT MERELY STANDING IN THE SHOES OF ITS CORPORATE LEADERSHIP OR SHAREHOLDERS OR MEMBERS.

AND THEN FINALLY WITH RESPECT TO THE ORGANIZATIONAL

STANDING DOCTRINE, I JUST DON'T THINK THAT PLAINTIFFS HAVE ALLEGED OR MUCH LESS SHOWN A SUBSTANTIAL INJURY TO THEIR CORE BUSINESS ACTIVITIES HERE. BY COMPARISON TO THE AAUP CASE, ONE OF THE ORGANIZATIONS THERE SUBSTANTIATED THEIR CLAIMS FOR STANDING BY SHOWING THAT THEIR MEMBERSHIP NUMBERS WERE DECLINING, THEIR ARTICLE SUBMISSIONS WERE DECLINING -- WITH NUMBERS, THEY SHOWED EVIDENCE AND DATA ABOUT THAT. THAT IS LACKING FROM THE VERIFIED AMENDED COMPLAINT OR ANY OTHER EVIDENCE HERE, THERE IS JUST A HANDFUL OF, SORT OF, VAGUE ALLEGATIONS.

AND THOSE VAGUE ALLEGATIONS THEMSELVES ARE ABOUT THIRD PARTIES' INDEPENDENT DECISIONS, THEY ARE ABOUT THIRD PARTIES WHO SAY -- THEY HAVE ASKED TO HAVE ARTICLES TAKEN DOWN OR THEY DECLINED TO PARTICIPATE IN ADDITIONAL REPORTING, BUT THOSE ARE THE DECISIONS OF THIRD PARTIES, THEY ARE NOT DIRECT DECISIONS FROM THE GOVERNMENT. AND SO I THINK THAT ATTENUATED CHAIN PREVENTS *STANFORD DAILY* FROM ASSERTING ITS OWN STANDING BASED ON THAT DOCTRINE HERE.

SO I DON'T THINK ANY OF THE PLAINTIFFS SATISFY EITHER OF THE DOCTRINES OR ANY OF THE DOCTRINES THAT THEY HAVE INVOKED TO SEEK THIS COURT'S JURISDICTION.

BUT THE FINAL PROBLEM, YOUR HONOR, AND IT'S A BIG ONE, RELATES TO REDRESSABILITY. THE PLAINTIFFS ARE ASKING FOR THIS COURT TO DECLARE UNCONSTITUTIONAL, TWO ACTS OF CONGRESS TO THE EXTENT ENFORCEMENT IS BASED ON PROTECTED SPEECH.

WHAT IS PROTECTED SPEECH? AS I'VE ALREADY SAID TO YOU, THAT IS A CASE-BY-CASE QUESTION. THE FIRST AMENDMENT DOES NOT SPEAK IN ABSOLUTES. WHETHER ANY PARTICULAR SPEECH IS PROTECTED DEPENDS ON THE NATURE OF THE SPEECH, THE NATURE OF THE SPEAKER. BECAUSE AS WE HAVE SET FORWARD IN OUR PAPERS, THERE IS A SLIDING SCALE, AN ASCENDING SCALE OF RIGHTS BASED ON INDIVIDUALS' CONNECTIONS WITH THIS COUNTRY.

FINALLY, THE GOVERNMENT'S INTERESTS IN THE SPEECH, THE POTENTIAL RISKS THAT THE SPEECH --

THE COURT: I'M CURIOUS ABOUT THIS POINT THAT YOU ARE MAKING. WE ARE IN A MOTION TO DISMISS STAGE NOT A MOTION FOR SUMMARY JUDGEMENT, HOW, IF AT ALL, SHOULD THE COURT CONSIDER THAT POINT THAT YOU ARE MAKING REGARDING REDRESSABILITY NOW?

MR. HELLAND: WELL INSURANCE, I THINK YOU NEED TO THINK ABOUT WHAT RELIEF THEY ARE ASKING FOR, WHAT WOULD BE REQUIRED TO BE ABLE TO AWARD THAT RELIEF AND WHETHER THE COURT HAS THE POWER TO ISSUE THAT REQUESTED RELIEF. THAT'S THE JULIANA CASE. SO REDRESSABILITY IS ABSENT WHEN THE COURT LACKS THE POWER TO ISSUE THE RELIEF REQUESTED BY THE PLAINTIFF.

SO THEY HAVE MADE VERY PLAIN, THEY ARE ASKING FOR BROAD INJUNCTIONS WHICH THEY SAY DO NOT REQUIRE INDIVIDUALIZED PROOF, BROAD JUNCTIONS AGAINST ENFORCEMENT BASED ON PROTECTED SPEECH. THAT'S WHAT THEY ARE ASKING FOR.

I THINK YOU CAN LOOK AT THAT ON ITS OWN TERMS AND SAY THAT IS NOT AN ENFORCEABLE INJUNCTION. WHAT DOES "PROTECTED SPEECH"

MEAN? WHAT DOES "BASED ON" MEAN WHEN THERE ARE OTHER FACTORS THAT THE GOVERNMENT CAN PROPERLY CONSIDER? IS IT PROHIBITED FROM CONSIDERING ANYTHING SPOKEN BY AN INDIVIDUAL SUBJECT TO ENFORCEMENT AT ALL? THOSE QUESTIONS ARE CASE-SPECIFIC AND THE COURT WOULD NEED TO TAKE THEM UP IF IT WERE TO ENFORCE AN INJUNCTION OR CONSIDER --

THE COURT: WHAT ABOUT THE "AS-APPLIED" CHALLENGE AS IT RELATES TO THEM SPECIFICALLY?

MR. HELLAND: I THINK STILL THEY WOULD HAVE TO IDENTIFY THE SPEECH OR AT LEAST PROVIDE SOME CONTOURS TO THE SPEECH AT ISSUE. THAT IS NOT HOW THEY HAVE DECIDED TO BRING THIS CASE, SO I AM NOT SURE, STANDING RIGHT HERE, IF THERE ARE OTHER LIMITATIONS IF IT WERE SO NARROWED THAT WOULD COME INTO PLAY, BUT THAT IS NOT HOW THEY HAVE BROUGHT THEIR CLAIMS. THEY HAVE MADE AS CHOICE TO BRING BROADER CLAIMS SEEKING TO HOLD THESE STATUES UNCONSTITUTIONAL, WITHOUT REGARD TO THE STATUS OF THE SPEAKER, THE NATURE OF THE SPEECH OR THE GOVERNMENT'S INTEREST IN ENFORCEMENT WITH RESPECT TO THAT SPEECH.

THAT'S HOW THEY HAVE CHOSEN TO STYLE THEIR CLAIMS. I THINK THEY HAVE TO LIVE WITH THAT DECISION. THE SUPREME COURT IN MOODY AND MURPHY HAVE SAID WHEN A PLAINTIFF CHOOSES TO BRING A FACIAL CHALLENGE THAT WAY, THEY LIVE WITH THEIR CHOICE.

SO YOUR HONOR, JUST BRIEFLY TO TIE THE KNOT, THE COURTS LACK POWER TO ISSUE VAGUE INJUNCTIONS THAT ARE NOT SUFFICIENTLY CLEAR THAT THE GOVERNMENT CAN UNDERSTAND THEIR TERMS, RIGHT.

I WANT TO POINT YOU TO THE CUVIELLO CASE THAT WE CITED WHERE JUDGE CHEN OF THIS DISTRICT STATED THAT AN INJUNCTION AGAINST THE CITY OF OAKLAND SAYING DON'T INFRINGE THE SPEECH RIGHTS OF PROTESTORS, WAS FOUND TO BE UNENFORCEABLE. THAT IS A VAGUE INJUNCTION, IT'S AN "OBEY THE LAW" INJUNCTION THAT DOESN'T PROVIDE SUFFICIENT GUIDANCE FOR ITS TERMS.

IT'S FEDERAL RULE OF CIVIL PROCEDURE 65 THAT LIMITS THE COURT'S AUTHORITY IN THIS REGARD. HERE, I THINK THAT IS EXACTLY WHAT PLAINTIFFS ARE ASKING FOR, AN "OBEY THE LAW" INJUNCTION, COMPLY WITH THE FIRST AMENDMENT. THAT'S NOT SUFFICIENTLY CLEAR AND THE COURT DOESN'T HAVE THE POWER TO ORDER SUCH AN INJUNCTION IN ANY WAY THAT WOULD REDRESSABLE -- IN ANY WAY THAT WOULD REDRESS THE PLAINTIFFS' CLAIMED INJURIES.

UNLESS YOUR HONOR HAS FURTHER QUESTIONS, I WILL RESERVE MY TIME.

THE COURT: I DO. I JUST WANTED TO HEAR THE TOTALITY OF YOUR ARGUMENT, BUT I HAVE A NUMBER OF THINGS I WOULD LIKE TO TALK WITH YOU ABOUT.

IN THE GOVERNMENT'S REPLY, THE GOVERNMENT STATES THAT IS, TO BE CLEAR, THIS IS IN QUOTES, "THE GOVERNMENT HAS BROUGHT A FACTUAL CHALLENGE HERE WITH SUPPORTING EVIDENCE."

SO OTHER THAN NOTING THAT A RULE 12(B)(1) JURISDICTIONAL ATTACK CAN BE FACIAL OR FACTUAL, THAT YOU HAD NOTED IN THE BRIEF, WHERE IN THE MOTION DO YOU INDICATE SPECIFICALLY THAT YOU ARE BRINGING A FACTUAL CHALLENGE?

MR. HELLAND: WELL I THINK BY CITATION TO THE RECORD EVIDENCE OUTSIDE THE PLEADINGS, SO WE DO REPEATEDLY POINT TO THE TESTIMONY FROM THE AAUP CASE AS WELL AS I THINK THE *STANFORD DAILY*'S GOVERNING DOCUMENTS, THE BYLAWS AND ANOTHER TYPE OF DOCUMENT THAT STATED THEIR PURPOSE. SO THOSE ARE EXTRA PLEADING MATERIALS, THEY ARE NOT PART OF THE PLEADING THEMSELVES YET, WE ARE RELYING ON THEM IN OUR PAPERS IN OUR MOTION AND OUR REPLY AS EVIDENCE FOR OUR VERSION OF THE FACTS HERE THAT WE THINK SHOWS THAT THEY DON'T HAVE STANDING.

THE COURT: ARE YOU ALSO BRINGING A FACIAL CHALLENGE?

MR. HELLAND: YES, YOUR HONOR, TO THE EXTENT -- I THINK THEIR ALLEGATIONS ARE INSUFFICIENT ON THEIR OWN TERMS, BUT IF THE COURT LOOKS BEYOND THOSE, THE RECORD EVIDENCE THAT WE HAVE SUBMITTED SHOWS EVEN FURTHER WHY THEIR VERSION OF EVENTS IS NOT SUFFICIENT.

THE COURT: SO TO THE EXTENT THAT YOU ARE ASKING THE COURT TO CONSIDER EVIDENCE THAT HAS BEEN PROVIDED, I WANT TO BE SURE I UNDERSTAND THAT INFORMATION THAT YOU BROUGHT FORWARD AS THE FACTS TO SUPPORT THE MOTION. AND YOU'VE REFERENCED AAUP A NUMBER OF TIMES, AND I'M GOING TO GET BACK TO THAT AT THE END BUT I WANT TO SPECIFICALLY FOCUS ON WHAT WAS IN THE GOVERNMENT'S BRIEFS HERE.

SO REPEATEDLY IN THE MOTION, THE GOVERNMENT REFERENCES THAT THERE HAVE BEEN MANY CAMPUS PROTESTS THAT OCCURRED IN 2025 RELATED TO ISRAEL. THE PROTESTS WERE PRIMARILY STUDENTS WHO

WERE EITHER SUPPORTING ISRAEL'S RESPONSE TO HAMAS' TERRORIST ATTACK ON ISRAEL ON OCTOBER 7, 2023 OR WHO WERE CONCERNED ABOUT THE CONDITIONS FOR PALESTINIANS LIVING IN GAZA; IS THAT RIGHT?

MR. HELLAND: THAT'S MY UNDERSTANDING, YOUR HONOR, YES.

THE COURT: I HAD NOTED YOU MIGHT -- IT'S UP TO YOU ABOUT WHETHER YOU WANT TO LOOK AT THE BRIEFS FOR THIS, I WILL TELL YOU WHERE I AM FOR THEM BUT I WILL GIVE YOU THE RELEVANT INFORMATION.

ON PAGE 2 OF THE MOTION ITSELF, THE GOVERNMENT STATES THAT -- THIS IS AROUND PARAGRAPHS 7 THROUGH 9, "LESS THAN ONE PERCENT OF THE THOUSANDS OF CAMPUS PROTESTORS REVIEWED BY DHS EARLIER THIS YEAR REFERENCES ONLY A SMALL FRACTION REFERRED TO THE STATE DEPARTMENT, HAVE BEEN SUBJECT TO REVOCATION OR REMOVABILITY ENFORCEMENT, AND SUCH ENFORCEMENT ACTIONS WERE BASED ON MORE THAN PURE PROTECTED SPEECH."

THIS WAS SOMETHING YOU GOT INTO IN YOUR ARGUMENT.

LET ME JUST START AT THE BEGINNING OF THIS, WHY WERE THOUSANDS OF CAMPUS PROTESTORS REVIEWED THIS YEAR?

MR. HELLAND: SO MY UNDERSTANDING ON THIS IS BASED ON THE TESTIMONY THAT WE HAVE CITED TO YOUR HONOR FROM THE WITNESSES WHO TESTIFIED IN AAUP, MY UNDERSTANDING BASED ON THAT TESTIMONY IS THAT AFTER THE PRESIDENT ISSUED EXECUTIVE ORDERS RELATING TO ANTI-SEMITISM, THERE WERE A NUMBER OF REFERRALS TO DHS ABOUT CAMPUS PROTESTS THAT AT LEAST POTENTIALLY IMPLICATED

THE INTERESTS OF THOSE EXECUTIVE ORDERS.

THE WAY DHS INVESTIGATES THESE THINGS, THEY RECEIVE REFERRALS FROM, OFTEN FROM EXTERNAL ORGANIZATIONS.

THE COURT: YES, I REVIEWED THIS. THAT'S CONTAINED WITHIN YOUR BRIEFS BY AND LARGE. I WOULD LIKE TO BETTER UNDERSTAND THOUGH, REVIEWED FOR THAT?

MR. HELLAND: FOR VIOLATIONS OF LAW, IS MY UNDERSTANDING YOUR HONOR, FOR WHETHER INDIVIDUALS HAVE COMMITTED ACTS THAT WOULD RENDER THEM SUBJECT TO ENFORCEMENT UNDER THE IMMIGRATION AND NATIONALITY ACT.

SO WHETHER THEY ARE, FOR EXAMPLE, EXPRESSING SUPPORT FOR TERRORISM. I THINK THAT'S ONE EXAMPLE THAT COMES UP IN AAUP REPEATEDLY WHERE INDIVIDUALS ARE REFERRED TO DHS AND THE INVESTIGATION REVEALS THAT THAT INDIVIDUAL HAS DONE SOMETHING THAT SUPPORTS TERRORISM. HISTORICALLY, EVEN GOING BEYOND THE CURRENT ADMINISTRATION, THAT HAS LONG BEEN SOMETHING THAT DHS WOULD INVESTIGATE THROUGH THIS REFERRAL INVESTIGATION PROCESS FOR POTENTIAL ENFORCEMENT ACTION.

THE COURT: WERE OTHER PROTESTS REVIEWED IN THIS WAY OR ONLY THOSE RELATED TO ISRAEL?

MR. HELLAND: I AM ONLY AWARE OF PROTESTS RELATED TO ISRAEL REVIEWED IN THIS WAY. AGAIN YOUR HONOR, THIS IS BASED ON MY UNDERSTANDING AND RECOLLECTION FROM THE WITNESS TESTIMONY FROM AAUP.

THE COURT: WAS THE IMMIGRATION STATUS OF THE PEOPLE

WHO PARTICIPATED REVIEWED?

MR. HELLAND: OH, YES, I THINK THAT'S ONE OF THE FIRST THINGS THAT'S REVIEWED AS PART OF THAT.

SO NAMES, FOR EXAMPLE OF A HOST OF INDIVIDUALS WOULD BE REFERRED TO DHS, AND ONE OF THE FIRST STEPS THAT THEY TAKE, IT IS MY UNDERSTANDING, IS TO CHECK THE IMMIGRATION STATUS OF THOSE INDIVIDUALS.

THE COURT: I WILL TALK -- I HAVE QUESTIONS ABOUT THIS LATER, BUT THE SMALL FRACTION THAT'S REFERRED TO IN THE BRIEFS THAT WERE REFERRED TO THE STATE DEPARTMENT, HOW MANY, IF ANY OF THOSE THAT WERE REFERRED, THE PROTESTORS, SUPPORTED ISRAEL'S RESPONSE IN GAZA?

MR. HELLAND: YOUR HONOR, I DON'T HAVE THAT INFORMATION, I'M SORRY.

THE COURT: I WILL TALK ABOUT THIS LATER, I THINK THAT'S ACTUALLY AN IMPORTANT PIECE OF INFORMATION. IT'S A VIEWPOINT-RELATED ISSUE THAT I'M GETTING TO, MEANING IF ONLY PEOPLE WHO WERE REVIEWED WERE PEOPLE WHO TOOK A POSITION THAT WAS NOT DIRECTLY SUPPORTIVE OF ISRAEL BUT HAD CONCERNS ABOUT WHAT WAS HAPPENING IN GAZA, INCLUDING FOR PALESTINIAN PEOPLE THERE, IS THAT INFORMATION CONTAINED ANYWHERE IN THE EVIDENTIARY RECORD THAT YOU PROVIDED?

MR. HELLAND: STANDING HERE, YOUR HONOR, I DON'T REMEMBER SEEING THAT INFORMATION SET FORTH IN THE RECORD THAT I REVIEWED.

THE COURT: ARE YOU FAMILIAR WITH EVEN A SINGLE INDIVIDUAL WHO PROTESTED WHO WAS SUPPORTIVE OF ISRAEL WHO WAS REFERRED TO THE STATE DEPARTMENT?

MR. HELLAND: I AM NOT, BUT I ALSO HAVE NOT PERSONALLY REVIEWED THE 40 OR SO CASES THAT WERE REVIEWED FOR ENFORCEMENT ACTION.

THE COURT: IN THE BRIEF YOU REFERENCED, AND YOU TALKED ABOUT IT EARLIER, THAT THE ENFORCEMENT ACTIONS WERE BASED ON MORE THAN PURE PROTECTED SPEECH, AND BY THAT DO YOU MEAN SPEECH OR CONDUCT THAT IS PROTECTED BY THE FIRST AMENDMENT?

MR. HELLAND: YES.

AND I WANT TO BE CLEAR THAT THIS PUTS THE CART BEFORE THE HORSE IN SOME SENSE, BECAUSE WHETHER SPEECH IS IN FACT PROTECTED BY THE FIRST AMENDMENT DEPENDS ON A MORE ELABORATE ANALYSIS THAT WE WENT INTO IN OUR SUMMARY JUDGEMENT BRIEFING. BUT FOR PURPOSES OF THIS STANDING ARGUMENT, YES, BY WHICH I MEAN PURE SORT OF POLITICAL SPEECH. IT'S MY UNDERSTANDING THAT THE ENFORCEMENT ACTIONS THAT WERE TAKEN LOOKED AT FACTORS BEYOND WHAT WE WILL JUST CALL PURE POLITICAL SPEECH AND INCLUDED THINGS LIKE BEING DISRUPTIVE AT PROTESTS OR THE OTHER ADDITIONAL FACTORS THAT I REFERRED TO EARLIER.

THE COURT: DO YOU HAVE THE FIRST AMENDMENT WITH YOU?

MR. HELLAND: NO, I'M AFRAID I DON'T, YOUR HONOR.

THE COURT: I DO. I HAVE MY OLD, VERY WORN OUT COPY.

SO THE FIRST AMENDMENT, "CONGRESS SHALL MAKE NO LAW RESPECTING AN ESTABLISHMENT OF RELIGION OR PROHIBITING THE FREE EXERCISE THEREOF; OR BRIDGING THE FREEDOM OF SPEECH OR OF THE PRESS OR OF THE RIGHT OF THE PEOPLE TO PEACEFULLY ASSEMBLE AND TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES."

SO I'M RAISING THIS POINT BECAUSE IT'S DIRECTLY IN THE BRIEF. EXACTLY WHAT ELSE, BEYOND THE PROTECTIONS OF THE FIRST AMENDMENT, WERE THE STATE DEPARTMENT VISA REVOCATION REMOVAL ACTIONS BASED UPON?

MR. HELLAND: THE THINGS THAT I POINTED TO, AS WE EXPLAINED IN OUR BRIEF YOUR HONOR, INCLUDING LEADERSHIP ROLES IN ORGANIZING PROTESTS THAT WERE DISRUPTIVE THAT PREVENTED STUDENTS FROM ATTENDING CLASSES ON THEIR CAMPUSES OR FOR USING THE CAMPUS FACILITIES AT THOSE INSTITUTIONS. HAVING RELATIONSHIPS WITH HAMAS LEADERS.

THE COURT: MEANING -- I'M NOT SURE WHAT I'M HEARING IS SOMETHING DIFFERENT THAN PARTICIPATING IN A PROTEST, THE PROTEST MAY HAVE HAD SOME DISRUPTIVE COMPONENT, SOMETIMES THEY DO. IS THERE SOMETHING OTHER THAN ENGAGING IN A PROTEST OR SPEAKING OUT THAT YOU CAN POINT TO?

MR. HELLAND: WELL THE OTHER ONES THAT I'M AWARE OF, YOUR HONOR, ARE HAVING A RELATIONSHIP WITH A FAMILY MEMBER OF A HAMAS LEADER, SO THAT WAS CONSIDERED A FACTOR THAT COULD IMPLICATE THE UNITED STATES FOREIGN POLICY INTERESTS, AND A PERCEIVED CONNECTION WITH A STUDENT GROUP THAT HAD DISTRIBUTED

VIOLENT IMAGERY AND HAD BEEN BANNED FROM THE TUFTS CAMPUS ON THAT BASIS.

THE COURT: ON PAGE 2 OF THE BREECH, THE GOVERNMENT SAYS "NOR CAN PLAINTIFFS RELY ON UNIDENTIFIED AND HYPOTHETICAL PROTECTED SPEECH TO INVOKE THIS COURT'S JURISDICTION TO DECLARE ACTS OF CONGRESS UNCONSTITUTIONAL."

WHAT DO YOU MEAN BY THAT, THE HYPOTHETICAL PROTECTED SPEECH?

MR. HELLAND: WELL THIS GOES TO WHAT I VIEW AS A FAILURE ON THEIR PART TO IDENTIFY THE SPEECH THAT THEY ACTUALLY PUT AT ISSUE HERE, RIGHT. THE RELIEF THAT THEY ARE SEEKING IS A BROAD INJUNCTION AGAINST ENFORCEMENT OF THESE STATUTES FOR ANY PROTECTED SPEECH, HOWEVER THAT IS ULTIMATELY DETERMINED TO BE DEFINED. BUT THEY DON'T DEFINE IT, THEY THEMSELVES HAVE MADE ALLEGATIONS RELATED TO PRO-PALESTINIAN SPEECH, BUT THEY DON'T LIMIT THE RELIEF THAT THEY SEEK TO PRO-PALESTINIAN SPEECH.

AND IN THEIR AMENDED COMPLAINT AND A COUPLE OF TIMES IN THEIR PAPERS THEY REFER TO SPEECH ABOUT THE MURDER OF CHARLIE KIRK, TRYING TO ATTACH AN INTEREST IN THAT SPEECH, EVEN THOUGH NONE OF THE PLAINTIFFS HERE HAVE EXPRESSED ANY INTEREST TO SPEAK ABOUT THAT ISSUE.

SO THEY ARE TRYING TO BASE THEIR STANDING ON ANY POTENTIAL PROTECTED SPEECH WITHOUT IDENTIFYING IT, JUST ANY POTENTIAL PROTECTED SPEECH, AND THEN USING THAT TO OBTAIN THIS VERY

09:33:19 DRAMATIC INJUNCTION AGAINST THESE STATUTES. SO THAT'S WHAT I
09:33:24 MEANT BY THAT, YOUR HONOR.
09:33:30 THE COURT: PAGE 3 OF THE BRIEF TOWARDS -- STARTING
09:33:35 AROUND LINE 16. SO THE GOVERNMENT REFERENCES 8 USC 1201(I) OF
09:33:42 THE INA AND SAYS "AFTER THE ISSUANCE OF A VISA OR OTHER
09:33:45 DOCUMENTATION TO ANY ALIEN, THE CONSULAR OFFICE OR THE
09:33:49 SECRETARY OF STATE MAY AT ANY TIME IN HIS DISCRETION REVOKE
09:33:53 SUCH VISA OR OTHER DOCUMENTATION, NOTICE THAT SUCH REVOCATION
09:33:58 SHALL BE COMMUNICATED TO THE ATTORNEY GENERAL AND SUCH
09:34:01 REVOCATION SHALL INVALIDATE THE VISA OR OTHER DOCUMENTATION
09:34:06 FROM THE DATE OF ISSUANCE. THERE SHALL BE NO MEANS OF JUDICIAL
09:34:09 REVIEW OF A REVOCATION UNDER THE SUBSECTION EXCEPT IN THE
09:34:11 CONTEXT OF A REMOVAL PROCEEDING IF SUCH REVOCATION PROVIDES THE
09:34:16 SOLE GROUND FOR REMOVAL UNDER SECTION 1227(A)(1)(B) OF THIS
09:34:21 TITLE."
09:34:22 IT IS THE POSITION OF THE GOVERNMENT UNDER 8 USC
09:34:25 SECTION 1201(I), THAT THE SECRETARY OF STATE HAS COMPLETELY
09:34:30 UNFETTERED, UNREVIEWABLE DISCRETION TO REVOKE A VISA?
09:34:35 MR. HELLAND: WELL NO, YOUR HONOR, BECAUSE THAT
09:34:37 GROUND CAN BE REVIEWED FOR CONSTITUTIONAL REASONS IN
09:34:40 REMOVABILITY PROCEEDINGS.
09:34:42 THE COURT: BEFORE YOU GET TO REMOVABILITY
09:34:44 PROCEEDINGS.
09:34:45 MR. HELLAND: SORRY, YOUR HONOR'S QUESTION IS JUST
09:34:46 REGARDING VISA REVOCATION; IS THAT RIGHT?

THE COURT: CORRECT.

MR. HELLAND: YES.

THE COURT: COMPLETELY UNFETTERED, UNREVIEWABLE DISCRETION.

MR. HELLAND: I BELIEVE THAT'S RIGHT, YOUR HONOR. I BELIEVE THAT'S THE STATUTE THAT CONGRESS DRAFTED SO THAT THE POLITICAL BRANCHES WOULD HAVE THE DISCRETION TO ACT IN THESE AREAS OF FOREIGN CONCERN. NOW THAT DOESN'T MEAN THAT INDIVIDUALS ARE WITHOUT REDRESS IF THEY ARE AFFECTED BY THAT, THAT I THINK IS THE STRUCTURE THAT CONGRESS CREATED. BUT --

THE COURT: WHAT WOULD THE REDRESS BE?

MR. HELLAND: IF SOME ENFORCEMENT ACTION IS TAKEN BASED ON THE VISA REVOCATION, IF THEY ARE --

THE COURT: OKAY. SO FOR THE VISA REVOCATION ITSELF, SO WHAT IF THE SECRETARY OF STATE DECIDED THAT THEY WOULD REVOKE A VISA IF THE HOLDER DIDN'T PAY THE SECRETARY OF STATE A HUNDRED THOUSAND DOLLARS?

MR. HELLAND: YOUR HONOR, I THINK THE CHECK ON THAT -- THERE WOULD BE TWO CHECKS ON THAT I THINK, YOUR HONOR. FIRST IS THE POLITICAL OUTCRY THAT WOULD RESULT, IF THAT CAME TO LIGHT. THESE ARE POLITICAL BRANCHES AND THEY ARE SUBJECT TO POLITICAL PRESSURES. THAT WOULD BE HIGHLY PROBLEMATIC.

THE SECOND ONE, YOUR HONOR, WOULD BE IF THE REVOCATION OF THAT VISA BECAME A GROUND FOR REMOVABILITY PROCEEDINGS, THEN IN THOSE REMOVABILITY PROCEEDINGS, THAT REVOCATION -- IMPROPRIETY

OF THAT REVOCATION COULD BE CHALLENGED.

SO WHERE THAT INDIVIDUAL IS AFFECTED BY THAT IN THE IMMIGRATION PROCESS, THEN THEY HAVE AN OPPORTUNITY TO CHALLENGE THAT.

THE COURT: SO JUST TO BE CLEAR, BECAUSE THERE'S ANOTHER POINT IN YOUR BRIEF AND I'M GOING TO ASK ABOUT IT IN A LITTLE BIT ABOUT THE DIFFERENCE BETWEEN THE REVOCATION OF THE VISA AND ACTUALLY HAVING SOMEBODY REMOVED, IT'S THE POSITION OF THE GOVERNMENT THAT FOR THE REVOCATION OF VISA, NOT REMOVABILITY FROM THE COUNTRY, BUT REVOKING THE VISA, THAT THE SECRETARY OF STATE ESSENTIALLY COULD DEMAND A BRIBE NOT TO DO THAT AND THAT WOULD BE UNREVIEWABLE.

MR. HELLAND: YOUR HONOR, I WANT TO BE VERY CLEAR THAT THAT IS NOT THIS CASE, THAT IS NOT WHAT --

THE COURT: I UNDERSTAND. BUT IT'S PART OF THE BRIEF THAT IS HERE WHICH IS IT'S COMPLETELY UNREVIEWABLE.

MR. HELLAND: I THINK THAT IS THE CHOICE THAT CONGRESS MADE, RECOGNIZING THAT THE POLITICAL DEPARTMENTS ARE SUBJECT TO THEIR OWN CONSTRAINTS AND PRESSURES.

SO YES, THEY GRANTED THAT DISCRETION TO THE SECRETARY OF STATE RECOGNIZING THERE WERE OTHER WAYS IN WHICH THAT POWER WOULD BE CHECKED OTHER THAN JUDICIAL REVIEWABILITY.

THE COURT: OKAY. CONTINUING HERE, IN THIS SECTION OF THE BRIEF, SO THE GOVERNMENT FURTHER STATES THAT, "SIMILARLY, THE INA HAS, FOR DECADES, PROVIDED THE SECRETARY OF

STATE THE AUTHORITY TO DETERMINE THAT THE ALIEN IS SUBJECT TO DEPORTATION FOR FOREIGN POLICY REASONS. THE INA'S LIST OF CLASSES OF DEPORTABLE ALIENS INCLUDES THOSE WHICH PRESENCE OR ACTIVITIES IN THE UNITED STATES THE SECRETARY OF STATE HAS REASONABLE GROUNDS TO BELIEVE WOULD HAVE POTENTIALLY SERIOUS ADVERSE FOREIGN POLICY CONSEQUENCES FOR THE UNITED STATES."

IF YOU FLIP OVER TO THE NEXT PAGE, STAYING ON THE SAME THEME, IT SAYS STARTING ON PAGE 4, LINE 12, "IMPORTANTLY, THE FOREIGN POLICY REMOVAL PROVISION SPECIFIES THAT AN ALIEN CANNOT BE REMOVABLE BECAUSE OF THE ALIEN'S PAST, CURRENT OR EXPECTED BELIEFS, STATEMENTS OR ASSOCIATIONS, IF SUCH BELIEFS, STATEMENTS OR ASSOCIATIONS WOULD BE LAWFUL WITHIN THE UNITED STATES UNLESS THE SECRETARY OF STATE PERSONALLY DETERMINES THAT THE ALIEN'S PRESENCE WOULD COMPROMISE A COMPELLING UNITED STATES FOREIGN POLICY INTEREST, AND THEN IT REFERENCES 8 USC 1227.

SO HOW DOES THE PRESENCE OR THE SPEECH OF A STUDENT HOLDING A VISA WHO EXPRESSES BY PUBLISHING AN ARTICLE OR WRITING ON SOCIAL MEDIA OR PARTICIPATING IN SOME SORT OF A COLLEGE PROTEST, IF THE POSITION IS IF THE CONDITIONS IN GAZA ARE INHUMANE OR THAT PARTICULAR STUDENT EXPRESSES SYMPATHY FOR PALESTINIAN PEOPLE, INCLUDING CHILDREN, OR EXPRESSES SOME FRUSTRATION OR DISAGREEMENT WITH ISRAEL REGARDING THE CONDITIONS IN GAZA; HOW DOES THAT COMPROMISE A COMPELLING U.S. FOREIGN POLICY INTEREST?

MR. HELLAND: WELL YOUR HONOR, I THINK WE HAVE TRIED TO EXPLAIN IN OUR PAPERS THAT THAT BY ITSELF WOULD NOT, RATHER WHAT COMPROMISES UNITED STATES FOREIGN POLICY INTERESTS IS WHEN MORE EGREGIOUS CONDUCT MANIFESTS ITSELF EITHER AT PROTESTS OR IN LANGUAGE EXPRESSING SUPPORT FOR TERRORISM AND THAT COMPLICATES THE UNITED STATES' OBJECTIVES IN TRYING TO NEGOTIATE A PEACE AGREEMENT IN THE MIDDLE EAST.

AND AGAIN, WE TRIED TO SAY THIS IN OUR PAPERS, I THINK YOUR HONOR ZEROED IN ON WHAT I HAVE BEEN CALLING THE SORT OF PURE POLITICAL SPEECH THAT PLAINTIFFS ARE TRYING TO STATE THEIR CLAIMS ON, IT'S MY UNDERSTANDING THAT THAT ALONE WOULDN'T BE THE KIND OF THING THAT THE SECRETARY OF STATE WOULD DETERMINE COMPROMISES A COMPELLING UNITED STATES INTEREST, RATHER IT'S MORE EGREGIOUS THINGS, AND THOSE MORE EGREGIOUS THINGS, YOUR HONOR, I THINK CAUSING DISRUPTIONS ON CAMPUSES THAT MAKE ISRAELI STUDENTS THERE OR STUDENTS IN GENERAL FEEL THAT THEY CANNOT ATTEND CLASSES SAFELY, THAT THEY CAN NOT PARTICIPATE IN CAMPUS DEBATES, I THINK WHEN STUDENTS' SAFETY IS JEOPARDIZED AND IT RELATES TO THIS FOREIGN POLICY ISSUE, THAT'S SOMETHING THAT THE SECRETARY OF STATE CAN CONSIDER IN INVOKING THIS PROVISION.

THE COURT: SO IF OTHER STUDENTS DO NOT LIKE THE PROTEST AND FEEL UNCOMFORTABLE ABOUT THAT, THAT WOULD BE ENOUGH TO REVOKE A VISA?

MR. HELLAND: I DON'T KNOW THAT THAT BY ITSELF WOULD

BE ENOUGH, YOUR HONOR, I THINK IN ANY PARTICULAR CASE THERE WOULD HAVE TO BE A NUMBER OF FACTORS THAT WERE CONSIDERED, BUT THAT WOULD BE SOMETHING THAT COULD BE CONSIDERED IN THIS ANALYSIS.

THE COURT: WE TALKED ABOUT THIS A LITTLE BIT BACK, THIS IS FURTHER DOWN ON PAGE 4. THE GOVERNMENT STATES THAT THE REVOCATION OF AN ALIEN'S VISA OR THE SECRETARY OF STATE'S DETERMINATION THAT AN ALIEN IS REMOVABLE DOES NOT NECESSARILY MEAN THEY WILL BE REMOVED FROM THE UNITED STATES. THOSE ARE MERELY GROUNDS FOR REMOVABILITY THAT DHS MAY ASSERT IN FORMAL REMOVAL PROCEEDINGS IN IMMIGRATION COURT. ALIENS IN REMOVAL PROCEEDINGS ARE AFFORDED PROCEDURAL PROTECTIONS UNDER USC SECTION 1229(A).

IF A NONCITIZEN STUDENT HAS HAD THEIR VISA REVOKED, DO THEY HAVE A LEGAL RIGHT TO BE IN THE UNITED STATES?

MR. HELLAND: I BELIEVE THE ANSWER TO THAT IS TYPICALLY NO, UNLESS THEY HAVE SOME ALTERNATE GROUND.

SO IF THEY HAVE --

THE COURT: ASSUMING THE ONLY GROUND THEY HAVE TO BE IN THE COUNTRY IS BASED ON THE VISA THAT THEY HAVE, DO THEY HAVE A LEGAL RIGHT TO BE IN THE UNITED STATES IF THEIR VISA IS REVOKED? IRRESPECTIVE OF WHETHER REMOVABILITY HAS BEEN INVOKED.

MR. HELLAND: I BELIEVE THE ANSWER TO THAT IS NO, YOUR HONOR, THEY NO LONGER HAVE A RIGHT TO BE IN THE

UNITED STATES.

THE COURT: CAN THEY LAWFULLY CONTINUE GOING TO SCHOOL THEN WITHOUT A VALID VISA?

MR. HELLAND: YOUR HONOR, I AM NOT FAMILIAR ENOUGH WITH THE IMPLICATIONS OF IMMIGRATION LAW WHEN SOMEONE'S VISA HAS BEEN REVOKED; FOR EXAMPLE, I DON'T KNOW IF SUCH AN INDIVIDUAL IS EXPECTED TO REMOVE THEMSELVES FROM THE UNITED STATES IN THE ABSENCE OF REMOVABILITY PROCEEDINGS. SO I DON'T QUITE KNOW HOW TO ANSWER YOUR QUESTION.

THE COURT: WELL I'M FOCUSING ON THIS BECAUSE THE GOVERNMENT SEEMS TO AT LEAST MAKE SOMETHING OF THE FACT WHERE MAYBE THE REVOCATION OF THE VISA ITSELF IS NOT SO BAD, THERE IS STILL SOME PROTECTIONS THAT ARE IN PLACE BEFORE YOU GET TO REMOVABILITY. BUT IF SOMEBODY IS NO LONGER LAWFULLY IN THE UNITED STATES, IT SEEMS TO ME, AND THERE'S CERTAINLY AT LEAST SOME THINGS THAT HAVE BEEN ALLEGED BY THE PLAINTIFFS AND HAVE COME UP IN OTHER CASES LIKE AAUP, THAT YOU ARE IN A VERY RISKY POSITION IF YOU ARE A NONCITIZEN STUDENT STAYING IN THIS COUNTRY AFTER YOUR VISA HAS BEEN REVOKED.

MR. HELLAND: WELL I THINK, YOUR HONOR, THAT THE RISK THAT YOU FACE IS REMOVABILITY PROCEEDINGS AND THEN YOU HAVE THE PROCEDURAL PROTECTIONS OF THOSE PROCEEDINGS. SO I DON'T THINK THERE IS A RISK SEPARATE FROM THOSE PROCEEDINGS.

THE COURT: OKAY. WELL THEN LET'S TALK ABOUT THAT.

YOU TALKED ABOUT THE PROCEDURAL PROTECTIONS UNDER THE INA

THAT WOULD BE AFFORDED. SO IN THE AMENDED COMPLAINT, THE PLAINTIFFS WENT THROUGH PROBABLY THREE OF THE BETTER KNOWN CASES, THEY ALSO CAME UP IN AAUP, BUT SO THE PLAINTIFF ALLEGES THAT MAHMOUD KHALIL, WHO WAS A GRADUATE STUDENT AT COLUMBIA WHO IS A LAWFUL PERMANENT RESIDENT, I THINK A GREEN CARD HOLDER, CRITICIZED ISRAEL'S ACTIONS IN GAZA FOLLOWING THE OCTOBER 7TH 2023 TERRORIST ATTACK BY HAMAS. DID THE GOVERNMENT REVOKE MR. KHALIL'S GREEN CARD?

MR. HELLAND: I BELIEVE SO, YOUR HONOR. I WANT TO BE VERY CLEAR, I HAVE NOT BEEN BRIEFED ON ANYTHING NONPUBLIC ABOUT THESE CASES AND SO THIS IS JUST BASED ON PUBLICLY AVAILABLE MATERIALS, INCLUDING RECORDS OF THE EVIDENCE OF THE AAUP WE SUBMITTED, BUT YES, I BELIEVE SO, YOUR HONOR.

THE COURT: THESE FACTS ARE INCLUDED AND INCORPORATED INTO THE AMENDED COMPLAINT AND ASPECTS OF THESE FACTS ARE INCLUDED IN THE EVIDENCE THAT THE GOVERNMENT WANTS THE COURT TO CONSIDER, WHICH IS WHY I'M ASKING ABOUT THEM.

MR. HELLAND: SURE.

THE COURT: SO IS IT YOUR UNDERSTANDING THAT HIS GREEN CARD WAS REVOKED?

MR. HELLAND: YES.

THE COURT: WAS HE PROVIDED ANY IMMIGRATION HEARING PRIOR TO THAT REVOCATION?

MR. HELLAND: YOUR HONOR, I DON'T KNOW AND I DON'T WANT TO --

THE COURT: OKAY. DO YOU KNOW WHETHER HE WAS PROVIDED ANY KIND OF A HEARING IN IMMIGRATION COURT PRIOR TO BEING ARRESTED?

MR. HELLAND: I BELIEVE NOT, YOUR HONOR. I BELIEVE NOT.

THE COURT: WHAT ABOUT BEFORE HE WAS TRANSPORTED TO THE DETENTION FACILITY IN LOUISIANA?

MR. HELLAND: FROM RECOLLECTION, YOUR HONOR, I BELIEVE NOT.

THE COURT: OKAY. SO ESSENTIALLY THE SAME QUESTION AS IT RELATES TO RUMEYSA OZTURK. PLAINTIFFS ALLEGE, I THINK THERE'S SUFFICIENT INFORMATION ABOUT THIS, THAT SHE WAS A PH.D. STUDENT AT TUFTS, SHE HELD A VALID AT THE TIME, F1 STUDENT VISA, SHE HAD WRITTEN AN ARTICLE IN TUFTS STUDENT NEWSPAPER URGING TUFTS TO DIVEST ITS INTEREST FROM ISRAELI COMPANIES AND RECOGNIZED THAT THERE WAS A GENOCIDE IN GAZA, IS AN OPINION SHE EXPRESSED.

DO YOU KNOW WHETHER SHE WAS PROVIDED A HEARING IN IMMIGRATION COURT BEFORE THE PLAIN CLOTHES OFFICERS TOOK HER OFF THE STREET OUTSIDE HER HOME IN MASSACHUSETTS?

MR. HELLAND: I BELIEVE SHE WAS NOT.

THE COURT: HER VISA WAS REVOKED JUST A FEW DAYS BEFORE THAT; IS THAT RIGHT?

MR. HELLAND: THAT WAS MY UNDERSTANDING.

THE COURT: WAS SHE PROVIDED A HEARING BEFORE AN

IMMIGRATION JUDGE BEFORE THAT REVOCATION OCCURRED?

MR. HELLAND: I DON'T BELIEVE SO.

THE COURT: WHAT ABOUT BEFORE SHE WAS TRANSPORTED TO THE LOUISIANA FACILITY?

MR. HELLAND: NO, I DON'T BELIEVE SO.

THE COURT: OKAY. THEY ALSO REFERENCE MOHSEN MAHDAWI WHO WAS A COLUMBIA UNDERGRADUATE STUDENT AND A GREEN CARD HOLDER, HE SIMILARLY WAS OUTSPOKEN ABOUT ISSUES THAT WERE HAPPENING REGARDING ISRAEL'S ACTIONS IN GAZA, DO YOU KNOW WHETHER HIS GREEN CARD WAS REVOKED?

MR. HELLAND: I BELIEVE THAT IT WAS, YOUR HONOR.

THE COURT: DO YOU KNOW IF HE WAS FIRST PROVIDED ANY KIND OF A FORMAL HEARING BEFORE AN IMMIGRATION JUDGE?

MR. HELLAND: I BELIEVE NOT BEFORE THAT REVOCATION, YOUR HONOR.

THE COURT: WHAT ABOUT BEFORE HE WAS ARRESTED, AFTER HE TOOK THE U.S. CITIZENSHIP EXAM?

MR. HELLAND: I DON'T BELIEVE SO.

THE COURT: HOW ABOUT BEFORE HE WAS TAKEN TO THE JAIL IN VERMONT?

MR. HELLAND: I DON'T BELIEVE SO.

THE COURT: ALL RIGHT. I'M GOING TO SWITCH GEARS A LITTLE BIT.

THE GOVERNMENT REFERENCES, THIS IS ON PAGE 5 NOW, I'M MOSTLY FOCUSED ON THE EARLY PARTS OF THE BRIEF BECAUSE THAT'S

WHERE THE FACTUAL DISCUSSION OCCURS IN THE BRIEF. ON PAGE 5, THE GOVERNMENT REFERENCES THAT ICE PROVIDES THE STATE DEPARTMENT DEROGATORY INFORMATION FOR THE PURPOSES OF VETTING ALIENS. IT ALSO COMES UP AGAIN ON PAGE 7 OF THE GOVERNMENT'S BRIEF, IT'S REFERENCING THE EXECUTIVE ORDER IS 14161 THERE, SAYING THE STATE ISSUED GUIDANCE IN THE FORM OF A CABLE TO ITS DIPLOMATIC POSTS ABROAD TO REVIEW THE NON-IMMIGRANT SYSTEM, AND WHEN DEROGATORY INFORMATION RELATED TO AN INDIVIDUAL APPEARED IN THE SYSTEM, TO REVOKE THE INDIVIDUAL'S VISA IF WARRANTED.

IN THIS CONTEXT, WHAT DOES "DEROGATORY INFORMATION" MEAN?

MR. HELLAND: IT COULD MEAN A NUMBER OF THINGS, YOUR HONOR. I THINK THE MOST PERHAPS EGREGIOUS FORM OF DEROGATORY INFORMATION WOULD BE OUTRIGHT SUPPORT FOR TERRORISM, THAT WOULD BE SOMETHING THAT WOULD COME UP IN HSI INVESTIGATIONS AND HAS HISTORICALLY COME UP IN HSI INVESTIGATIONS.

I DON'T THINK THAT IT IS A DEFINED TERM, IT IS INFORMATION THAT WOULD BE CONSIDERED RELEVANT TO AN ANALYSIS OF WHETHER AN INDIVIDUAL'S CONDUCT IMPLICATES THE UNITED STATES'S FOREIGN POLICY INTERESTS.

THE COURT: SO IN THIS CONTEXT, SPEECH COULD CONSTITUTE DEROGATORY INFORMATION?

MR. HELLAND: WELL YES, YOUR HONOR, I THINK IT WOULD CONSTITUTE -- WHETHER THAT'S SUFFICIENT TO TAKE FURTHER ACTION WOULD BE A SEPARATE QUESTION, BUT YES I THINK -- AGAIN I DON'T

THINK IT'S A DEFINED TERM, BUT THAT COULD BE INFORMATION THAT IS PART OF THIS INVESTIGATION PROCESS, YES.

THE COURT: ON PAGE 6, THE GOVERNMENT STATES THAT THE FOREIGN AFFAIRS MANUAL INSTRUCTS FOREIGN CONSULATE OFFICIALS THAT ALTHOUGH THE DECISION TO REVOKE A VISA IS A DISCRETIONARY ONE, THEY SHOULD NOT USE THIS AUTHORITY ARBITRARILY. DASH SHOULD ONLY REVOKE A VISA WHEN WARRANTED FOR VARIOUS SPECIFIC REASONS, THESE REASONS INCLUDE WHEN THE STATE DEPARTMENT RECEIVES DEROGATORY INFORMATION DIRECTLY FROM ANOTHER U.S. GOVERNMENT AGENCY. IN THIS INSTANCE, ANOTHER GOVERNMENT AGENCY WOULD INCLUDE DHS; IS THAT RIGHT?

MR. HELLAND: YES, THAT'S RIGHT.

CAN DHS RECOMMEND VISA REVOCATION PURELY BASED ON A VISA HOLDER'S SPEECH?

MR. HELLAND: IT'S MY UNDERSTANDING BASED ON THE AAUP TESTIMONY THAT THEY DID NOT HAVE A PRACTICE OF DOING SO. WHETHER THEY COULD, ANY AGENT COULD, BUT WHETHER ENFORCEMENT ACTION COULD BE TAKEN ON THAT RECOMMENDATION WOULD BE A SEPARATE ACTION. AND BASED ON THE EVIDENCE I'VE SEEN AND SUBMITTED TO YOUR HONOR, I DON'T THINK IT WOULD BE. BUT ANY PARTICULAR ICE AGENT COULD MAKE THAT RECOMMENDATION, THAT DOESN'T MEAN IT WOULD BE ACTED UPON.

AND IN FACT, YOUR HONOR, I WOULD REMIND YOU THAT BETWEEN ONE QUARTER AND A THIRD OF DHS REFERRALS OR RECOMMENDATIONS TO THE STATE DEPARTMENT WERE SENT BACK FOR REQUESTS FOR MORE

INFORMATION. SO THAT IMPLIES THAT THERE IS AN ONGOING CONVERSATION BETWEEN THESE AGENCIES IF THE BASIS FOR THE RECOMMENDATION OR THE REASON FOR THE REFERRAL IN THE FIRST PLACE APPEARS INSUFFICIENT TO THE STATE DEPARTMENT THEY CAN REQUEST MORE INFORMATION.

THE COURT: THE GOVERNMENT REFERENCED TWO DIFFERENT EXECUTIVE ORDERS, 14161 AND 14188. 14161 SAYS THAT IT'S THE POLICY OF THE UNITED STATES TO PROTECT ITS CITIZENS FROM ALIENS WHO DO VARIOUS THINGS, INCLUDING ESPOUSING HATEFUL IDEOLOGY. THE GOVERNMENT STATES THAT EXECUTIVE ORDER 14188 CALLS UP FOR STEPPED UP FEDERAL ENFORCEMENT IN THE WAKE OF ANTISEMITIC DISCRIMINATION AND TO HOLD ACCOUNT, THE PERPETRATORS OF ANTISEMITIC HARASSMENT.

THE OPPOSITION FROM THE PLAINTIFFS MENTIONS IT AT THE END OF JANUARY OF 2025, THE PRESIDENT COMMITTED TO REVOKING THE VISAS AND DEPORTING WHAT HE CALLED HAMAS SYMPATHIZERS.

AND SO I KEEP FOCUSING ON THIS BECAUSE THE GOVERNMENT INDICATES THAT THERE HAS TO BE SOMETHING ELSE, THERE HAS TO BE SOMETHING MORE THAN JUST SPEECH, ALTHOUGH I WILL SAY THE GOVERNMENT'S BRIEF IS PRETTY LIMITED ABOUT WHAT HAS CONSTITUTED THAT ADDED ITEM, PARTICULARLY AS IT RELATES TO THE ONLY KNOWN CASES THAT HAVE BEEN DISCUSSED, AND SO I WANT TO BETTER UNDERSTAND, IS EXPRESSING DISAGREEMENT WITH ISRAEL'S TREATMENT OF PALESTINIANS IN GAZA, INCLUDING CHILDREN, IS THAT HATEFUL IDEOLOGY?

MR. HELLAND: IT'S MY UNDERSTANDING, NO, YOUR HONOR, FROM CONSULTING WITH THE AGENCIES HERE, IT WOULD BE SOMETHING MORE, INCLUDING CALLING FOR THE DESTRUCTION OF ISRAEL, NOT THE MERE DISAGREEMENT WITH POLICY ACTIONS, BUT RATHER CALLING FOR THE END OF THAT COUNTRY.

THE COURT: WOULD IT QUALIFY FOR RISING TO THE LEVEL OF ANTISEMITIC DISCRIMINATION?

MR. HELLAND: DISAGREEING WITH ISRAEL'S ACTIONS, WOULD THAT QUALIFY AS --

THE COURT: CORRECT.

MR. HELLAND: I DON'T THINK I HAVE A BASIS TO ANSWER THAT QUESTION, YOUR HONOR. I DON'T KNOW THE AGENCY'S POSITION ON THAT.

THE COURT: I'M JUST USING, AGAIN, THE PHRASES THE GOVERNMENT HAS USED WITH REGARDS TO THIS. IS IT ANTISEMITIC HARASSMENT OR DOES IT DENOTE THAT THE SPEAKER IS A HAMAS SYMPATHIZER? BY EXPRESSING CONCERN ABOUT THE ISRAELI POLICY IN GAZA OR EXPRESSING CONCERN FOR THE CONDITION OR TREATMENT OF PALESTINIANS WHO ARE THERE?

MR. HELLAND: IT'S MY UNDERSTANDING THAT THAT COULD BE REASON THAT AN INDIVIDUAL IS INVESTIGATED, BUT THAT BY ITSELF WOULDN'T BE THE BASIS FOR ENFORCEMENT ACTION. BECAUSE THERE'S DIFFERENT STANDARDS FOR THE STEPS IN THE PROCESS.

AND AGAIN, THIS IS BASED ON AN ENFORCEMENT INITIATIVE THAT CONCLUDED MONTHS AGO, RIGHT, BY THE LATE SPRING OR SUMMER OF

LAST YEAR, SO AT THAT TIME, IT'S MY UNDERSTANDING THAT THOSE COULD BE REASONS FOR A REFERRAL, BUT BY THEMSELVES WOULDN'T BE REASONS FOR REVOCATION OR REMOVABILITY PROCEEDINGS.

THE COURT: WHAT DO YOU MEAN BY THAT THIS WAS FROM MONTHS AGO?

MR. HELLAND: WELL THERE WAS A SPECIFIC ENFORCEMENT INITIATIVE, THIS REFERRAL OF APPROXIMATELY 5,000 NAMES THAT WERE SUBJECT TO INVESTIGATION, RIGHT, IN WHICH AT LEAST ONE OF THE INDIVIDUAL PLAINTIFFS WAS NAMED. THAT SPECIFIC ENFORCEMENT INITIATIVE, THAT'S WHAT WAS PRIMARILY AT ISSUE IN AAUP AND THAT IS WHAT CONCLUDED MONTHS AGO.

THE COURT: WHEN YOU SAY IT WAS CONCLUDED MONTHS AGO, IS IT THE POSITION OF THE GOVERNMENT THAT THEY ARE NO LONGER REVOKING VISAS OR THAT IT SLOWED SIGNIFICANTLY SINCE THAT PERIOD OF TIME?

MR. HELLAND: I DO BELIEVE IT HAS SLOWED SIGNIFICANTLY SINCE THAT TIME. I DON'T -- IT'S MY UNDERSTANDING THAT THERE HAS BEEN NO COMPARABLY LARGE BATCH OF REFERRALS SINCE THOSE 5,000 OR SO NAMES WERE INVESTIGATED EARLY LAST YEAR.

THE COURT: I'M ASKING LESS ABOUT WHETHER THERE'S BEEN REFERRALS OR HOW ITS BEEN ACCOMPLISHED VERSUS WHETHER IN FACT VISA HOLDERS, THOSE VISAS ARE STILL BEING REVOKED AND PEOPLE ARE BEING REMOVED. FOR THESE REASONS, BASED ON -- IRRESPECTIVE OF WHETHER IT IS A PARTICULAR PROTEST OR IT'S JUST

09:55:54 BECAUSE PEOPLE ARE WRITING OR SPEAKING.

09:56:02 MR. HELLAND: AND THE ANSWER TO THAT, YOUR HONOR, IS 09:56:04 I AM NOT AWARE OF ANY SINCE THAT INITIATIVE FROM LAST SUMMER I 09:56:09 AM NOT AWARE OF ANY. IF THERE ARE, THEY ARE SMALL NUMBERS, BUT 09:56:12 I AM NOT AWARE OF THEM AND I DON'T THINK PLAINTIFFS HAVE 09:56:15 IDENTIFIED THEM.

09:56:22 THE COURT: BOTH IN AAUP AND HERE, THERE HAVE BEEN 09:56:27 REFERENCES TO THE GOVERNMENT SAYING THAT HIS REVIEWED THE 09:56:32 CANARY MISSION WEBSITE. DO YOU KNOW WHY?

09:56:35 MR. HELLAND: BECAUSE IT WAS REFERRED TO THEM. IT'S 09:56:38 PART OF THE LINE AGENT'S PROCESS TO HANDLE REFERRALS.

09:56:44 THE COURT: RIGHT. BUT WHY FOR THAT SITE, WHAT IS IT 09:56:52 ABOUT THAT -- BECAUSE IT'S A REFERENCE IN AAUP, IT WAS A 09:56:57 SUBSTANTIAL, THE VAST MAJORITY OF IT CAME FROM THERE, WHY?

09:57:01 MR. HELLAND: I DON'T KNOW HOW THE NAMES ON THAT SITE 09:57:03 WERE REFERRED TO THE AGENCY, SO I CAN'T SPEAK TO THE MOTIVATION 09:57:07 OF THE INDIVIDUALS WHO MADE THAT REFERRAL. I CAN SAY THAT THE 09:57:14 ISSUED RAISED IN THE CANARY MEDIA WEBSITE WERE RELATED TO THE 09:57:20 EXECUTIVE ORDERS, AND THEREFORE SEEMED, I THINK A PROPER 09:57:28 SUBJECT OF INVESTIGATION.

09:57:32 THE COURT: WHO RUNS THAT SITE?

09:57:34 MR. HELLAND: I DON'T KNOW, YOUR HONOR.

09:57:35 THE COURT: DO YOU KNOW WHO POPULATES IT?

09:57:37 MR. HELLAND: I DON'T, YOUR HONOR.

09:57:38 THE COURT: DO YOU HAVE ANY IDEA HOW OR WHO, I GUESS,

DECIDES WHOSE NAMES WHO ARE LISTED ON THAT SITE?

MR. HELLAND: I DO NOT, YOUR HONOR, IT'S A PRIVATE WEBSITE.

THE COURT: I ASKED ABOUT THIS EARLIER, STARTING ON PAGE 9, THE GOVERNMENT INCLUDES A LOT OF STATISTICS FOR PART OF ITS EVIDENTIARY RECORD, THIS IS INFORMATION THAT WASN'T INCLUDED IN THE AMENDED COMPLAINT, IT'S THE GOVERNMENT'S EVIDENCE WHICH I WANTED TO TEASE OUT A LITTLE BIT. SO GOVERNMENT REPORTS THAT 5,000 PLUS CAMPUS PROTESTOR NAMES WERE REFERRED TO HSI, THAT GENERATED BETWEEN 100 AND 200 REFERRALS, FROM THERE, IT SAYS SOMEWHERE BETWEEN 10 AND 50, WHICH IS A PRETTY BIG RANGE, WERE REFERRED TO THE STATE DEPARTMENT, AND OF THOSE, ABOUT 70 TO 75 PERCENT OF THOSE REFERRALS APPEARED TO HAVE RESULTED IN REVOCATIONS OR REMOVABILITY DETERMINATIONS.

THIS INFORMATION REALLY IS ONLY RELEVANT, I THINK FOR OUR PURPOSES, IF THE COURT UNDERSTANDS HOW MANY OF THE 5,000 PLUS CAMPUS PROTESTOR NAMES THAT WERE REFERRED WERE NONIMMIGRANT VISA HOLDERS.

AND AS FAR AS I UNDERSTAND, YOU DON'T HAVE THAT INFORMATION, CORRECT?

MR. HELLAND: THAT'S CORRECT.

THE COURT: I JUST WANT TO BE SURE YOU UNDERSTAND WHY THE COURT IS FOCUSED ON THIS, BECAUSE IF 5,000 OF THEM WERE NONIMMIGRANT VISA HOLDERS, AND IN THE END ONLY 75 PERCENT OF SOMEWHERE BETWEEN 10 AND 50 PEOPLE HAD THEIR VISAS REVOKED OR

REMOVED, THAT IS VERY DIFFERENT THAN IF ONLY 200 OF THOSE PEOPLE WERE NONIMMIGRANT VISA HOLDERS AND 200 -- 100 TO 200 PEOPLE WERE REFERRED. BECAUSE THAT'S A -- IT'S A VERY DIFFERENT ASSESSMENT OF WHO THE FOCUS OF THIS INVESTIGATIVE WORK IS ON, AND WITHOUT THAT DATA, THIS ALMOST SEEMS LIKE IT'S -- THERE'S JUST NOT MUCH THE COURT CAN DO WITH IT.

MR. HELLAND: I UNDERSTAND YOUR CONCERNS WITH THAT, YOUR HONOR, AND I TRIED TO FIND IN THE RECORD WHERE THAT MIGHT HAVE BEEN SPELLED OUT IN MORE DETAIL AND I WAS UNABLE TO FIND IT. I JUST DON'T THINK THAT EVIDENCE WAS IN THE RECORD.

I WILL SAY, YOUR HONOR, I THINK THE SALIENT POINT FROM THAT IS THAT BASED ON THE ALLEGATIONS, AS I UNDERSTAND IT, AT LEAST ONE OF THE INDIVIDUAL PLAINTIFFS WAS AMONG THOSE REFERRED WHO WOULD HAVE BEEN INVESTIGATED FOR WHOM NO ENFORCEMENT ACTION WAS TAKEN.

SO YES, I UNDERSTAND YOUR CONCERN ABOUT THE STATISTICAL EVIDENCE, BUT AT LEAST BASED ON THAT PLAINTIFF'S ALLEGATIONS, I THINK THAT SHOWS THAT THERE WERE THE NONIMMIGRANT STUDENT VISA HOLDERS WHO WERE REFERRED FOR INVESTIGATION AGAINST WHOM NO ENFORCEMENT ACTION WAS TAKEN.

THE COURT: AND TO BE CLEAR, AGAIN, I MEAN THE REASON WHY I HAVE SO MANY QUESTIONS IN THIS REGARD IS THE PRIMARY ARGUMENT OF THE GOVERNMENT IS STANDING, AND AT LEAST AS IT RELATES TO THE INDIVIDUALS, BUT THERE IS REALLY NO CREDIBLE THREAT, AND THAT'S A CORE PART OF THE GOVERNMENT'S ARGUMENT

HERE. AND I'M TRYING TO UNDERSTAND WHAT THE BASIS IS FOR THE GOVERNMENT'S VIEW, BECAUSE THE GOVERNMENT'S MOTION HERE IS THAT IT IS NOT A CREDIBLE THREAT.

AND I HAD ASKED PREVIOUSLY A COUPLE OF TIMES ABOUT WHAT IS IT, BEYOND SPEECH, THAT THE GOVERNMENT IS FOCUSED ON? AND THE GOVERNMENT IN ITS BRIEF ON PAGE 8 INDICATES THAT IT INCLUDES DISRUPTIVE CONDUCT, SUCH AS ENGAGING IN VIOLENCE DURING PROTESTS.

DID ALL OF THE NONIMMIGRANT VISA HOLDERS WHO HAD THEIR VISAS REVOKED OR OTHER OTHERWISE REMOVED FROM THE UNITED STATES, IS IT THE POSITION OF THE GOVERNMENT THAT ALL OF THEM ENGAGED IN SOME SORT OF VIOLENCE?

MR. HELLAND: I DON'T THINK IT IS, YOUR HONOR.

AGAIN, I'M NOT FAMILIAR WITH THE SPECIFICS OF EACH OF THOSE CASES, BUT FROM MY UNDERSTANDING, IT SEEMS UNLIKELY THAT ALL OF THEM ENGAGED IN VIOLENCE, I DON'T THINK THAT THAT'S THE CASE.

THE COURT: HOW ABOUT JUST FOR THE THREE THAT WERE THE PRIMARY FOCUS OF THE AMENDED COMPLAINT, KHALIL, OZTURK AND MAHDAWI, IS IT THE POSITION OF THE GOVERNMENT THAT EACH OF THOSE THREE ENGAGED IN SOME SORT OF VIOLENCE, SOMETHING BEYOND JUST THEIR SPEECH?

MR. HELLAND: WELL I THINK THERE IS SPACE BETWEEN JUST THEIR SPEECH AND VIOLENCE AT THE PROTEST. I THINK THERE IS --

THE COURT: LET ME ASK THIS, DOES THE GOVERNMENT HAVE ANY INFORMATION OR IS IT THE GOVERNMENT'S POSITION THAT THOSE THREE INDIVIDUALS ENGAGED IN SOME SORT OF VIOLENCE?

MR. HELLAND: NO.

THE COURT: ANY OF THEM?

MR. HELLAND: I DON'T BELIEVE SO, YOUR HONOR.

THE COURT: I'M GOING TO GET TO THIS WITH THE PLAINTIFFS, WHO I'M SURE ARE EAGER TO ACTUALLY HAVE AN OPPORTUNITY TO TALK, YOU PROBABLY ARE EAGER FOR THEM TO HAVE AN OPPORTUNITY TO TALK AS WELL. I WANT TO FOCUS JUST FOR A MOMENT ON INJURY.

IF THE PLAINTIFFS HERE HAVE ALLEGED THAT THEIR FIRST AMENDMENT RIGHTS HAVE BEEN CHILLED, WHY ISN'T THAT A SUFFICIENT INJURY TO WITHSTAND A MOTION TO DISMISS?

MR. HELLAND: YOUR HONOR, THE CASE LAW SAYS THAT SUBJECTIVE CHILL IS NOT SUFFICIENT, IT HAS TO BE OBJECTIVELY REASONABLE. SO MERELY FEELING LIKE THEY HAVE BEEN CHILLED IS NOT SUFFICIENT FOR ARTICLE III STANDING.

SO AGAIN, THAT'S WHY WE GET INTO THIS DIALOG ABOUT WHAT ACTUALLY HAPPENED IN OTHER CASES, AND WHAT DOES THE EVIDENCE SAY ABOUT THE LIKELIHOOD THAT THEY WILL EXPERIENCE THOSE THREATS, IT HAS TO BE BASED ON SOMETHING AND NOT PURELY SUBJECTIVE. THAT'S THE ONE THING.

THE OTHER THING, AND I'M NOT SURE IF THIS IS PART OF YOUR QUESTION OR NOT, BUT THE REDRESSABILITY PROBLEM LOOMS OVER

THIS. EVEN IF THEY HAVE ALLEGED INJURY, WHICH I DON'T THINK THEY HAVE, BUT EVEN IF THEY HAVE, REDRESSABILITY IS ITS OWN ELEMENT OF STANDING, AND THEY HAVE FAILED TO SATISFY THAT HERE.

THE COURT: I THINK I REALLY ONLY HAVE ONE OTHER POINT I WOULD LIKE TO TALK WITH YOU ABOUT, AT LEAST AT THIS TIME, UNTIL I HEAR FROM THE PLAINTIFFS IN RESPONSE.

IN THEIR OPPOSITION THEY ESSENTIALLY SAY THE GOVERNMENT IS TAKING TWO INCONSISTENT APPROACHES HERE. THE GOVERNMENT TOOK THE OPPOSITE POSITION IN THE KHALIL CASE ARGUING THAT DISTRICT COURTS ARE BARRED FROM REVIEWING ACTUAL ENFORCEMENT ACTIONS, BECAUSE HERE THE GOVERNMENT SAYS IT'S PREMATURE, NOTHING HAS HAPPENED YET, YOU NEED TO WAIT UNTIL SOMETHING HAPPENS, AND THEN IN KHALIL YOU SAY, ACTUALLY AFTER SOMETHING HAPPENS, THE COURT CAN'T DO ANYTHING ABOUT IT. SO CAN YOU SPEAK TO THAT?

MR. HELLAND: ABSOLUTELY, YOUR HONOR. I THINK THIS IS ONE OF THESE FINER POINTS OF IMMIGRATION LAW THAT I MIGHT ACTUALLY HAVE AN ANSWER FOR YOUR HONOR FOR. AND THAT IS THE PROCESS FOR RAISING THOSE ARGUMENTS IS IN A PETITION FOR REVIEW TO A COURT OF APPEALS AFTER REMOVABILITY PROCEEDINGS.

YOU DON'T GO TO DISTRICT COURT TO RAISE THOSE ARGUMENTS, YOU GO THROUGH THE REMOVABILITY PROCESS, INCLUDING AN APPEAL TO THE BIA, AND IF YOU LOSE THERE THEN YOU RAISE THOSE CONSTITUTIONAL ARGUMENTS TO THE COURT OF APPEALS.

SO IT'S NOT THAT THOSE INDIVIDUALS HAVE NO FORUM FOR RAISING THOSE CLAIMS, IT'S THAT A FEDERAL DISTRICT COURT ISN'T

THE RIGHT PLACE TO DO IT.

CONGRESS HAS ESTABLISHED A PROCESS FOR RAISING THOSE CLAIMS WHICH GIVES THE AGENCY THE ABILITY TO ADJUDICATE THEM IN THE FIRST INSTANCE, AND THEN PRESERVE FOR THE COURTS OF APPEAL AND ULTIMATELY THE SUPREME COURT, THE ABILITY TO RULE ON CONSTITUTIONAL QUESTIONS RAISED IN THAT PROCESS.

IT'S NOT SPEAKING OUT OF BOTH SIDES OF ITS MOUTH TO SAY THAT CONGRESS HAS CREATED A PATH TO RAISE SUCH CLAIMS AND THE KIND OF PATH THAT THOSE OTHER CASES ARE TRYING TO WALK IS NOT THE ONE THAT CONGRESS HAS CREATED.

THE COURT: AND -- WELL IT SOUNDS LIKE THE POSITION OF THE GOVERNMENT IS A DISTRICT COURT NEVER HAS JURISDICTION, CAN NEVER HEAR ANY OF THESE CASES; IS THAT RIGHT?

MR. HELLAND: SO IN SHORT, I THINK IT IS, YOUR HONOR, BECAUSE CONGRESS CREATED THIS PATH THAT GOES TO THE COURTS OF APPEALS.

THERE IS -- THE PETITION FOR REVIEW PROCESS, THE PFR PROCESS. SO THE IMMIGRATION AND NATIONALITY ACT CHANNELS THESE REMOVABILITY CLAIMS THROUGH THE IMMIGRATION COURTS, THE BOARD OF IMMIGRATION APPEALS AND THEN THE U.S. COURTS OF APPEALS.

CONGRESS MADE A DECISION TO BYPASS THE FEDERAL DISTRICT COURTS AND GO FROM THE AGENCY TO THE COURTS OF APPEALS. SO I DON'T THINK -- AND THERE'S QUESTIONS OF HABEAS JURISDICTION, AND THERE ARE DIFFERENT WAYS THAT DISTRICT COURTS CAN EXERCISE, AS YOUR HONOR IS WELL AWARE, DIFFERENT WAYS THE DISTRICT COURTS

CAN EXERCISE HABEAS JURISDICTION, INCLUDING IN IMMIGRATION CASES, BUT THAT'S ABOUT DETENTION, IT'S NOT ABOUT CHALLENGES TO THE GROUNDS OF REMOVAL.

SO CONSTITUTIONAL OR OTHER LEGAL CHALLENGES TO THE GROUNDS OF REMOVAL GO THROUGH THE IMMIGRATION COURT AND THE PFR PROCESS TO THE COURTS OF APPEALS. THOSE BYPASS THE FEDERAL DISTRICT COURTS. SO UNLESS A PROPER GROUND FOR HABEAS IS RAISED, THEN NO, I THINK THE FEDERAL DISTRICT COURTS DON'T HAVE A WAY OF ADJUDICATING THOSE QUESTIONS, AND THAT WAS CONGRESS'S CHOICE.

THE COURT: WHAT IF HERE THE -- AND AGAIN, WE ARE ONLY AT A MOTION TO DISMISS, SO I'M NOT AT THE MERITS IN THE WAY WE WOULD BE IN A MOTION FOR SUMMARY JUDGEMENT, BUT WHAT IF THE PLAINTIFFS HAVE ADEQUATELY ALLEGED, AT LEAST, NOT JUST A SUBJECTIVE CHILL OF THEIR FIRST AMENDMENT RIGHTS BUT AN OBJECTIVE CHILL, WHAT WOULD THAT MEAN IN TERMS OF JURISDICTION IN THIS COURT?

MR. HELLAND: WELL I MEAN, PLAINTIFFS ARE BRINGING A CHALLENGE FOR DECLARATORY AND INJUNCTIVE RELIEF, THEY ARE NOT CHALLENGING THEIR OWN REMOVABILITY PROCEEDINGS.

SO TWO THINGS I WOULD SAY ARE FIRST, EVEN IF THAT WERE TRUE FOR INDIVIDUAL PLAINTIFFS, WHICH I DON'T THINK IT IS, I DON'T THINK *STANFORD DAILY* HAS DONE ENOUGH TO PROVE THAT.

SO I THINK EACH PLAINTIFF WOULD NEED TO PROVE ITS OWN STANDING AND *STANFORD DAILY* WOULD NEED TO BE OUT OF THE CASE ON THAT BASIS.

THE OTHER ISSUE, OF COURSE, IS REDRESSABILITY. EVEN IF THEY HAVE PROVEN AN OBJECTIVE CHILL, IF THE RELIEF THAT THEY ARE REQUESTING IS NOT ONE THAT THE COURT CAN GRANT, THEN THEY DON'T HAVE STANDING BECAUSE THEY CAN'T PROVE REDRESSABILITY, SO THE COURT CONTINUES TO LACK JURISDICTION FOR THAT REASON AS WELL.

THE COURT: OKAY.

MR. HELLAND: THANK YOU, YOUR HONOR.

THE COURT: THANK YOU.

MR. FITZPATRICK: GOOD MORNING, YOUR HONOR.

THE COURT: GOOD MORNING.

MR. FITZPATRICK: IF IT'S ACCEPTABLE TO THE COURT, I WOULD LIKE TO OFFER SOME BRIEF OPENING REMARKS, THEN I WOULD LIKE TO ADDRESS THE ISSUES THAT YOUR HONOR RAISED WITH MY FRIEND ON THE OTHER SIDE, IDEALLY IN THE ORDER THAT THEY CAME UP, THOUGH I MAY COMBINE SOME ISSUES WHERE I THINK IT SEES FIT. BUT AT ANY POINT, INCLUDING RIGHT NOW, I'M OF COURSE OPEN TO THE COURT'S QUESTIONS.

THE COURT: THANK YOU. GO AHEAD.

MR. FITZPATRICK: THANK YOU, YOUR HONOR.

FIRST AMENDMENT PRE-ENFORCEMENT STANDING RULES EXIST FOR CASES LIKE THIS WHEN SPEAKERS HAVE GONE INTO HIDING IN FEAR OF GOVERNMENT ENFORCERS.

COURTS DISMISS RIGID STANDING REQUIREMENTS AND THE CALCULUS TILTS, AS THE NINTH CIRCUIT PUT IT, AND AS THIS COURT

PUT IT JUST LAST WEEK IN PRICHETT V. NEWSOM, DRAMATICALLY TOWARDS A FINDING OF STANDING.

THIS COURT NEED LOOK NO FURTHER THAN THE NINTH CIRCUIT'S PUBLISHED AND BINDING DECISION IN AADC V. THORNBURGH, WHICH OUR BRIEF RELIES ON HEAVILY AND WHICH THE GOVERNMENT REPLY BRIEF IGNORED.

THERE, AS HERE, NONCITIZENS LODGED A PRE-ENFORCEMENT FIRST AMENDMENT CHALLENGE TO AN IMMIGRATION STATUTE PROVIDING GROUNDS FOR REMOVABILITY.

THERE, AS HERE, THE TEXT OF THE STATUTE ARGUABLY REACHED THEIR EXPRESSION. SO HERE, AS THE NINTH CIRCUIT DID THERE, THIS COURT SHOULD FIND PRE-ENFORCEMENT STANDING.

NOW MANY OF THE ARGUMENTS THAT MY FRIEND ON THE OTHER SIDE JUST RAISED GO TO THIS IDEA OF, WELL THEY WOULD BE ABLE TO CHALLENGE ANYTHING BAD THAT HAPPENS TO THEM IN FRONT OF A BOARD OF IMMIGRATION APPEALS, SO THERE'S REALLY NO PROPER ROLE FOR A DISTRICT COURT TO PLAY.

THE PROBLEM FOR THAT IS IT CONTINUES TO ASKEW THE WHOLE IDEA OF PRE-ENFORCEMENT STANDING. THE GOVERNMENT'S ARGUMENT IS EQUIVALENT TO YOU HAVE NO BASIS TO CHALLENGE A CRIMINAL STATUTE BECAUSE YOU CAN SIMPLY MOVE TO DISMISS A CRIMINAL INDICTMENT.

THAT IS SIMPLY NOT HOW PRE-ENFORCEMENT STANDING WORKS. AND WE CAN LOOK DIRECTLY TO THE BLAND V. FESSLER CASE WE CITED IN OUR BRIEFING WHERE THE NINTH CIRCUIT HELD THAT ONE SHOULD NOT HAVE TO RISK PROSECUTION TO CHALLENGE A STATUTE, IS

ESPECIALLY TRUE IN FIRST AMENDMENT CASES.

SO THE FACT THAT THERE IS AN OPPORTUNITY DOWN THE ROAD AFTER ENFORCEMENT PROCEEDINGS HAVE ALREADY BEGUN TO RAISE A CONSTITUTIONAL CHALLENGE IS IRRELEVANT, BECAUSE HERE, AS IN THE CRIMINAL CONTEXT, THE LAW ALLOWS, LIKE THE NINTH CIRCUIT DID IN THORNBURGH, THE ABILITY TO CHALLENGE THE STATUTE BEFORE YOU HAVE TO GO THROUGH THE EXPENSIVE AND TIME-CONSUMING GAUNTLET OF THE IMMIGRATION COURTS.

NEXT, MY FRIEND ON THE OTHER SIDE PAID A LOT OF ATTENTION TO THIS IDEA OF THAT THERE HAVEN'T BEEN THAT MANY ACTUAL VISA REVOCATIONS AND PEOPLE RENDERED DEPORTABLE AND WE SHOULD SORT OF DO A STATISTICAL ANALYSIS TO SEE HOW LIKELY YOU ARE TO BE CAUGHT UP IN THE GOVERNMENT'S DRAGNET AND THAT WILL DETERMINE WHETHER OR NOT YOU HAVE STANDING.

THAT IS NOT HOW STANDING WORKS. A GOVERNMENT CANNOT DEFEAT STANDING SIMPLY BY PROMISING TO USE A STATUTE SPARINGLY. WE LOOK TO THE TEXT OF THE STATUTE, WE LOOK TO WHAT THE STATUTE ACTUALLY ENCOMPASSES RATHER THAN THE GOVERNMENT'S ASSURANCES OF, WELL YOUR HONOR, WE ARE GOING TO ENFORCE IT A FEW TIMES, THEREFORE BECAUSE IT'S STATISTICALLY UNLIKELY THAT THEY WILL BE ONE OF THE FEW, THEY DON'T HAVE STANDING.

THAT IS NOT HOW STANDING WORKS AND THEY HAVE CITED NO CASE EVER HOLDING THAT THAT'S HOW STANDING WORKS. OTHERWISE, CONGRESS CAN PASS A CRIMINAL OR AN IMMIGRATION STATUTE, LIMIT THE DEPARTMENT OF STATE, THE DEPARTMENT OF HOMELAND SECURITY OR

THE DEPARTMENT OF JUSTICE TO, SAY, 20 PROSECUTIONS A YEAR, AND BY VIRTUE OF CONSTRAINING THE FUNDING OF THOSE AGENCIES TO A SPECIFIC NUMBER OF PROSECUTIONS, ESSENTIALLY MAKE THE STATUTE UNREVIEWABLE BY THE DISTRICT COURTS. THAT'S NOT HOW STANDING WORKS.

NEXT, MY FRIEND ON THE OTHER SIDE, AND THIS IS A VERY IMPORTANT DISTINCTION, AT NO POINT IN HIS COLLOQUY WITH YOUR HONOR, HAS CLAIMED THAT OUR CLIENT'S SPEECH ACTUALLY FALLS OUTSIDE THE REACH OF THE STATUTES.

THE GOVERNMENT HAS NEVER ARGUED THAT THE SECRETARY OF STATE COULD NOT, WITHIN THE TEXT OF 1201(I), REVOKE OR CLIENTS' VISAS ON THE BASIS OF THE SPEECH THAT THEY HAVE AND WISH TO ENGAGE IN, NOR HAS THE GOVERNMENT CONTESTED THAT THE SECRETARY OF STATE COULD, IF HE WANTED TO, PERSONALLY DETERMINE THAT OUR CLIENTS' PAST AND PLANNED FUTURE SPEECH COMPROMISES A COMPELLING FOREIGN POLICY INTEREST.

ALL THE GOVERNMENT IS RELYING ON IS THIS SORT OF "TRUST US" IDEA THAT, WELL OUR EFFORTS ARE SORT OF OVER AND THERE AREN'T GOING TO BE THAT MANY ANYWAY. NONE OF THAT HAS ANYTHING TO DO WITH HOW STANDING WORKS.

NOW EARLY ON IN MY FRIEND ON THE OTHER SIDE'S ARGUMENT, HE TRIED TO DIFFERENTIATE THE CASES OF MAHMOUD KHALIL, RUMEYSA OZTURK, MOHSEN MAHDAWI AND THE OTHERS BY SAYING THAT THOSE ARE HIGH PROFILE CASES. WELL YOUR HONOR, THEY DIDN'T WANT TO BE HIGH PROFILE. RUMEYSA OZTURK WAS A REGULAR GRAD

STUDENT AT TUFTS UNIVERSITY GOING ABOUT HER DAY WHEN FEDERAL AGENTS THREW HER INTO A VAN AND TRANSPORTED HER TO LOUISIANA BECAUSE HE WROTE AN OP-ED. IT'S THE GOVERNMENT THAT IS TURNING THEM INTO HIGH PROFILE CASES AND THEN TRYING TO USE THE FACT THAT THEY TURNED THESE INDIVIDUALS INTO HIGH PROFILE CASES TO SOMEHOW DIFFERENTIATE THEM FROM OUR CLIENTS HERE. WE THINK THAT'S INAPPROPRIATE.

10:15:01
10:15:05
10:15:09
10:15:13
10:15:16
10:15:22
10:15:24

THE NEXT THING THAT YOUR HONOR AND MY FRIEND ON THE OTHER SIDE FOCUSED ON ISSUE THESE SUPPOSED ADDITIONAL FACTORS THAT THESE OTHER INDIVIDUALS SORTS OF ENGAGED IN.

10:15:25
10:15:28
10:15:31

ONE THAT MY FRIEND ON THE OTHER SIDE MENTIONED WAS BEING A LEADER OF PROTESTS, ANOTHER WAS DISTRIBUTING VIOLENT IMAGERY. THERE IS ANOTHER WORD FOR THOSE THINGS, PROTECTED SPEECH. IT IS ENTIRELY PROTECTED, AS YOUR HONOR NOTED, TO BE A LEADER OF A PROTEST. AND THE FACT THAT SOMEONE ORGANIZES AND LEADS A PROTEST AND INDIVIDUALS WHO ATTEND DO SOMETHING TOTALLY UNBEKNOWNST TO THE LEADER OF THE PROTEST, THAT DOESN'T MAKE ORGANIZING A PROTEST ANY LESS PROTECTED UNDER THE FREEDOM OF SPEECH AND FREEDOM OF ASSOCIATION.

10:15:34
10:15:38
10:15:43
10:15:46
10:15:50
10:15:53
10:15:58
10:16:02
10:16:06

THE NEXT THING THAT MY FRIEND ON THE OTHER SIDE RAISED WAS AN IDEA, AND I BELIEVE HE WAS REFERRING TO THE PROCEEDINGS OF BADAR KHAN SURI WHERE HE TALKED ABOUT THE FACT THAT HE HAD A FAMILY MEMBER WHO WAS MARRIED TO SOMEONE RELATED TO HAMAS, AND HE INTIMATED THAT, WELL, THERE COULD HAVE BEEN A NONSPEECH BASIS FOR THE PROCEEDINGS AGAINST MR. KHAN SURI.

10:16:08
10:16:11
10:16:15
10:16:17
10:16:21
10:16:25

I WOULD LIKE TO QUOTE DIRECTLY FROM THE FOURTH CIRCUIT WHEN IT ADDRESSED THIS POINT. THIS IS ON PAGE 17 OF OUR BRIEFING, THAT THE GOVERNMENT HAS NEVER CONTESTED THAT IT DETAINED KHAN SURI "IN RETALIATION FOR HIS FIRST AMENDMENT ACTIVITY."

SO YOUR HONOR, THERE HAS BEEN A MONUMENTAL GULF BETWEEN WHAT MY FRIEND ON THE OTHER SIDE IS REPRESENTING ABOUT THE FACTORS CONSIDERED IN GOING AFTER MR. KHALIL, MS. OZTURK, MR. MAHDAWI AND MR. KHAN SURI AND WHAT THE GOVERNMENT IS ACTUALLY PROVIDING TO THE COURT IN THOSE CASES AND WHAT OTHER DISTRICT AND CIRCUIT COURTS OF APPEAL ARE FINDING.

IN NONE OF THE FOUR MAJOR CASES THAT YOUR HONOR TALKED ABOUT WITH MY COLLEAGUE ON THE OTHER SIDE HAS THE COURT ACTUALLY FOUND THAT THERE WAS A NONSPEECH BASIS. INSTEAD, JUDGE YOUNG, IN HIS LENGTHY FINDINGS OF FACT AND CONCLUSIONS OF LAW, SPELLED OUT IN DETAIL HOW NONE OF THESE INDIVIDUALS WOULD HAVE BEEN SUBJECTED TO THIS HORRIFYING TREATMENT BUT FOR THEIR PROTECTED SPEECH.

NOW THE NEXT THING THAT FRIEND MENTIONED IS THAT HE SAID THERE IS NOT A POLICY OF GOING AFTER PROTECTED SPEECH. WE TALKED ABOUT THIS IN OUR RESPONSE BRIEF, THE SOLE THING JUDGE YOUNG FOUND IS THAT THE EXECUTIVE BRANCH DID NOT HAVE A POLICY OF TRYING TO DEPORT EVERY PRO-PALESTINIAN NON-CITIZEN. THAT IS THE SOLE THING THAT JUDGE YOUNG FOUND. TO TRY TO EXTRAPOLATE THAT INTO SAYING THAT JUDGE YOUNG FOUND THAT THE

ADMINISTRATION IS NOT TARGETING PEOPLE BASED ON PROTECTED SPEECH IS THE EXACT OPPOSITE OF WHAT JUDGE YOUNG ACTUALLY HELD. THAT'S WHY THE GOVERNMENT IS APPEALING IT AND THAT'S WHY THE GOVERNMENT DOES NOT LIKE JUDGE YOUNG'S OPINION.

WITH RESPECT TO *STANFORD DAILY*'S STANDING, THE GOVERNMENT CONTINUES TO FOCUS MANY OF ITS EGGS ON THE ASSOCIATIONAL STANDING BASKET. AS WE EXPLAINED IN OUR RESPONSE BRIEF, OUR PRIMARY ARGUMENT HERE IS ON ORGANIZATIONAL STANDING. AND I THINK THE BEST COMPARATOR HERE, AND I WILL GO TO JUDGE YOUNG'S OPINION IN AAUP, IS THE MIDDLE EASTERN STUDIES ASSOCIATION.

THE MIDDLE EASTERN STUDIES ASSOCIATION WHICH JUDGE YOUNG FOUND HAD ORGANIZATIONAL STANDING, IS NOT AN ADVOCACY GROUP, IT'S A GROUP FOR SCHOLARS WHO COME TOGETHER WHO STUDY THE MIDDLE EAST AND TO PERFECT THEIR CRAFT, BUT IT'S NOT A TRADITIONAL ADVOCACY GROUP IN THE WAY THAT WE WOULD THINK OF A GROUP BEING FORMED SOLELY, FOR EXAMPLE, TO ADVOCATE BEFORE CONGRESS AND FILE LITIGATION. IT HAS AN INTEREST IN CERTAIN ISSUES BUT THAT DOESN'T TURN IT INTO AN ADVOCACY GROUP.

AND THIS ONLY RELATES TO ASSOCIATIONAL STANDING, BY THE WAY. THERE HAS BEEN A LITTLE BIT OF CROSS-POLLINATION IN THE GOVERNMENT'S BRIEF WHERE THEY TRY TO MAKE OUT THE IDEA THAT BEING AN ADVOCACY GROUP IS A PREREQUISITE FOR STANDING. A, IT'S NOT; BUT B, EVEN IT IS, THAT ONLY APPLIES TO ASSOCIATIONAL STANDING.

WITH RESPECT TO ORGANIZATIONAL STANDING --

THE COURT: IF YOU COULD SLOW DOWN, ALSO FOR THE BENEFIT OF THE COURT REPORTER, BUT ON THIS POINT, WHAT IS THE STRONGEST PATH FOR *STANFORD DAILY* THAT THEY HAVE TO ESTABLISH STANDING?

MR. FITZPATRICK: I THINK THE STRONGEST PATH HERE IS ORGANIZATIONAL STANDING, YOUR HONOR, AND THAT WE CAN LOOK TO JUDGE YOUNG'S OPINION IN AAUP WHERE HE FOUND THAT NESA HAD ORGANIZATIONAL STANDING, WHERE HE POINTED TO, LIKE HERE, THE INCREASED PREVALENCE OF NONCITIZENS BEING UNWILLING TO CONTRIBUTE AND UNWILLING TO PARTICIPATE IN THE ORGANIZATION'S ACTIVITIES AND HOW IT WENT TO THE CORE OF NESA BRINGING TOGETHER SCHOLARS, SOME OF WHOM ARE DOMESTIC AND SOME OF WHOM ARE INTERNATIONAL, AND THEN BEING CHILLED FROM PARTICIPATING IN NESA.

IF WE LOOK AT *STANFORD DAILY*, *STANFORD DAILY* IS A NEWSPAPER. *STANFORD DAILY* ACTS AND PUBLISHES THE PAPER THROUGH ITS WRITERS, EDITORS AND CONTRIBUTORS. SO LIKE WITH NESA, IF *STANFORD DAILY* MEMBERS DO NOT FEEL COMFORTABLE PARTICIPATING IN THE PRODUCTION OF A NEWSPAPER AND REPORTING THE NEWS AND EDITING AND PUBLISHING OP-ED'S, THAT GOES DIRECTLY TO *STANFORD DAILY'S* CORE OF AN ORGANIZATION AND WHAT IT IS.

AND I THINK SOMETHING THAT COULD BE HELPFUL HERE ON THE STANDING ANALYSIS, YOUR HONOR, IS IF WE LOOK AT THE AMICUS BRIEF OF THE STUDENT PRESS GROUPS WHO FILED IN THIS CASE AND THEY TALKED ABOUT THE NATIONWIDE IMPACT THAT THESE ATTEMPTED

DEPORTATIONS AND VISA REVOCATIONS ARE HAVING ON NEWS ROOMS ACROSS THE COUNTRY. THIS IS NOT CONFINED TO *STANFORD DAILY* BY ANY MEANS, THIS IS SOMETHING THAT IS PERMEATING THROUGHOUT THE COUNTRY, AND *STANFORD DAILY*, WE ARE SO GRATEFUL THAT THEY WERE BRAVE ENOUGH TO STAND UP TO THEIR FIRST AMENDMENT RIGHTS OF FREEDOM OF SPEECH AND FREEDOM OF PRESS, BUT LESS THERE BE ANY IDEA THAT THIS IS AN ISOLATED, PARTICULARLY SCARED NEWS ROOM, I THINK THE STUDENT PRESS LAW CENTER BRIEF PUTS THAT IDEA TO WASTE.

THE COURT: LET ME ASK, YOU ARE FOCUSED ON ORGANIZATIONAL STANDING AS BEING THE STRONGEST ARGUMENT THAT YOU HAVE, IS IT THE POSITION OF *STANFORD DAILY* THAT ASSOCIATIONAL OR CORPORATE STANDING APPLIES?

MR. FITZPATRICK: ABSOLUTELY, YOUR HONOR. WE THINK BOTH CORPORATE AND ASSOCIATIONAL STANDING DO APPLY. WE HAVE SET OUT THE REASONS WHY IN OUR BRIEF.

BUT WITH RESPECT TO ORGANIZATIONAL STANDING, I WOULD POINT THE COURT'S ATTENTION TO THE FDA V. ALLIANCE FOR HIPPOCRATIC MEDICINE CASE WHICH WE DISCUSS IN OUR BRIEFING WHICH SAYS THE CORE OF THE ORGANIZATIONAL STANDING INQUIRY IS WHETHER THE GOVERNMENT'S ACTIONS "HAVE DIRECTLY AFFECTED AND INTERFERED WITH THE PLAINTIFF'S CORE BUSINESS ACTIVITIES."

I DON'T THINK THERE CAN BE ANY REAL DISPUTE HERE THAT BASED ON THE VERIFIED ALLEGATIONS IN OUR COMPLAINT, WHICH AT THIS STAGE ARE EITHER ACCEPTED AS TRUE, IF IT'S A FACIAL

CHALLENGE OR IT'S A FACTUAL CHALLENGE AS THE GOVERNMENT SEEMS TO INDICATE IN ITS REPLY BRIEF, WE ARE STILL ENTITLED TO THE FACTUAL INFERENCES ON A FACTUAL CHALLENGE, BUT WE HAVE EXPLAINED HOW, IN DETAIL, THE GOVERNMENT'S ENFORCEMENT ACTIVITIES ARE DIRECTLY INTERFERING WITH *STANFORD DAILY'S* CORE BUSINESS ACTIVITY OF BEING ABLE TO REPORT THE NEWS AND BEING ABLE TO BRING THE DIVERSE INTERNATIONAL PERSPECTIVES OF ITS INTERNATIONAL NON-CITIZEN CONTRIBUTORS TO THE STUDENT BODY THROUGH ITS REPORTING.

THE COURT: TO THE EXTENT YOU ARE ASKING THE COURT TO CONSIDER STANDING ON MORE THAN ONE PATH FOR STANFORD DAILY, ON THE ASSOCIATIONAL SIDE, WHICH OF THE INDIVIDUAL MEMBERS HAVE STANDING TO SUE IN THEIR OWN RIGHTS?

MR. FITZPATRICK: YOUR HONOR, THE MEMBERS WHO HAVE STANDING TO SUE WOULD BE THOSE THAT WE HAVE IDENTIFIED IN OUR COMPLAINT WHO REFUSED TO -- OR WHO ELECTED NOT TO PUBLISH CERTAIN ARTICLES, WHO ASKED THAT PRIOR ARTICLES BE TAKEN DOWN AND WHO QUIT THE PAPER FOR FEAR OF ADVERSE IMMIGRATION CONSEQUENCES.

THE COURT: DO YOU OR DOES THE COURT NEED TO IDENTIFY ANY OF THOSE MEMBERS FOR THOSE PURPOSES?

MR. FITZPATRICK: NO, YOUR HONOR, THERE IS CASE LAW IN THE NINTH CIRCUIT HOLDING THAT AT LEAST FOR PURPOSES OF STANDING, ONE DOESN'T NEED TO IDENTIFY PARTICULAR MEMBERS IN ORDER TO HAVE STANDING. WE HAVE ALSO --

THE COURT: WHAT'S YOUR BEST CASE FOR THAT?

MR. FITZPATRICK: YOUR HONOR, I CAN GET THAT TO YOU IN ABOUT TEN MINUTES, I BELIEVE IT WAS CONTAINED IN OUR SUMMARY JUDGEMENT BRIEFING, BUT WE ALSO HAVE THE SWORN TESTIMONY OF *STANFORD DAILY* EDITOR IN CHIEF, GRETA REICH, WHO IS HERE TODAY, WHO IS ABLE TO TESTIFY IN HER OWN ACCORD AS THE WOMAN WHO RUNS THE NEWSPAPER, ABOUT THE FACT THAT HER INTERNATIONAL STAFFERS CAME TO HER AND DECLINED ASSIGNMENTS AND REFUSED TO PUBLISH STORIES BECAUSE THEY WERE FEARFUL OF ADVERSE IMMIGRATION ACTIONS.

THAT IS OF COURSE A NAMED WITNESS AND SOMEONE WHO IS PROVIDING TESTIMONY ON THE DIRECT IMPACT OF THE GOVERNMENT'S ACTIONS ON *STANFORD DAILY*.

THE COURT: OKAY. GO AHEAD.

MR. FITZPATRICK: THANK YOU, YOUR HONOR.

MY FRIEND ON THE OTHER SIDE ALSO PHRASED THE ISSUE OF REDRESSABILITY, AND HE RAISED THIS IDEA OF THE CONCEPT OF PROTECTED SPEECH BEING AMBIGUOUS AND HARD TO PIN DOWN. YOUR HONOR, THAT'S SIMPLY NOT TRUE, AND THE REASON WE KNOW THAT IS BECAUSE THE STATUTE THAT WE ARE CHALLENGING TALKS ABOUT WHAT CONSTITUTES PROTECTED SPEECH.

AND I WILL READ -- SO THE STATUTE PROVIDES THAT SOMEONE IS NOT TO BE RENDERED DEPORTABLE, AND I'M QUOTING DIRECTLY FROM THE STATUTE HERE, "BECAUSE OF THE ALIEN'S PAST CURRENT OR EXPECTED BELIEFS, STATEMENTS OR ASSOCIATIONS, IF SUCH BELIEFS,

STATEMENTS OR ASSOCIATIONS WOULD BE LAWFUL WITHIN THE UNITED STATES."

THAT IS THE STATUTORY DEFINITION CREATING AN EXCEPTION, BEFORE IT CREATES AN EXCEPTION TO THE EXCEPTION, THAT PROTECTED SPEECH CAN NOT BE THE BASIS FOR RENDERING SOMEONE DEPORTABLE.

AND THEN IT CONTINUES, "UNLESS THE SECRETARY OF STATE PERSONALLY DETERMINES THAT THE ALIEN'S ADMISSION WOULD COMPROMISE A COMPELLING UNITED STATES FOREIGN POLICY INTEREST."

SO ANY TIME WE ARE TALKING ABOUT THE DEPORTABILITY PROVISION HERE, WE ARE NECESSARILY TALKING ABOUT PROTECTED SPEECH BECAUSE THAT'S WHAT THE STATUTE LIMITS IT TO, IT LIMITS IT TO INSTANCES IN WHICH THE ALIEN'S PAST, CURRENT OR EXPECTED BELIEFS WOULD BE LAWFUL IN THE UNITED STATES. THAT'S PROTECTED SPEECH.

AND IT ALSO, I THINK, CUTS AGAINST THE GOVERNMENT'S ARGUMENT THAT THE PROCEEDINGS AGAINST MR. KHALIL OR MR. MAHDAWI COULD EVER BE DIVORCED FROM THEIR PROTECTED SPEECH, BECAUSE ONCE THE GOVERNMENT IS RELYING ON THIS PROVISION, ONCE THE GOVERNMENT IS INVOKING, AS IT DID WITH MR. KHALIL AND MR. MAHDAWI, THE PROVISION ALLOWING THE SECRETARY OF STATE TO PERSONALLY DETERMINE THAT SOMEONE COMPROMISES A COMPELLING FOREIGN POLICY THREAT TO THE UNITED STATES, THAT PROVISION IS SOLELY BASED ON PROTECTED SPEECH BY THE TEXT OF THE STATUTE.

SO ALL THE COURT NEEDS TO KNOW ABOUT WHETHER OR NOT THE GOVERNMENT IS PURSUING DEPORTABILITY BASED ON PROTECTED SPEECH

IS THE FACT THAT THEY ARE INVOKING THE STATUTE, BECAUSE IF THEY HAD ANYTHING OTHER THAN PROTECTED SPEECH, THEY WOULDN'T BE INVOKING THIS SECTION WHICH ONLY APPLIES TO PROTECTED SPEECH.

WITH RESPECT --

THE COURT: ARE YOU SUGGESTING THERE IS NO CIRCUMSTANCE IN WHICH THE GOVERNMENT COULD CONSIDER THAT SPEECH, EVEN PROTECTED SPEECH, TO MAKE A DETERMINATION ABOUT REVOKING SOMEONE'S VISA OR DEPORTING THEM?

MR. FITZPATRICK: SO THE STATUTORY LANGUAGE I WAS JUST READING TO THE COURT IS ONLY WITH RESPECT TO DEPORTATION. THAT IS THE LIMITER ON THE SECRETARY OF STATE'S ABILITY TO PERSONALLY DETERMINE THAT SOMEONE COMPROMISE A COMPELLING FOREIGN POLICY THREAT TO THE UNITED STATES.

WITH RESPECT TO THE VISA REVOCATION PROVISION, AS YOUR HONOR MENTIONED EARLIER, THERE ARE NO GUARD RAILS ON THAT, IT PROVIDES THE SECRETARY OF STATE, AS MY COLLEAGUE ON THE OTHER SIDE CONCEDED, COMPLETE, TOTAL AND UNREVIEWABLE AUTHORITY TO REVOKE A VISA FOR ANY REASON, INCLUDING ON THE BASIS OF PROTECTED SPEECH.

BUT WITH RESPECT TO THE DEPORTABILITY PROVISION, THERE ARE PLENTY OF OTHER SECTIONS IN THE IMMIGRATION NATIONALITY ACT THAT PROVIDE THE SECRETARY OF STATE THE ABILITY TO RENDER SOMEONE DEPORTABLE BASED ON ACTUAL MATERIAL SUPPORT FOR TERRORISM, BASED ON OTHER ACTUAL NON-PROTECTED ACTIVITIES, FOR EXAMPLE PROVIDING ACTUAL SUPPORT FOR TERRORISM OR COMMITTING

TERRORISM.

THERE ARE ALREADY SEPARATE SECTIONS THAT ALLOW THE GOVERNMENT TO RENDER SOMEONE DEPORTABLE BASED ON THAT. SO THE ONLY THING THIS CASE DEALS WITH, AND OUR CHALLENGE IS VERY NARROW IN THIS RESPECT, IS WHEN THE SECRETARY OF STATE IS USING THAT "PERSONALLY DETERMINED" AUTHORITY TO RENDER SOMEONE DEPORTABLE -- THE ONLY THING WE ARE CHALLENGING HERE, WHAT WE ARE FOCUSED ON HERE WITH RESPECT TO THE DEPORTABILITY PROVISION IS THAT NARROW CLAUSE THAT ALLOWS THE SECRETARY OF STATE TO RENDER SOMEONE DEPORTABLE BASED ON HIS PERSONAL DETERMINATION THAT THEIR PAST, CURRENT OR EXPECTED STATEMENTS OR ASSOCIATIONS, LAWFUL WITHIN THE UNITED STATES, COMPROMISE A COMPELLING FOREIGN POLICY INTEREST.

THE COURT: LET ME GO BACK TO A POINT THAT I RAISED WITH THE GOVERNMENT. DO YOU AGREE THAT THE WAY THE LAW IS CURRENTLY DRAFTED THAT THE SECRETARY OF STATE CAN REVOKE ANYONE'S VISA? WITHOUT -- IT'S UNFETTERED DISCRETION.

MR. FITZPATRICK: YES, THAT IS HOW THE STATUTE IS WRITTEN.

THE COURT: AND IF THE VISA IS REVOKED THEN THAT PERSON DOESN'T HAVE A LAWFUL BASIS TO BE IN THE COUNTRY, CORRECT?

MR. FITZPATRICK: THAT'S CORRECT.

THE COURT: TELL ME THE PRACTICAL EFFECT OF WHAT IT IS YOU ARE ASKING FOR, BECAUSE IF YOUR FOCUS IS ON THE

DEPORTATION, THAT SOMEBODY HAS ALREADY HAD THEIR VISA REVOKED AND THEREFORE THEY HAVE NO LAWFUL BASIS TO BE IN THE COUNTRY, WHAT PROTECTIONS DO THEY HAVE?

MR. FITZPATRICK: VERY FEW, AND THAT'S WHY WE ARE BRINGING THIS CHALLENGE. WE ARE BRINGING THIS CHALLENGE IN ORDER TO SECURE OUR NON-CITIZEN CLIENTS' ABILITY TO SPEAK OUT AND REPORT THE NEWS AND ENGAGE IN PROTECTED FIRST AMENDMENT SPEECH WITHOUT WORRY THAT THEIR PROTECTED SPEECH IS GOING TO RESULT EITHER IN THEIR VISA BEING REVOKED, AS IT WAS WITH MS. OZTURK, OR THEM BEING RENDERED DEPORTABLE, AS IT WAS WITH MR. MAHDAWI, MR. KHALIL AND MR. KHAN SURI.

THAT IS WHY PRE-ENFORCEMENT CHALLENGE HERE IS SO IMPORTANT. BECAUSE AS WE EXPLAINED IN OUR BRIEFING, THE SECOND THE GOVERNMENT ACTUALLY REVOKES THE VISA OR THE SECOND THE GOVERNMENT ACTUALLY MAKES A DEPORTABILITY DETERMINATION, OUR CLIENTS ARE OUT OF LUCK, THEY CAN'T COME TO THE DISTRICT COURT TO SEEK HELP. THEY CAN SEEK HABEAS RELIEF WHILE THE IMMIGRATION PROCEEDINGS CONTINUE BUT THEY CAN'T VINDICATE THEIR RIGHT IN A DISTRICT COURT TO NOT HAVE THEIR IMMIGRATION STATUS SUBJECT OR BE PENALIZED ON THE BASIS OF PROTECTED SPEECH.

THAT IS WHY PRE-ENFORCEMENT STANDING IN THIS CASE IS SO IMPORTANT, YOUR HONOR, BECAUSE THERE WON'T BE ENFORCEMENT STANDING IN A DISTRICT COURT. IT IS A VERY UNIQUE CASE IN THAT RESPECT. AND AS WE POINTED OUT IN OUR BRIEFING, YOUR HONOR, THE GOVERNMENT HAS CONSISTENTLY MAINTAINED IN THESE OTHER

ACTIONS, AFTER SOMEONE HAS ALREADY FACED ENFORCEMENT ACTION, THEIR POSITION IS THAT THE DISTRICT COURTS HAVE NO ROLE TO PLAY IN THE VINDICATION OF THE FIRST AMENDMENT.

WITH RESPECT TO MY FRIEND ON THE OTHER SIDE'S ARGUMENT THAT THIS IS SEEKING AN "OBEY THE LAW" INJUNCTION, THAT'S MISTAKEN FOR A COUPLE OF REASONS.

ONE, THE PARTIES STILL DISAGREE OVER WHAT THE LAW ACTUALLY IS. THE GOVERNMENT'S POSITION, BOTH IN THIS AND OTHER CASES, HAS BEEN THAT CONGRESS'S PLENARY AUTHORITY OVER IMMIGRATION IS BROAD; AND THEREFORE, THEY HAVE THE ABILITY TO REVOKE VISAS AND RENDER SOMEONE DEPORTABLE ON THE BASIS OF PROTECTED SPEECH AND THE FIRST AMENDMENT CANNOT HAVE ANYTHING TO SAY ABOUT THAT.

SO BECAUSE THE PARTIES STILL HAVE A DISPUTE OVER WHAT THE LAW ACTUALLY IS, I DON'T BELIEVE IT'S FAIR TO CHARACTERIZE THIS AS AN "OBEY THE LAW" INJUNCTION.

AND SECOND, THE SCOPE OF ANY EVENTUAL INJUNCTION IS NOT APPROPRIATELY CONSIDERED AT A MOTION TO DISMISS STAGE, THOSE ARE RULE 65(D) PROCEEDINGS, THOSE CAN BE HANDLED ELSEWHERE. BUT THE IDEA THAT THIS IS -- THAT WE ARE SEEKING SORT OF AN, OH, CONTINUE DOING WHAT YOU ARE DOING NOW, JUST FOLLOW THE LAW INJUNCTION, THAT'S SIMPLY NOT THE CASE HERE. THE PARTIES DISAGREE ABOUT WHAT THE CONSTITUTION PERMITS THE EXECUTIVE BRANCH TO DO IN THE EXERCISE OF ITS IMMIGRATION POWER, THAT'S WHY THIS IS A LIVE AND REDRESSABLE SUIT.

WITH RESPECT TO THE FACTUAL CHALLENGE, THE FACTUAL ISSUES

ARE RESOLVED IN OUR FAVOR EVEN IF THE COURT DECIDES THAT THIS IS A FACTUAL CHALLENGE AS OPPOSED A FACIAL CHALLENGE.

I WILL CONFESS TO SOME FRUSTRATION THAT THE GOVERNMENT'S OPENING BRIEF DID NOT EXPLICITLY SAY THAT IT WAS CHALLENGING ANY OF THE ALLEGATIONS IN OUR VERIFIED COMPLAINT, NOR DID IT SAY THAT IT WAS ADVANCING A FACTUAL CHALLENGE TO THE STANDING, AND THEN IN THE REPLY BRIEF AFTER WE DON'T HAVE THE OPPORTUNITY TO RESPOND, THEY SUDDENLY INSIST THEY ARE MAKING A FACTUAL RATHER THAN A FACIAL CHALLENGE TO JURISDICTION. BUT THAT --

THE COURT: I WILL SAY, AND THIS GOES BACK TO THE ISSUE THAT CAME UP THE LAST TIME THAT I SAW ALL OF YOU, WHICH I KNOW MAY HAVE CAUSED SOME FRUSTRATION PROCEDURALLY, BUT IT SEEMED CLEAR TO THE COURT AT THAT TIME THAT THERE WAS NOT AN AGREEMENT ABOUT WHAT THE FACTS -- THE UNDERLYING FACTS WERE THAT WOULD HAVE ALLOWED THE COURT TO PROCEED UNDER CROSS-MOTIONS FOR SUMMARY JUDGEMENT.

I SUSPECT THE PLAINTIFFS FELT CONFIDENT MOVING FORWARD BASED ON WHAT WAS ALLEGED IN THEIR COMPLAINT, THINKING AND UNDERSTANDING THAT THERE WAS NO CHALLENGE TO THAT.

I'M NOT CRITICIZING THE GOVERNMENT FOR THAT, I THINK IT WAS ALREADY CLEAR TO THE COURT AT THAT POINT THAT THE GOVERNMENT HAD SERIOUS QUESTIONS ABOUT THE UNDERLYING FACTS, BUT PROCEDURALLY THAT DOES NOT ALLOW THE COURT TO MOVE FORWARD ON A MOTION FOR SUMMARY JUDGEMENT. AND WHAT THE FACTUAL RECORD IS, IS IT'S NOT AGREED UPON BY THE PARTIES, EVEN IF IT'S, WE

AGREE ON IT FOR THESE PURPOSES AND AGREE TO DISAGREE ABOUT THE UNDERLYING SUBSTANCE FOR LATER.

SO I APPRECIATE YOUR COMMENT ABOUT THAT BUT I AGREE WE ARE WHERE WE ARE IN TERMS OF THE PROCEDURAL POSTURE.

MR. FITZPATRICK: OF COURSE.

WE ARE HAPPY TO PROVIDE THE COURT THE ADDITIONAL INFORMATION IT REQUESTED AND WE HAVE WORKED VERY COOPERATIVELY WITH THE OTHER SIDE ON GETTING TO THIS POINT, WE THANK THE OTHER SIDE FOR THAT.

MY FRIEND ON THE OTHER SIDE ALSO RAISED THE ISSUE OF THE STATE DEPARTMENT'S RECENT VISA REVOCATIONS OF PEOPLE WHO ENGAGED IN SPEECH OF CHARLIE KIRK AND TRIED TO INSINUATE WE WERE TRYING TO SORT OF LATCH ON TO THAT SPEECH.

THAT'S NOT WHY THOSE ALLEGATIONS ARE IN OUR COMPLAINT. THOSE ALLEGATIONS ARE IN OUR COMPLAINT TO DETAIL THAT THE GOVERNMENT STILL BELIEVES AND STILL IS REVOKING VISAS SOLELY ON THE BASIS OF SPEECH. AND THE REASON WE KNOW THAT IS WHEN THE STATE DEPARTMENT, AND WE INCLUDED THESE TWEETS IN OUR AMENDED VERIFIED COMPLAINT, WHEN THE GOVERNMENT TWEETED OUT THAT THEY WERE CANCELLING THESE VISAS, THEY SCREEN SHOT THE TWEETS. SO THERE WAS NEVER A "MORE THERE," THE GOVERNMENT WAS PROUDLY BOASTING THAT IT WAS REVOKING VISAS SOLELY ON PROTECTED SPEECH.

THAT'S WHY THOSE REVOCATIONS ARE RELEVANT HERE, BECAUSE THEY OCCURRED AFTER THE ORIGINAL COMPLAINT, AND THEY SHOW THAT THE GOVERNMENT STILL INTERPRETS SECTION 2701(I), BOTH IN

PRACTICE AND IN TEXT, AS ALLOWING THE EXECUTIVE BRANCH TO REVOKE VISAS SOLELY ON THE BASIS OF PROTECTED SPEECH, PARTICULARLY ON SOCIAL MEDIA, THAT'S WHY THOSE ARE IMPORTANT.

WITH RESPECT TO MY FRIEND ON THE OTHER SIDE'S ARGUMENT THAT THE PERMISSIBLE "MORE" IN A CALCULATION OF WHETHER SOMEONE IS GOING TO BE SUBJECT TO ADVERSE IMMIGRATION ACTION IS SUPPORT OF -- HE MENTIONS SUPPORT OF TERRORISM. PHILOSOPHICAL SUPPORT OF TERRORISTS GROUPS IS PROTECTED SPEECH.

THINK BACK TO THE TROUBLES IN IRELAND AND SOMEONE EXPRESSING PHILOSOPHICAL SUPPORT FOR THE IRISH REPUBLICAN ARMY BECAUSE THEY BELIEVE IN AN IRISH FREE STATE. THAT IS STILL ONE HUNDRED PERCENT PROTECTED SPEECH. WHAT WOULDN'T BE PROTECTED, OF COURSE, IS SUPPLYING MONEY OR WEAPONS TO THE IRISH REPUBLICAN ARMY, BUT MERE PHILOSOPHICAL SUPPORT FOR CERTAIN IDEAS IS ALWAYS GOING TO BE PROTECTED SPEECH.

SO EVERY TIME MY FRIEND ON THE OTHER SIDE TRIES TO BRING UP THESE SORT OF AGGRAVATING FACTORS OF WHAT MIGHT HAVE BEEN GOING ON WITH THESE OTHER INDIVIDUALS, EACH TIME, WHEN PRESSED, HE ENDS UP STILL RELYING ON MORE PROTECTED SPEECH.

HE ALSO MENTIONED THAT SOME OF THE SPEAKERS' SPEECH MIGHT BE UPSETTING JEWISH STUDENTS. WELL YOUR HONOR, THAT'S A CLASSIC HECKLER'S VETO, WE CANNOT BE IN A POSITION WHERE SOMEONE'S IMMIGRATION STATUS IS GOING TO BE IN JEOPARDY IF ENOUGH PEOPLE ON CAMPUS ARE UPSET ABOUT WHAT THAT PERSON HAS TO SAY.

IF THEIR SPEECH CROSSES INTO A LINE WHERE IT'S UNPROTECTED OR IT AMOUNTS TO HARASSMENT UNDER THE LAW, THEN WE CAN HAVE THAT DETERMINATION, BUT SOMEONE SHOULD NOT FEEL THAT THEY HAVE TO CENSOR THEMSELVES AND AVOID UPSETTING CLASSMATES IN ORDER TO KEEP THEIR LAWFUL POSITION HERE IN THE UNITED STATES.

THE OTHER ARGUMENT THAT MY FRIEND ON THE OTHER SIDE MADE IS HE SAID IT COULD BE SUFFICIENT TO RENDER SOMEONE DEPORTABLE IF THEY CHALLENGE ISRAEL'S RIGHT TO EXIST. YOUR HONOR, THAT'S PROTECTED SPEECH AS WELL.

IMAGINE A UKRAINIAN SAYING THAT "I HOPE RUSSIA NO LONGER EXISTS," OR IMAGINE A PRO-RUSSIAN SAYING THEY DON'T BELIEVE A ESTONIA, LATVIA, LITHUANIA SHOULD EXIST. THAT IS ALL PROTECTED SPEECH, REGARDLESS OF WHETHER THE CURRENT GOVERNMENT IN POWER BELIEVES THAT THE PARTICULAR VIEWS BY THE SPEAKER ARE WORTHY OR NOT OF BEING HEARD IN THE PUBLIC DISCOURSE.

AND THEN FINALLY, MY FRIEND ON THE OTHER SIDE SAID THAT HE DOESN'T THINK WE HAVE IDENTIFIED ANYONE NEW WHO HAS BEEN SUBJECTED TO ADVERSE IMMIGRATION ACTION ON THE BASIS OF PRO-PALESTINIAN SPEECH.

THAT'S SIMPLY NOT TRUE. PARAGRAPH 76 AND 77 OF OUR VERIFIED AMENDED COMPLAINT DETAIL THE VISA REVOCATION TO SAMI HAMDI, A BRITISH CITIZEN WHO WAS ON A SPEAKING TOUR OF THE UNITED STATES WHERE HE WAS OFTEN AIRING PRO-PALESTINIAN VIEWS, AND I BELIEVE IT WAS TRICIA MCLAUGHLIN FROM THE DEPARTMENT OF HOMELAND SECURITY MADE CLEAR THAT THAT VISA REVOCATION WAS

SOLELY ON THE BASIS OF PROTECTED SPEECH.

AND THEN I BELIEVE THE LAST ISSUE YOUR HONOR AND MY FRIEND ON THE OTHER SIDE ADDRESSED RELATED TO CHILL, AND WHETHER IT IS -- WHETHER THERE IS AN OBJECTIVE CHILL HERE FOR FOLKS AT *STANFORD DAILY* AND AS WELL AS JANE DOE AND JOHN DOE.

I WOULD LIKE TO POINT YOUR HONOR'S ATTENTION TO THE AMICUS BRIEF NOT ONLY FILED BY THE DOZENS OF STUDENT PRESS ORGANIZATIONS BUT BY THE AMICUS BRIEF SUBMITTED BY THE 19 STATES IN THE DISTRICT OF COLUMBIA, THOSE STATES INCLUDING CALIFORNIA, WASHINGTON AND MASSACHUSETTS, THAT DETAIL THE IMMENSE CHILLING EFFECT THAT THESE IMMIGRATION RAIDS AND ENFORCEMENT ACTIONS HAVE HAD ON THE WILLINGNESS OF OUR INTERNATIONAL BROTHERS AND SISTERS TO EXPRESS THEMSELVES IN THE UNITED STATES OF AMERICA.

WE KNOW FROM 22 YEARS AGO THAT THE SUPREME COURT SQUARELY HELD IN NRA V. VULLO, THAT THE FIRST AMENDMENT PROHIBITS THE GOVERNMENT FROM USING THE POWER OF THE STATE TO PUNISH OR SUPPRESS DISFAVORED EXPRESSION.

THAT IS EXACTLY WHAT THESE IMMIGRATION AND ENFORCEMENT ACTIONS HAVE BEEN DOING, THAT IS EXACTLY WHAT JUDGE YOUNG FOUND THIS ADMINISTRATION, AND IN PARTICULAR, DEFENDANTS RUBIO AND NOEM HAVE BEEN DOING THAT VIOLATED THE FIRST AMENDMENT, AND THAT IS WHAT WE ARE CHALLENGING HERE, THE ABILITY OF THE EXECUTIVE BRANCH TO THROW SOMEONE OUT OF OUR COUNTRY SIMPLY BECAUSE THEY DON'T LIKE WHAT THEY HAVE TO SAY.

IF THE COURT HAS ANY FURTHER QUESTIONS, I'M MORE THAN HAPPY TO ADDRESS THEM.

THE COURT: IF YOU COULD ADD PERHAPS A LITTLE BIT MORE ON THE ISSUE OF INJURY. YOU TOUCHED UPON THE ISSUE THAT WAS RAISED BY THE GOVERNMENT REGARDING REDRESSABILITY, I JUST WANT TO BE SURE I UNDERSTAND YOUR POINT WITH REGARDS TO THAT.

GIVE ME A MOMENT, I JUST WANT TO LOOK THROUGH MY OWN NOTES. I THINK YOU HAVE ALREADY TOUCHED ON THE ISSUE REGARDING THE GOVERNMENT'S POSITION THAT THERE IS A LOW LIKELIHOOD OF ENFORCEMENT AS IT RELATES TO THESE INDIVIDUALS AND WHETHER, IN FACT, YOUR CLIENTS WOULD NEED TO WAIT FOR THAT, SO I DON'T THINK I NEED ANYTHING FURTHER ON THAT, BUT THE ISSUE OF INJURY AND REDRESSABILITY, IF YOU COULD END ON THOSE.

MR. FITZPATRICK: ABSOLUTELY, YOUR HONOR.

AND REAL QUICK, I KNOW I PROMISED TO YOU EARLIER, YOUR HONOR, THE AUTHORITY REGARDING AFFECTED MEMBERS TO BE DESCRIBED EARLY ON AT THIS STAGE. THE CITATION FOR THAT IS NATIONAL COUNSEL OF LA RAZA V. CEGAVSKE, I WON'T BURDEN MYSELF OR THE COURT REPORTER WITH TRYING TO PRONOUNCE THAT, I DON'T BELIEVE IT WOULD GO WELL. THE CITE FOR THAT IS 800, F.3D, 1032, IT'S FROM THE NINTH CIRCUIT IN 2015. AND IT SAYS, AFFECTED MEMBERS MUST BE DESCRIBED, BUT "WE SEE NO PURPOSE TO BE SERVED BY REQUIRING AN ORGANIZATION TO IDENTIFY BY NAME, THE MEMBER OR MEMBERS INJURED." AND THAT IS AT PAGE 1041 OF THAT OPINION.

10:41:49 WITH RESPECT TO CHILL, YOUR HONOR, I REFER TO THE LIBERTARIAN PARTY OF L.A. COUNTY CASE WE CITED IN OUR BRIEF WHICH SAYS THAT IT IS WELL SETTLED THAT A CHILLING OF THE EXERCISE OF FIRST AMENDMENT RIGHTS IS ITSELF A CONSTITUTIONALLY SUFFICIENT INJURY, CERTAINLY FOR PURPOSES OF STANDING.

10:42:07 AND WITH RESPECT TO REDRESSABILITY, WHICH I THINK WAS THE FINAL POINT YOUR HONOR WANTED ME TO ADDRESS, REDRESSABILITY HERE WE THINK IS A VERY EASY CONNECT-THE-DOTS. OUR CLIENTS, BOTH THE INTERNATIONAL STAFF AT *STANFORD DAILY* AND JANE DOE AND JOHN DOE ARE WORRIED THAT IF THEY EXPRESS THEMSELVES, THEY ARE ANYTHING TO HAVE THEIR VISAS REVOKED OR BE RENDERED DEPORTABLE UNDER THE DEPORTATION PROVISION.

10:42:33 SO AN INJUNCTION AND A DECLARATION THAT THEIR VISA CANNOT BE REVOKED ON THE BASIS OF PROTECTED SPEECH AND THAT THEY CANNOT BE RENDERED DEPORTABLE BASED ON THE SECRETARY OF STATE'S PERSONAL DETERMINATION THAT THEIR PROTECTED SPEECH COMPROMISES AMERICAN FOREIGN POLICY, REDRESSES THEIR INJURIES, THEY WOULD BE ABLE TO SPEAK AGAIN WITHOUT WORRY THAT THEIR VISA WOULD BE REVOKED OR THAT THEY WILL BE RENDERED DEPORTABLE ON THE BASIS OF THEIR CONSTITUTIONALLY PROTECTED EXERCISE OF FREEDOM OF SPEECH AND FREEDOM OF THE PRESS.

10:43:04 THE COURT: IS THAT STANDARD, THE FEAR THAT YOU HAVE EXPRESSED THERE, IS IT SUBJECTIVE OR OBJECTIVE?

10:43:12 MR. FITZPATRICK: I BELIEVE IT'S OBJECTIVE, YOUR HONOR. WE HAVE PROVED UP SUBJECTIVE CHILL HERE, BUT THE

OBJECTIVE CHILL WE THINK IS SUPPORTED NOT ONLY BY THE ALLEGATIONS FROM OUR PLAINTIFFS, WE HAVE ALSO SUPPLIED THE DECLARATIONS FROM GARRY KASPAROV AND URIEL EPSHTEIN WHO SPEAK TO THE IMMENSE CHILLING IMPACT ON THEIR OWN SEPARATE ORGANIZATION BASED ON THESE IMMIGRATION ACTIONS.

AND THE LAST THING I WOULD PROVIDE YOUR HONOR ON THAT POINT IS THE CALIFORNIA PRO-LIFE CASE THAT WE DISCUSS IN OUR BRIEFING. THIS IS AT PAGE 1095 OF THE OPINION, WHICH IS THAT WHEN YOU HAVE A STATUTE THAT ENCOMPASSES PROTECT SPEECH, "THE THREAT IS LATENT IN THE EXISTENCE OF THE STATUTE."

SO IF WHAT THE GOVERNMENT IS TRYING TO DO TO DEFEAT STANDING IS SAYING, YEAH, YOUR SPEECH MIGHT CONCEIVABLY BE ENCOMPASSED WITHIN THIS STATUTE BUT WE ARE NOT GOING TO ENFORCE IT THAT WAY, THAT IS NOT ENOUGH BECAUSE THE STATUTE STILL ENCOMPASSES YOUR SPEECH.

AND THIS GETS BACK TO THE UNITED STATES V. STEVENS CASE THAT WE DISCUSS IN OUR BRIEFING WHICH IS THAT FIRST AMENDMENT RIGHTS ARE NOT SUBJECT TO THE GOVERNMENT'S NOBLESSE OBLIGE, WHERE WE HOPE AND PRAY THAT THE GOVERNMENT IS GOING TO USE A STATUTE RESPONSIBLY AND CREDIT THEIR PROMISES WHEN THEY SAY "WE ARE ONLY GOING TO USE THE STATUTE RESPONSIBLY."

WE LOOK TO THE TEXT OF THE STATUTE, AND AT NO POINT EITHER IN THE GOVERNMENT'S BRIEFING OR IN ITS ARGUMENT HERE TODAY, HAD THEY TOLD THIS COURT THAT OUR CLIENTS' PAST OR FUTURE SPEECH FALLS OUTSIDE THE REACH OF THE STATUTE. IF RELIEF IS DENIED TO

MY CLIENTS TOMORROW, NOTHING STOPS SECRETARY RUBIO FROM REVOKING THEIR VISA OR RENDERING THEM DEPORTABLE BECAUSE THEY CHANTED FROM THE RIVER TO THE SEA, PALESTINIAN WILL BE FREE, OR BECAUSE THEY VOICED THEIR OPINIONS IN THE *STANFORD DAILY* STUDENT NEWSPAPER.

THE COURT: I MEAN NOTHING -- FROM WHAT I'VE HEARD FROM BOTH SIDES, NOTHING PREVENTS THEIR VISAS FROM BEING REVOKED NOW.

MR. FITZPATRICK: THAT WOULD BE CORRECT, BUT IF WE HAVE AN INJUNCTION IN OUR FAVOR THAT THEIR VISAS CANNOT BE REVOKED ON THE BASIS OF PROTECTED SPEECH, THEIR VISAS COULD NOT BE REVOKED BASED ON THE MESSAGES THAT THEY HAVE EXPRESSED.

THE COURT: THANK YOU.

IS THERE ANYTHING FURTHER?

MR. FITZPATRICK: NOTHING FROM ME, YOUR HONOR.

THE COURT: I HAVE A BIT OF A PROCEDURAL QUESTION.

IF THIS CASE WERE TO MOVE FORWARD ON THE GOVERNMENT'S AMENDED COMPLAINT -- EXCUSE ME, ON THE PLAINTIFF'S AMENDED COMPLAINT, WHAT IS THE PLAINTIFF'S POSITION ABOUT THE NEXT STEPS?

MR. FITZPATRICK: SO --

THE COURT: AND THERE IS A MOTION FOR SUMMARY JUDGEMENT THAT HAS ALREADY BEEN FILED, THE COURT IS AWARE OF THAT, OF COURSE.

MR. FITZPATRICK: THAT IS CORRECT, YOUR HONOR. AND I

CERTAINLY DON'T WANT TO SPEAK ON BEHALF OF MY FRIEND ON THE OTHER SIDE, BUT MY UNDERSTANDING IS THAT NEITHER SIDE -- IS THAT BOTH SIDES ARE WILLING TO PROCEED TO SUMMARY JUDGEMENT ON THE CURRENT RECORD, THAT NEITHER SIDE NEEDS DISCOVERY IN ORDER TO PROCEED TO SUMMARY JUDGEMENT.

THE COURT: I WILL SAY -- I MEAN PERHAPS I WILL GET MORE FROM THIS LATER, I AM UTTERLY PERPLEXED BY THAT BECAUSE THE FACTUAL RECORD THAT BOTH SIDES ARE POINTING TO ARE COMPLETELY DIVERGENT ABOUT WHAT IT IS THE FACTS SHOW.

I AM GOING TO ASK THE GOVERNMENT, BEFORE WE FINISH, ABOUT THE FINDINGS THAT HAVE BEEN MADE, INCLUDING IN, AAUP, BECAUSE THE GOVERNMENT RELIES HEAVILY ON THE UNDERLYING INFORMATION THAT'S THERE BUT NOT ON THE COURT'S ACTUAL FACTUAL DETERMINATIONS WHICH ARE DIFFERENT.

BUT TO THE EXTENT THAT A MOTION FOR SUMMARY JUDGEMENT RELIES ON THERE BEING NO DISPUTES OF MATERIAL FACTS, AND THESE FACTS SEEM QUITE MATERIAL, PARTICULARLY ABOUT THE -- LET'S CALL IT THE OBJECTIVE CHILL -- WHAT RECORD COULD THE COURT USE TO MOVE DIRECTLY TO MOTIONS FOR SUMMARY JUDGEMENT WITHOUT BUILDING SOME SORT OF AN EVIDENTIARY RECORD HERE?

MR. FITZPATRICK: SO I HAVE A COUPLE IDEAS THERE, YOUR HONOR.

THE FIRST IS I WOULD BE MORE THAN HAPPY TO WORK WITH MY FRIEND ON THE OTHER SIDE ON A STATEMENT OF UNDISPUTED MATERIAL FACTS THAT BOTH SIDES COULD STIPULATE TO AND HAVE THAT BE THE

RECORD FOR SUMMARY JUDGEMENT. WE HAVE TALKED ABOUT THAT BEFORE, I'M NOT SURE IF THE GOVERNMENT WOULD BE WILLING TO ENTERTAIN THAT.

BUT WITH RESPECT TO WHETHER THIS IS TEED UP FOR SUMMARY JUDGEMENT, I THINK THE CORE PART OF YOUR HONOR'S QUESTION THAT I WOULD LIKE TO HOME IN ON IS WHETHER THERE ARE ANY MATERIAL DISPUTES OF FACT. BECAUSE THIS IS A STATUTORY CHALLENGE, THAT MAKES IT DIFFERENT IN KIND TO WHAT WAS GOING ON IN AAUP WHERE THE PLAINTIFFS THERE HAD TO PROVE UP THE EXISTENCE OF A POLICY IN THE CURRENT ADMINISTRATION OF TARGETING PRO-PALESTINIAN SPEAKERS.

OUR CHALLENGE RELATES SOLELY TO THE TEXT OF THE STATUTE, AND WE CAN RELY ON THE PUBLIC STATEMENTS OF PRESIDENT TRUMP, SECRETARY RUBIO, SECRETARY NOEM, MR. MILLER, IN ORDER TO PROVE UP A CREDIBLE THEFT OF ENFORCEMENT.

SO REGARDLESS OF WHETHER YOU CREDIT ANY OR ALL OF THE TESTIMONY IN AAUP, THE NECESSARY PREDICATE FOR STANDING AND THEN FOR FINDING IN OUR FAVOR ON THE MERITS IS GOING TO BE THERE. SO THAT WOULD BE OUR POSITION OF WHY DISCOVERY IS INAPPROPRIATE, BECAUSE THE CORE FACTS THAT THIS COURT NEEDS TO RULE UPON THE CONSTITUTIONALITY OF THE STATUTES, WHETHER THE FIRST ALLOWS REVOKING A VISA OR RENDERING SOMEONE DEPORTABLE ON THE BASIS OF PROTECTED SPEECH, WHATEVER DID OR DIDN'T HAPPEN AT THE CURRENT STATE DEPARTMENT IS IMMATERIAL, BECAUSE AT THAT POINT WE ARE JUST FOCUSING ON THE PERMISSIBLE BOUNDARIES OF THE

EXECUTIVE BRANCH'S AUTHORITY.

THE COURT: THEN ISN'T ALMOST EVERYTHING THAT'S IN THE AMENDED COMPLAINT IMMATERIAL BECAUSE IT'S A FOCUS ON WHAT THEY HAVE BEEN DOING?

MR. FITZPATRICK: I THINK THOSE FACTS, YOUR HONOR, ARE MATERIAL FOR STANDING. I THINK THOSE FACTS ARE MATERIAL FOR WHAT WE ARE DOING HERE TODAY, WHICH IS MAKING SURE THAT JANE DOE, JOHN DOE AND *STANFORD DAILY* ARE THE APPROPRIATE PARTIES TO BRING A PRE-ENFORCEMENT CHALLENGE TO THESE STATUTES.

BUT ONCE WE HAVE STANDING AND WE ARE JUST ON THE MERITS, THEN WE ARE JUST IN ROUTE ONE CONSTITUTIONAL ANALYSIS WHERE WE ASSESS THE FIRST AMENDMENTS'S BROAD PROHIBITION AGAINST ABRIDGEMENTS ON THE FREEDOM OF SPEECH VERSUS THE EXECUTIVE'S ASSERTED UNREVIEWABLE PLENARY AUTHORITY OVER IMMIGRATION. THE FACTS THAT WE PLED IN OUR AMENDED COMPLAINT LEADING UP TO STANDING FRANKLY DON'T HAVE A BIG ROLE TO PLAY THERE BECAUSE WE ARE JUST LOOKING AT, SORT OF, SEPARATION OF POWERS ISSUES.

THE COURT: OKAY. SO THEN BACK TO THE QUESTION I ASKED, IS IT THE POSITION OF THE PLAINTIFFS THAT IF THIS CASE WERE TO PROCEED UNDER THE AMENDED COMPLAINT OR SOME OTHER VERSION OF AN OPERATIVE COMPLAINT, THAT THE NEXT STEP IS FOR THE PARTIES POTENTIALLY TO CREATE A FACTUAL RECORD THAT THE COURT WOULD USE FOR THE PURPOSES OF THE MOTION FOR SUMMARY JUDGEMENT?

MR. FITZPATRICK: SO THAT WOULD BE ONE PATH THAT THE

PARTIES COULD TAKE IS SUBMITTING AN AGREED UPON FACTUAL RECORD.

ANOTHER PATH THAT WE COULD TAKE IS SIMPLY BRIEFING THE MERITS ISSUES, AND WE BELIEVE WE CAN RELY ON MATERIAL THAT IS EITHER UNDISPUTED BETWEEN THE PARTIES OR SUBJECT TO JUDICIAL NOTICE, BUT ONCE WE SORT OF CROSS OVER THE PATH AND WE ARE INTO MERITS TERRITORY, WE ARE JUST DEALING WITH THE LEGAL ISSUES RATHER THAN SORT OF THE FACTUAL UNDERBRUSH HERE AS IT RELATES TO THE INDIVIDUAL PLAINTIFFS.

THE COURT: OKAY. ALL RIGHT. THANK YOU.

I WOULD LIKE YOU TO BE ABLE TO GET TO ANY RESPONSES THAT YOU HAVE BASED ON WHAT YOU HAVE JUST HEARD FROM THE PLAINTIFFS.

I DID WANT TO ASK THE QUESTION THAT I REFERENCED JUST A MOMENT AGO. REPEATEDLY DURING THE TIME THAT WE WERE TALKING, YOU WERE REFERRING TO UNDERLYING FACTS, INCLUDING EVIDENCE THAT'S BEEN USED IN THIS CASE THAT WAS PRESENTED IN AAUP, BUT NOT THE COURT'S HOLDING AND THE FACTUAL FINDINGS THAT THE COURT MADE WHICH IS DIFFERENT IN SOME INSTANCES, IN A SIGNIFICANT WAY, FROM EVIDENCE THAT WAS PRESENTED BY THE GOVERNMENT.

HOW, IF AT ALL, SHOULD THIS COURT LOOK TO THOSE FACTUAL FINDINGS THAT WERE MADE BY JUDGE YOUNG?

MR. HELLAND: TWO THINGS, YOUR HONOR.

FIRST, AS MY FRIEND ON THE OTHER SIDE JUST SAID, AAUP WAS A DIFFERENT CASE WITH A DIFFERENT KIND OF CLAIM, IT WAS AN "AS-APPLIED" CHALLENGE BASED ON ALLEGED TARGETING BY THE SECRETARY OF STATE, SO IT CONCERNED A DIFFERENT LEGAL THEORY.

AND I THINK THAT MATTERS HERE.

WHAT JUDGE YOUNG DID FIND WAS THAT EACH OF THE GOVERNMENT WITNESSES THAT TESTIFIED WAS CREDIBLE, NON-PARTISAN AND A PUBLIC SERVANT. SO I THINK THAT IS A FINDING THAT ALLOWS YOU TO LOOK AT THEIR UNDERLYING TESTIMONY ABOUT THE GOVERNMENT'S POLICIES AND PRACTICES WITH RESPECT TO THESE INVESTIGATIONS AND CREDIT THAT TESTIMONY.

THE COURT: SO I'M JUST GOING TO READ DIRECTLY FROM THE OPINION -- I'M LOOKING FOR A PAGE NUMBER FOR YOU, PERHAPS 41.

"THIS COURT RULES THAT THE PLAINTIFFS" -- AND I WANT TO BE CLEAR I'M QUOTING FROM JUDGE YOUNG'S ORDER THAT WAS ISSUED ON SEPTEMBER 30TH. "THIS COURT RULES THAT PLAINTIFFS HAVE SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT SECRETARIES NOEM AND RUBIO HAVE INTENTIONALLY AND IN CONCERT IMPLEMENTED EXECUTIVE ORDERS IN 14161 AND 14188 IN A VIEWPOINT-DISCRIMINATORY WAY TO CHILL PROTECTED SPEECH. THIS CONDUCT VIOLATED THE FIRST AMENDMENT."

IT CONTINUES TO GO ON FROM THERE.

I RECOGNIZE THAT THIS CASE DEALS WITH SOMETHING THAT IS BEYOND THE IMPLEMENTATION OF THOSE EXECUTIVE ORDERS, THAT THERE ARE MANY OTHER FINDINGS OF FACT HERE THAT AT LEAST OVERLAP WITH THE ISSUES THAT HAVE BEEN RAISED HERE AND FINDINGS THAT THE COURT MADE ACCORDINGLY. WHAT, IF ANYTHING, IS THIS COURT TO DO WITH THAT?

MR. HELLAND: YOUR HONOR, I WILL GO BACK TO WHAT I SAID EARLIER, I THINK THE MOST SALIENT THING TO TAKE FROM AAUP IS THAT THERE WAS PREVIOUSLY AN ENFORCEMENT EFFORT THAT LOOKED AT SIMILAR FORMS OF SPEECH AND CONDUCT, AS WHAT PLAINTIFFS ARE PUTTING AT ISSUE IN THIS CASE, AND THE INDIVIDUAL PLAINTIFFS WHO WOULD HAVE BEEN REFERRED FOR THAT INVESTIGATION DID NOT SUFFER ENFORCEMENT ACTION FROM IT.

I DON'T THINK YOU NEED TO GET INTO WHETHER SPECIFIC INDIVIDUALS WHO WERE SUBJECT TO ENFORCEMENT ACTION, WHETHER THAT WAS BASED ON PROTECTED SPEECH OR NOT. THOSE CLAIMS ARE BEING ADJUDICATED ELSEWHERE, YOU DON'T NEED TO ACTUALLY ADJUDICATE THAT YOURSELF. WHAT YOU NEED TO GRAPPLE WITH FOR PURPOSES OF THIS CASE IS WHETHER THESE PLAINTIFFS HAVE PROVEN THAT THEY FACE A SUBSTANTIAL THREAT OF FUTURE ENFORCEMENT. THAT PAST ENFORCEMENT INITIATIVE THAT WAS DISCUSSED IN AAUP HAS CONCLUDED. THE PLAINTIFFS WHO --

THE COURT: MEANING -- I WANT TO JUST BE SURE I UNDERSTAND THIS POINT. IF THERE ARE PROTESTS THAT OCCUR ON A CAMPUS, WHETHER IT'S AT STANFORD'S CAMPUS OR SOME OTHER CAMPUS IN THE UNITED STATES IN THE NEXT MONTH OR MONTHS, IS IT THE POSITION OF THE GOVERNMENT, WE ARE NOT DOING THAT ANYMORE, WE ARE NOT GOING TO REFER ANY OF THESE INDIVIDUALS, NOBODY NEEDS TO BE CONCERNED AT ALL ABOUT THEIR FIRST AMENDMENT SPEECH, NOTHING IS GOING TO HAPPEN TO ANY OF THESE FOLKS BASED ON THAT?

MR. HELLAND: THAT IS NOT WHAT I WAS TRYING TO

CONVEY, YOUR HONOR, I CAN'T SAY THAT THAT IS THE POSITION; RATHER, THERE WAS A PAST ENFORCEMENT EFFORT WHICH WAS EVIDENCE OF HOW THESE ISSUES ARE BEING INVESTIGATED AND WHERE ENFORCEMENT IS AND IS NOT BEING PURSUED.

SO PLAINTIFFS HAVE AN OBLIGATION TO PROVE TO YOUR HONOR THAT THE KIND OF SPEECH THAT THEY INTEND TO ENGAGE IN WILL RENDER THEM -- SUBSTANTIALLY LIKELY TO RENDER THEM SUBJECT TO ENFORCEMENT. WELL, THEY ENGAGED IN THAT SPEECH PREVIOUSLY, THERE WAS AN INVESTIGATION EFFORT AND THEY WERE NOT SUBJECT TO ENFORCEMENT.

THAT'S WHAT I'M TRYING TO CONVEY TO TAKE AWAY FROM AAUP, OTHER INDIVIDUALS WERE SUBJECT TO ENFORCEMENT. I THINK A RELATIVELY SMALL NUMBER, AND --

THE COURT: IS THERE ANY GUARANTEE THAT THE GOVERNMENT CAN PROVIDE THAT IF THE PLAINTIFFS ENGAGE IN SIMILAR SPEECH IN THE FUTURE, IF THEY WRITE SIMILAR ARTICLES IN THE WEEKS OR MONTHS AHEAD, THAT NO ENFORCEMENT ACTION WILL BE TAKEN AGAINST THEM?

MR. HELLAND: I CAN'T MAKE THAT REPRESENTATION. WE DON'T KNOW WHO THE PLAINTIFFS ARE, OF COURSE THEY ARE ANONYMOUS.

AS WE HAVE SAID IN OUR PAPERS, SO THIS IS THE POSITION OF THE GOVERNMENT IN YOUR HONOR'S COURT, WE THINK THE KIND OF SPEECH THAT THEY HAVE PUT AT ISSUE WOULD NOT RENDER THEM SUBJECT TO ENFORCEMENT, RIGHT. WE HAVE SAID IT, I THINK

REPEATEDLY, IN OUR PAPERS.

SO I CAN'T REPRESENT THAT THAT WOULDN'T PROMPT A REFERRAL WHICH COULD LEAD TO AN INVESTIGATION WHICH COULD LEAD TO ENFORCEMENT ACTION, CONSIDERING WHAT OTHER FACTORS CAN BE PRESENT, I CAN'T REPRESENT THAT. BUT I HAVE SAID IN OUR PAPERS, AND IT IS THE POSITION OF THE GOVERNMENT, THAT THAT MERE SPEECH THEY HAVE ALLEGED AS TO THEMSELVES, NOT OTHER ACTS TAKEN BY OTHER INDIVIDUALS, BUT THEIR SPEECH THAT THEY HAVE PUT AT ISSUE IS NOT OF THE TYPE THAT WARRANTS ENFORCEMENT ACTION.

THAT IS THE POSITION OF THE GOVERNMENT.

THE COURT: BECAUSE IT'S DIFFERENT, FOR EXAMPLE, FROM MS. OZTURK'S SPEECH.

MR. HELLAND: YES, BECAUSE IT DOES NOT HAVE THE ADDITIONAL FACTORS THAT I BELIEVE WERE PRESENT IN MS. OZTURK'S CASE.

THE COURT: YOU HAVE ALREADY INDICATED THAT THERE IS NO EVIDENCE THAT SHE ENGAGED IN SOME SORT OF VIOLENCE, WHAT WERE THE ADDITIONAL FACTORS IN HER CASE?

MR. HELLAND: SO THE AGENTS WHO EVALUATED HER CASES DISCUSSED THEIR PERCEPTION THAT SHE WAS -- HAD A RELATIONSHIP WITH OR WAS CONNECTED TO A STUDENT ORGANIZATION THAT HAD BEEN BANNED FOR DISTRIBUTING VIOLENT IMAGERY.

THAT WAS -- PLAINTIFFS DON'T ALLEGE THAT THEY HAVE A SIMILAR AFFILIATION HERE. I THINK THE INDIVIDUAL PLAINTIFF JANE DOE DOES ALLEGE SHE IS A MEMBER OF SJP, WHICH IS THE TUFTS

BRANCH OF WHICH THE ORGANIZATION THAT HAD BEEN BANNED, BUT THEY DON'T ALLEGE THAT SHE IS A MEMBER OF AN ORGANIZATION THAT ITSELF HAD DISTRIBUTED SUCH IMAGERY AND HAD ITSELF BEEN BANNED. IT'S A DIFFERENT CHAPTER.

THE COURT: OKAY. I DO WANT TO -- I WANT TO BE MINDFUL OF THE TIME.

ARE THERE OTHER THINGS YOU WANT TO ADDRESS THAT CAME UP IN THE PLAINTIFF'S ARGUMENT?

MR. HELLAND: ONE POINT VERY BRIEFLY AND THEN I WILL CLOSE, YOUR HONOR.

MY FRIEND ON THE OTHER SIDE MADE REPEATED REFERENCE TO THE GOVERNMENT'S POSITIONS IN SOME OF THE OTHER HIGH PROFILE CASES THAT WE HAVE BEEN TALKING ABOUT, PARTICULARLY THE KHAN SURI MATTER BEFORE THE FOURTH CIRCUIT. I WANT TO POINT OUT THAT ALTHOUGH THE FOURTH CIRCUIT SAID IN THE CONTEXT OF AN EMERGENCY MOTION TO STAY, THAT THE GOVERNMENT DID NOT THEN CONTEST THAT IT HAD RETALIATED AGAINST THAT INDIVIDUAL BASED ON HIS FIRST AMENDMENT CONDUCT, THE GOVERNMENT SUBSEQUENTLY PUT IN ITS OPENING MERITS BRIEF IN THAT MATTER THAT IT WAS SOLELY FOCUSING ON JURISDICTIONAL ISSUES IN THAT CASE BECAUSE THE SUBSTANTIVE ISSUES WERE GOING TO BE RAISED IN OTHER IMMIGRATION PROCEEDINGS.

THAT IS TO SAY, THE GOVERNMENT DID NOT AFFIRMATIVELY ADMIT THAT THAT IS WHAT IT WAS DOING IN THAT CASE, RATHER THE GOVERNMENT HAS BEEN MAKING A CONSISTENT LITIGATION STRATEGY

Case: 26-6906, 11/20/2026, DktEntry: 16.3, Page 246 of 282


THAT THE MERITS OF THESE KINDS OF CASES ARE SUPPOSED TO GO THROUGH THE IMMIGRATION COURTS AND BE RAISED IN COURTS OF APPEALS ON THE PETITION FOR REVIEW PROCESS.

I JUST WANT YOUR HONOR TO BE AWARE THAT THERE WASN'T AN ADMISSION THAT THAT WAS WHAT HAPPENED IN THAT CASE, WHICH IS WHAT MY FRIEND ON THE OTHER SIDE TRIED TO PORTRAY IT AS, RATHER IT IS THAT THAT ISSUE WAS NOT BEING LITIGATED IN THAT COURT AT THAT TIME BECAUSE IT WAS GOING TO BE TAKEN UP SOMEWHERE ELSE.

FINALLY, YOUR HONOR, ON REDRESSABILITY, I DON'T THINK MY FRIEND ON THE OTHER SIDE ADEQUATELY RESPONDED TO YOUR HONOR'S QUESTIONS ABOUT WHY THIS IS NOT JUST AN "OBEY THE LAW" INJUNCTION, ESPECIALLY IN THE CONTEXT OF THE VISA REVOCATION PROVISION.

HE TRIED TO RELY HEAVILY ON THE DEPORTABILITY PROVISION, PROVIDING THAT BECAUSE OF THE NATURE OF THAT STATUTORY PROVISION, THE GOVERNMENT'S MERE INVOCATION OF IT MEANS PROTECTED SPEECH WOULD BE AT ISSUE, BUT HE ALSO ADMITTED THAT THAT'S NOT THE CASE FOR THE VISA REVOCATION PROVISION.

SO I WANT YOUR HONOR TO PUT YOURSELF IN THE SHOES OF A POTENTIAL MOTION TO ENFORCE THE INJUNCTION DOWN THE ROAD, IF WE EVER GOT TO THAT POINT. PLAINTIFFS HAVE THEIR RELIEF OF AN INJUNCTION THAT SAYS THE GOVERNMENT CANNOT TAKEN ENFORCEMENT ACTION UNDER THESE STATUTES BASED ON PROTECTED SPEECH. THEY COME TO YOUR HONOR WITH CLAIMS THAT SOME INDIVIDUALS WERE SUBJECT TO ENFORCEMENT BASED ON PROTECTED SPEECH. BUT WHAT WAS

THE SPEECH IN THAT CASE? YOUR HONOR WOULD BE FACED WITH QUESTIONS ABOUT WHETHER ANY INDIVIDUAL'S PARTICULAR SPEECH WAS PROTECTED, WHETHER THAT INDIVIDUAL HAD SUFFICIENT FIRST AMENDMENT RIGHTS TO WARRANT PROTECTION AND WHAT THE COUNTERVAILING FOREIGN POLICY INTERESTS OF THE UNITED STATES WOULD BE.

THAT WOULD BE A MORASS; BUT MORE IMPORTANTLY, FOR PRESENT PURPOSES, THE COURT LACKS AUTHORITY UNDER THE RULES GOVERNING INJUNCTIONS TO ISSUE AN INJUNCTION AGAINST A DEFENDANT THAT DOESN'T SUFFICIENTLY CLEARLY EXPLAIN ITS SCOPE. BECAUSE QUESTIONS ABOUT WHAT IS PROTECTED, WHAT QUALIFIES AS PROTECTED SPEECH, WOULD NECESSARILY HAVE TO BE RAISED LATER ON A CASE-BY-CASE BASIS, THAT INJUNCTION CANNOT, BY ITS VERY NATURE, PROVIDE SUFFICIENT CLARITY, IT WOULD BE AN "OBEY THE LAW" INJUNCTION, IT WOULD BE UNENFORCEABLE. IT WOULD BE BEYOND THE COURT'S POWER TO ISSUE, AND THEREFORE PLAINTIFFS HAVE NOT SHOWN REDRESSABILITY FOR PURPOSES OF STANDING HERE.

UNLESS YOUR HONOR HAS ANY FURTHER QUESTIONS.

THE COURT: THE ONLY OTHER QUESTIONS I HAVE ARE ALONG THE LINES OF THE PROCEDURAL AND NEXT STEP QUESTIONS THAT I WAS ASKING TO PLAINTIFF'S COUNSEL.

IF THE AMENDED COMPLAINT WERE TO MOVE FORWARD OR SOME VERSION OF AN OPERATIVE COMPLAINT WERE TO MOVE FORWARD AT THIS POINT, WHAT IS THE POSITION OF THE GOVERNMENT OF WHAT WOULD HAPPEN NEXT?

MR. HELLAND: SURE, YOUR HONOR.

THE COURT: OR WHAT SHOULD HAPPEN NEXT.

MR. HELLAND: YEAH. AS MY FRIEND ON THE OTHER SIDE SAID, I THINK WE ARE IN BROAD AGREEMENT ON PROCEDURAL NEXT STEPS. THE PARTIES HAVE SAID AND AS YOUR HONOR IS AWARE, RENOTICED THEIR MOTIONS FOR SUMMARY JUDGEMENT.

SO THIS GETS TO THE QUESTION THAT CAME UP AT THE LAST HEARING AND HAS COME UP A COUPLE TIMES TODAY, WE THINK THAT THERE IS SUFFICIENT AGREEMENT ON UNDERLYING HISTORICAL FACTS FOR THE COURT TO MOVE TO SUMMARY JUDGEMENT. AND TO THE EXTENT THERE ARE DISPUTES, I THINK THEY GO MORE TO STANDING THAN TO MERITS ISSUES.

THAT BEING SAID, DEPENDING ON WHAT COMES OUT OF THE COURT'S ORDER, I THINK THE PARTIES COULD WORK COLLABORATIVELY ON EITHER PRESENTING JOINT STATEMENTS OF UNDISPUTED FACTS, OR PERHAPS IF IT DOES PROVE NECESSARY, TRYING TO CONDUCT LIMITED DISCOVERY IF IT APPEARS THAT THERE ARE DISPUTES ON SOME FACTS THAT ARE GOING TO BE MATERIAL TO THE ULTIMATE MERITS QUESTION.

BUT AGAIN, I DO THINK THAT BASED ON THE FACIAL CHALLENGE THAT THEY ARE RAISING, THAT IT IS NOT LIKELY TO BE MUCH THE CASE HERE. WE CAN TAKE THIS UP IF WE GET TO THAT POINT BUT I DON'T THINK WE ARE THERE YET.

THE COURT: INDEED.

IF THE AMENDED COMPLAINT PROCEEDS, OR AGAIN AN OPERATIVE COMPLAINT HERE PROCEEDS, THE GOVERNMENT WOULD NEED TO FILE AN

ANSWER, CORRECT?

MR. HELLAND: YES.

THE COURT: HOW LONG DO YOU ANTICIPATE IT WOULD TAKE THE GOVERNMENT TO DO THAT?

MR. HELLAND: IT'S A LENGTHY COMPLAINT, YOUR HONOR, I WOULD ASK FOR 28 DAYS.

THE COURT: I'M NOT MAKING A RULING HERE, JUST TO BE CLEAR, I'M JUST TRYING TO GET AN UNDERSTANDING OF WHAT THE PARTIES WOULD WANT OR NEED UNDER THE CIRCUMSTANCES. I HAVE SOME THINGS TO LOOK AT BASED ON WHAT I HAVE HEARD FROM THE PARTIES, AND I WILL TAKE IT UNDER SUBMISSION TODAY.

I DO THINK IT WOULD BE USEFUL FOR THE PARTIES TO START TALKING ABOUT HOW THEY WOULD VIEW THE NEXT STEPS HERE, BUT I WILL WORK TO GET AN ORDER OUT FAIRLY QUICKLY. AND I WOULD LIKE TO HAVE SOMETHING ELSE ON THE CALENDAR SO WE ARE NOT WAITING FOR A DATE, BUT REALLY IT DOES DEPEND ON WHAT THE COURT DOES HERE ON WHAT THE NEXT DATE WOULD BE UNDER THE CIRCUMSTANCES. AND SO WHEN WE ISSUE THE ORDER, WE WILL PUT ANOTHER DATE ON THERE IF IT'S APPROPRIATE TO DO SO.

DO YOU HAVE ANY OTHER QUESTIONS OR ANYTHING YOU WANT TO RAISE TODAY?

MR. HELLAND: NO, I DON'T THINK SO, YOUR HONOR. THANK YOU FOR YOUR TIME TODAY.

THE COURT: THANK YOU.

I WILL SAY TO BOTH COUNSEL, I THANK YOU FOR THE ARGUMENTS

THAT YOU MADE, FOR THE BRIEFING THAT YOU PROVIDED. I KNOW AGAIN, THERE WAS PERHAPS SOME FRUSTRATION, EVEN IF IT WAS WELL MASKED, AFTER THE LAST TIME THAT YOU WERE HERE ABOUT THE WAY THAT YOU WOULD LIKE TO SEE THIS CASE PROCEED. IT WAS IMPORTANT FOR THE COURT TO RESOLVE THE ISSUE OF STANDING AND TO HAVE A CLEAR RECORD WITH REGARDS TO THAT, AND I THINK I'M IN A BETTER POSITION NOW, INCLUDING WITH THE ARGUMENTS THAT YOU PROVIDED TODAY, TO BE ABLE TO THINK ABOUT THOSE ISSUES FULLY AND WRITE AN ORDER ACCORDINGLY ASSOCIATED WITH THAT.

SO I THANK YOU VERY MUCH. I APPRECIATED THAT EVERYONE WAS WELL PREPARED, AND IT WAS QUITE USEFUL.

AND I APPRECIATE THE FACT THAT THERE ARE MEMBERS OF THE PUBLIC WHO ARE HERE, THIS IS AN IMPORTANT ISSUE THAT AFFECTS MORE THAN JUST THE PEOPLE WHO ARE SITTING IN THIS ROOM, AND I THINK EVERYONE HERE APPRECIATES THAT, SO THANK YOU FOR THAT AS WELL.

AND WITH THAT, I'M OFF-THE-RECORD.

(PROCEEDINGS CONCLUDED AT 11:06 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATED: 1/12/26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NOEL WISE, DISTRICT JUDGE

| | |
|---|---|
| STANFORD DAILY PUBLISHING CORPORATION et al.,<br><br>Plaintiff,<br><br>vs.<br><br>RUBIO, et al.<br><br>Defendants. | No. 5:25-cv-06618-NW |

San Jose, California
Wednesday, November 19, 2025

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:01 A.M. – 9:41 A.M.**

**APPEARANCES**:

For Plaintiff:
Foundation for Individual Rights
And Expression
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
**BY: CONOR T. FITZPATRICK, ESQ.**
**BY: DANIEL A. ZAHN, ESQ.**

Foundation for Individual Rights
And Expression
510 Walnut Street, Suite 900
Philadelphia, PA 19106
**BY: COLIN PATRICK MCDONELL, ESQ.**

Van Der Hout, LLP
360 Post Street, Suite 800
San Francisco, CA 94108
**BY: MARC VAN DER HOUT, ESQ.**

(APPEARANCES CONTINUED ON THE NEXT PAGE.)

**APPEARANCES**: (Continued)

For Defendants: United States Attorney's Office
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
**BY: KELSEY JOHN HELLAND, ESQ.**

Transcription Service: Velvet Quill Communications
17302 House Hahl Road, Suite 210
Cypress, TX 77433

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Wednesday, November 11, 2025 9:01 a.m.

**P-R-O-C-E-E-D-I-N-G-S**

---o0o---

(Call to Order of the Court.)

(Transcriber's Note: Audio begins after appearances.)

MR. HELLAND: United States Attorney Kelsey Helland, on behalf of the Government.

THE COURT: Thank you. Good morning again, everyone. A very serious issue has been raised in this case, and the Court takes it seriously. You may see, however, despite the fact that folks might be very interested in getting to the substance today, that the Court had issued essentially a question, but in the form of quite a long narrative, that it provided what the basis for that question was a number of days ago. I assume both sides have had an opportunity to take a look at that and understand the concerns that the Court has.

All right. So without repeating everything that was in there, that was part of the reason why I included it, so I didn't have to go through all of that with you here.

I have concerns about the posture of this case. It was not clear to me that there was a standing issue when the case was originally filed. I don't mean to suggest that the -- that the Government conceded that issue in any way, only that it wasn't clear that it was before me.

Because there was no answer, there was no motion to dismiss, and you immediately essentially moved -- by stipulation -- I'm happy that there was communication between you and trying to resolve it, but at least resolve procedurally how you were going to go forward.

The -- I misunderstood. I'll put it on me. I misunderstood where you were as it related to the stipulation. The stipulation talked about a purely facial challenge, something I'll talk a little bit about later, although I'm not -- my intention is to not get to the merits today for the reasons that I'm just -- I'm going to describe to you.

There was a belief at this point, there was nothing further for really the Court to look to other than the four corners of the complaint itself, and what I was going to receive in the arguments from the parties and the opposition and the briefs.

So the motion for the preliminary injunction that was filed by the plaintiffs was ultimately converted, based on the stipulation of the parties, to a motion for summary judgment, with the opposition and cross-motion for summary judgment coming from the Government. It was there for the first time that the Court recognized that there was an issue regarding standing.

The reason why I asked whether the Government was going to continue to maintain the issue of standing, which you

indicated you would, is because I have no record that I can look to for standing in the current state of the pleadings.

Normally, if the Government would have filed a motion to dismiss, I would have looked at the complaint, and I would have taken all of the allegations in the complaint, at least at that point as true. But the stipulation that you provided tells me that I cannot do that. It indicates in there that the Government does not concede any points as it relates to the complaint, and -- but at the same time says that there are no issues of disputed fact.

So here's where I think that leaves us. I'm happy to have you tell me why you think I might be wrong, but I -- here's where I think it leaves us. I think it leaves us dealing with the merits before we've dealt with the issue of standing. And I have to deal with that first. And so, I cannot deal with them together because, depending on where I land on standing, I might not get to the merits, or something might need to change in the -- in the plaintiff's complaint such that I can get to the merits to allow me to resolve the issue of standing. But I'm not there yet.

Do you have anything that you want to say about that before I tell you how I plan to address it so that we can ultimately get to the merits?

MR. FITZPATRICK: Briefly, Your Honor, if I may.

THE COURT: Sure.

MR. FITZPATRICK: Would the Court prefer for us to address the Court from the podium or from our table?

THE COURT: You know, because I don't have a court reporter and we don't have Zoom, I'm fine for you to be there or here, wherever you feel more comfortable.

MR. FITZPATRICK: Okay. Good morning, Your Honor. We certainly thank the Court for the guidance it provided in Monday's order on the issue of standing. I'd like to provide the plaintiff's position for why this case still is teed up for summary judgment, both as to standing and the merits. And I think it's very key to recognize where the parties disagree and where we don't agree because that's key for the procedural posture.

Right now, the parties do not dispute the historical facts underlying the cross-motions for summary judgment. In other words, we do not disagree on the what happened. We disagree on the import of what those facts mean. The Government contends that the facts that we've provided in our summary judgment motion and in our verified complaint do not suffice for Article III standing. We of course disagree.

But the Ninth Circuit has been clear, and this is a direct quote, and I'll give Your Honor the case cite as well, that "Where, as here, the historical facts are undisputed, questions of standing are properly resolved on summary judgment." That case is *Hillis Motors Incorporated v. Hawaii*

*Auto Dealers Association*, 997 F.2d 581 at 585.

So, Your Honor, I would agree if we were in a position where the parties were saying, yes, this happened, no, this didn't happen, and it worked, and it was sort of trying to undo the earlier stipulation, we would be in a sticky wicket, no question.

But right now we're in a very familiar posture where the parties both agreed in the stipulation that we were ready and willing to proceed to summary judgment based on essentially the verified complaint and materials in the public record. And that's still where we are today. I don't take anything that my friend on the other side has submitted as saying that that equation has somehow changed.

So at the point where the historical facts -- the historical facts underlying the cross-motions for summary judgment are undisputed, that means there's no genuine issue of material fact, and the Court can proceed to decide standing both with respect -- well, both with respect to Article III standing and with -- and with the merits. And I'll --

THE COURT: Let's say, for example, that the Court has some concerns based on the way that the complaint is drafted about who is included within the membership, for example, of the organization -- for Stanford Daily Publishing -- that it's unclear -- aspects of it are unclear. I don't want to get too far into this because, again, I don't have

briefing on a motion to dismiss. I don't have either party's position as it relates to this.

I just have the plain language of the complaint, which again, if I was in a motion to dismiss, at least I would be taking those facts as they were written. But let's say I have concerns about that, and those concerns are making it difficult for me to get to the underlying substance, but I have no briefing on it. How do I deal with that?

MR. FITZPATRICK: So I think the Court has a couple of options there, and I'd also like to offer a couple of thoughts with the Court's indulgence.

One is, I would note that our friends on the other side have not questioned the scope or the identity of who would be included within the identity of Stanford Daily. We've alleged that Stanford Daily is a voluntary membership organization and, you know, if hopefully we get to a point where there's an order entered in favor of Stanford Daily, I think it could be appropriate when crafting the order protecting its non-citizen writers and editors and staff members from deportation that we that we could hammer out who's included and not included then. I think there are some pretty easy, you know, guardrails that we can put together.

THE COURT: Right. But they've challenged things such as standing, including associational standing, right? Those require certain things to be true. Are they true

because the complaint alleges that they are true? I have a stipulation that says that the defense does not agree to those -- to the language that is in that complaint. It says so in paragraph 10 of the stipulation.

MR. FITZPATRICK: So --

THE COURT: I have further questions, to be clear. They're the questions that have been raised by the defense. I have further questions. I don't know that they wouldn't be able to be resolved. I would want briefing on them to understand that.

Even if they couldn't be resolved in the way that the complaint is currently crafted, it doesn't mean that there couldn't be a complaint that would address some of those last concerns that the Court has, but I don't have that yet. I hear what you are saying. What do you suggest?

MR. FITZPATRICK: So again, a couple of thoughts, Your Honor. If I -- if we look to paragraph 8 of the stipulation, both sides represented that they believe there are no questions of material fact. And at that point, the only thing on the record was our verified complaint and the exhibits attached to our verified complaint. And then at the end of that sentence, each side represented that it is able and willing to proceed to summary judgment without discovery.

THE COURT: What does paragraph 10 mean then?

MR. FITZPATRICK: Paragraph 10, I believe, means

what it says, which is that if, for any reason, the Court decided that summary judgment was inappropriate, that the parties had created a genuine issue of material fact between each other, the Government would reserve the right to contest certain facts at trial, but that they are essentially waiving the ability to do that at summary judgment so that the parties can expeditiously resolve the underlying legal issues.

THE COURT: Okay.

MR. FITZPATRICK: And so with respect to the Court's own questions about standing, because it is true that the Court always has a duty to assure itself of its own subject matter jurisdiction, we don't dispute that. And certainly, if the Court has questions or concerns about standing, we would welcome the opportunity to brief those and, if necessary, amend our complaint to make sure that any gaps or any concerns that the Court might have are rectified to be clear for the reasons we've stated in our briefing.

We believe that this matter is currently and properly teed up for summary judgment. But we understand and appreciate that if the Court needs to assure itself of its jurisdiction, we are ready and prepared to do that.

THE COURT: Okay. Let me hear from the defense on this point.

MR. HELLAND: Thank you, Your Honor. I largely agree with what my friend on the other side just said. I

think that the historical facts are primarily not in dispute. What we disagree about is the import of those facts, what Your Honor should do with them. I think there are three important legal principles that guide the procedural posture and next steps that we're in right now.

The first is that it is Plaintiffs who have the burden of proving standing, right? That's a fundamental principle. It's found in *Lujan v. Defenders of Wildlife*, *Clapper v. Amnesty International*. Plaintiffs are invoking the jurisdiction of the Court. It's their burden to prove standing.

The second principle from those same cases is that the level of proof required changes as the case proceeds, right? So what might be the *Iqbal* standard at the motion to dismiss stage turns into the summary judgment standard or ultimately the trial standard. Again, that comes straight out of those cases.

The third principle, though, which is I think the one most on point for today's purposes, is that in our adversarial system, the parties have the prerogative, within the confines of the federal rules, to craft the motions and employ the procedural vehicles that they choose to obtain the relief that they seek. And I'll point to a Ninth Circuit case from just a couple of years ago that addresses exactly that point in the context of whether standing can be addressed on summary

judgment or a motion to dismiss. That case is *Jones v. L.A.* --

THE COURT: I want to just be clear about what it is I'm saying.

MR. HELLAND: Yeah.

THE COURT: I'm not saying there isn't a situation where the Court could do that, that I would have the record to do that. I'm saying I don't have the record to do it here.

MR. HELLAND: Yes.

THE COURT: I understand that you disagree.

MR. HELLAND: Yeah. So on that point, Your Honor, I think that there is an adequate record here. So first, the complaint itself. As Plaintiffs point out in their briefing, this was a verified complaint, and there's Ninth Circuit authority that says you can consider a verified complaint as part of the record in a -- in a summary judgment motion. So the allegations in the complaint can be considered as part of the record for Your Honor.

Both sides have also submitted record evidence beyond what's in the complaint. So, there is a record before Your Honor. Now if Your Honor perceives disputes in that record, you have to decide if those disputes are genuine and material. But we have not challenged Plaintiff's allegations as to their individual experiences. We have put forward evidence from extra-record sources, the AAUP trial where government

witnesses testified about what happened.

I think Plaintiffs have not disputed those witnesses' testimony about that. So I think that there is a sufficient record for Your Honor to take on the summary judgment standard and the standing question in particular. So --

THE COURT: So if I didn't feel like I had enough information that's there, and let's say as a result of that, that I denied most -- both motions for summary judgment at this juncture, because I think that there's a dispute about this that I have not yet been able to resolve, at least as it relates to standing. So let's say that that's where I'm at.

We're back at the posture where we have a complaint with no answer and with no motion to dismiss. What is the Government going to do? Are you going to file an answer, or are you going to file a motion to dismiss?

MR. HELLAND: Well, so very first and foremost, I think how Your Honor approaches that question will determine the next step. So again, as I started with, Plaintiffs have the burden here, right? And the question is whether any dispute is genuine and material.

So again, they would have to put forward enough evidence, and I think there is -- there is a record. I don't know that it's efficient, but there is a record. So because it's their burden, because they have agreed to proceed in this way, the first question for Your Honor is, have Plaintiffs marshalled

evidence such that there would be a genuine dispute that is material to the outcome?

If Your Honor thinks that they -- that they haven't done that, they haven't shown that much, then the proper course is to grant summary judgment for the Government. If, on the other hand, Your Honor thinks that they have done that, there's a genuine dispute, that they've put forward enough evidence that any dispute is genuine, well then, the question is what happens next?

And it's our position that what happens -- what happens next should be limited discovery with the Court's guidance on whatever questions the Court feels it needs to resolve in order to address those issues. We would suggest continuing the summary judgment hearing, whatever limited discovery the Court needs, and then supplemental briefing on those narrow issues. I don't think we need to go back to an answer or a motion to dismiss stage. I think --

THE COURT: Are you saying I cannot do that?

MR. HELLAND: That you cannot go back to --

THE COURT: Mm-hmm.

MR. HELLAND: No. I think the Court has power to manage its own docket, including something like this, but I'm just not sure for practical reasons that that would be the right way to handle it.

Again, the *Jones* case that I mentioned previously, that

case emphasizes that judicial efficiency is best served by taking on the party's arguments on standing at the summary judgment stage when the parties have put forward evidence on those points. Here, the parties have.

If there are questions that the Court thinks it can't resolve, but which it thinks that Plaintiffs have marshalled enough evidence to create a genuine dispute, then the way to handle that is with a narrow targeted discovery as to those specific questions. That's what promotes judicial efficiency.

THE COURT: I appreciate that. There is a version of this case where I can imagine that at least an aspect of the complaint might need to be amended. I wouldn't know that with certainty until I had full briefing and an opportunity to have substantive argument as to those points, potentially.

It does not seem efficient for the Court to move from this phase to an order, to limited discovery, to seeking to amend a complaint potentially for issues that reveal themselves then, to going back to potentially the Government, then filing a motion to dismiss that complaint, for the Court to resolve that issue before I can come back to the substance.

There are really serious issues in this case that have been alleged. I know both sides want to be able to get to the substance. I'm not trying to avoid that issue. I'm actually trying to get to that sooner instead of later, but with the information at a minimum on standing that the Court needs to

resolve that, I think it also tailors issues ultimately as it relates to the substance. So I appreciate the point that's being made by both sides as to this.

I'm going to craft a path that allows us to get to the issue of standing quickly. Is there anything else that you wish to say about this?

MR. HELLAND: No. I don't think so, Your Honor. I -- if I may get the cite for the *Jones* case, because I do think it's really instructive, and I don't think I provided it yet. So *Jones v. L.A. Central Plaza*, that's 74 F.4th 1053, Ninth Circuit from 2023. I think it's a very useful case in this context. Thank you, Your Honor.

THE COURT: You're welcome.

MR. FITZPATRICK: Your Honor, if I may, very briefly.

THE COURT: You may.

MR. FITZPATRICK: Thank you. Your Honor, a couple of brief thoughts. I think one of the reasons that's making this sort of a little bit tricky is that my friend on the other side did not raise certain particular standing concerns that may be arising with the Court, and that's entirely fair because the Court has an independent obligation.

So we would suggest that what would make the most sense here is if the Court could craft a targeted order from limited discovery on the issue related to standing that the Court

believes it needs more information on, and then we could file a short supplemental brief describing to the Court what came of that discovery and the impact that both sides believe it has on the pending motion for summary judgment.

It could essentially be an appendix or an addition to the current -- the currently briefed summary judgment motion cross-summary judgment motions. That way we wouldn't have to start from scratch. It would be a -- we've conducted limited discovery as the Court instructed. We've looked into these issues. Here's the testimony or documents that came out. Here's how we do or don't believe that they affect the currently pending motion for summary judgment.

The other point I'd like to briefly emphasize to the Court is that with respect to John Doe and Jane Doe, neither of whom are affiliated with Stanford Daily at all and who have their own separate independent standing to enjoin the threat to their ability to remain in this country and enjoin the threat to their First Amendment rights, we would certainly urge the Court to make this very brief and very targeted discovery so that John and Jane Doe do not have to keep looking over their shoulder every time they write an article.

THE COURT: You -- I was about to say something, and the last words out of your mouth made me question what I was about to say, which is I thought what you said a moment ago was that John and Jane Doe are not affiliated with Stanford.

MR. FITZPATRICK: That's correct. John Doe is still a journalist, though he is not affiliated with Stanford Daily.

THE COURT: I will tell you, even that is not clear to the Court from the complaint. I'm not clear whether they were students, they were not students there, they're students at another location, they are connected with Stanford Daily based on the publications and their work that they are doing there versus not at all. It's -- I made some inferences based on what was there, but those facts that you just described are not entirely clear to me based on the way that the complaint is drafted.

MR. FITZPATRICK: Understood, Your Honor. If it would be helpful to the Court for us to either file a supplemental complaint with additional details about John and Jane Doe, where we provide as much as we can while still preserving their anonymity, we can, of course, do that.

I simply wanted to make the point to the Court that regardless of the Court's concerns about the standing of Stanford Daily, they have separate independent standing, both through the advocacy they engaged in while students, like going to protests, engaging in protest chants. And now, after students, at least for John Doe, starting his career in journalism and writing about the war in Gaza and Israel and Palestine, and then with respect to Jane Doe, that she has essentially stopped expressing herself altogether and taken

down her social media accounts.

THE COURT: Again, the Court has read these papers carefully, and the underlying issues are serious ones. I will say the urgency of this is somewhat buffered by the fact that the parties stipulated to wait essentially a number of months before the Court was prepared to hear this case immediately when the initial complaint was filed in the preliminary injunction. But by shifting it to this approach with these competing motions for summary judgment, it built in extra time.

I don't actually know. I mean, a fair amount of time has passed. I don't know what, if anything, has changed as it relates to not only John and Jane Doe, but to Stanford Daily, whether things have changed for the better or for the worse, or they're simply more robust facts that might be relevant to this. But -- I want to turn -- I have one follow-up question. And you're both -- you can both feel free to stay up here.

MR. FITZPATRICK: Sure.

THE COURT: All right. Counsel, you had indicated that what the Government would do next, as it relates to the -- how you would approach the complaint, might depend on what the Court does here. Meaning, if the Court were to put us back to a posture where the Court is not going to address the motions for summary judgment on the record that I have -- I mean, if I deny them based on that and put us back to a

place where we have the complaint.

At this juncture, do you anticipate the Government wanting to file an answer or wanting to file a motion to dismiss?

MR. HELLAND: If those are the only two options, I think we would file a motion to dismiss.

THE COURT: How long would it take you to do that?

MR. HELLAND: By and large, the arguments are what's already presented on standing in our brief, so I think not very long. I would -- I think I would ask for two weeks to turn that around, but -- again, I mean, I--

THE COURT: I recognize this is not what you want.

MR. HELLAND: Yes.

THE COURT: Right. So you don't -- you don't need to qualify with that, right?

MR. HELLAND: Sure, yeah.

THE COURT: I hear that. I want to address these issues as soon as possible so that the Court is clear about the parties and the issue of standing, as that ultimately informs the underlying substance. I do not know, at this point, whether that will necessitate an amendment to the complaint, but I'm prepared to move through that whole process quite quickly. Agree with you. I didn't think it would take the Government too long to be able to do that in light of where you are right now.

How long on the plaintiff's side do you anticipate? How quickly could you respond to that?

MR. FITZPATRICK: So if I understand the procedure that Your Honor is proposing, is it that they would file a motion to dismiss with respect to the existing complaint --

THE COURT: Correct.

MR. FITZPATRICK: -- then we would file an amended complaint within the window provided by the rules?

THE COURT: You could do what a plaintiff could always do. You could oppose, I suppose; that would be an option. You could amend the complaint, and then the defense would do what it always does, which it could decide whether it was prepared to answer based on the amendment or whether it seeks to dismiss that.

But again, I would keep all of this on a very, very short timeline so the Court can address that issue. And I just -- to be clear -- the Court will address the issue of standing as it relates there. I'm going to get past that issue, at least as far as I can get in that issue without some of the issues of standing that come up separately in the substance. So I would not propose to require what it is that either side would do in response. You're not obligated to file an amended complaint. You might elect to do so.

They are not obligated at that point to answer. They could file a motion to dismiss for that, but they couldn't

decide that until they saw what you prepared. All I can do is say, you know, you have to file the motion to dismiss within, you were indicating two weeks or right around the holidays. That doesn't seem like an unreasonable position to take. The other is obviously the parties could meet and confer around this about what they might need after the motion is filed.

MR. HELLAND: If I may, Your Honor.

THE COURT: Yeah.

MR. HELLAND: I think we've demonstrated pretty good-faith cooperation in scheduling issues. We can certainly set a default schedule and follow up. I think both sides would probably be open to joint proposals to modify that if either side, you know, raised it and thought it was necessary.

THE COURT: I also want to be clear. The Court is prepared to address that substance quickly. Once you get it before me, the Court -- I think I'm in a better position to address the concerns that the Court may have that I think in some ways are parallel to at least bits of what I saw in the opposition as it relates to standing on the Government side.

Some of the nuances of what the Court's concerned -- is concerned about might be a little bit more nuanced than that, and the Court can provide that information as it relates to what might be necessary in terms of an amendment, some factual things that are -- the Court is a little bit unclear about.

But the best place for the Court to do that, I think, is

in crafting a more fulsome order that responds directly to the issues, whatever those issues are as they are raised by the Government as it relates to standing, plus mine, so that if the plaintiffs elect to amend the complaint, that you can do that with that total amount of information and hopefully only have to go through one iteration of that, if that's in fact what's necessary.

Okay. So I'll put this in an order that we'll get out later today. But here's my -- here's the plan based on the discussion that we've just had.

The Court's going to deny both of the motions for summary judgment without prejudice.

For procedural reasons, the Court is going to revoke the August 28th, 2025 order that accepted the stipulation of the parties to proceed on cross-motions for summary judgment. I'm doing that for the reasons that I've explained, which is that when the Court signed that order, it just was not clear to me at that point, that tension, what the Court views as a tension between paragraph 8 and paragraph 10.

It -- I did not realize that the issues of standing that are now being raised in the opposition and the cross-motion for summary judgment was going to be something that the Court was going to need to take up without the benefit of having the record, being able to look to the complaint in the way that I would otherwise do so, and without having additional evidence,

because there hasn't even been limited discovery here that the parties have been able to provide in addition.

I understand both sides feel like what you have is enough. But given what I've said, your stipulation will stay filed, but it's not -- it's no longer going to be an order of this Court because it affects the procedure.

The Government will have two weeks from today in order to file their motion to dismiss. That is December 3rd. How much time do the Plaintiffs need?

MR. FITZPATRICK: Your Honor, if I may ask a quick question before responding to that. Would you -- does Your Honor envision that the motion to dismiss is focused on standing only or standing as well as the merits?

THE COURT: If they're filing a motion to dismiss regarding the complaint, I'm assuming they're going to put whatever in there that they think is appropriate and the Court would take it up. I'm not going to limit you in any way. It's as though the motions to -- for summary judgment have not occurred.

MR. FITZPATRICK: Understood. Your Honor, we only need seven days.

THE COURT: Okay. That would be the 10th for a reply?

MR. FITZPATRICK: Another seven days after that.

THE COURT: That puts us to the 17th. I would urge

you at that point, once you're within the opposition and reply to meet and confer to see if there is some amendment that the plaintiffs decide that they want to make that might change the schedule that both parties agree to, you can submit it to me, and I will look at that stipulation carefully.

I'm going to, because I need to -- I'm going to set this for case management in January just so we have another date. If we are still in the cycle of -- the case is not at issue at this point. It -- if that's where we are come that date in January, I'll move it. But for now, I'm going to have a date that's there. Early in January.

THE COURTROOM DEPUTY: The 13th?

THE COURT: Sure. We can set it for the 13th.

MR. FITZPATRICK: Your Honor, briefly, I have a jury trial scheduled to begin in the Eastern District of Tennessee on January 14th.

THE COURT: So the 13th here would not be convenient.

MR. FITZPATRICK: It would be difficult.

THE COURT: Okay. What about if we moved it back to the 6th?

MR. FITZPATRICK: I could do the 6th. I think that's fine.

THE COURT: Again, I don't know that we'll need it --

MR. FITZPATRICK: Yeah.

THE COURT: -- but we'll go ahead and mark it. Is that all right?

Okay. We'll set it for the 6th. Consistent with our standing order that we have here, when you are ready to file your motion to dismiss, you need to contact Ms. Warren (phonetic) to get a date for the hearing.

MR. FITZPATRICK: Okay

THE COURT: At that point, we will expedite that, and we will get you a date that is soon, unless the parties meet and confer and you agree on a different process and a different schedule.

Okay. I want to -- just briefly, I'm not inviting any kind of an argument or a discussion on the merits. I'm just trying to get ahead of an issue that I have some concerns about here. You know, as I said before, the issues in this case are very serious as they've been alleged.

It's, you know, whether freedom of speech is being chilled or it's being punished by the Government in the United States, you know, those are serious allegations that are being raised.

I want to recognize that the parties have repeatedly said to the Court, in the stipulation, that this is a facial constitutional challenge. These are purely legal issues; ultimately, you know, they're concerning these two statutory

provisions, the ones regarding revocation and deportation. And, you know, this is why you were saying essentially there was no issue of material fact for the Court to get to.

By making this argument in this way, that it is a facial challenge and not an as-applied challenge, the Plaintiffs in this case are asking the Court to find that 8 U.S.C. § 2027 (sic) (a)(4)(C)(2)(i), I think it is, regarding deportability and inadmissibility, which specifically relates in that statute to foreign policy, is unconstitutional on its face. And, you know, this is a statute that was put in place, as I understand it, in 1952, not that long after World War II. And that provision references Section 1182 (a)(3)(C)(1)(i).

That is the provision that gives the Secretary of State authority to not admit someone or deport someone for various reasons, including, if you look at that statutory scheme, somebody, for example, who had participated in Nazi persecutions during World War II, including through their political opinions that they expressed.

Things that arguably would have been legal for somebody to do and to express their First Amendment rights within the United States. But something that could have been used as a basis to prevent somebody from either being able to be admitted to the United States or somebody who was here who was not a United States citizen is being deported. That was very powerful. The underlying purpose behind that was quite

powerful and important.

Asking this Court to find that that statute on its face is unconstitutional, not an as-applied challenge, but just the plain language, that's a tough road to hell. Doesn't mean that it's impossible, but I would urge you to think about that as you think about how this case is framed and going forward.

Again, I don't want to invite argument about it because I want to get to the issue of standing before I get to the issue of the merits. Nothing that I've just said should undercut the first thing that I said, which is the idea that First Amendment speech in this country could be chilled or could be punished by the Government is very troubling indeed. There are multiple ways to come at that from the Plaintiff's side. I will see how this unfolds.

Is there anything further that either side wants to discuss procedurally or scheduling before we finish for today?

MR. FITZPATRICK: Your Honor had said that she doesn't want to get it into the merits, but if I could offer sort of a quick 45 seconds on the subject you just raised. Our challenge is not a facial challenge to these two statutes. It fall -- it is admittedly a -- sort of a middle-of-the-Venn-diagram type of constitutional challenge that the Supreme Court explained in the *John Doe* No. 1 case, which is that we are not contending, for example, that the entirety of 8 U.S.C. 1201(i) is unconstitutional.

That we are challenging these statutes solely as they enable the State Department to either revoke visas or render someone deportable on the basis of protected speech. To the extent these statutes authorize the Secretary of State to revoke a visa or to render someone deportable on the basis of something that is not protected by the First Amendment, our challenge does not touch those at all.

So I just wanted to make sure that the record is clear about the scope of what our challenge and what the prayer for relief in our verified complaint does -- or does, and does not touch.

THE COURT: Thank you. Is there anything else?

MR. HELLAND: I think these issues will be fleshed out on further briefing, Your Honor.

THE COURT: Okay. We will get an order out on this shortly. It will reflect what we discussed today. It will be largely procedural, reflecting the dates that we have discussed that are here.

If you reach some different agreement regarding scheduling, or if the Plaintiffs elect to proceed in some different way as it relates to the complaint, please let the Court know as soon as possible in the form of a stipulation and getting it in. Otherwise, I will see you either during that date in January -- or when your hearing is. I would suspect whichever is sooner.

MR. HELLAND: Thank you, Your Honor.

MR. FITZPATRICK: Thank you very much, Your Honor.

THE COURT: You're welcome. We're off the record.

THE COURTROOM DEPUTY: Court is concluded.

(Proceedings adjourned at 9:41 a.m.)

---o0o---

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

DATE: Monday, November 2, 2026

LTaylor

Leah Elizabeth Taylor

Velvet Quill Communications

Court-approved Transcriber